1  LUCIA E. COYOCA (SBN 128314)
      lec@msk.com
2  KARIN G. PAGNANELLI (SBN 174763)
      kgp@msk.com
3  MITCHELL SILBERBERG & KNUPP LLP
   2049 Century Park East, 18th Floor
4  Los Angeles, CA  90067-3120
   Telephone: (310) 312-2000
5  Facsimile: (310) 312-3100

6  MARISSA B. LEWIS (*pro hac vice*)
      mbl@msk.com
7  MITCHELL SILBERBERG & KNUPP LLP
   437 Madison Ave., 25th Floor
8  New York, NY 10022
   Telephone: (212) 509-3900
9  Facsimile: (212) 509-7239

10 Attorneys for Plaintiffs and
   Counterclaim-Defendants
11 Mar Vista Entertainment, LLC, The
   Ninth House, LLC, and Ninth Dark LLC

12

13                UNITED STATES DISTRICT COURT

14               CENTRAL DISTRICT OF CALIFORNIA

15 MAR VISTA ENTERTAINMENT,          CASE NO. 2:23-cv-06924-MEMF-SSC
   LLC, THE NINTH HOUSE, LLC, and
16 NINTH DARK LLC,                   Judge Maame Ewusi-Mensah Frimpong

17           Plaintiffs,             **NOTICE OF MOTION AND
                                     MOTION OF PLAINTIFFS AND
18      v.                           COUNTERCLAIM-DEFENDANTS
                                     TO DISMISS THE AMENDED
19 THQ NORDIC AB,                    COUNTERCLAIMS AND FOR
                                     JUDGMENT ON THE PLEADINGS**
20           Defendant.
                                     *[Proposed] Order filed concurrently
21 THQ NORDIC AB,                    herewith*

22           Counterclaim-Plaintiff, Date:      April 25, 2024
                                     Time:      10:00 a.m.
23      v.                           Location:  Courtroom 8B

24 MAR VISTA ENTERTAINMENT,
   LLC, THE NINTH HOUSE, LLC, and
25 NINTH DARK LLC,

26           Counterclaim-Defendants.

27

28

─────────────────────────────────────────────
         **MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS**
16297301.3

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 25, 2024, in the courtroom of the Honorable Maame Ewusi-Mensah Frimpong of the United States District Court for the Central District of California, 350 West First Street, Courtroom 8B, Los Angeles, California 90012, at 10:00 am, or as soon thereafter as the matter may be heard, Plaintiffs and Counterclaim-Defendants Mar Vista Entertainment, LLC, The Ninth House, LLC, and Ninth Dark LLC (collectively, "Plaintiffs") shall and hereby does move this Court for an order (1) dismissing all of the Amended Counterclaims (Dkt. No. 25) of Defendant and Counterclaim-Plaintiff THQ Nordic AB ("THQ") with prejudice pursuant to Fed. R. Civ. P. 12(b)(6); and (2) granting judgment on the pleadings in favor of Plaintiffs on all of their claims for declaratory relief (Dkt. No. 1) pursuant to Fed. R. Civ. P. 12(c).

This Motion is made on the following grounds:

- All of THQ's Amended Counterclaims fail as a matter of law because they are squarely barred by the First Amendment under the two-prong test set forth in the seminal case *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), and adopted by the Ninth Circuit in *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002).

- For the same reason, Plaintiffs are entitled to judgment on the pleadings as to all of their claims for declaratory relief.

- In the alternative, Plaintiffs are entitled to judgment on the pleadings as to their claim for declaratory relief as to trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), because Plaintiffs cannot be liable as a matter of law under the "noncommercial use" exception, 15 U.S.C. § 1125(c)(3)(C), and because THQ's claimed trademark ALONE IN THE DARK is not "famous" within the meaning of the Lanham Act, 15 U.S.C. § 1125(c)(2).

**MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS**

1    This Motion will be based on this Notice of Motion and Motion, the attached

2   Memorandum of Points and Authorities, the pleadings and orders in the Court's files

3   for this case, any matters on which the Court may or must take judicial notice and/or

4   that are incorporated by reference via the pleadings, any reply that is filed in support

5   of this Motion, any argument presented at the hearing on this Motion, and any other

6   matters the Court deems proper.

7    This Motion is made following the conference of counsel, held pursuant to

8   Local Rule 7-3, which took place on February 28, 2024.

9

10  DATED: MARCH 7, 2024        LUCIA E. COYOCA
                                KARIN G. PAGNANELLI
11                              MARISSA B. LEWIS
                                MITCHELL SILBERBERG & KNUPP LLP
12

13                              By: */s/ Karin G. Pagnanelli*
14                                  Lucia E. Coyoca (SBN 128314)
                                    Karin G. Pagnanelli (SBN 174763)
15                                  Marissa B. Lewis (*pro hac vice*)
                                    Attorneys for Plaintiffs and
16                                  Counterclaim-Defendants
                                    Mar Vista Entertainment, LLC, The
17                                  Ninth House LLC, and Ninth Dark LLC

18

19

20

21

22

23

24

25

26

27

28

---

2

**MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS**

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................1

II.   FACTUAL BACKGROUND .............................................................2

III.  GOVERNING LEGAL STANDARDS ...........................................5

IV.  THE FIRST AMENDMENT BARS ALL OF THQ'S AMENDED COUNTERCLAIMS ........................................................................6

    A.    The *Rogers* Test ...................................................................6

    B.    The Ninth Circuit's Application of *Rogers* To Titles of Expressive Works ...................................................................7

    C.    Plaintiffs' Use of *Alone in the Dark* as the Title of Their Film Easily Qualifies For First Amendment Protection Under the *Rogers* Test ..........................................................................9

        1.    The Film's Title Has "Above Zero" Artistic Relevance. .........10

        2.    The Film's Title Does Not Explicitly Mislead Consumers.......11

    D.    *Jack Daniel's* Does Not Impact the *Rogers* Analysis Here. ...............13

V.   THE COURT SHOULD ENTER JUDGMENT IN PLAINTIFFS' FAVOR AS TO THE TRADEMARK DILUTION CLAIM FOR MULTIPLE OTHER REASONS...............................................................16

    A.    The "Noncommercial Use" Exemption Bars Dilution Liability........17

    B.    The THQ Mark Is Not "Famous" For Dilution Purposes. ..................18

VI.  CONCLUSION ..............................................................................20

Mitchell Silberberg & Knupp LLP

i

# <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

### CASES

*AM Gen. LLC v. Activision Blizzard, Inc.*,
   450 F. Supp. 3d 467 (S.D.N.Y. 2020) ................................................................... 17

*Arcsoft, Inc. v. Cyberlink Corp.*,
   153 F. Supp. 3d 1057 (N.D. Cal. 2015) ............................................................... 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 5

*Belin v. Starz Ent., LLC*,
   662 F. Supp. 3d 1092 (C.D. Cal. 2023) ............................................................. 7, 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................ 5

*Brown v. Elec. Arts, Inc.*,
   724 F.3d 1235 (9th Cir. 2013) ........................................................... 3, 10, 11, 12

*Caiz v. Roberts*,
   382 F. Supp. 3d 942 (C.D. Cal. 2019) ................................................................. 12

*Capcom Co. v. MKR Grp., Inc.*,
   No. C 08-0904 RS, 2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) ................. 9, 11

*Carrico v. City & Cnty. of San Francisco*,
   656 F.3d 1002 (9th Cir. 2011) ............................................................................. 20

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp., Inc.*,
   886 F.2d 490 (2d Cir. 1989) ................................................................................ 10

*Coach Servs., Inc. v. Triumph Learning LLC*,
   668 F.3d 1356 (Fed. Cir. 2012) ..................................................................... 18, 19

*Dahon N. Am., Inc. v. Hon*,
   No. 2:11-CV-05835-ODW, 2012 WL 1413681 (C.D. Cal. Apr. 24,
   2012) .................................................................................................................... 19

*Dickinson v. Ryan Seacrest Enters., Inc.*,
   No. CV 18-2544-GW, 2018 WL 6112628 (C.D. Cal. Oct. 1, 2018) ................... 18

1

# TABLE OF AUTHORITIES
(continued)

2

**Page(s)**

*Dr. Seuss Enters. L.P. v. ComixMix LLC*,
   983 F.3d 443 (9th Cir. 2020) ...................................................................... 8, 9, 11

*Dworkin v. Hustler Mag. Inc.*,
   867 F.2d 1188 (9th Cir. 1989) ............................................................................. 5

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
   547 F.3d 1095 (9th Cir. 2008) ..................................................................... 7, 10

*Everest Capital, Ltd. v. Everest Funds Mgmt. LLC*,
   393 F.3d 755 (8th Cir. 2005) ............................................................................. 18

*Gordon v. Drape Creative, Inc.*,
   909 F.3d 257 (9th Cir. 2018) ............................................................................... 9

*Herbko Int'l, Inc. v. Kappa Books, Inc.*,
   308 F.3d 1156 (Fed. Cir. 2002) ........................................................................ 15

*Hermes Int'l v. Rothschild*,
   No. 22-CV-384 (JSR), 2023 WL 4145518 (S.D.N.Y. June 23,
   2023) ................................................................................................................. 17

*In Re Arnold*,
   105 U.S.P.Q.2d 1953 (T.T.A.B. 2013) ............................................................. 15

*In re Cooper*,
   254 F.2d 611 (C.C.P.A. 1958) .......................................................................... 15

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ............................................................................. 5

*Jack Daniel's Props., Inc. v. VIP Prod. LLC*,
   599 U.S. 140 (2023) ................................................................................... *passim*

*Jackson v. Netflix, Inc.*,
   506 F. Supp. 3d 1007 (C.D. Cal. 2020) ..................................................... *passim*

*JTH Tax LLC v. AMC Networks Inc.*,
   No. 22 Civ. 6526 (PGG), 2023 WL 6215299 (S.D.N.Y. Sept. 25,
   2023) ................................................................................................................. 15

iii

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Lyon v. Chase Bank USA, N.A.*,
  656 F.3d 877 (9th Cir. 2011) ................................................................. 5

*Mattel, Inc. v. the Brainy Baby Co., LLC*,
  101 U.S.P.Q.2d 1140 (T.T.A.B. 2011) .................................................. 15

*Mattel, Inc. v. MCA Records, Inc.*,
  296 F.3d 894 (9th Cir. 2002) .......................................................*passim*

*Mattel, Inc. v. Walking Mountain Prods.*,
  353 F.3d 792 (9th Cir. 2003) ................................................................. 9

*Medina v. Dash Films, Inc.*,
  2016 WL 3906714 (S.D.N.Y. July 14, 2016) ...................................... 14

*MGFB Props., Inc. v. Viacom, Inc.*,
  54 F.4th 670 (11th Cir. 2022) .............................................................. 10

*Mossack Fonseca & Co., S.A. v. Netflix Inc.*,
  No. CV 19-9330-CBM-AS(X), 2020 WL 8509658 (C.D. Cal. Dec.
  23, 2020) .............................................................................................. 17

*Punchbowl, Inc. v. AJ Press, LLC*,
  90 F.4th 1022 (9th Cir. Jan. 12, 2024) .......................................... 10, 14

*Rearden LLC v. Rearden Com., Inc.*,
  683 F.3d 1190 (9th Cir. 2012) ............................................................... 4

*Reflex Media, Inc. v. Pilgrim Studios, Inc.*,
  No. CV 18-2260-GW(FFMX), 2018 WL 6566561 (C.D. Cal. Aug.
  27, 2018) ....................................................................................9, 10, 11

*Rivera v. Remington Designs, LLC*,
  No. LACV1604676JAKSSX, 2018 WL 8693814 (C.D. Cal. Aug.
  28, 2018) .............................................................................................. 16

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989) ........................................................*passim*

iv

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Stewart Surfboards, Inc. v. Disney Book Grp., LLC*,
No. CV 10-2982 GAF (SSX), 2011 WL 12877019 (C.D. Cal. May 11, 2011) .................................................................................................17, 18

*Thane Int'l, Inc. v. Trek Bicycle Corp.*,
305 F.3d 894 (9th Cir. 2002) ...........................................................18, 19

*Twentieth Century Fox Television v. Empire Distrib., Inc.*,
875 F.3d 1192 (9th Cir. 2017) .................................................9, 10, 11

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ..................................................................3

*VIRAG, S.R.L. v. Sony Computer Ent. Am. LLC*,
No. 3:15-CV-01729-LB, 2015 WL 5000102 (N.D. Cal. Aug. 21, 2015) ....................................................................................................12

*VIRAG, S.R.L. v. Sony Computer Entm't Am. LLC*,
699 F. App'x 667 (9th Cir. 2017) ...........................................................7

*Zella v. E.W. Scripps Co.*,
529 F. Supp. 2d 1124 (C.D. Cal. 2007) ..................................................3

*Zo Skin Health, Inc. v. ForeverYoung Laser Ctr., Weight Mgmt. & Med. Spa, LLC*,
No. 8:22-cv-01141-FWS-KES, 2022 WL 18397631 (C.D. Cal. Dec. 7, 2022) ...........................................................................................4

## RULES & STATUTES

15 U.S.C. § 1051 *et seq.* .............................................................................4

15 U.S.C. § 1114(1) ......................................................................................4

15 U.S.C. § 1125(a) ......................................................................................4

15 U.S.C. § 1125(c) ..................................................................16, 17, 18, 19

Fed. R. Civ. P. 12............................................................................................5, 7

v

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case presents a textbook example of trademark overreach.  Defendant and Counterclaim-Plaintiff THQ Nordic AB ("THQ") publishes a video game titled *Alone in the Dark* (the "THQ Mark") and related sequels (collectively, the "Game").  In 2022, Plaintiffs and Counterclaim-Defendants Mar Vista Entertainment, LLC, The Ninth House LLC, and Ninth Dark LLC (collectively, "Plaintiffs") released a single film titled *Alone in the Dark* (the "Film")—a title that is artistically relevant to this Film about a woman who is being stalked while alone in her house.  THQ has asserted various trademark claims against Plaintiffs—all arising solely from their use of *Alone in the Dark* as the single Film's title.

THQ cannot, as a matter of law, claim for itself exclusive use of "Alone in the Dark" as the title of expressive works.  The law in the Ninth Circuit (and elsewhere) is clear that the First Amendment prohibits Lanham Act and other trademark claims arising from titles of expressive works.  As set forth in the seminal case *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), involving a film titled "Ginger and Fred," unless the title has ***zero artistic relevance*** to the underlying work or ***explicitly misleads*** consumers, the Lanham Act does not apply.  The Ninth Circuit adopted and articulated the rationale behind this body of law more than two decades ago:  "A title is designed to catch the eye and to promote the value of the underlying work.  Consumers expect a title to communicate a message about the book or movie, but they do not expect it to identify the publisher or producer."  *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002).  Since then, numerous courts, including in the Ninth Circuit, have dismissed similar claims arising from the use of a mark in titles of expressive works, such as in the song "Barbie Girl," the documentary film "Tiger King," the video game "Dead Rising," and many others.

Applying the *Rogers* test here, there is no question that THQ lacks any actionable trademark claims. The title *Alone in the Dark* is artistically relevant to the Film and Plaintiffs have done nothing to explicitly mislead consumers into thinking that the Film is associated with THQ and/or the Game. Even in its Amended Counterclaims THQ does not and cannot plausibly allege otherwise. Allowing THQ's Amended Counterclaims to proceed would chill the expression of those who, like Plaintiffs, produce and distribute creative works. Because THQ cannot plead around the First Amendment's bar of their trademark claims, all of THQ's Amended Counterclaims should be dismissed with prejudice and judgment should be entered in Plaintiffs' favor. Alternatively, the Court should enter judgment in Plaintiffs' favor on the trademark dilution claim—which, tellingly, THQ has withdrawn—because this claim is barred under the "noncommercial use" exception, and THQ cannot show that the THQ Mark is "famous."

## II.    FACTUAL BACKGROUND[1]

**Plaintiffs and Their Film.** Plaintiffs produce and distribute films and other media content. In October 2022, Plaintiffs released the Film titled *Alone in the Dark*. *See* Amend. Countercl. ¶ 26. The Film is a "horror film with a mystery element." *Id.* ¶ 27. Specifically, the Film is about a recent divorcée under house arrest who must deal with a mysterious stalker that appears to have control over her surroundings. *See* Compl. ¶¶ 2, 16; *accord* https://tubitv.com/movies/691220/alone-in-the-dark.[2] The key art for the Film features the protagonist alone in a dark room

---

[1] The facts set forth herein are derived from (1) the facts in Plaintiffs' Complaint (Dkt. No. 1) (cited herein as "Compl."); and (2) the factual allegations in THQ's Answer and Amended Counterclaims (Dkt. No. 25) (cited herein as either "Answer" or "Amend. Countercl."), which are accepted as true solely for purposes of this Motion.

[2] This website, https://tubitv.com/movies/691220/alone-in-the-dark, includes the Film, a brief description of the Film, and key art for the Film. While a review of the foregoing materials is not necessary to decide this Motion, the Court nonetheless may properly consider them in deciding this Motion because they are subject to judicial notice and/or incorporated by reference into THQ's Amended Counterclaims. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)

2

with a shadowy figure peering through the window (as shown below).  *Id.*



Plaintiffs' use of *Alone in the Dark* solely is in connection with a single film, not a series or franchise.  *See* Compl. ¶ 1.

**THQ and its Game.**  THQ is a video game publisher.  *See* Amend. Countercl. ¶ 9.  THQ publishes and owns the rights to a video game titled *Alone in the Dark*, which was first released in 1992, and the related sequels.  *Id.* ¶¶ 10-11, 16.  The Game is in the "survivor horror" genre.  *Id.* ¶ 11.  THQ owns U.S. Registration No. 4,803,628 for the trademark ALONE IN THE DARK in Classes 9 and 41 for goods and services related to computer games.  *Id.* ¶ 24.

**The Present Dispute.**  On May 11, 2023, THQ sent cease-and-desist letters to Plaintiffs, claiming that Plaintiffs' use of *Alone in the Dark* is likely to cause

---

("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."); *see also, e.g.*, *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1248 n.7 (9th Cir. 2013) (affirming motion to dismiss; "The district court properly considered the [video games that the defendant] submitted to the court as part of the complaint itself through the 'incorporation by reference' doctrine.") (citation omitted); *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1128 (C.D. Cal. 2007) (granting motion to dismiss; considering copies of episodes at issue which were "not physically attached to the [pleadings] but whose contents are alleged [therein] and whose authenticity no party questions") (citation omitted).  The Film forms the basis of THQ's Counterclaims and its content is not in dispute.  *See* Amend. Countercl. ¶¶ 26-27.

**MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS**

confusion and dilute the THQ Mark.  *See* Compl. ¶ 21; Answer ¶ 21.  THQ demanded that the Film "be removed from circulation and renamed."  *Id.*  Plaintiffs promptly responded to THQ, explaining that THQ's claims are barred by the First Amendment.  *See* Compl. ¶ 22; Answer ¶ 22.  After months of silence, on August 11, 2023, THQ sent a draft complaint to Plaintiffs for, *inter alia*, trademark infringement and dilution.  *See* Compl. ¶ 23; Answer ¶ 23.

Faced with an immediate threat of litigation, on August 22, 2023, Plaintiffs initiated this lawsuit against THQ for declaratory relief their use of the film title *Alone in the Dark* does not violate THQ's alleged rights in the THQ Mark.  *See generally* Compl.  Specifically, in their Complaint, Plaintiffs seek judicial declarations that their use of *Alone in the Dark* does not constitute (1) trademark infringement, false designation or origin, or unfair competition or (2) trademark dilution, whether under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, or any other applicable federal or state statutory or common law.  Compl., ¶¶ 26-41.

On January 19, 2024, THQ filed an Answer and Counterclaims (Dkt. No. 19), which Plaintiffs moved to dismiss (Dkt. No. 22).  On February 22, 2024, THQ filed Amended Counterclaims (Dkt. No. 25) for (1) infringement of registered trademarks under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (2) trademark infringement under common law; (3) unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (4) unfair competition under common law.[3]

---

[3] All of THQ's Amended Counterclaims are subject to the same legal standards and thus are analyzed together for purposes of this Motion.  *See Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1221 (9th Cir. 2012) (claims for trademark infringement and unfair competition under California law are "subject to the same legal standards" as Lanham Act claims); *Zo Skin Health, Inc. v. ForeverYoung Laser Ctr., Weight Mgmt. & Med. Spa, LLC*, No. 8:22-cv-01141-FWS-KES, 2022 WL 18397631, at *3 (C.D. Cal. Dec. 7, 2022) ("Claims for common law trademark infringement are subject to the same standard as claims for federal trademark infringement…. Additionally, Plaintiff's claims for unfair competition under federal and California state law are analyzed under the same legal standards.") (collecting cases).

4

*See* Amend. Countercl. ¶¶ 58-83.    Notably, THQ has now withdrawn its counterclaim for trademark dilution.  *Cf.* Dkt. No. 19, ¶¶ 44-52.

All of THQ's Amended Counterclaims arise solely and entirely from Plaintiffs' use of *Alone in the Dark* as the title of their single Film.  *Id.* ¶ 26.  Because titles of expressive works—particularly titles of a single film—do not, under governing law, serve a source-identifying function,[4] THQ does not and cannot plausibly allege that Plaintiffs used *Alone in the Dark* as a trademark (*i.e.*, in a source-identifying way) or in any manner that constitutes a violation of the Lanham Act or any other applicable federal or state statutory or common law.

## III.    GOVERNING LEGAL STANDARDS

In this Motion, Plaintiffs seek both (1) dismissal of all four of THQ's Counterclaims, without leave to amend, pursuant to Fed. R. Civ. P. 12(b)(6); and (2) judgment on the pleadings as to Plaintiffs' claims for declaratory relief pursuant to Fed. R. Civ. P. 12(c).  The legal standard on a motion for judgment on the pleadings is "functionally identical" to that of a motion to dismiss.  *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011) (citing *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).  Thus, the issue presented by either motion is whether the pleadings contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The pleadings must show "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  While the Court must accept material factual allegations as true, allegations that are "no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679; *see also Twombly*, 550 U.S. at 555 ("a formulaic recitation of the elements of a cause of action will not do"); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (a court is not "required to accept as true

---

[4] *See* Section IV.D, *infra*.

1  allegations that are merely conclusory, unwarranted deductions of fact, or
2  unreasonable inferences") (citation omitted).

3  **IV.   THE FIRST AMENDMENT BARS ALL OF THQ'S AMENDED**
4  **COUNTERCLAIMS**

5       All of THQ's Counterclaims fail as a matter of law because they are squarely
6  barred by the First Amendment under the two-prong test set forth in the seminal case
7  *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), and adopted by the Ninth Circuit
8  in *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002). Because the title
9  *Alone in the Dark* is artistically relevant to Plaintiffs' Film and not explicitly
10 misleading, THQ cannot meet either prong of the *Rogers* test, warranting dismissal
11 of all of THQ's Amended Counterclaims with prejudice and judgment on the
12 pleadings in Plaintiffs' favor. The Supreme Court's recent decision in *Jack Daniel's*
13 *Props., Inc. v. VIP Prod. LLC*, 599 U.S. 140 (2023), does nothing to disturb the
14 application of the *Rogers* test when, as here, the challenged use is the title of a single
15 film.

16      **A.   The *Rogers* Test.**

17      Like this case, *Rogers* involved Lanham Act claims arising from the alleged
18 use of a trademark in the title of a film. In *Rogers*, Ginger Rogers, who with Fred
19 Astaire formed one of "the most famous duos in show business history," brought
20 Lanham Act claims against the producers and distributors of the film titled "Ginger
21 and Fred" about a fictional Italian cabaret duo. *Rogers*, 875 F.2d at 996-97. Rogers
22 alleged that the title—a clear reference to her and Fred Astaire—created the false
23 impression that she endorsed or was affiliated with the film. *Id.* at 997. The Second
24 Circuit dismissed her claims on First Amendment grounds.

25      The Second Circuit instructed that "in general the [Lanham] Act should be
26 construed to apply to artistic works only where the public interest in avoiding
27 consumer confusion outweighs the public interest in free expression." *Id.* at 999.

28

6

**MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS**

Recognizing that consumers "***do not regard titles of artistic works in the same way
as the names of ordinary commercial products***," it devised a two-prong test to
balance the competing interests under the Lanham Act and First Amendment. *Id.* at
999-1000 (emphasis added). In particular, where the title of an expressive work is
at issue, the Second Circuit held that the Lanham Act does not apply unless (1) "the
title has no artistic relevance to the underlying work whatsoever" or (2) "the title
explicitly misleads as to the source or the content of the work." *Id.* at 999. Applying
this test, the Second Circuit affirmed the district court's dismissal of Rogers'
Lanham Act claims, finding that the film title "Ginger and Fred" had genuine
relevance to the film's story and was not explicitly misleading; "on the contrary, it
[was] an integral element of the film and the film-maker's artistic expressions." *Id.*
at 1001.[5]

> **B.    The Ninth Circuit's Application of *Rogers* To Titles of Expressive
> Works.**

The Ninth Circuit adopted and has consistently applied the *Rogers* test to
Lanham Act claims arising from the use of a mark in the title of an expressive work.
The Ninth Circuit first applied the *Rogers* test in *Mattel*, which concerned the song
titled "Barbie Girl." In *Mattel*, the manufacturer of "Barbie" dolls sued the
producers and distributors of the "Barbie Girl" song for trademark infringement
under the Lanham Act. Recognizing that consumers expect song titles, like film

---

[5] Although the *Rogers* test was originally formulated in a case involving Lanham
Act claims for false endorsement and false advertising, the *Rogers* test now applies
to all Lanham Act claims—including trademark infringement, unfair competition,
and trademark dilution claims—and also to equivalent state statutory or common
law claims, often at the pleadings stage. *See Jackson v. Netflix, Inc.*, 506 F. Supp.
3d 1007, 1014 (C.D. Cal. 2020) ("The Ninth Circuit applies *Rogers* to Lanham Act
claims, often at the Rule 12 stage.") (collecting cases); *VIRAG, S.R.L. v. Sony
Computer Entm't Am. LLC*, 699 F. App'x 667, 668 (9th Cir. 2017) (affirming
dismissal of Lanham Act claims under *Rogers*); *E.S.S. Entm't 2000, Inc. v. Rock Star
Videos, Inc.*, 547 F.3d 1095, 1101 (9th Cir. 2008) ("the First Amendment defense
applies equally to ESS's state law claims as to its Lanham Act claim"); *Belin v. Starz
Ent., LLC*, 662 F. Supp. 3d 1092, 1100 (C.D. Cal. 2023) (finding on a motion to
dismiss that the "trademark claims under the Lanham Act, state law, and federal
common law are all precluded by *Rogers*").

titles, "to describe the underlying work, not to identify the producer," the Ninth Circuit analyzed the infringement claim under the *Rogers* test. *Mattel*, 296 F.3d at 901-02. Because the "Barbie" mark was artistically relevant to the song and not explicitly misleading, the Ninth Circuit affirmed the district court's grant of summary judgment to defendants. *Id.*

Just as the Second Circuit did in *Rogers*, the Ninth Circuit acknowledged in *Mattel* that titles of expressive works are fundamentally different from brand names that identify the source of ordinary consumer products:

> A title is designed to catch the eye and to promote the value of the underlying work. Consumers expect a title to communicate a message about the book or movie, but they do not expect it to identify the publisher or producer…. A title tells us something about the underlying work but seldom speaks to its origin[.]

*Mattel*, 296 F.3d at 902 (citation omitted). Because consumers generally "expect a title to describe the underlying work, not to identify the producer," the use of a trademark in a title of an expressive work is unlikely to cause confusion, and thus particularly deserving of First Amendment protection. *Id.* at 901; *accord Rogers*, 875 F.2d at 998-1000 (explaining that the Lanham Act must be construed narrowly in cases involving titles of expressive works because they implicate First Amendment values and pose only a "slight risk" of confusing consumers about "the source or the content of the work").

Over the past two decades, the Ninth Circuit has applied the *Rogers* test to affirm the dismissal of Lanham Act and related claims in multiple cases involving the alleged use of a mark in the title of an expressive work. *See Dr. Seuss Enters. L.P. v. ComixMix LLC*, 983 F.3d 443 (9th Cir. 2020) (applying *Rogers* to title of comic book); *Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192 (9th Cir. 2017) (applying *Rogers* to title of television show); *Mattel, Inc. v.*

8

*Walking Mountain Prods.*, 353 F.3d 792, 807 (9th Cir. 2003) (titles of photographs); *see also, e.g.*, *Belin*, 662 F. Supp. 3d at 1100 (applying *Rogers* and granting motion to dismiss Lanham Act and related claims arising from use of mark in title of television show); *Reflex Media, Inc. v. Pilgrim Studios, Inc.*, No. CV 18-2260-GW(FFMX), 2018 WL 6566561, at *5 (C.D. Cal. Aug. 27, 2018) (same); *Jackson*, 506 F. Supp. 3d at 1017-18 (same, title of documentary film); *Capcom Co. v. MKR Grp., Inc.*, No. C 08-0904 RS, 2008 WL 4661479, at *13 (N.D. Cal. Oct. 20, 2008) (same, title of video games).

**C.**    **Plaintiffs' Use of *Alone in the Dark* as the Title of Their Film Easily Qualifies For First Amendment Protection Under the *Rogers* Test.**

Plaintiffs' Film unquestionably is an "expressive work" protected by the First Amendment.  *See Rogers*, 875 F.2d at 997 ("Movies, plays, books, and songs are all indisputably works of artistic expression and deserve protection.").  Accordingly, the Lanham Act does not apply unless THQ has shown that the Film's title *Alone in the Dark* either (1) has no artistic relevance to the Film whatsoever or (2) is explicitly misleading.  *Id.* at 1001; *see also Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264 (9th Cir. 2018) ("If the defendant successfully makes [the] threshold showing [that its allegedly infringing use is part of an expressive work], then the plaintiff claiming trademark infringement bears a heightened burden" and must satisfy "at least one of *Roger's* two prongs").  "Neither of these prongs is easy to meet." *Dr. Seuss*, 983 F.3d at 462.  As explained below, THQ does not and cannot meet either prong.[6]

---

[6] THQ will likely argue that the *Rogers* test does not apply based on a footnote in *Rogers* in which the Second Circuit stated, in dicta, that the *Rogers* test might not extend to "misleading titles that are confusingly similar to other titles" of artistic works.  *Rogers*, 825 F.2d at 999, n.5.  However, the Ninth Circuit has expressly rejected the purported "title-versus-title" exception.  *See Empire Distrib.*, 875 F.3d at 1197 (explaining that the purported exception suggested in the *Rogers* footnote is "ill-advised or unnecessary"); *see also Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1031 (9th Cir. Jan. 12, 2024) ("preexisting Ninth Circuit precedent adopting and applying *Rogers* [ ] remains intact and binding" except to the extent it conflicts with the "narrow" point of law in the Supreme Court's decision in *Jack Daniel's*, discussed *infra*, "that *Rogers* does not apply when a mark is used as a mark").  In

9

### 1.    The Film's Title Has "Above Zero" Artistic Relevance.

Under the first prong of the *Rogers* test, "the level of [artistic] relevance … merely must be above zero" for the use to be deemed artistically relevant.  *E.S.S.*, 547 F.3d at 1100.  In other words, "only the use of a trademark with '*no* artistic relevance to the underlying work *whatsoever*' does not merit First Amendment protection." *Id.* (emphasis in original) (citations omitted); *see also Brown*, 724 F.3d at 1245 ("even the slightest artistic relevance" is enough under *Rogers*).  There is sound basis for this "appropriately low" threshold:  it is not within the province of the Court to second-guess creators' artistic decisions.  *Rogers,* 875 F.2d at 999; *see also Brown*, 724 F.3d at 1243 (noting the low threshold for artistic relevance under the *Rogers* test "has the benefit of limiting [the court's] need to engage in artistic analysis in this context").

Plaintiffs' use of the title easily surpasses this low threshold.  The Film is a thriller about a single woman alone in her house who is being stalked by an unknown assailant.  *See* Compl. ¶¶ 2, 16.  The Film's key art makes clear that, the woman is "alone" and "in the dark," both literally and figuratively, shown by herself in a dark room and unaware of the stalker's identity.  *Id.*  Clearly, the title has at least some artistic relevance.  *See Empire Distrib.*, 875 F.3d at 1199 ("A title … may have artistic relevance by supporting the themes and geographic setting of the work"); *see also, e.g.*, *Mattel*, 296 F.3d at 902 (the title "Barbie Girl" "clearly is [artistically]

---

fact, "[t]o date, no circuit has explicitly adopted the exception in the *Rogers* footnote." *MGFB Props., Inc. v. Viacom, Inc.*, 54 F.4th 670, 685 (11th Cir. 2022) (Brasher, J., concurring) ("In an appropriate case, I believe this Court should join the Ninth Circuit in rejecting the title-versus-title exception to the *Rogers* defense" because, *inter alia*, it "is inconsistent with the First Amendment values that led us to adopt the *Rogers* defense").  The only other appellate court to cite the footnote since *Rogers* is "the Second Circuit[, which] itself rejected its applicability and applied the *Rogers* test." *Empire Distrib.*, 875 F.3d at 1197 (citing *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp., Inc.*, 886 F.2d 490, 494-95 (2d Cir. 1989)).  Accordingly, the *Rogers* test continues to apply here. *See, e.g.*, *Reflex Media*, 2018 WL 6566561, at *5 (applying the *Rogers* test and granting motion to dismiss Lanham Act and related trademark claims "despite the fact that there are confusingly similar titles at play").

**MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS**

relevant" to a song about the materialism identified with Barbie dolls); *Jackson*, 506 F. Supp. 3d at 1015 (it is "beyond question" that the title "Tiger King" is artistically relevant to a documentary about a tiger keeper); *Reflex Media*, 2018 WL 6566561, at *6 (the title "Love at First Flight" "certainly [has] above zero" artistic relevance to a television series involving "multiple-day dates in exotic locations"); *Capcom Co.*, 2008 WL 4661479, at *13 (the title "Dead Rising" is artistically relevant to video game involving zombies).

### 2. The Film's Title Does Not Explicitly Mislead Consumers.

Given that THQ cannot show that the Film's title has "no artistic relevance," the Lanham Act does not apply unless Plaintiffs' use ***explicitly*** misleads consumers as to the source or content of the Film. The "explicitly misleading" prong of the *Rogers* test imposes a "high bar that requires the use to be an explicit indication, overt claim, or explicit misstatement about the source of the work." *Dr. Seuss*, 983 F.3d at 462 (internal quotation marks and citation omitted); *see also Rogers*, 875 F.2d at 999, 1107 (illustrative examples of explicitly misleading uses include titling a book "Jane Fonda's Workout Book" when Jane Fonda had no involvement, or subtitling a book as "an authorized biography" when it is not). "It is key here that the creator must *explicitly* mislead consumers." *Brown*, 724 F.3d at 1245 (emphasis in original). As courts in the Ninth Circuit consistently have held, the mere "use of a mark alone" is not enough to explicitly mislead. *Id.* (collecting cases); *see also Mattel*, 296 F.3d at 902 (if "the use of [the] Barbie [mark] in the [song] title … were enough to satisfy [the explicitly misleading] prong of the *Rogers* test, it would render *Rogers* a nullity"). This is particularly true where, as here, the mark is used in the title an expressive work, which, as discussed *supra*, is not expected to identify the work's source. *See id.* at 901.

THQ does not and cannot plead that Plaintiffs have done anything to explicitly mislead consumers into thinking that THQ produced or somehow is associated with

**MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS**

1  the Film.  In conclusory fashion, THQ alleges that consumers are likely to be

2  deceived by Plaintiffs' use of the title *Alone in the Dark*.  *See* Amend. Countercl. ¶¶

3  __.  But the "explicitly misleading" prong of the *Rogers* test is concerned with "the

4  nature of [Plaintiffs'] behavior…, not the [alleged] impact of the use."  *Brown*, 724

5  F.3d at 1246 ("Even if Brown could offer a survey demonstrating that consumers of

6  the *Madden NFL* series believed that Brown endorsed the game, that would not

7  support the claim that the use was explicitly misleading to consumers."); *see also*

8  *VIRAG*, 2015 WL 5000102, at *13 ("The mere use of a mark is not explicitly

9  misleading … , even if combined with consumer confusion[.]") (internal citations

10  omitted), *aff'd*, 699 F. App'x 667 (9th Cir. 2017).  THQ has not pointed to—nor can

11  it point to—any specific conduct or statement by Plaintiffs that even implicitly

12  suggests that the Film is associated with THQ and/or the Game.  This is fatal to

13  THQ's claims and warrants dismissal of the Amended Counterclaims and judgment

14  in Plaintiffs' favor.  *See, e.g.*, *VIRAG, S.R.L. v. Sony Computer Ent. Am. LLC*, No.

15  3:15-CV-01729-LB, 2015 WL 5000102, at *12 (N.D. Cal. Aug. 21, 2015) (granting

16  motion to dismiss infringement claim where the plaintiffs did "not allege or even

17  suggest that the defendants explicitly indicated, claimed, or misstated that VIRAG

18  was a source of content for [the games] or sponsored [the games]"), *aff'd*, 699 F.

19  App'x 667 (9th Cir. 2017); *Caiz v. Roberts*, 382 F. Supp. 3d 942, 951 (C.D. Cal.

20  2019) (granting summary judgment to defendant where the plaintiff "point[ed] to no

21  evidence indicating that [the defendants'] use even 'implicitly suggest[s]' that the

22  album is associated with [the plaintiff], let alone any evidence of an overt

23  association.") (citation omitted); *Jackson*, 506 F. Supp. at 1016 (granting motion to

24  dismiss Lanham Act claims where plaintiffs "offer[ed] no allegations rising to the

25

26

27

28

**MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS**

1  level of explicit deception on [the defendant's] behalf" and "identif[ied] no explicit

2  statement in the [d]ocumentary to suggest [the plaintiff's] sponsorship").[7]

3  ### D.  *Jack Daniel's* Does Not Impact the *Rogers* Analysis Here.

4  The Supreme Court's recent decision in *Jack Daniel's* set forth a narrow

5  proposition that the *Rogers* test does not apply when, unlike here, "an alleged

6  infringer uses a trademark in the way that the Lanham Act most cares about: as a

7  designation of source for the [alleged] infringer's own goods." *Jack Daniel's*, 599

8  U.S. at 153.  This narrow exception to *Rogers* has no application where, as here, the

9  challenged use is merely a title of an expressive work.

10  In *Jack Daniel's*, the alleged infringer, VIP Products LLC ("VIP"), sold a

11  "squeaky, chewable dog toy designed to look like a bottle of Jack Daniel's whiskey."

12  *Id.* at 144.  To create a dog-themed joke, VIP mimicked Jack Daniel's trademarks

13  by using the same font and design, but replaced the "Jack Daniel's" name with the

14  phrase "Bad Spaniels," among other textual adjustments.  *Id.*  Jack Daniel's sued for

15  trademark infringement.  *Id.*  VIP argued, and the Ninth Circuit agreed, that the dog

16  toy had an expressive message that warranted application of the *Rogers* test.  *Id.* at

17  144-45.  The Supreme Court reversed, clarifying that the *Rogers* test does not apply

18  "when the accused infringer has used a trademark to designate the source of its own

19  goods—in other words, has used a trademark as a trademark."  *Id.* at 145.  By VIP's

20  own admission, VIP had used the "Bad Spaniels" mark "to '[i]dentify and

21  distinguish [VIP's] goods' and to 'indicate [their] source.'"  *Id.* at 160.  In addition,

22  the "Bad Spaniel's" mark was featured on the hangtag of the dog toy in a manner

23  that "appear[ed] to serve … [a] source-identifying function," and VIP had

24  "consistently argued in court that it owns … the trademark" in the names of its other

25

26  ───────────────

27  [7]  Notably, the fact that "some members of the public [may] draw the incorrect
inference [of association]" is inconsequential.  *Rogers*, 875 F.2d at 1001.  In any
event, THQ does not even allege that a single person erroneously believed that
28  Plaintiffs' Film is associated with THQ and/or the Game.

**MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS**

dog toys and "chose[] to register [some of] the names" with the United States Patent and Trademark Office ("USPTO"). *Id.*

Importantly, the Supreme Court's decision in *Jack Daniel's* is a "narrow" one. *Id.* at 163; *see also Punchbowl*, 90 F.4th at 1031. The Supreme Court expressly declined to disturb the application of the *Rogers* test to the use of a mark ***other than*** as a source identifier, including in the titles of films and other expressive works. *Jack Daniel's*, 599 U.S. at 163; *see also id.* at 153 ("Without deciding whether *Rogers* has merit in other contexts, we hold that it does not when an alleged infringer uses a trademark … as a designation of source for the infringer's own goods."); *id.* at 165 (Gorsuch, J., concurring) ("[W]e necessarily leave much about *Rogers* unaddressed."). Therefore, except where "a mark is used as a mark" to identify the source of the alleged ***infringer's own goods***, "preexisting Ninth Circuit precedent adopting and applying *Rogers* otherwise remains intact and binding on [this Court]." *Punchbowl*, 90 F.4th at 1031.

It is well-established that a film title is not a source-identifier. Film titles are in the heartland of *Rogers*. Controlling Ninth Circuit law confirms that the use of a mark in the title of a film or other expressive work does not serve to identify source. *See Mattel*, 296 F.3d at 900, 902 (use of the Barbie mark in the song title was "not [as] a source identifier" because "[t]he use did not speak[] to [the song's] origin"); *id.* at 902 ("A title is designed to catch the eye and to promote the value of the underlying work. Consumers expect a title to communicate a message about the book or movie, but they do not expect it to identify the publisher or producer.");[8] *accord Medina v. Dash Films, Inc.*, 2016 WL 3906714, at *5 (S.D.N.Y. July 14,

---

[8] In *Jack Daniel's*, the Supreme Court quoted this language and cited the Ninth Circuit's decision in *Mattel* with approval, identifying it among the decisions that properly "confined [the *Rogers* test] to similar cases [as *Rogers*], in which a trademark is used not to designate a work's source, but solely to perform some other expressive function." *Jack Daniel's*, 599 U.S. at 154.

1    2016) (the title of an expressive work "is not, and the public would not interpret it

2    to be, a source-denoter").

3        Underscoring the fact that Plaintiffs have not and could not have used *Alone

4    in the Dark* as a trademark, the U.S. Patent and Trademark Office categorically

5    ***refuses*** to register titles of single creative works as trademarks.  *See* TMEP §

6    1202.08 ("The title … of a single creative work must be refused registration"); *see

7    also Mattel, Inc. v. the Brainy Baby Co., LLC*, 101 U.S.P.Q.2d 1140 (T.T.A.B. 2011)

8    (non-precedential) ("The title of a single creative work is not considered a

9    trademark, and is therefore unregistrable") (collecting cases affirming refusal of

10   registration of titles of single creative works).  Indeed, the USPTO's Trademark Trial

11   and Appeal Board and the Federal Circuit, its primary reviewing court, have long

12   recognized that the title of a single creative work, such as Plaintiffs' Film, "cannot

13   serve as a source identifier" as a matter of law.  *Herbko Int'l, Inc. v. Kappa Books,

14   Inc.*, 308 F.3d 1156, 1162-63 (Fed. Cir. 2002) ("the title of a single book [or other

15   creative work] cannot serve as a source identifier") (citations omitted); *In re Cooper*,

16   254 F.2d 611, 615-16 (C.C.P.A. 1958) ("A book title … is not associated in the

17   public mind with the publisher, printer[,] or bookseller"); *In Re Arnold*, 105

18   U.S.P.Q.2d 1953 (T.T.A.B. 2013) (precedential) (the title of a single creative work

19   "in no way indicates the source of the work") (citations omitted); *Brainy Baby*, 101

20   U.S.P.Q.2d at 1140 ("The title of a single creative work is, of necessity, descriptive

21   of the work and does not function as a trademark.").

22       The title *Alone in the Dark* serves to describe the nature of the single film and

23   in no way indicates who produced it.  THQ concedes that Plaintiffs have made no

24   use beyond the Film's title, and for the reasons above do not and cannot plausibly

25   allege that such single Film title use is source-identifying.  Thus, *Jack Daniel's* has

26   no impact on the application of the *Rogers* test here.  *Cf. JTH Tax LLC v. AMC

27   Networks Inc.*, No. 22 Civ. 6526 (PGG), 2023 WL 6215299, at *7 (S.D.N.Y. Sept.

28

25, 2023) (holding, in a post-*Jack Daniel's* decision, that application of the *Rogers* test is appropriate where the complaint did "not allege that [the defendants] used [the plaintiff's] mark to identify the source of [the show] or any of [the defendants'] products").

## V.    THE COURT SHOULD ENTER JUDGMENT IN PLAINTIFFS' FAVOR AS TO THE TRADEMARK DILUTION CLAIM FOR MULTIPLE OTHER REASONS

Since the inception of this dispute, THQ has claimed that Plaintiffs' use of the film title *Alone in the Dark* is likely to dilute the THQ Mark in violation the Lanham Act, 15 U.S.C. § 1125(c).  *See* Compl., ¶¶ 21, 36; Answer, ¶¶ 21, 36.  THQ asserted a trademark dilution claim against Plaintiffs in its original counterclaims (Dkt. No. 19, ¶¶ 44-52), but omitted this claim from its recently-filed Amended Counterclaims (*see generally* Amend. Countercl.), tacitly conceding that the claim fails as a matter of law.  Notably, however, THQ has not voluntarily dismissed its trademark dilution claim with prejudice or otherwise indicated that it will not assert it against Plaintiffs in the future.  Given the looming threat that THQ will bring a trademark dilution claim, the Court still has declaratory judgment jurisdiction and, for multiple reasons, should declare that Plaintiffs' use of *Alone in the Dark* does not dilute the THQ Mark.  *See* Compl., ¶¶ 34-41; *see also Rivera v. Remington Designs, LLC*, No. LACV1604676JAKSSX, 2018 WL 8693814, at *6 (C.D. Cal. Aug. 28, 2018) ("When a claim is withdrawn or otherwise unasserted, the court does not *per se* lose jurisdiction over the counterclaim," provided that "an actual, continuing case or controversy [continues to] exist[] with respect to that claim.") (citation omitted).

The claim that Plaintiffs' use of *Alone in the Dark* dilutes the THQ Mark fails as a matter of law, on the merits, for multiple reasons.  As discussed *supra*, this claim is subject to the *Rogers* test, and should be dismissed with prejudice on that basis.  *See Jackson*, 506 F. Supp. 3d at 1014 ("The Court [ ] determines that [the Lanham

**MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS**

Act claims, including for dilution,] are subject to *Rogers*."); *see also Hermes Int'l v. Rothschild*, No. 22-CV-384 (JSR), 2023 WL 4145518, at *6 (S.D.N.Y. June 23, 2023) ("the *Rogers* test *does* apply to trademark dilution claims") (emphasis in original) (citing *AM Gen. LLC v. Activision Blizzard, Inc.*, 450 F. Supp. 3d 467, 488 (S.D.N.Y. 2020) (applying *Rogers* test to dilution claim). Alternatively, Plaintiffs are not liable for trademark dilution as a matter of law—and are entitled to judgment in their favor—under the "noncommercial use" exception, 15 U.S.C. § 1125(c)(3)(C), and because the THQ Mark is not "famous" within the meaning of the Lanham Act, 15 U.S.C. § 1125(c)(2).

## A.  The "Noncommercial Use" Exemption Bars Dilution Liability.

Section 43(c) of the Lanham Act explicitly states that "[a]ny noncommercial use of a mark" is not actionable as trademark dilution. 15 U.S.C. § 1125(c)(3)(C). The Ninth Circuit has construed this provision to include "speech [that] is not '***purely*** commercial'—that is, [speech that] does more than propose a commercial transaction. *Mattel*, 296 F.3d at 906-07 (use of Barbie mark in song title is "not purely commercial" and "falls within the noncommercial use exemption" to dilution) (emphasis added); *see also Stewart Surfboards, Inc. v. Disney Book Grp., LLC*, No. CV 10-2982 GAF (SSX), 2011 WL 12877019, at *8 (C.D. Cal. May 11, 2011) (noting the "noncommercial use" exemption protects "artistic trademark uses … from trademark dilution liability for similar reasons" to those underlying the *Rogers* test).

Because, as discussed *supra*, Plaintiffs' use of *Alone in the Dark* as the title of their Film is artistically relevant under the *Rogers* test, such use is not "purely commercial," and thus cannot give rise to liability for trademark dilution as a matter of law. *See, e.g.*, *Mossack Fonseca & Co., S.A. v. Netflix Inc.*, No. CV 19-9330-CBM-AS(X), 2020 WL 8509658, at *3 (C.D. Cal. Dec. 23, 2020) (granting defendant's motion for judgment on the pleadings on plaintiff's dilution claim; "As

17

discussed above [in the context of *Rogers*], the Court finds Defendant's use of Plaintiffs' mark had some artistic relevance to the Film…. Accordingly, Defendant's use of the mark was not 'purely commercial,' and therefore is fully protected under the First Amendment under the noncommercial use exception."); *Dickinson v. Ryan Seacrest Enters., Inc.*, No. CV 18-2544-GW (JPRX), 2018 WL 6112628, at *7 (C.D. Cal. Oct. 1, 2018) (granting motion to dismiss dilution claim; "As per the conclusion above [in the context of *Rogers*], [the alleged infringing use] bore artistic relevance to the Episode, and so … [it] is similarly not purely commercial," and "cannot form the basis of [the plaintiff's] trademark dilution claim"); *Stewart Surfboards*, 2011 WL 12877019, at *8 (granting motion to dismiss dilution claim; "Because, as explained above [in the context of *Rogers*], Disney's use of the Stewart Surfboards trademark has some artistic relevance, it is not purely commercial.  It is therefore not actionable as trademark dilution.").

## B.    <u>The THQ Mark Is Not "Famous" For Dilution Purposes.</u>

Section 43(c) of the Lanham Act provides a right of action for dilution only to the owner of a "*famous* mark."  15 U.S.C. § 1125(c)(1) (emphasis added).  "The judicial consensus is that 'famous' is a rigorous standard."  *Everest Capital, Ltd. v. Everest Funds Mgmt. LLC*, 393 F.3d 755, 763 (8th Cir. 2005); *see also Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 912 n.14 (9th Cir. 2002) ("[F]amousness is ... a hard standard to achieve.") (superseded by statute on other grounds as stated in *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 870-71 (9th Cir. 2020) (The "standard for establishing fame" is "very high" and "demanding.")); *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012) ("It is well-established that dilution fame is difficult to prove.") (citation omitted); 4 McCarthy on Trademarks and Unfair Competition § 24:104 (5th ed.) (fame for dilution purposes is "a difficult and demanding requirement" and, although "[by] definition, all 'trademarks' are 'distinctive'—very few are 'famous'")).  To qualify

18

as "famous" for dilution purposes, "a mark must be 'widely recognized by the general consuming public of the United States' as a designation indicating a single source of goods or services." *Id.* (quoting 15 U.S.C. § 1125(c)(2)).[9]  In other words, "the mark must be a household name."  *Thane*, 305 F.3d at 911; *see also Dahon N. Am., Inc. v. Hon*, No. 2:11-CV-05835-ODW, 2012 WL 1413681, at *9 (C.D. Cal. Apr. 24, 2012) ("[T]rademark dilution claims are restricted to truly famous marks, such as Budweiser beer, Camel cigarettes, and Barbie dolls.") (citation omitted).

THQ's Mark unquestionably is not a household name.  According to THQ, its video game franchise has been "a tremendous commercial success, selling millions of copies" (Amend. Countercl. ¶ 18), and has "won numerous gaming and industry awards (*id.* ¶ 12) and been listed among "the best video games ever" in various industry publications (*id.* ¶ 15).  While this may demonstrate that THQ has enjoyed some degree of success in the gaming community, it falls far short of the high standard for dilution fame.  *See, e.g.*, *Dahon*, 2012 WL 1413681, at *9 ("DNA's claim to fame has some credibility.  But whatever that level of fame is, it falls far short of high standard required for a dilution claim … [and] cannot compare with that of a truly famous mark, such as Coca-Cola."); *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1066 (N.D. Cal. 2015) (that the plaintiff's product has been downloaded by millions of consumers, used by the "world's most famous celebrities," featured in "many of the most famous and widely-circulated publications in the United States" are "not sufficient to show that the [plaintiff's mark] is famous").

---

[9] In deciding whether a mark is "famous," courts consider four non-exclusive factors: "(1) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register." 15 U.S.C. § 1125(c)(2)(A)(i)-(iv) (cleaned up).  THQ has not and cannot plausibly allege any facts sufficient to show the mark is "famous" under any of these factors.

Simply put, THQ cannot show, because the THQ Mark has not attained, a level of fame among the general public akin to Budweiser or Barbie.  For this additional independent reason, the Court should grant judgment in Plaintiffs' favor as to trademark dilution.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court dismiss all of THQ's Counterclaims without leave to amend,[10] and enter judgment on the pleadings in favor of Plaintiffs on their claims for declaratory relief.

DATED: MARCH 7, 2024

LUCIA E. COYOCA
KARIN G. PAGNANELLI
MARISSA B. LEWIS
MITCHELL SILBERBERG & KNUPP LLP


By: */s/ Karin G. Pagnanelli*
Lucia E. Coyoca (SBN 128314)
Karin G. Pagnanelli (SBN 174763)
Marissa B. Lewis (*pro hac vice*)
Attorneys for Plaintiffs and
Counterclaim-Defendants
Mar Vista Entertainment, LLC, The
Ninth House LLC, and Ninth Dark LLC

---

[10] THQ has already amended its counterclaims to no avail.  Since no amount of re-pleading could cure the deficiencies that remain in THQ's Amended Counterclaims, the Court may properly dismiss the Amended Counterclaims **without** leave to amend.  *See Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (leave to amend "is properly denied ... if amendment would be futile") (citation omitted).

20

## **<u>Certificate of Compliance Pursuant to L.R. 11-6.2.</u>**

The undersigned, counsel of record for Mar Vista Entertainment, LLC, The Ninth House, LLC, and Ninth Dark LLC, certifies that this brief contains 6,172 words, which complies with the word limit of L.R. 11-6.1.

DATED:  March 7, 2024

*/s/ Karin G. Pagnanelli*
Karin G. Pagnanelli

**MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS**