UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAR VISTA ENTERTAINMENT, LLC; THE NINTH HOUSE, LLC; and NINTH DARK, LLC,<br><br>      Plaintiffs,<br>  v.<br><br>THQ NORDIC AB,<br><br>      Defendant. | Case No.:  2:23-cv-06924-MEMF-SSC<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS THE AMENDED COUNTERCLAIMS AND FOR JUDGMENT ON THE PLEADINGS [ECF NO. 30]** |
| THQ NORDIC AB,<br>    Counterclaim-Plaintiff,<br>  v.<br>MAR VISTA ENTERTAINMENT, LLC; THE NINTH HOUSE, LLC; and NINTH DARK, LLC,<br>    Counterclaim-Defendants. | |

  Before the Court is the Motion to Dismiss the Amended Counterclaims and for Judgment on the Pleadings filed by Plaintiff and Counterclaim-Defendants Mar Vista Entertainment, LLC; The Ninth House, LLC; and Ninth Dark, LLC. ECF No. 30. For the reasons stated herein, the Court

hereby GRANTS IN PART the Motion to Dismiss the Amended Counterclaims and for Judgment on the Pleadings.

I. **Background**

A. **Factual Allegations**[1]

Defendant and Counterclaim-Plaintiff THQ Nordic AB ("THQ") is a Swedish video game publisher well-known for publishing video games based on some of the world's most famous brands in entertainment. FAC ¶¶ 2, 9. THQ owns the rights to the storied video game franchise *Alone in the Dark*, which was the first ever 3D survival horror game. *Id.* ¶¶ 10, 11. *Alone in the Dark* has won numerous gaming and industry awards since its release in 1992. *Id.* ¶¶ 11, 12. To date, there have been 7 installments of the *Alone in the Dark* game series. *See id.* ¶¶ 16, 17. Due to the popularity of the *Alone in the Dark* video games, THQ licensed the rights for two *Alone in the Dark* films, released in 2005 and 2008. *Id.* ¶ 21. Both films are horror films, and the 2005 film was loosely based on the plot of the one of the *Alone in the Dark* video games. *Id.* ¶¶ 22, 23.

In the entertainment industry, it is common practice for movies to be based on popular video games, a practice that is especially prevalent in the horror genre. *Id.* ¶¶ 37, 38.

In or around October 2022, Plaintiffs and Counterclaim-Defendants Mar Vista Entertainment, LLC; The Ninth House, LLC; and Ninth Dark LLC (collectively, "Mar Vista") released a horror film entitled *Alone in the Dark*. *Id.* ¶¶ 26, 27. When Mar Vista released its film, Mar Vista was aware of THQ's mark, and Mar Vista chose to name its movie *Alone in the Dark* with the knowledge that consumers are used to video games being turned into moves. FAC ¶¶ 30, 42, 43. Some actual consumer confusion has occurred, as some consumers have associated Mar Vista's film with THQ's films and video games. FAC ¶¶ 47–50.

///

---

[1] The following factual allegations are derived from the allegations in THQ Nordic AB's First Amended Counterclaim, ECF No. 25("FAC"), unless otherwise indicated. For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations, and is therefore not—at this stage—finding that they *are* true.

### B. Procedural History

On August 22, 2023, Mar Vista filed its Complaint in the instant action. ECF No. 1. On January 19, 2024, THQ filed its Answer and Counterclaim. ECF No. 19. On February 9, 2024, Mar Vista filed a motion to dismiss THQ's counterclaims, ECF No. 22, in response to which THQ filed its First Amended Counterclaim. FAC. The First Amended Counterclaim brings the following causes of action against Mar Vista: (1) Infringement of Registered Trademarks under 15 U.S.C. § 1114 (FAC ¶¶ 58–64); (2) Trademark Infringement under Common Law (FAC ¶¶ 65–71); (3) Unfair Competition under 15 U.S.C. § 1125 (FAC ¶¶ 72–77); and (4) Unfair Competition under Common Law (FAC ¶¶ 78–83).

On March 7, 2024, Mar Vista filed the instant Motion to Dismiss Amended Counterclaim and For Judgment on the Pleadings. ECF No. 30 ("Motion" or "Mot."). The Motion is fully briefed. *See* ECF Nos. 37 ("Opposition" or "Opp'n"); 43 ("Reply"). On June 6, 2024, the Court held a hearing on the Motion.

## II. Applicable Law

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### III. Discussion

The main dispute between the parties at this stage is whether THQ's counterclaims fail as a matter of law because they are precluded by the First Amendment under the two-prong test set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). As the Court discusses further below, the Court finds that, at this stage, the *Rogers* test is inapplicable at this stage.

#### A. *Rogers* Does Not Apply at This Stage

##### i. *Rogers* and the Ninth Circuit's adoption of *Rogers*.

The *Rogers* test, derived from the Second Circuit's opinion in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), balances First Amendment concerns against the application of the Lanham Act. The Ninth Circuit adopted the *Rogers* test in *MCA*, where the Ninth Circuit considered whether the First Amendment precluded a Lanham Act claim brought by Mattel against the Danish band Aqua for their song entitled "Barbie Girl." *See Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 899, 900–02 (9th Cir. 2002) (applying the *Rogers* test).

Under the *Rogers* test, a "defendant must first make a threshold legal showing that its allegedly infringing use is part of an expressive work protected by the First Amendment." *Punchbowl, Inc. v. AJ Press, LLC*, 90 F 4th 1022, 1028 (9th Cir. 2024) (internal quotation marks omitted). If the defendant meets the threshold burden, then "the Lanham Act does not apply unless the defendant's use of the mark (1) is not artistically relevant to the work or (2) explicitly misleads consumers as to the source or the content of the work." *Id.* (internal quotation marks omitted).

##### ii. Under *Jack Daniel's*, the *Rogers* test does not apply where the infringing party uses the mark as a source identifier.

In *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140 (2023), the Supreme Court held that the *Rogers* test does not apply "when the accused infringer has used a trademark to designate the source of its own goods—in other words, has used a trademark as a trademark. That kind of use falls within the heartland of trademark law, and does not receive special First Amendment protection." *Jack Daniel's*, 599 U.S. at 145. Here, THQ alleges just that—that is, THQ's FAC includes allegations that Mar Vista purposefully chose to title its movie "Alone in the Dark" so that consumers would be misled into believing that Mar Vista's film (the "goods") were

affiliated with THQ and its video games (the source). Specifically, THQ's FAC includes the following allegations:

> 43. Upon information and belief, Counter-Defendants' adoption of "Alone in the Dark" was for the purpose of misleading consumers into believing that THQ Nordic and/or the ALONE IN THE DARK® Mark were somehow affiliated or associated with Counter-Defendants' Infringing Alone in the Dark Film.
>
> 44. Upon information and belief, Counter-Defendants intended that consumers would be misled into believing that the Infringing Alone in the Dark Film was either based on THQ Nordic's ALONE IN THE DARK® video games or created by the same producers.
>
> 45. Counter-Defendants' unauthorized use of "Alone in the Dark" explicitly misleads consumers into believing that the Infringing Alone in the Dark Film is associated with THQ Nordic's ALONE IN THE DARK® series since "Alone in the Dark" merely references an obvious trademark that consumers assume is related to THQ Nordic.
>
> 46. Counter-Defendants are using "Alone in the Dark" without authorization in the same exact business sector as THQ Nordic, namely films and video games.
>
> 47. Accordingly, consumers assume that each of the parties' respective works are related and originate from the same source.

FAC ¶¶ 42–47.

Construing these allegations in the light most favorable to THQ, as the Court must at the motion to dismiss stage, THQ has sufficiently alleged that Mar Vista's use of "Alone in the Dark" is as a trademark, and as such, *Jack Daniel's* would preclude the application of *Rogers*. *See Jack Daniel's*, 599 U.S. at 145. Mar Vista's arguments otherwise do not mandate a contrary finding. While Mar Vista argues that it has not used *Alone in the Dark* as a trademark (Mot. at 15), at the motion to dismiss stage, the Court *must* take all well-pleaded allegations as true—including THQ's allegation that Mar Vista *is* using "Alone in the Dark" as a source identifier. *See Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017) (a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the complainant); *see also* FAC ¶¶ 42–47 (alleging that Mar Vista used "Alone in the Dark" as a trademark to mislead consumers about the source of its movie).[2]

---

[2] The Court notes that *Jack Daniel's* was decided at the motion for summary judgment stage, *Jack Daniel's*, 599 U.S. at 152. While the Court must take THQ's allegations as true at this stage, it need not do so at the summary judgment stage, and at that stage, the parties can submit evidence that rebuts THQ's factual

At the hearing, Mar Vista's counsel argued that *Jack Daniel's* does not apply because *Jack Daniel's* only covers situations where a junior user uses a mark to signify that *it*, as opposed to the senior user, is responsible for the goods or services at issue. However, the Court does not read *Jack Daniel's* as reaching only junior users who use a trademark as a source identifier to signal that they (the junior user) are behind the goods. Such a reading would insulate cases where a junior user intended to confuse consumers and used a trademark to designate that the source of its good or services was the senior user.

Mar Vista's counsel further argued that because the title of a single creative work cannot serve as a source identifier as a matter of law, Mar Vista could not use *Alone in the Dark* as a source identifier and for this additional reason, *Jack Daniel's* does not apply. *See also* Mot. at 15 ("Underscoring the fact that Plaintiffs have not and could not have used Alone in the Dark as a trademark, the U.S. Patent and Trademark Office categorically refuses to register titles of single creative works as trademarks."). The cases cited by Mar Vista on this point do indeed hold that the title of a single creative work cannot serve as a source identifier. *See id.* (citing cases); *see, e.g., Mattel, Inc. v. The Brainy Baby Co., LLC*, 101 U.S.P.Q.2d 1140, at *2 (T.T.A.B. Dec. 30, 2011) ("The title of a single creative work is not considered a trademark, and is therefore unregistrable on the Principal Register under Trademark Act Sections 1, 2, and 45, 15 U.S.C. Sections 1051, 1052, and 1127. [Citation] The title of a single creative work is, of necessity, descriptive of the work and does not function as a trademark. [Citation]." (citations omitted)). These cases therefore dictate that *Mar Vista* cannot attempt to register Alone in the Dark as a trademark for *its* single film. But a term "used to identify a series of creative works" *can* "function[ ] as a trademark . . . ." *Brainy Baby Co.*, 101 U.S.P.Q.2d at *2. As such, *Alone in the Dark*, which is used by THQ for its series, *can* function as a trademark, and therefore Mar Vista can be prevented from attempting to use it as a source identifier—the very thing THQ has alleged it is attempting to do. Put another way, the fact that generally an entity cannot protect the title of a single work as a trademark does not mean that an

---

allegations that Mar Vista is using "Alone in the Dark" as a source identifier. At that time, the Court may find that this case does not fall within the ambit of *Jack Daniel's*.

entity can use another entity's trademark with impunity as the title of a single work. According to *Jack Daniel's*, where it appears that the junior user—despite the limits of trademark law—is attempting to use a title as a source identifier, that can constitute trademark infringement.

Thus, the Court DENIES Mar Vista's Motion as to this issue WITHOUT PREJUDICE.

        iii.   <u>The present case also falls under the Ninth Circuit's holding in *Gordon*.</u>

Even leaving aside *Jack Daniel's*, the Ninth Circuit's holding in *Gordon* supports the Court's conclusion that *Rogers* does not, at this stage, apply here. In *Gordon*, the plaintiff, comedian Christopher Gordon, created a video wherein he overlaid footage of a honey badger with his narration. *Gordon*, 909 F.3d at 261. In the video, Gordon repeated variations of the phrases "Honey Badger Don't Care" and "Honey Badger Don't Give a S---." *Id.* Gordon's video generated millions of views and became the subject of pop-culture references. *Id.* The defendants created a series of greeting cards with the phrases "Honey Badger Don't Care" and "Honey Badger Don't Give a S---." *Id.* The Ninth Circuit thus considered whether, under *Rogers*, Gordon's Lanham Act claim was precluded. In its opinion, the Ninth Circuit expounded on the "explicitly misleading" element, stating the following:

> We therefore reject the district court's rigid requirement that, to be explicitly misleading, the defendant must make an affirmative statement of the plaintiff's sponsorship or endorsement. Such a statement may be sufficient to show that the use of a mark is explicitly misleading, but it is not a prerequisite. *See* 2 MCCARTHY § 10:17.10 (noting that *Rogers*'s second prong does not hinge on the junior user "falsely assert[ing] that there is an affiliation"). *In some instances, the use of a mark alone may explicitly mislead consumers about a product's source if consumers would ordinarily identify the source by the mark itself.* If an artist pastes Disney's trademark at the bottom corner of a painting that depicts Mickey Mouse, the use of Disney's mark, while arguably relevant to the subject of the painting, could explicitly mislead consumers that Disney created or authorized the painting, even if those words do not appear alongside the mark itself.

*Gordon*, 909 F.3d at 269–70 (internal quotation marks omitted) (emphasis added).

Here, THQ alleges that consumers expect well-known video games to be made into movies, a practice that is particularly prevalent in the mystery/horror genre in which both parties operate. FAC ¶¶ 36–38. The reasonable inference that arises from these allegations, when coupled with the allegations that Mar Vista purposefully titled its movie "Alone in the Dark" to mislead consumers into believing that THQ had some involvement with Mar Vista's movie (FAC ¶¶ 40–45), is that consumers *would* ordinarily identify the source of a movie by the title alone.

As such, the Court DENIES Mar Vista's Motion as to this issue WITHOUT PREJUDICE.[3]

### B. The Court Grants Mar Vista's Request for Judgment on the Pleadings as to Trademark Dilution

Mar Vista also requests that the Court grant Mar Vista's request for judgment on the pleadings as to THQ's now-withdrawn trademark dilution claim. Mot. at 16. THQ does not address this issue in its Opposition. *See generally* Opp'n; *see also* Reply at 10 (noting that THQ "does not address the claim in its Opposition except for a footnote noting its disagreement with Plaintiffs' purported 'speculation regarding the reason for [the] withdrawal'"). The Court deems THQ's failure to address Mar Vista's argument as waiver, and as such, GRANTS Mar Vista's request for judgment on the pleadings as to THQ's trademark dilution claim. *See Hartranft v. Encore Capital Grp., Inc.*, 543 F. Supp. 3d 893, 913 (S.D. Cal. 2021) ("[W]here a non-moving party fails to address an argument raised by the moving party in the opposition brief, the Court may consider any arguments unaddressed by the non-moving party as waived."); *see also Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016) ("But the plaintiffs did not raise that argument to the district court in their motion for summary judgment or opposition to the defendants' motion for summary judgment, so the argument was waived."); *see also* C.D. Cal. L.R. 7-12 ("The Court may decline to consider any memorandum or other document not filed within the deadline set by order or local rule. The failure to file any required document, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion . . . .").[4]

### IV. Conclusion

For the foregoing reasons, the Court ORDERS as follows:

1. Mar Vista's Motion is GRANTED IN PART;
2. Judgment on the Pleadings is GRANTED with respect to THQ's trademark dilution claim;

---

[3] As with the Court's conclusion that *Jack Daniel's* applies, the Court notes that, at the summary judgment stage, THQ will have to prove that consumers ordinarily identify the source of a movie by title alone. At that time, the Court may find that, under *Gordon*, THQ has not met its showing as to the second prong of the *Rogers* test.

[4] At the hearing, THQ's counsel conceded that THQ did not address Mar Vista's request for judgment on the pleadings.

3. Consistent with the Court's Order at ECF No. 45, the parties are ORDERED to file a Scheduling Worksheet within seven (7) days of the date of this Order; and

4. The Scheduling Conference currently scheduled for July 11, 2024 is hereby taken off calendar, and will be rescheduled by the Court as needed.

IT IS SO ORDERED.

Dated: July 8, 2024

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge