1    LUCIA E. COYOCA (SBN 128314)
         lec@msk.com
2    KARIN G. PAGNANELLI (SBN 174763)
         kgp@msk.com
3    MITCHELL SILBERBERG & KNUPP LLP
     2049 Century Park East, 18th Floor
4    Los Angeles, CA 90067-3120
     Telephone: (310) 312-2000
5    Facsimile: (310) 312-3100

6    MARISSA B. LEWIS (*pro hac vice*)
         mbl@msk.com
7    MITCHELL SILBERBERG & KNUPP LLP
     437 Madison Ave., 25th Floor
8    New York, NY 10022
     Telephone: (212) 509-3900
9    Facsimile: (212) 509-7239

10   Attorneys for Plaintiffs and
     Counterclaim-Defendants
11   Mar Vista Entertainment, LLC, The
     Ninth House, LLC and Ninth Dark
12   LLC

13                 UNITED STATES DISTRICT COURT

14                CENTRAL DISTRICT OF CALIFORNIA

15   MAR VISTA ENTERTAINMENT,            CASE NO. 2:23-cv-06924-MEMF-SKx
     LLC, THE NINTH HOUSE, LLC, and
16   NINTH DARK LLC,                     Judge Maame Ewusi-Mensah
                                         Frimpong
17              Plaintiffs,
                                         **NOTICE OF MOTION AND**
18        v.                             **MOTION OF PLAINTIFFS AND**
                                         **COUNTERCLAIM-DEFENDANTS**
19   THQ NORDIC AB,                      **FOR 28 U.S.C. § 1292(b)**
                                         **CERTIFICATION AND STAY**
20              Defendant.               **PENDING APPEAL**

21   THQ NORDIC AB,                      [*Declaration of Marissa B. Lewis and*
                                         *[Proposed] Order filed concurrently*
22              Counterclaim-Plaintiff,  *herewith*]

23        v.                             Date:       September 12, 2024
                                         Time:       10:00 am
24   MAR VISTA ENTERTAINMENT,            Location:   Courtroom 8B
     LLC, THE NINTH HOUSE, LLC, and
25   NINTH DARK LLC,

26              Counterclaim-Defendants.

27

28

Mitchell
Silberberg &
Knupp LLP

─────────────────────────────────────────────────────
        **MOTION FOR 28 U.S.C. § 1292(b) CERTIFICATION AND STAY**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 12, 2024, in the courtroom of the Honorable Maame Ewusi-Mensah Frimpong of the United States District Court for the Central District of California, 350 West First Street, Courtroom 8B, Los Angeles, California 90012, at 10:00 am, or as soon thereafter as the matter may be heard, Plaintiffs and Counterclaim-Defendants Mar Vista Entertainment, LLC, The Ninth House, LLC, and Ninth Dark LLC shall and hereby do move this Court (1) for a certification of its July 8, 2024 Order (Dkt. No. 55) for interlocutory appeal pursuant to 28 U.S.C. § 1292(b); and (2) for a stay of further proceedings in this matter pending resolution of the interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and the Court's inherent authority.

Certification for interlocutory appeal is appropriate, pursuant to 28 U.S.C. § 1292(b), because the Order involves a controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal from the Order may materially advance the ultimate termination of the litigation.

Further, if certification is granted, a stay of further proceedings in this matter pending resolution of the interlocutory appeal is appropriate, pursuant to 28 U.S.C. § 1292(b) and the Court's inherent authority, because such appeal may eliminate the need for discovery and/or trial.

This Motion will be based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Marissa B. Lewis and Exhibit thereto, the pleadings and orders in the Court's files for this case, any matters on which the Court may or must take judicial notice and/or that are incorporated by reference via the pleadings, any reply that is filed in support of this Motion, any argument presented at the hearing on this Motion, and any other matters the Court deems proper.

This Motion is made following the conference of counsel, held pursuant to Local Rule 7-3, which took place on July 24, 2024.

Mitchell
Silberberg &
Knupp LLP

1

**MOTION FOR 28 U.S.C. § 1292(b) CERTIFICATION AND STAY**

1    DATED: AUGUST 5, 2024          LUCIA E. COYOCA
                                    KARIN G. PAGNANELLI
2                                   MARISSA B. LEWIS
                                    MITCHELL SILBERBERG & KNUPP LLP
3

4
                                    By:  */s/ Karin G. Pagnanelli*
5                                        Lucia E. Coyoca (SBN 128314)
                                         Karin G. Pagnanelli (SBN 174763)
6                                        Marissa B. Lewis (*pro hac vice*)
                                         Attorneys for Plaintiffs and
7                                        Counterclaim-Defendants
                                         Mar Vista Entertainment, LLC, The
8                                        Ninth House LLC, and Ninth Dark LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................1

II.     *ROGERS, JACK DANIEL'S,* AND THE INTERSECTION OF TRADEMARK LAW AND THE FIRST AMENDMENT ...........................2

    A.      The Traditional Likelihood-of-Confusion Test. ...................................2

    B.      The *Rogers* Test. ................................................................................3

    C.      The *Jack Daniel's* Threshold Question For Determining Whether the *Rogers* Test Applies. ..................................................................6

III.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY .................9

IV.     LEGAL STANDARD FOR 28 U.S.C. § 1292(b) CERTIFICATION .........11

V.      THE COURT SHOULD CERTIFY THE ORDER FOR INTERLOCUTORY APPEAL ....................................................................12

    A.      The Court's Order Implicates A Controlling Question of Law..........13

    B.      There Is Substantial Ground For Difference of Opinion as to Which Party's Use Is Relevant to the Source-Identification Inquiry. .........................................................................................14

    C.      An Immediate Appeal of the Court's Order May Materially Advance the Ultimate Termination of This Litigation. ....................17

VI.     IF THIS COURT GRANTS CERTIFICATION, IT ALSO SHOULD STAY THE CASE PENDING APPEAL.....................................................19

VII.    CONCLUSION ...................................................................................20

Mitchell Silberberg & Knupp LLP

i

**MOTION FOR 28 U.S.C. § 1292(b) CERTIFICATION AND STAY**

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000) ........................................................................ 12, 13

*AMF sv. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979) ................................................................................ 3

*APCC Servs., Inc. v. AT & T Corp.*,
297 F. Supp. 2d 101 (D.D.C. 2003) ................................................................... 16

*Beeman v. Anthem Prescription Mgmt., Inc.*,
2007 WL 8433884 (C.D. Cal. Aug. 2, 2007) ................................................ 17, 19

*Brickman v. Facebook, Inc.*,
2017 WL 1508719 (N.D. Cal. Apr. 27, 2017) ............................................... 14, 17

*Brown v. Elec. Arts, Inc.*,
724 F.3d 1235 (9th Cir. 2013) .............................................................................. 4

*Caiz v. Roberts*,
382 F. Supp. 3d 942 (C.D. Cal. 2019) .................................................................. 6

*Capcom Co. v. MKR Grp., Inc.*,
2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) ....................................................... 6

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
254 F.3d 882 (9th Cir. 2001) ............................................................................. 15

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010) ............................................................................. 16

*Dahlstrom v. Sun-Times Media, LLC*,
39 F. Supp. 3d 998 (N.D. Ill. 2014) ................................................................... 12

*Diece-Lisa Industries, Inc. v. Disney Enters., Inc., et al.*,
No. CV2009147TJHJCX, Dkt. No. 386 (C.D. Cal. May 1, 2024) ................... 15

*Dr. Seuss Enters. L.P. v. ComixMix LLC*,
983 F.3d 443 (9th Cir. 2020) ........................................................................ 6, 11

Mitchell
Silberberg &
Knupp LLP

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
    444 F. Supp. 2d 1012 (C.D. Cal. 2006), *aff'd* 547 F.3d 1095 (9th Cir. 2008) ................................................................................4, 8

*Fortyune v. City of Lomita*,
    766 F.3d 1098 (9th Cir. 2014) ............................................................ 11

*Gillespie v. Centerra Servs. Int'l, Inc.*,
    2022 WL 18584762 (C.D. Cal. Oct. 26, 2022) ...........................12, 19

*Gordon v. Drape Creative, Inc.*,
    909 F.3d 257 (9th Cir. 2018) ...............................................10, 11, 16

*Herbko Int'l, Inc. v. Kappa Books, Inc.*,
    308 F.3d 1156 (Fed. Cir. 2002) .......................................................... 15

*In re Cement Antitrust Litig.*,
    673 F.2d 1020 (9th Cir. 1982) ....................................................*passim*

*In re Endosurgical Prod. Direct Purchaser Antitrust Litig.*,
    2007 WL 9772276 (C.D. Cal. Oct. 9, 2007) ...................................... 17

*In re Fishell*,
    47 F.3d 1168 (6th Cir. 1995) ............................................................... 3

*In re Northrop Grumman Corp. ERISA Litig.*,
    2010 WL 11469724 (C.D. Cal. Aug. 12, 2010) ................................ 15

*In re SFPP Right-of-Way Claims*,
    2016 WL 11744979 (C.D. Cal. Dec. 5, 2016) ................................... 20

*Jack Daniel's Props., Inc. v. VIP Prod. LLC*,
    599 U.S. 140 (2023) ...................................................................*passim*

*Jackson v. Netflix, Inc.*,
    506 F. Supp. 3d 1007 (C.D. Cal. 2020) .............................................. 6

*James v. Price Stern Sloan, Inc.*,
    283 F.3d 1064 (9th Cir. 2002) ........................................................... 11

*JTH Tax LLC v. AMC Networks Inc.*,
    694 F. Supp. 3d 315 (S.D.N.Y. 2023) .............................................. 15

*Laub v. Horbaczewski*,
    2019 WL 2610951 (C.D. Cal. Apr. 29, 2019) ................................... 15

Mitchell
Silberberg &
Knupp LLP

iii

**MOTION FOR 28 U.S.C. § 1292(b) CERTIFICATION AND STAY**

*Lucent Techs. v. Johnson*,
    2000 WL 1604055 (C.D. Cal. Sept. 12, 2000) ........................................................ 3

*Mattel, Inc. v. MCA Records, Inc.*,
    296 F.3d 894 (9th Cir. 2002) ......................................................................... *passim*

*National Ass'n of Afr.-Am. Owned Media v. Charter Commc'ns, Inc.*,
    2016 WL 10647193 (C.D. Cal. Dec. 12, 2016) ............................................. *passim*

*Punchbowl, Inc. v. AJ Press, LLC*,
    90 F.4th 1022 (9th Cir. 2024) ...................................................................... *passim*

*Rebellion Devs. Ltd. v. Stardock Ent., Inc.*,
    WL 1944888 (E.D. Mich. May 9, 2013) ............................................................. 4

*Reese v. BP Expl. (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011) .................................................................... 15, 17

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989) ......................................................................... *passim*

*Rollins v. Dignity Health*,
    2014 WL 6693891 (N.D. Cal. Nov. 26, 2014) ................................................. 14

*Roxbury Entm't v. Penthouse Media Grp., Inc.*,
    669 F. Supp. 2d 1170 (C.D. Cal. 2009) ........................................................... 6

*San Antonio Winery, Inc. v. Jiaxing Micarose Trade Co.*,
    2021 WL 4988033 (C.D. Cal. June 1, 2021) .............................................. 12, 19

*Steering Comm. v. U.S.*,
    6 F.3d 572 (9th Cir. 1993) ............................................................................... 13

*U.S. Dist. Ct. for E. Dist. of Wash. v. Sandlin*,
    12 F.3d 861 (9th Cir. 1993) ............................................................................. 12

*U.S. v. Tenet Healthcare Corp.*,
    2004 WL 3030121 (C.D. Cal. Dec. 27, 2004) ................................................. 11

### RULES & STATUTES

15 U.S.C. § 1051 ............................................................................................................ 2

28 U.S.C. § 1292(b) ............................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 3

**MOTION FOR 28 U.S.C. § 1292(b) CERTIFICATION AND STAY**

Mitchell
Silberberg &
Knupp LLP

1

## OTHER AUTHORITIES

2   *Certification by trial judge for discretionary interlocutory appeal*, 2 Fed.
3       Proc., L. Ed. § 3:210 ................................................................... 12

4   Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
5       § 3930 (3d ed. 2024) ................................................................... 16

6   Jennifer E. Rothman, *Supreme Court Sides with Jack Daniel's in Trademark*
        *Case*, Rothman's Roadmap to the Right of Publicity (June 8, 2023) ............... 16
7
8   Daryl Lim, *Trademark Confusion Simplified: A New Framework for*
        *Multifactor Tests*, 37 Berkeley Tech. L.J. 871 (2022) ................................ 3, 19

9   *Permissive Interlocutory Appeals under 28 U.S.C.A. § 1292(b)*, Procedure,
10      Federal Appellate Practice: Ninth Circuit § 5:22 (2023-2024 Edition) ............. 12

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

**MOTION FOR 28 U.S.C. § 1292(b) CERTIFICATION AND STAY**

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.    INTRODUCTION

This Motion seeks certification of the Court's July 8, 2024 Order (Dkt. No. 55) ("Order") for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), so that the Ninth Circuit may immediately consider a case-defining legal question as to which there is substantial judicial disagreement:  In a trademark infringement action, which party's use—the trademark owner's use or the accused infringer's use—is properly considered in analyzing whether such "use" functions "as a source identifier" within the meaning of the Supreme Court's decision in *Jack Daniel's Props., Inc. v. VIP Prod. LLC*, 599 U.S. 140 (2023).  The answer to this narrow question has outsized legal and business implications—not only for the accused infringers in this case, but for all creators of all types of expressive works.

For almost three decades, artists, authors, filmmakers, songwriters, video game developers, and others have relied on the "*Rogers* test"—first articulated in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), and adopted by the Ninth Circuit in *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002)—to protect their First Amendment rights, in particular, to discourage and efficiently dispose of infringement claims arising from the use of another party's trademark in the accused infringer's expressive works, especially in the title.  Irrespective of the famousness or strength of the trademark at issue, and regardless of any likelihood of consumer confusion, *Rogers* has provided leeway for creators to select titles for their expressive works that are similar to or include preexisting trademarks as long as the title is artistically relevant to their work and not explicitly misleading.  This clear, bright-line test is critical to the exercise of free speech rights and to avoiding the chilling effect that inevitably results from the costly litigation necessitated by the fact-intensive "likelihood-of-confusion test" applicable in cases involving consumer products or other non-expressive works.

Mitchell
Silberberg &
Knupp LLP

1

1    The Court's Order has adopted a novel reading of *Jack Daniel's* and Ninth

2  Circuit precedent that injects uncertainty into this decades-old legal framework and

3  threatens to upend the First Amendment protection traditionally afforded to titles of

4  expressive works.  By concluding that *Jack Daniel's* may preclude the application

5  of *Rogers* based on an analysis of the trademark owner's use (rather than the accused

6  infringer's use), this Court's ruling threatens to eviscerate the *Rogers* test in its

7  entirety, imposing a chilling effect on the entire entertainment and artistic industries.

8  Indeed, under the Court's Order, the use in *Rogers* itself would be ineligible for First

9  Amendment protection because it involved the use of a well-known trademark,

10  "Ginger Rogers," in the title of a single film.  The Supreme Court did not overrule

11  *Rogers* in its self-described "narrow" decision in *Jack Daniel's*.

12    As such, the Order presents a quintessential example of a decision that

13  warrants certification for interlocutory appeal under 28 U.S.C. § 1292(b).  It involves

14  a controlling question of law as to which there is substantial ground for difference

15  of opinion.  Moreover, an immediate appeal from the Order may materially advance

16  the termination of the litigation by obviating the need for protracted and expensive

17  likelihood-of-confusion-focused discovery and the need for experts, including the

18  expert suggested by the Order. *See* Order at 8, n.3.  The same considerations that

19  warrant certification also support staying this case during any interlocutory appeal.

## II.  *ROGERS, JACK DANIEL'S,* AND THE INTERSECTION OF TRADEMARK LAW AND THE FIRST AMENDMENT

### A.  <u>The Traditional Likelihood-of-Confusion Test.</u>

24    A "trademark" is a word, phrase, or symbol that "identifies a product's

25  source" and "distinguishes that source from others." *Jack Daniel's*, 599 U.S. at 145-

26  46.  The Lanham Act, 15 U.S.C. § 1051 *et seq.*, is primarily concerned with

27  preventing consumer confusion about a product's source—*i.e.*, who produced the

28  product. *Id.* at 147.  Typically, courts apply a "likelihood-of-confusion" test to

Mitchell Silberberg & Knupp LLP

2

**MOTION FOR 28 U.S.C. § 1292(b) CERTIFICATION AND STAY**

1  Lanham Act claims.  *Id.* at 155; *accord Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th
2  1022, 1027-28 (9th Cir. 2024).  Because the likelihood of confusion is premised on
3  a non-exhaustive, multi-factor test,[1] it often is a fact-intensive inquiry requiring
4  significant discovery.  As the Sixth Circuit has stated, "[t]he fact-intensive nature of
5  [a] dispute also means that any litigation would be time-consuming and expensive."
6  *In re Fishell*, 47 F.3d 1168 (6th Cir. 1995); *see also* Daryl Lim, *Trademark*
7  *Confusion Simplified: A New Framework for Multifactor Tests*, 37 Berkeley Tech.
8  L.J. 871, 891 (2022) (likelihood-of-confusion test is "expensive and time-
9  consuming").  Accordingly, courts traditionally have been reluctant to decide the
10 likelihood of confusion at the pleading stage. *See Lucent Techs. v. Johnson*, 2000
11 WL 1604055, at *2 (C.D. Cal. Sept. 12, 2000) ("likelihood of confusion inquiry is a
12 fact-intensive evaluation ill-suited for disposition on a motion to dismiss").[2]

13     The Ninth Circuit has long recognized that the "traditional likelihood-of-
14 confusion test 'fails to account for the full weight of the public's interest in free
15 expression.'" *Punchbowl*, 90 F.4th at 1028 (quoting *Mattel*, 296 F.3d at 900).

16     **B.    <u>The *Rogers* Test.</u>**

17     To better protect First Amendment interests—and to avoid chilling speech—
18 the Ninth Circuit adopted and, for more than two decades, has applied the test
19 articulated in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), to Lanham Act and
20 related claims arising from the use of a trademark in an expressive work.  *Mattel*,
21 296 F.3d at 900.  Under the *Rogers* test, the First Amendment categorically bars

22 ───────────────

23 [1] The Ninth Circuit applies the following eight factors in determining whether a
   likelihood of confusion exists: (1) the strength of the plaintiff's mark; (2) the
24 relatedness or proximity of the goods; (3) the similarity of the marks; (4) evidence
   of actual confusion; (5) the degree to which the parties' marketing channels
25 converge; (6) the type of goods and degree of care purchasers are likely to exercise
   in selecting the goods; (7) evidence of the defendant's intent; and (8) the likelihood
26 that the parties will expand their product lines.  *AMF v. Sleekcraft Boats*, 599 F.2d
   341, 348-49 (9th Cir. 1979).

27 [2] That is not to say that every infringement case requires full-scale litigation.  As the
   Supreme Court has stated, "if, in a given case, a plaintiff fails to plausibly allege a
28 likelihood of confusion, the district court should dismiss the complaint under Federal
   Rule of Civil Procedure 12(b)(6)."  *Jack Daniel's*, 599 U.S. at 157, n.2.

Mitchell
Silberberg &
Knupp LLP

3

**MOTION FOR 28 U.S.C. § 1292(b) CERTIFICATION AND STAY**

claims arising from an accused infringer's use of another party's trademark in an expressive work—including in the title of a film—except where the trademark owner demonstrates that the accused infringer's use (1) "has no artistic relevance to the underlying work;" or (2) "explicitly misleads [consumers] as to the source or the content of the work." *Rogers*, 875 F.2d at 999.

*Rogers* is designed to "offer[] an escape from the likelihood-of-confusion inquiry and a shortcut to dismissal" in cases involving expressive works. *Jack Daniel's*, 599 U.S. at 157. Provided the use is artistically relevant to the expressive work and not explicitly misleading, *Rogers* operates as a complete defense to Lanham Act and related claims—irrespective of whether the trademark owner has sufficiently pled, or can prove, that confusion is likely. *See E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 444 F. Supp. 2d 1012, 1047 (C.D. Cal. 2006) ("In *Rogers v. Grimaldi*, the movie title 'Ginger and Fred' was highly susceptible to consumer confusion…. Nonetheless the court found that the [accused infringer's] First Amendment interests prevailed."), *aff'd* 547 F.3d 1095, 1100 (9th Cir. 2008); *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1245 (9th Cir. 2013) (permitting evidence of confusion to defeat *Rogers* "would render *Rogers* a nullity").[3] To avoid the chilling effect that litigation often has on First Amendment-protected speech, courts frequently resolve the *Rogers* test at the pleading stage before any discovery. *See* Dkt. No. 43 at 2-3, n.3 (collecting cases granting motions to dismiss on *Rogers* grounds); *Rebellion Devs. Ltd. v. Stardock Ent., Inc.*, 2013 WL 1944888, at *4 (E.D.

---

[3] "Rogers submitted a market research survey purporting to establish that the title 'Ginger and Fred' misled potential movie viewers as to Rogers' connection with the film. *Rogers* also provided anecdotal evidence of confusion, including the fact that when MGM/UA publicists first heard the film's title (and before they saw the movie), they began gathering old photographs of Rogers and Astaire for possible use in an advertising campaign." *Rogers*, 875 F.2d at 997. "As both the survey and the evidence of the actual confusion among the movie's publicists show, there is no doubt a risk that some people looking at the title 'Ginger and Fred' might think the film was about Rogers and Astaire in a direct, biographical sense…. To the extent that there is a risk that the title will mislead some consumers as to what the work is about, that risk is outweighed by the danger that suppressing an artistically relevant though ambiguous title will unduly restrict expression." *Id.* at 1001.

Mitchell Silberberg & Knupp LLP

4

**MOTION FOR 28 U.S.C. § 1292(b) CERTIFICATION AND STAY**

1    Mich. May 9, 2013) (dismissing claims arising from game title on *Rogers* grounds;

2    "Courts are cognizant of vindicating First Amendment protections through early

3    dispositive motions to avoid chilling speech").

4         Titles of expressive works are in the heartland of *Rogers*, which itself

5    addressed, and dismissed, claims arising from the use of a trademark in a film title.

6    In holding the First Amendment barred such claims, the *Rogers* court explained:

7              Though consumers frequently look to the title of a work to

8              determine what it is about, they do not regard titles of

9              artistic works in the same way as the names of ordinary

10             commercial products. Since consumers expect an ordinary

11             product to be what the name says it is, we apply the

12             Lanham Act with some rigor to prohibit names that

13             misdescribe such goods. [] But most consumers are well

14             aware that they cannot judge a book solely by its title any

15             more than by its cover.

16   875 F.2d at 1000.

17        Adopting and applying *Rogers*, the Ninth Circuit consistently has dismissed

18   trademark infringement claims arising from titles of expressive works.    Most

19   notably, in *Mattel*, the Ninth Circuit dismissed claims that a song titled *Barbie Girl*

20   infringed Mattel's "Barbie" trademark on *Rogers* grounds.    The Ninth Circuit

21   explained:

22             A title is designed to catch the eye and to promote the

23             value of the underlying work.  Consumers expect a title to

24             communicate a message about the book or movie, but they

25             do not expect it to identify the publisher or producer…. A

26             title tells us something about the underlying work but

27             seldom speaks to its origin[.]

28

Mitchell
Silberberg &
Knupp LLP

5

**MOTION FOR 28 U.S.C. § 1292(b) CERTIFICATION AND STAY**

*Mattel*, 296 F.3d at 902.  Similarly, in *Dr. Seuss Enters. L.P. v. ComixMix LLC,* 983 F.3d 443 (9th Cir. 2020), the Ninth Circuit affirmed the dismissal of trademark claims arising from a book title on *Rogers* grounds.[4]  As discussed *infra*, the Supreme Court's recent "narrow" decision in *Jack Daniel's* did not change this well-established law.

### C.   The *Jack Daniel's* Threshold Question For Determining Whether the *Rogers* Test Applies.

In *Jack Daniel's*, the Supreme Court added a threshold question to the *Rogers* legal framework.  In particular, before applying the *Rogers* test in cases involving expressive works, courts first must ask whether "***the accused infringer*** has used a trademark to designate the ***source of its own goods***—in other words, has used a trademark as a trademark" or "as a source identifier." *Jack Daniel's*, 599 U.S. at 145, 157 (emphasis added).  If a court concludes that the ***accused infringer*** used the trademark to designate itself as the source of its product, *Jack Daniel's* instructs the court to bypass the *Rogers* test and apply the traditional likelihood-of-confusion test, because "[t]hat kind of use falls within the heartland of trademark law" and "does not receive special First Amendment protection." *Id.*  If, on the other hand, a court concludes that the accused infringer used the trademark solely to perform some other expressive function, then even after *Jack Daniel's*, the court must continue to apply the *Rogers* test in the same way as it would have before.  *Id.* at 163; *accord Punchbowl*, 90 F.4th at 1031 ("because the Supreme Court's decision in *Jack Daniel's* was confined to a 'narrow' point of law, [] that *Rogers* does not apply when a mark is used as a mark, preexisting Ninth Circuit precedent adopting and applying *Rogers* otherwise remains intact and binding .…").

---

[4] District courts also have applied *Rogers* in dismissing trademark claims involving titles of expressive works.  *See, e.g., Jackson v. Netflix, Inc.*, 506 F. Supp. 3d 1007 (C.D. Cal. 2020) (television show title); *Caiz v. Roberts,* 382 F. Supp. 3d 942 (C.D. Cal. 2019) (record album title); *Capcom Co. v. MKR Grp., Inc.*, 2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) (video game title); *Roxbury Entm't v. Penthouse Media Grp., Inc.,* 669 F. Supp. 2d 1170 (C.D. Cal. 2009) (film title).  The Supreme Court in *Jack Daniel's* did not mention, far less purport to overrule, these decisions.

The logical reading of the *Jack Daniel's* opinion is that, for purposes of this threshold question, the court should consider only whether the ***accused infringer*** is using the mark to designate itself as the source of its own product, not the trademark owner's use. That explains both *Jack Daniel's* and Ninth Circuit decisions alike:

- In *Jack Daniel's*, the manufacturer of "Jack Daniel's" whiskey asserted trademark claims arising from VIP Products LLC's ("VIP") use of VIP's "Bad Spaniels" trademark and trade dress for dog toys. *Jack Daniel's*, 599 U.S. at 144. The Supreme Court concluded that "***VIP use[d]*** its Bad Spaniels trademark and trade dress as source identifiers of ***its dog toy***"— and thus that the *Rogers* test does not apply—because VIP conceded that the "Bad Spaniels" trademark and trade dress were "used to identify and distinguish ***VIP's goods***;" the "Bad Spaniels logo" was featured on the ***hangtag of VIP's dog toy*** in a manner that "appear[ed] to serve [a ] source-identifying function;" and VIP "chose[] to register" other names that it used in a similar manner. *Id.* at 159-60 (cleaned up; emphasis added).

- In *Mattel*, the manufacturer of "Barbie" dolls asserted trademark claims arising from a band's use of the name "Barbie Girl" for the title of its song. Consistent with *Jack Daniel's* and cited with approval, the Ninth Circuit concluded that "***the band's use*** of the Barbie name was 'not as a source identifier'"—and thus that the *Rogers* test applies—because the band's "use did not 'speak to the ***song's origin***,'" *Jack Daniel's*, 599 U.S. at 154 (quoting *Mattel*, 296 F.3d at 900, 902; emphasis added), noting as a general matter that consumers expect "a title to describe the underlying work, not to identify the producer [of that work]," *Mattel*, 296 F.3d at 900, 902.[5]

---

[5] Although *Mattel* was decided before *Jack Daniel's*, the Supreme Court cited *Mattel* with approval as an example of a decision in which the court properly "confined [the *Rogers* test] to similar cases [as *Rogers*], in which a trademark is used not to designate a work's source, but solely to perform some other expressive function." *Jack Daniel's*, 599 U.S. at 154 (citing *Mattel*. 296 F.3d at 900-02); *see also Punchbowl*, 90 F.4th at 1030 (discussing citation to *Mattel* in *Jack Daniel's*).

**MOTION FOR 28 U.S.C. § 1292(b) CERTIFICATION AND STAY**

- In *Punchbowl*, a technology company called "Punchbowl" asserted trademark claims arising from AJ Press, LLC's ("AJ Press") use of the name "Punchbowl News" for its news publication.    Following *Jack Daniel's*, the Ninth Circuit concluded that "*AJ Press* [*was*] *using* the [m]ark to designate the source of [*AJ Press's*] *own goods*"—and thus that the *Rogers* test did not apply—because the mark was used "to identify and distinguish *AJ Press's news products*" and "*AJ Press* [] filed trademark applications to register the marks 'Punchbowl News' and 'Punchbowl Press.'"  *Punchbowl*, 90 F.4th at 1031 (cleaned up; emphasis added).

To focus—as in the Order—on whether the ***trademark owner*** uses the mark as a source-identifier would mean that *Rogers* would never apply because "a trademark is not a trademark unless it identifies a product's source."  *Jack Daniel's*, 599 U.S. at 146.  That consumers might be confused into thinking the product at issue came from the trademark owner would also eviscerate *Rogers*, which is meant to apply even when the accused infringer's use of the mark is "highly susceptible to consumer confusion."  *E.S.S.*, 444 F. Supp. at 1047.  Reading *Jack Daniel's* so broadly cannot be squared with the Supreme Court's and Ninth Circuit's description of the decision as a "narrow" one.

The Supreme Court's decision in *Jack Daniel's*—which involved an ordinary ***consumer product***—is narrow and does not foreclose the application of *Rogers* to claims arising from the titles of expressive works.  Just the opposite:  The Supreme Court not only expressly declined to opine on the application of *Rogers* in "other contexts," but also explained that *Rogers* properly applied and warranted dismissal of the claims asserted in *Rogers* and *Mattel* because the accused infringers used the trademarks in titles of expressive works—that is, "not to designate [the] work's source, but solely to perform some other expressive function."  *Jack Daniel's*, 599 U.S. at 153-54.  In doing so, the Supreme Court implicitly reaffirmed that consumers "do not regard titles of artistic works in the same way as the names of ordinary

commercial products." *Rogers*, 875 F.2d at 1000.  As a result, the title of a single expressive work, which generally "cannot serve as a source identifier" and "must be refused registration" (Mot. at 15 (citations omitted)), is outside the scope of *Jack Daniel's* and remains subject to the *Rogers* test.

## III.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This action arises out of the alleged use of a trademark in the title of a single expressive work.  The relevant facts are assumed true:  Counterclaim-Plaintiff and Defendant THQ Nordic AB ("THQ") owns the federally registered trademark ALONE IN THE DARK, which it used for a series of video games.  *See* Dkt. No. 25 ("Counterclaims" or "Amend. Countercl.") ¶¶ 10-11, 16, 24.  In October 2022, Plaintiffs and Counterclaim-Defendants Mar Vista Entertainment, LLC, The Ninth House, LLC, and Ninth Dark LLC (collectively, "Mar Vista") released a single, original feature-length film titled *Alone in the Dark* without THQ's consent.  *Id.* ¶ 26.  There is no allegation that Mar Vista used *Alone in the Dark* in any manner other than as the title of a single film.  *Alone in the Dark* is not alleged to have been used by Mar Vista as a "brand" name for its products or services, but only to describe its single film.

Mar Vista initiated this lawsuit seeking, *inter alia*, declaratory relief that their use of *Alone in the Dark* as the title of their single film is protected by the First Amendment. *See generally* Dkt. No. 1.  In response, THQ filed an Answer and Counterclaims for, as amended, trademark infringement and unfair competition under the Lanham Act and common law.

On March 7, 2024, Mar Vista filed a Motion to Dismiss and for Judgment on the Pleadings primarily on the ground that all of THQ's Counterclaims are barred by the First Amendment under the *Rogers* test.  *See* Dkt. No. 30 ("Motion" or "Mot.").  As set forth in the Motion, Mar Vista's use of *Alone in the Dark* as the title of their single film does not and cannot identify the film's source (*i.e.*, Mar Vista and the

other Plaintiffs) (Mot. at 14-16), and both prongs of the *Rogers* test easily are met because the title is artistically relevant to the film and not explicitly misleading (*id.* at 10-13).  In its Opposition, THQ conceded nearly every salient point. *See* Dkt. No. 37 ("Opposition" or "Opp.").  Critically, notwithstanding the threshold issue under *Jack Daniel's*, **THQ did not allege in its original or amended Counterclaims, or argue in its Opposition, that Mar Vista used THQ's trademark ALONE IN THE DARK to identify the source of Mar Vista's film as Mar Vista**.  It merely argued that Mar Vista's use was "explicitly misleading" under the second prong of the *Rogers* test (*id.* at 8-14), not that *Rogers* was inapplicable under *Jack Daniel's*.

On July 8, 2024, having heard oral argument, the Court issued an Order denying Mar Vista's Motion in substantial part.[6]  Most pertinent here, the Court found that THQ "sufficiently alleged that Mar Vista's use of 'Alone in the Dark' is as a trademark, and as such, *Jack Daniel's* would preclude the application of *Rogers*."  Order at 5.  The Court acknowledged that **Mar Vista's use** of *Alone in the Dark*—*i.e.*, as the title of a single film—"cannot serve as a source identifier."  *Id.* at 6 ("The cases cited by Mar Vista on this point do indeed hold that the title of a single creative work cannot serve as a source identifier" and "therefore dictate that *Mar Vista* cannot [ ] register Alone in the Dark as a trademark for *its* single film.").  However, the Court concluded that *Alone in the Dark* "can function as a trademark"—and thus that "the *Rogers* test is inapplicable at this stage"—because "[it] is **used by THQ** for its [video game] series."  *Id.* at 4-6 (second emphasis added).  Still focused on **THQ's use**, and citing the Ninth Circuit's pre-*Jack Daniel's* decision *Gordon v. Drape Creative, Inc.*, 909 F.3d 257 (9th Cir. 2018), the Court further stated that it is reasonable to infer the requisite source-identifying use in this case because consumers allegedly may "expect [THQ's] video games to be made

---

[6] The Court granted Plaintiff's Motion with respect to THQ's trademark dilution claim on grounds unrelated to this Motion for Certification.  *See* Order at 8.

Mitchell
Silberberg &
Knupp LLP

into movies."  Order at 7-8.[7]  While the Court "didn't reach" the *Roger's* test in its Order, it stated at the hearing on the Motion that it "would tend to agree with counsel for Mar Vista that if we apply *Rogers* … Mar Vista might prevail."  Declaration of Marissa B. Lewis, Ex. 1 ("Hearing Tr.") at 14:1-5.

## IV.    LEGAL STANDARD FOR 28 U.S.C. § 1292(b) CERTIFICATION

Pursuant to 28 U.S.C. § 1292(b), a district judge may certify for immediate appeal an otherwise unappealable interlocutory order where three requirements are met:  (1) "such order involves a controlling question of law;" (2) "there is substantial ground for difference of opinion" as to the question; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *accord In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982).    An order denying a motion to dismiss is proper for § 1292(b) certification.  *See Fortyune v. City of Lomita*, 766 F.3d 1098, 1100-01, 1106, n.2 (9th Cir. 2014) (accepting interlocutory appeal of order denying a motion to dismiss; "We are satisfied that the district court and the motions panel of this court correctly determined that certification was appropriate in this case."); *National Ass'n of Afr.- Am. Owned Media v. Charter Commc'ns, Inc.*, 2016 WL 10647193, at *6, n.9 (C.D. Cal. Dec. 12, 2016) (certifying order denying motion to dismiss; "Denials of motions to dismiss are not disfavored orders for Section 1292(b) purposes .…").

"The decision to certify an order for interlocutory appeal is committed to the sound discretion of the district court."  *U.S. v. Tenet Healthcare Corp.*, 2004 WL 3030121, at *1 (C.D. Cal. Dec. 27, 2004).  While § 1292(b) "is a departure from the

---

[7] Notably, *Gordon* involved greeting cards, not video games or movies, and does not address the *Jack Daniel's* threshold question of whether the trademark at issue is used as a source-identifier.  *See Gordon*, 909 F.3d at 261-62.  The *Gordon* case not only is an outlier based on highly distinguishable facts, but primarily is cited for its ruling on the "explicitly misleading" prong of the *Rogers* test, which the Court did not address in its Order.  *See Dr. Seuss*, 983 F.3d at 462 (distinguishing *Gordon* and noting that "*Gordon* 'demonstrate[d] *Roger's* outer limits,' where the [accused infringer's] expressive work consisted of the mark and not much else") (quoting *Gordon*, 909 F.3d at 268).

Mitchell
Silberberg &
Knupp LLP

normal rule that only final judgments are appealable," *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067-68 n.6 (9th Cir. 2002), courts in this District routinely have granted certification where all three statutory requirements are met. *See, e.g.*, *National Ass'n*, 2016 WL 10647193, at *6; *San Antonio Winery, Inc. v. Jiaxing Micarose Trade Co.*, 2021 WL 4988033, at *4 (C.D. Cal. June 1, 2021); *Gillespie v. Centerra Servs. Int'l, Inc.*, 2022 WL 18584762, at *3 (C.D. Cal. Oct. 26, 2022). In fact, the Seventh Circuit has stated that district courts have a "***duty*** … to allow an immediate appeal" "when the statutory criteria are met." *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000) (emphasis added).[8]

## V. THE COURT SHOULD CERTIFY THE ORDER FOR INTERLOCUTORY APPEAL

As discussed below, the Court's Order satisfies all three requirements for certification under 28 U.S.C. § 1292(b). Before turning to the statutory requirements, it should be noted that allowing an immediate appeal not only is appropriate but critical here, because the Order has significant First Amendment implications for Mar Vista and other creators of expressive works. The *Rogers* doctrine is rooted in the First Amendment. *See Punchbowl*, 90 F.4th at 1027-28. "Because First Amendment litigation chills speech, prompt resolution of this case would provide the added benefit of minimizing any such chilling effect." *Dahlstrom v. Sun-Times Media, LLC*, 39 F. Supp. 3d 998, 1001 (N.D. Ill. 2014) (certifying order rejecting First Amendment defense on a motion to dismiss); *see also, e.g.*, *National Ass'n*, 2016 WL 10647193, at *6 (same). Indeed, "[i]n cases [ ] raising First Amendment issues, an appellate court has an obligation … to make sure that [a lower court's decision] does not constitute a forbidden intrusion on the field of free

---

[8] Notably, this Certification Motion is timely. *See Permissive Interlocutory Appeals under 28 U.S.C.A. § 1292(b)*, Procedure, Federal Appellate Practice: Ninth Circuit § 5:22 (2023-2024 Edition) ("there is no deadline in any statute or rule for seeking certification"); *Certification by trial judge for discretionary interlocutory appeal*, 2 Fed. Proc., L. Ed. § 3:210 (same).

expression." *U.S. Dist. Ct. for E. Dist. of Wash. v. Sandlin*, 12 F.3d 861, 865 (9th Cir. 1993).  The Order not only has a chilling effect on Mar Vista's ability to title their films, but also potentially chills the First Amendment rights of other filmmakers and creators of all types of expressive works.  In addition to the factors discussed below, this weighs strongly in favor of granting § 1292(b) certification here.

### A.    The Court's Order Implicates A Controlling Question of Law.

The first requirement for § 1292(b) certification is "that there be a controlling question of law."  *In re Cement*, 673 F.2d at 1026.  A "question of law" in this context means a "pure legal question," *Steering Comm. v. U.S.*, 6 F.3d 572, 575 (9th Cir. 1993), or "abstract legal issue"—in other words, "something the court of appeals could decide quickly and cleanly without having to study the record," *Ahrenholz*, 219 F.3d at 677.  "[A]ll that must be shown in order for [such] a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of [the] litigation in the district court." *In re Cement*, 673 F.2d at 1026.

This Court's Order implicates a controlling question of law:  whether, under *Jack Daniel's*, the court should analyze the ***accused infringer's use*** or the ***trademark owner's use*** in determining if the trademark was used as a source-identifier.  This is a purely legal question, the resolution of which materially affects the outcome of this case, because it bears on the threshold question of whether the *Rogers* test—and thus the First Amendment—applies.  *See Punchbowl*, 90 F.4th at 1031 (noting *Jack Daniel's* addresses a "'narrow' ***point of law***").  If, notwithstanding *Jack Daniel's*, the *Rogers* test continues to apply to titles of single expressive works, then Mar Vista has a complete defense to all of THQ's Counterclaims under the First Amendment.  Indeed, the accused infringers' (*i.e.*, Mar Vista's) only alleged use is as the title of a single expressive work (*i.e.*, a film), which the Order acknowledged "cannot serve as a source identifier."  Order at 6.  Moreover, at the hearing on Mar Vista's Motion, the Court stated that, while it "didn't reach" the *Rogers* test, it

"would tend to agree with counsel for Mar Vista that if we apply *Rogers* … Mar Vista might prevail." Hearing Tr. at 14:1-5.

Simply put, this litigation would completely end, or at least take a decidedly different path, if the Ninth Circuit were to find on appeal that the Order erroneously gave overriding consideration to ***THQ's use*** for its video game series in analyzing whether the trademark at issue functions as a source-identifier, and failed to properly consider that ***Mar Vista's use*** for its single film title is not a source-identifying use. This satisfies the "controlling question of law" requirement. *See, e.g.*, *Brickman v. Facebook, Inc.*, 2017 WL 1508719, at *2 (N.D. Cal. Apr. 27, 2017) (finding "controlling question of law" requirement met and granting certification, because reversal would cause the litigation to "completely end or take a decidedly different path"); *Rollins v. Dignity Health*, 2014 WL 6693891, at *2 (N.D. Cal. Nov. 26, 2014) (same, because "if the Court of Appeals were to reverse this Court's determination, the litigation would take a decidedly different path" and "[t]he remaining issues …, and the attendant costs of discovery, [would] vary significantly depending on the resolution of [the] issue"); *National Ass'n*, 2016 WL 10647193, at *5-6 (same, because "if [d]efendant is correct in its First Amendment argument," the "case would almost certainly be dismissed").

**B.    There Is Substantial Ground For Difference of Opinion as to Which Party's Use Is Relevant to the Source-Identification Inquiry.**

The second requirement for § 1292(b) certification is "that there be substantial grounds for difference of opinion." *In re Cement*, 673 F.2d at 1026. "One of the best indications that there are substantial grounds for disagreement on a question of law is that other courts have, in fact, disagreed." *Brickman*, 2017 WL 1508719, at *3. But so long as there is some "uncertainty" in the law that "provides a credible basis for a difference of opinion on the issue," such that "reasonable judges might

differ," the "substantial ground for difference of opinion" requirement is met. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).

There are "substantial grounds for difference of opinion" as to the question addressed in the Order. Indeed, "fair-minded jurists might reach"—and, in fact, already have reached—"contradictory conclusions" as to which parties' use is the proper focus of the *Jack Daniel's* threshold question. *Id.* at 688. Here, the Order found that *Alone in the Dark* "*can* function as a trademark," despite being used by Mar Vista for a single film title, based on the way the mark "is **used by THQ**" (*i.e.*, the **trademark owner**). Order at 6 (emphasis added). In contrast, other courts— including the Supreme Court in *Jack Daniel's* and the Ninth Circuit, before and after *Jack Daniel's*, in *Mattel* and *Punchbowl*—have focused exclusively on the ***accused infringer's use*** (here, ***Mar Vista's use***) in determining whether the trademark was used as a source-identifier. *See Jack Daniel's*, 599 U.S. at 160; *Mattel*, 296 F.3d at 900, 902; *Punchbowl*, 90 F.4th at 1031; *see also, e.g.*, *Diece-Lisa Industries, Inc. v. Disney Enters., Inc., et al.*, No. CV2009147TJHJCX, Dkt. No. 386 (C.D. Cal. May 1, 2024) (considering the accused infringer's use for purposes of the *Jack Daniel's* threshold question); *JTH Tax LLC v. AMC Networks Inc.*, 694 F. Supp. 3d 315 (S.D.N.Y. 2023) (same, concluding the mark was "not used … as [the accused infringers'] own identifying trademark" and applying the *Rogers* test, where the accused infringers used the mark "in furtherance of [their television show's] plot" and was not alleged to have used the trademark "to identify the source of [the show]" or "for any product they sell") (cleaned up).[9] Likewise, courts have held that "the

---

[9] This is not a motion for reconsideration. However, the Court has the inherent power "to rescind, reconsider, or modify" its Order *sua sponte* may it be so inclined. *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001); *see also In re Northrop Grumman Corp. ERISA Litig.*, 2010 WL 11469724, at *16 (C.D. Cal. Aug. 12, 2010) (noting that district courts have applied Ninth Circuit precedents "liberally in holding that a district court has authority to review any order prior to final judgment or appeal of the issue to be reviewed") (collecting cases); *Laub v. Horbaczewski*, 2019 WL 2610951, at *4 (C.D. Cal. Apr. 29, 2019) ("In conducting a *sua sponte* review, a court is not bound by the standards that govern a party's motion for reconsideration.") (citations omitted).

Mitchell Silberberg & Knupp LLP

**MOTION FOR 28 U.S.C. § 1292(b) CERTIFICATION AND STAY**

title of a single [expressive work] cannot serve as a source identifier." *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1162-63 (Fed. Cir. 2002); *accord Mattel*, 296 F.3d at 902 ("Consumers … do not expect [a title of an expressive work] to identify the publisher or producer").

Particularly in the context of the decades-old *Rogers* jurisprudence, the Supreme Court's recently-pronounced threshold question may be considered novel or unclear, due in part to the fact that the Supreme Court in *Jack Daniel's* did not articulate a test for determining what constitutes a source-identifying use. *See, e.g., Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) ("substantial ground for difference of opinion" requirement met where "novel and difficult questions of first impression are presented"). Indeed, commentators have noted that the *Jack Daniel's* decision left "some open questions" for "trademark law more broadly," including "what counts as use as a mark." Jennifer E. Rothman, *Supreme Court Sides with Jack Daniel's in Trademark Case*, Rothman's Roadmap to the Right of Publicity (June 8, 2023), https://rightofpublicityroadmap.com/news_commentary/supreme-court-sides-with-jack-daniels-in-trademark-case/.

Consequently, at the very least, there is some uncertainty as to the source-identification inquiry under *Jack Daniel's*. Considering this is a threshold issue that, if decided differently, would warrant dismissal of the case on First Amendment grounds,[10] this level of uncertainty is more than enough to find a "substantial ground for difference of opinion" here. *See* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3930 (3d ed. 2024) ("The level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case."); *APCC*

---

[10] This is because, as noted *supra*, the Court has already found that **Mar Vista's use** "cannot serve as a source identifier." (Order at 6; *id.* at 7 (discussing *Gordon v. Drape Creative, Inc.*, 909 F.3d at 269-70)), and for the reasons argued in Mar Vista's Motion, with which the Court tends to agree (Hearing Tr. at 14:1-5), such use is "artistically relevant" to Mar Vista's film and not "explicitly misleading." There are no factual issues that, if proven, would alter the outcome.

*Servs., Inc. v. AT & T Corp.*, 297 F. Supp. 2d 101, 107 (D.D.C. 2003) (where threshold issue could terminate the case, "certification may be justified even if there is a relatively low level of uncertainty").

### C.    An Immediate Appeal of the Court's Order May Materially Advance the Ultimate Termination of This Litigation.

The third and final requirement for § 1292(b) certification is "that an immediate appeal may materially advance the ultimate termination of the litigation." *In re Cement*, 673 F.2d at 1026.   The is "closely related" to the "controlling [question] of law" requirement. *Brickman*, 2017 WL 1508719, at *4. "Courts apply pragmatic considerations to determine whether certifying non-final orders will materially advance the ultimate termination of the litigation." *Beeman v. Anthem Prescription Mgmt., Inc.*, 2007 WL 8433884, at *2 (C.D. Cal. Aug. 2, 2007).  The fact "the interlocutory appeal [may] have a final, dispositive effect on the litigation" is sufficient to "materially advance the litigation," but it is not required. *Reese*, 643 F.3d at 688.  Even where the interlocutory appeal "may appreciably shorten the time, effort, or expense of conducting" the district court case, *In re Cement*, 673 F.2d at 1027 (collecting cases), and/or "mitigate the risk that a second trial might become necessary" after a subsequent successful appeal, *In re Endosurgical Prod. Direct Purchaser Antitrust Litig.*, 2007 WL 9772276, at *2 (C.D. Cal. Oct. 9, 2007), the "material advancement" requirement is met.

For the reasons discussed *supra*, an interlocutory appeal of the Order may—and in all likelihood would—materially advance the ultimate termination of this litigation.  As discussed *supra*, if the Ninth Circuit reversed the Order and held that *Jack Daniel's* does not preclude the *Rogers* in cases involving the title of a single expressive work, then all of THQ's Counterclaims would be barred by the First Amendment.  In other words, the litigation may end immediately, thereby obviating the need for time-consuming and expensive discovery on the application of the

Mitchell Silberberg & Knupp LLP

**MOTION FOR 28 U.S.C. § 1292(b) CERTIFICATION AND STAY**

*Rogers* test[11] and the likelihood of confusion. *See, e.g.*, *National Ass'n*, 2016 WL 10647193, at *6 (finding "material advancement" requirement met and granting certification, because "if [d]efendant is correct in its First Amendment argument, this case would seemingly end"). Absent an interlocutory appeal, this litigation can be expected to include extensive document discovery and depositions on otherwise irrelevant issues such as Mar Vista's intent in selecting the title *Alone in the Dark* and the likelihood-of-confusion factors,[12] and expert witnesses and consumers surveys on the likelihood of confusion, likely culminating in *Daubert* motions and motions for summary judgment. As a commentator noted, this comes at a significant expense:

> Median costs of trademark suits that get through the discovery phase (and also through trial) vary between $150,000 through discovery ($300,000 through trial) on the low end, and up to $750,000 through discovery ($1.5 million through trial) on the high end. [Accused infringers] waiting until trial to weed out frivolous claims face $300,000-$1.25 million in legal fees alone. Such expensive and time-consuming disputes may involve inquiries into defendants' intent, and requests for survey evidence underpinned by expensive dueling experts.

---

[11] While the *Rogers* test often is resolved without discovery, the Order notes that "at the summary judgment stage, THQ will have to prove that consumers ordinarily identify the source of a movie by title alone," just to determine whether *Rogers* applies. *See* Order at 8, n.3; *but see Mattel*, 296 F.3d at 902 ("A title is designed to catch the eye and to promote the value of the underlying work. Consumers expect a title to communicate a message about the book or movie, but they do not expect it to identify the publisher or producer.… A title tells us something about the underlying work but seldom speaks to its origin.").

[12] In its Initial Disclosures, THQ identified numerous categories of discovery that it intends to explore to support its claims or defenses, including, for example, "[d]ocuments related to the features, launches, promotion, sales, advertising, marketing, and customer profiles of THQ's products and services offered in connection with the ALONE IN THE DARK mark in the United States." None of the categories are relevant under the *Rogers* test.

Lim, 37 Berkeley Tech. L.J. at 891.  Because an interlocutory appeal of the Order "may avoid protracted and expensive (but ultimately unnecessary) litigation," the "material advancement" requirement is met.  *Beeman*, 2007 WL 8433884, at *2; *accord Gillespie*, 2022 WL 18584762, at *3 (finding "material advancement" requirement met and granting certification, because interlocutory appeal may "avoid 'protracted and expensive litigation' at least as to [certain] claims").

Finally, it should be noted that satisfaction of the "material advancement" requirement does not hinge on whether the Order is reversed on interlocutory appeal. Even assuming *arguendo* that the Order is affirmed, the Ninth Circuit's early instruction may clarify the *Jack Daniel's* threshold question and application of the *Rogers* test.  *See, e.g.*, *National Ass'n*, 2016 WL 10647193, at *6 (finding "material advancement" requirement met and granting certification because, "[e]ven if [defendant] is incorrect [in its First Amendment argument], any instruction from the Ninth Circuit on just how it sees [the question] would clarify the applicable standards and … fruitfully aid in the resolution of [the] case, either in-court or otherwise."). Such clarification "not only [may] affect the course of this individual case," including the scope of discovery, but also may "affect many other cases" and parties that traditionally have relied on *Rogers* to efficiently dispose of similar trademark claims aimed at their First Amendment-protected speech.  *San Antonio*, 2021 WL 4988033, at *4 (finding "material advancement" requirement met and granting certification where early resolution of the question may have broader implications on other cases and parties).

## VI.    IF THIS COURT GRANTS CERTIFICATION, IT ALSO SHOULD STAY THE CASE PENDING APPEAL

The Court has discretion to stay this case during the pendency of interlocutory appellate proceedings.  *See* 28 U.S.C. § 1292(b).  Whether a stay should be granted turns on (1) whether "resolution by the Ninth Circuit of the issue addressed in the

appealed order could materially affect this case and advance the ultimate termination of litigation;" and (2) "whether a stay will promote economy of time and effort for the Court and the parties." *In re SFPP Right-of-Way Claims*, 2016 WL 11744979, at \*2 (C.D. Cal. Dec. 5, 2016) (cleaned up).

A stay is appropriate here. As discussed *supra*, the first consideration is met. As for the second consideration, the paramount benefit of an interlocutory appeal is to avoid burdensome and potentially unnecessary discovery, motions, and/or trial. Without a stay, under the recently-proposed schedule (Dkt. No. 58), the parties would likely complete discovery, dispositive motions, and potentially even trial before the interlocutory appeal is complete[13]—thereby eliminating the benefits that such an appeal offers. Under the circumstances, an "interlocutory appeal [would] … be[] pointless" (and indeed, counterproductive) absent a stay. *National Ass'n*, 2016 WL 10647193 at \*6.

## VII.   CONCLUSION

For the foregoing reasons, Mar Vista respectfully requests that the Court certify the Order pursuant to 28 U.S.C. § 1292(b) and issue a stay pending appeal.

DATED: AUGUST 5, 2024          MITCHELL SILBERBERG & KNUPP LLP


By: */s/ Karin G. Pagnanelli*
Lucia E. Coyoca (SBN 128314)
Karin G. Pagnanelli (SBN 174763)
Marissa B. Lewis (*pro hac vice*)
Attorneys for Plaintiffs and
Counterclaim-Defendants
Mar Vista Entertainment, LLC, The
Ninth House LLC, and Ninth Dark LLC

---

[13] According to statistics published by the Administrative Office of United States Courts, the median time from the filing of a notice of appeal in a civil case to the issuance of a final decision in the Ninth Circuit is 22.8 months—which is well beyond the proposed trial date in this case (*i.e.*, January 26, 2026). *See* https://www.uscourts.gov/sites/default/files/data_tables/jb_b4a_0930.2017.pdf.

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2

The undersigned counsel of record for Plaintiffs and Counterclaim-

3 Defendants Mar Vista Entertainment, LLC, The Ninth House, LLC, and Ninth Dark

4 LLC certifies that this brief is 7,000 words and 20 pages, which complies with the

5 word limit set forth in Local Rule 11-6.1 and the page limit set forth in Rule VIII.C

6 of the Honorable Judge Maame Ewusi-Mensah Frimpong's Civil Standing Order.

7

DATED: August 5, 2024                        */s/ Karin G. Pagnanelli*

8                                                                Karin G. Pagnanelli

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

1

**MOTION FOR 28 U.S.C. § 1292(b) CERTIFICATION AND STAY**