LUCIA E. COYOCA (SBN 128314)
  lec@msk.com
KARIN G. PAGNANELLI (SBN 174763)
  kgp@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA  90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

MARISSA B. LEWIS (*pro hac vice*)
  mbl@msk.com
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Ave., 25th Floor
New York, NY 10022
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

Attorneys for Plaintiffs and
Counterclaim-Defendants
Mar Vista Entertainment, LLC, The
Ninth House, LLC and Ninth Dark
LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAR VISTA ENTERTAINMENT, LLC, THE NINTH HOUSE, LLC, and NINTH DARK LLC, | CASE NO. 2:23-cv-06924-MEMF-SKx |
| | Judge Maame Ewusi-Mensah Frimpong |
| Plaintiffs, | **DECLARATION OF MARISSA B. LEWIS IN SUPPORT OF PLAINTIFFS AND COUNTERCLAIM-DEFENDANTS' MOTION FOR 28 U.S.C. § 1292(b) CERTIFICATION AND STAY PENDING APPEAL** |
| v. | |
| THQ NORDIC AB, | |
| Defendant. | |
| THQ NORDIC AB, | Date:         September 12, 2024 |
| Counterclaim-Plaintiff, | Time:         10:00 am |
| v. | Location:     Courtroom 8B |
| MAR VISTA ENTERTAINMENT, LLC, THE NINTH HOUSE, LLC, and NINTH DARK LLC, | |
| Counterclaim-Defendants. | |

Mitchell
Silberberg &
Knupp LLP

20082775.1

**DECLARATION OF MARISSA B. LEWIS ISO MOTION FOR
28 U.S.C. § 1292(b) CERTIFICATION AND STAY**

## DECLARATION OF MARISSA B. LEWIS

I, Marissa B. Lewis, the undersigned, hereby declare as follows:

1.    I am an attorney admitted *pro hac vice* in this matter.  I am a partner at the law firm of Mitchell Silberberg & Knupp LLP, counsel of record for Plaintiffs and Counterclaim-Defendants Mar Vista Entertainment, LLC, The Ninth House, LLC, and Ninth Dark LLC (collectively, "Mar Vista").  I submit this declaration in support of Mar Vista's Motion for 28 U.S.C. § 1292(b) Certification and Stay Pending Appeal.  Except as otherwise noted, I have personal knowledge of all of the following and, if called as a witness, could and would testify competently thereto.

2.    Attached hereto as **Exhibit 1** is a true and correct copy of the Transcript of Proceedings, held on June 6, 2024 before the Honorable Maame Ewusi-Mensah Frimpong, on Mar Vista's Motion to Dismiss and for Judgment on the Pleadings.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 5th day of August, 2024 at New York, New York.

_____
Marissa B. Lewis

**DECLARATION OF MARISSA B. LEWIS ISO MOTION FOR
28 U.S.C. § 1292(b) CERTIFICATION AND STAY**

# EXHIBIT 1

1           UNITED STATES OF AMERICA
            UNITED STATES DISTRICT COURT
2           CENTRAL DISTRICT OF CALIFORNIA
            WESTERN DIVISION
3
                    - - -
4       HONORABLE MAAME EWUSI-MENSAH FRIMPONG
        UNITED STATES DISTRICT JUDGE PRESIDING
5                   - - -

6
    MAR VISTA ENTERTAINMENT, LLC,      )
7                                      )
                    PLAINTIFF,         )
8                                      )
    VS.                                )   CASE NO.:
9                                      )   CV 23-6924-MEMF
    THQ NORDIC AB,                     )
10                                     )
                    DEFENDANT.         )
11                                     )
    _____)
12

13

14
            REPORTER'S TRANSCRIPT OF PROCEEDINGS
15
            THURSDAY, JUNE 6, 2024
16
            LOS ANGELES, CALIFORNIA
17

18

19

20

21

22

23
            LAURA MILLER ELIAS, CSR 10019
24          FEDERAL OFFICIAL COURT REPORTER
            350 WEST 1ST STREET, ROOM 4455
25          LOS ANGELES, CALIFORNIA 90012
            PH:  (213) 894-0374


            UNITED STATES DISTRICT COURT

2

```
1
2    APPEARANCES OF COUNSEL:
3
4    ON BEHALF OF PLAINTIFF:
5
6            MITCHELL SILBERBERG AND KNUPP LLP
7            BY:  KARIN G. PAGNANELLI, ESQ.
8            2049 CENTURY PARK EAST
9            18TH FLOOR
10           LOS ANGELES, CA 90067
11
12
13   ON BEHALF OF DEFENDANT:
14
15           HAUG PARTNERS LLP
16           BY:  MICHAEL BARER, ESQ.
17           745 - 5th AVENUE
18           10TH FLOOR
19           NEW YORK, NY 10151
20
21
22
23
24
25
```

UNITED STATES DISTRICT COURT

**5**

3

1

2                                    INDEX

3

4

5       PROCEEDING                                        PAGE

6

7       PLAINTIFF'S

8       MOTION TO DISMISS                                  4

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    LOS ANGELES, CALIFORNIA; THURSDAY, JUNE 6, 2024; 8:35 A.M.

2                         - - -

3              THE CLERK:  Calling Item No. 1.

4              LA CV 23-6924.

08:35AM 5      Mar Vista Entertainment, LLC versus THQ Nordic AB.

6              Counsel, please stand and state your appearances.

7              MR. BARER:  Michael Barer for THQ Nordic.

8              MS. PAGNANELLI:  Good morning, Your Honor.  Karin

9    Pagnanelli for Mar Vista and the related plaintiff.

08:36AM 10     THE COURT:  Thank you.  Good morning.

11             So the parties received the Court's tentative late

12   yesterday?

13             MS. PAGNANELLI:  Yes, Your Honor.

14             MR. BARER:  Yes, Your Honor.

08:36AM 15     THE COURT:  Wonderful.

16             Well, since it's Mar Vista's motion, I'll let you

17   be heard.  You can take the podium.

18             MS. PAGNANELLI:  Thank you, Your Honor.

19             And I very much appreciate the tentative.  It gives

08:36AM 20   us a really good map to where the Court is going and -- and

21   makes it obviously much easier for us to address your

22   concerns.  I was hoping we could start with Jack Daniels.

23             So Jack Daniels is -- is the new kid on the block

24   type case for Rogers.  And in a lot of ways, it's a little

08:37AM 25   bit of a confusing case, but at base Rogers basically held

1    that Rogers does not apply when the defendant or the junior

2    user uses the mark identify its own products.

3        THE COURT:  And you mean Jack Daniels holds.

4        MS. PAGNANELLI:  Yeah, sorry.

08:37AM 5        THE COURT:  Got it.

6        MS. PAGNANELLI:  So basically it held that when the

7    accused infringer has used a trademark to designate the

8    source of its own goods, Rogers doesn't apply.  And if you --

9    in that case you look through and what VIP Products had done

08:38AM 10   was used its Bad Spaniels mark.  It registered it with the

11   Trademark Office.  There were hang tags.  It was using it to

12   identify itself, VIP Products.

13       So here in order for us to fall within Jack Daniels

14   exception, we would have to be using the mark to identify

08:38AM 15   ourselves, Mar Vista not identify THQ.  So the analysis is

16   whether we were using the title of a film to identify

17   ourselves.  And if you look carefully through the

18   counterclaim allegations, there are no allegations as to that

19   at all.  In no way does THQ make any allegations that --

08:38AM 20       THE COURT:  I'm sorry, can I interrupt?

21       MS. PAGNANELLI:  Yes.

22       THE COURT:  So you indicated that for Jack Daniels

23   to apply, Mar Vista must be using the mark to identify itself

24   as opposed to THQ.  If you could point out where that is in

08:39AM 25   Jack Daniels because what I read Jack Daniels to say is that

1    using the mark as a source identifier.

2           So to come up with a different hypothetical, um,

3    if -- if they used the, um, a different mark that was even

4    more confusing and more similar to Jack Daniels, the fact

08:39AM 5    that it didn't identify Bad Spaniels and it Jack Daniels or

6    Jack Manuals, um, I don't think that the case doesn't apply.

7    Meaning the question is it used as a source identifier not

8    does it make it clear that it's you versus the other guy.

9           MS. PAGNANELLI:  The key is identifying who.  And

08:39AM 10   if you read on page 145 --

11          THE COURT:  And I'm just gonna stop you there

12   because if that was the case, then the more you identify the

13   other party, then the less this would apply which is kind of

14   not just counter-intuitive, but I think wrong.  You're gonna

08:40AM 15   point me to something in the case.

16          MS. PAGNANELLI:  Yes.  So if you look specifically

17   at page 145 of Jack Daniels, you'll see where it says and I

18   quote, "When the accused infringer" and that would be

19   Mar Vista in this, "has used a trademark to designate the

08:40AM 20   source of its own goods," its meaning the accused infringer,

21   "in other words, has used the trademark as a trademark."

22          So the way Jack Daniels decided this was whether

23   Mar Vista was using the title as a trademark for its own

24   goods not confusingly similar to THQ.  That's a different

08:40AM 25   part of the analysis.  And I get that, um, that sometimes

1    especially in Rogers cases, there's a lot of confusion that

2    it's difficult to separate these things out, but Jack

3    Daniels, the whole point of it was does the Lanham Act apply

4    or does Rogers apply.  It didn't apply either.  It was sort

08:41AM 5    of a threshold decision.

6         And so how do you get there?  You get there by

7    saying are we -- are we using it as a trademark, we

8    Mar Vista.  And I'll bring up Barbie as an example because

9    Barbie was referred to Jack Daniels, um, approvingly.  And in

08:41AM 10   Barbie the band Aqua used Barbie Girl as the title of the

11   song.  Clearly, they were using Barbie to refer to Barbie

12   which is Mattel's doll, um, but they weren't using it to

13   identify Mattel.  That wasn't the issue.

14        The issue whether they were a source identifier for

08:42AM 15   themselves.  And as a title, which is as a title and

16   there's -- there's -- we can get to all the cases that go

17   through this is not a source identifier.

18        So here because Jack Daniels requires that

19   Mar Vista used it to identify its own goods and -- and

08:42AM 20   another quote was -- and on the Jack Daniels says "An alleged

21   infringer uses a trademark in the way that the Lanham Act

22   most cares about as a designation of source for the

23   infringer's own goods."  And that's Jack Daniels at 153.

24        So we would have needed to identify ourselves.

08:43AM 25   There is no allegations and as the Court knows under Ikbal

1    and Twombly, it has to be well pleaded.  And just like in

2    Jack Daniels, where because VIP had registered for a

3    trademark, it was using Bad Spaniels as a trademark for

4    itself, for VIP.  Regardless of the confusion, that comes

08:43AM 5    next and once it's remanded, there will be a decision on that

6    on the likelihood of confusion analysis.

7          But top level that's what Jack Daniels did.  And in

8    the history of the Rogers cases, almost always the courts

9    have found that titles in particular are not source

08:44AM 10   identifiers.  So as in the Court's analysis, um, if you get

11   past the they haven't plead any of this, even though they

12   filed a counterclaim and we were waiting for it, Your Honor.

13         We thought the reason they're amending was because

14   they're gonna alleged that we used the mark as a source

08:44AM 15   identifier.  It's now become the easy way to get out of a

16   motion to dismiss; right?  You just allege it.  Here they

17   couldn't consistent with Rule 11 alleged it because we

18   weren't using it as trademark.

19         That aside if you look at all of the 9th Circuit

08:44AM 20   Rogers cases which as you know under Punch Bowl, the

21   pre-existing Rogers cases other than this first Jack Daniels

22   threshold issue are still controlling and controlling here.

23   Um, the 9th Circuit has confirmed repeatedly that the use of

24   a title of a film or another expressive work does not serve

08:45AM 25   as an identifier as to source.  In Jack Daniels itself where

1     they say --

2               THE COURT:  If I could just interrupt you.

3               MS. PAGNANELLI:  Yes.

4               THE COURT:  So this raises one of the points that

08:45AM 5     THQ raised which is that all these cases are on summary

6     judgment.  If you could just address the extent to which --

7     to the extent courts have stated that titles are not source

8     identifiers is that just a legal truth?  The Court's reading

9     is that is based upon what they had before them on summary

08:45AM 10    judgment.

11              So to the extent that THQ is alleging hey, in this

12    world of horror and video games, titles are source

13    identifiers and we're gonna try to prove it to you later,

14    then -- then those cases don't preclude their, um, claims

08:46AM 15    from going forward so if you could address that.

16              MS. PAGNANELLI:  Yes, Your Honor.

17              So if -- if there's an allegation as to a

18    conclusion of law that is wrong, the Court really should not

19    rely on.

08:46AM 20              THE COURT:  The question is that a conclusion of

21    law that titles cannot be source identifiers.

22              MS. PAGNANELLI:  Yes.

23              So Mattel specifically says, um, at 902 that

24    consumers expect a title, and with Mattel it was the title of

08:46AM 25    a song, to communicate a message about the book or movie.

1   They do not expect it to identify the publisher or the

2   producer of the song.

3         Gordon specifically says no one would think that a

4   song or a photograph titled Barbie was created by Mattel

08:46AM 5   because consumers do not expect titles to identify the origin

6   of the work meaning the producer in that case.  And that's

7   Gordon at 270.

8         Rogers itself, Your Honor, is a title of a movie.

9   And in that case, the court held and again I'll quote,

08:47AM 10   "Though consumers frequently look to the title of a work to

11   determine what it's about, they do not regard titles of

12   artistic works in the same way as the names of ordinary

13   commercial products."  And that's Rogers at 1,000.

14         This is not an ordinary commercial product.  It's

08:47AM 15   the title of a film and we, Mar Vista could not have

16   registered this as a source identifier even if we had wanted

17   to.  Because as a matter of law, they're not allowed to be

18   registered because they're not source identifying.  And

19   that's exactly what that is.

08:47AM 20         And there are not only is it in the trademark

21   regulations, but the Federal Circuit has found and again I'll

22   quote, "The title of a single book or other creative work

23   cannot serve as a source identifier."

24         So as a matter of trademark law, titles of film for

08:48AM 25   a single work, I'm not talking about, you know, Alone in the

1    Dark 1, 2, 3, but the title of a single work, of a film, as a

2    matter of law is not a source identifier.  And the fact that

3    in the allegations THQ alleges the opposite, doesn't make the

4    law controlling.

08:48AM 5              THE COURT:  Understood.

6              Let me hear from opposing counsel.

7              MS. PAGNANELLI:  Do you want me to address the

8    second issue?

9              THE COURT:  Of the judgment on the pleadings?

08:48AM 10             MS. PAGNANELLI:  No.  You cite Gordon in a way that

11   I wanted to address.

12             THE COURT:  If you can do it quickly, sure.

13             MS. PAGNANELLI:  All right.  On the second part of

14   your analysis, you cite Gordon and state that basically

08:49AM 15   without -- the quote in Gordon that you cited, "In some

16   instances use of a trademark alone may explicitly mislead

17   consumers as to the product source."  And that is right out

18   of Gordon and out of a lot of cases.  But the next step in

19   the analysis is in Gordon, the products were identical and

08:49AM 20   there was no other expressive work.

21             Well, Gordon is the first court that ever found

22   that and it's contrary to earlier 9th Circuit law which

23   questions whether that part of Gordon is even controlling.

24   But regardless, in Dr. Seuss which came out later,

08:49AM 25   specifically limited Gordon specifically to its facts.  And

1   said the only time we apply that very limited Gordon

2   exception is one, if the marks are used in exactly the same

3   way which we will agree to for purposes of this motion to

4   dismiss.

08:50AM 5   But more importantly, two, and this is a quote, "To

6   the extent to which the junior user has added his or her own

7   expressive content to the work beyond the mark itself."  And

8   here certainly --

9   THE COURT:  Thank you.  I'm gonna -- I think I

08:50AM 10   understand the point that you're making.

11   MS. PAGNANELLI:  Okay.

12   THE COURT:  I don't necessarily disagree.  Um, you

13   saw what I said about it's kind of similar to I understand

14   that you disagree with respect to the first point about the

08:50AM 15   source identifier and whether they can make allegations that

16   when people see Alone in the Dark, they think this.  Whether

17   they can make allegations that Alone in the Dark is used as a

18   source identifier.  I think those are kind of twin points.

19   So I'll let opposing counsel respond, and then if you have

08:51AM 20   any rebuttal.  Thank you.

21   MS. PAGNANELLI:  Thank you.

22   MR. BARER:  So before we dive into the specific

23   points, uh, that opposing counsel was raising, I think it's

24   very important just understand a little bit of the context of

08:51AM 25   this case which was a little bit glossed over.

         1              So the courts have found, you know, and we have a

         2      very unique situation here where we have a video game

         3      franchise that, you know, first released a game in 1992 and

         4      then throughout the decades, they continued releasing video

08:52AM  5      games up even to March 2024 of this year.  And there have

         6      been millions of games sold.  This was a foundational game in

         7      the video game industry which, you know, basically created a

         8      new genre of video game, of mystery horror video games and

         9      there were other video games which were based on the way that

08:52AM 10      this video game was created.

        11              So when you have this kind of recognition in the

        12      marketplace of video game, and then you have a movie with the

        13      same exact name and, you know, it's -- I'll get to, you know,

        14      that McCarthy which is an extremely important treatise in

08:52AM 15      this area and other courts in this district have held in that

        16      situation consumers would expect that if a movie is the same

        17      exact name as a very popular video game franchise, that would

        18      absolutely suggest to the consumer that the movie is from the

        19      same source as the video game.

08:53AM 20              So it's -- it's respectfully, you know, not correct

        21      to say that a movie, uh, a title of a movie can never be a

        22      source identifier because in this specific situation, it

        23      certainly can be and, you know --

        24              THE COURT:  Let me just for the sake of using our

08:53AM 25      time efficiently, you know, I didn't as you saw in the

08:53AM

1     tentative, I didn't reach the question if we apply Rogers

2     what do we do. I would tend to agree with counsel for

3     Mar Vista that if we apply Rogers and in particular if we

4     apply this let's call it this test from Gordon about adding

5     expressive work that Mar Vista might prevail.

6         So I think what would be helpful for me is for you

7     to address the analysis that the Court provided, um,

8     regarding whether Rogers even applies at all.

9         I think to the extent that you relied heavily on

10     McCarthy and McCarthy is a very highly respected treatise.

11     As I read it, the portion of McCarthy that you relied upon

12     was a comment. There's sort of the treatise part and then

13     there's comments. And so it seemed clear to me that what

14     McCarthy was saying is he doesn't agree with Rogers and some

15     of the cases and this is how he thinks it should work.

16         We know it's not binding, but it's not particularly

17     persuasive because I don't have the luxury of applying the

18     law as I think it should be. I have to apply it as it is.

19     And then that's sort of similar to the situation with the

20     one District Court case that you cited which was well before

21     a lot of these other cases so I don't find that particularly

22     compelling.

23         I think what would be helpful is if you could

24     address the points raised by counsel for Mar Vista regarding

25     whether the holdings in these cases that a title cannot be a

1    source identifier or is not a source identifier, whether that

2    is a point of law that you are not permitted to disagree with

3    or that is a finding that they're making after summary

4    judgment and that would distinguish this situation.

08:55AM 5            MR. BARER:  Yeah, well, thank you.

6            But the -- so the one case actually I would like to

7    kind of point to is that when the Court, you know, when we

8    make these allegations in our complaint that, you know,

9    consumers would refer to a movie title as an indicator of

08:55AM 10   source, you know, this is not just a conclusion of law.  This

11   is something that the courts consider on a motion for summary

12   judgment.

13           And, you know, to the extent that, you know, there

14   were cases that considered issues like this on a motion to

08:56AM 15   dismiss, you know, there was much more extensive record than

16   what we have here.  So, for example, on the Jackson v.

17   Netflix case which was cited, the parties actually jointly

18   submitted a flash drive of all the issues in the case.  I'm

19   sorry.  Of all the screenshots of the way that the mark was

08:56AM 20   used.

21           But I guess getting back to the -- would Your Honor

22   prefer that I address specifically the Jack Daniels case and

23   just go in the order of the way that --

24           THE COURT:  Let's start with the question of

08:56AM 25   whether Ms. Pagnanelli indicated that it is a point of law

1    that a title cannot be a source identifier.  As you heard in

2    my discussion with her, that seemed to me a finding that

3    courts have made at the summary judgment stage in those

4    specific cases.

08:57AM 5         It's not a point of law and therefore, if you have

6    allegations that this particular title is a source

7    identifier, the Court has to give them credence on a motion

8    to dismiss.  So you heard what she said about that so if you

9    could respond.

08:57AM 10         MR. BARER:  Sure.  So in this situation where you

11    have a video game franchise which uses -- we have a movie

12    that has the same exact name as a video game franchise and it

13    is acting as a source indicator.  I would not agree --

14         THE COURT:  I'm just gonna interrupt you and just

08:57AM 15    push you on that point.  I know that that's what you believe

16    and that's what you're asserting.  Her point is that it

17    doesn't matter what you think.  The courts have found as a

18    matter of law that a title cannot be a source identifier.

19         MR. BARER:  Well, in the CI Games case, the

08:57AM 20    court --

21         THE COURT:  And that's a district court case?

22         MR. BARER:  Yeah.

23         THE COURT:  I'm looking for binding cases or

24    whatever analysis you have that indicates that that is not a

08:58AM 25    point of law and it's a finding.

1          MR. BARER:  Okay.  So I think that CI Games

2     actually is consistent with Rogers.  Sorry not Rogers, with

3     Gordon.  That, you know, first that Gordon expressly rejected

4     the contention that there has to be some explicitly

08:58AM 5     misleading statement.  Gordon looked at the situation as a

6     whole.  You need to consider all the facts and that was also

7     true in the Dr. Seuss case which came afterwards which also

8     said you need to consider all of the facts of the situation.

9          And in the facts of the situation here are that we

08:58AM 10     have this very popular video game franchise which consumers

11     would view as being the source of the movie.  If you use the

12     same exact name of the video game franchise in the movie,

13     consumers certainly look at that as being an indicator of

14     source that that's where the movie is coming from.

08:59AM 15          THE COURT:  Can you address what opposing counsel

16     said regarding Jack Daniels and let's call it the Jack

17     Daniels exception.

18          So as you heard her explain, that does not apply

19     here because whatever allegations you've made and even if a

08:59AM 20     title could be a source identifier, Mar Vista is not using

21     the title as a source identifier and could not use the title

22     to their one movie as a source identifier.

23          So the Court's analysis where it concludes that

24     Jack Daniels says Rogers does not apply is mistaken in that

08:59AM 25     regard.  Can you respond to that?

1          MR. BARER:  So in Jack Daniels, the court held that

2     if a party is using a mark in the way that the trademark most

3     cares about as a source identifier, then Rogers doesn't

4     apply.  And here, you know, because of the unique situation

09:00AM 5     that we're in where you have this video game franchise which

6     consumers expect would be the source of the title of the

7     movie, you know, you -- the title of the movie is acting as a

8     source identifier.

9          And there's -- I -- I don't think it's accurate to

09:00AM 10     say that a title of a movie can never be a source identifier.

11     It just depends on the situation.  And the, uh, Gordon which

12     expressly and I'm going back to Gordon here which is, you

13     know, but I think the issues are kind of related is that the,

14     you know, there's no, you know, one misstatement or no one

09:00AM 15     thing that a court must look at.

16          You look at the situation as a whole and, you know,

17     it's not accurate to say that the title can never be a source

18     identifier especially in a situation like this where, you

19     know, you have the, uh, you have all these consumers who are

09:01AM 20     used to looking at movies within the same names of video

21     games.

22          And the plaintiffs in this case they are movie

23     producers so they know this.  They know that, you know,

24     consumers look at movie titles and they -- when they're

09:01AM 25     identical to video games, they identify the source and they

1    would connect the movie of the title to the video game.

2              THE COURT:  Thank you.

3              Let me hear from -- I just wanted you to briefly

4    address, you saw in the tentative how the Court handled the

09:02AM 5    judgment on the pleadings.  I did want to give you a chance

6    to respond.  It seems to us that you didn't respond on the

7    judgment on the pleadings and so for that reason, um, the

8    Court finds it appropriate to grant it.  So I don't know if

9    you want to address that or if not, we can leave it as is.

09:02AM10              MR. BARER:  Yeah, with respect to the dilution

11   claim, we withdrew the dilution claim.

12              THE COURT:  Okay.  Let me hear any rebuttal and

13   then we'll close the hearing.  Thank you.

14              MS. PAGNANELLI:  Thank you, Your Honor.

09:02AM15              So just to address a couple of points that the

16   Court brought up with opposing counsel.  With respect to

17   whether or not the title of a single work can be used as a

18   source identifier, it says this explicitly in Herbko versus

19   Kappa Books which is a Federal Circuit case.

09:02AM20              THE COURT:  Can you spell the first name of the

21   case for the record?

22              MS. PAGNANELLI:  H-e-r-b-k-o International versus

23   Kappa K-a-p-p-a Books and that's at 308 F3d 1156 and the pin

24   cite would be 1162 to 63.  It's a Federal Circuit case from

09:03AM25   2002, and the Federal Circuit as the Court knows is the

1    circuit that oversees the Trademark Office.  And specifically

2    in dealing with an issue on the title of single a work, the

3    Federal Circuit has held quote, "The title of a single book

4    cannot serve as a source identifier," close quote.

09:03AM 5        The same thing was held in the PTAB, a precedential

6    decision In Re Arnold and that was in 2013.  So in addition

7    to findings not based on summary judgment, but a finding as a

8    matter of trademark law which the Federal Circuit does that a

9    single work, and I'm not talking about multiple films, a

09:04AM 10   single work, um, cannot be used as a source identifier, it's

11   a matter of trademark law and it's also a matter of

12   9th Circuit controlling authority.  All of the cases have

13   found this.  If the confusion factor were part of it, one

14   would find it very difficult to argue for Barbie or Dr. Seuss

09:04AM 15   in particular.  Um, those are very confusing.  The titles in

16   Barbie.  In addition Dr. Seuss not only were the titles of

17   the books almost identical, but the court found that the

18   alleged infringer had copied the illustrations and found

19   copyright infringement.  So the facts of those cases are so

09:05AM 20   much more egregious, but yet the court found that Rogers

21   applied and found that the titles were not source

22   identifiers.  This case is not even close to the facts in

23   those case.

24        THE COURT:  And your view would be that Rogers --

09:05AM 25   because a title can never be a source identifier that Rogers

1      would always apply when there's a title.

2              MS. PAGNANELLI:  In a title versus title case, yes,

3      Your Honor.

4              THE COURT:  Okay.  Well, thank you.  I do want to

09:05AM 5      thank the parties for your time, for the presentation of the

6      issues and for your arguments.  It was extremely helpful.

7      The Court will take these matters under submission and issue

8      its order.

9              MS. PAGNANELLI:  Thank you so much.

09:05AM 10      THE COURT:  The court stands in recess.

11              (Proceedings were concluded at 9:05 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1

 2                     CERTIFICATE OF REPORTER

 3

 4    COUNTY OF LOS ANGELES      )

 5                               )  SS.

 6    STATE OF CALIFORNIA        )

 7

 8    I, LAURA ELIAS, OFFICIAL REPORTER, IN AND FOR THE UNITED

 9    STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA,

10    DO HEREBY CERTIFY THAT I REPORTED, STENOGRAPHICALLY, THE

11    FOREGOING PROCEEDINGS AT THE TIME AND PLACE HEREINBEFORE SET

12    FORTH; THAT THE SAME WAS THEREAFTER REDUCED TO TYPEWRITTEN

13    FORM BY MEANS OF COMPUTER-AIDED TRANSCRIPTION; AND I DO

14    FURTHER CERTIFY THAT THIS IS A TRUE AND CORRECT TRANSCRIPTION

15    OF MY STENOGRAPHIC NOTES.

16

17

18    DATE:  JULY 19, 2024

19

20        /s/  LAURA MILLER ELIAS

21    LAURA MILLER ELIAS, CSR 10019

22    FEDERAL OFFICIAL COURT REPORTER

23

24

25
```