LUCIA E. COYOCA (SBN 128314)
    lec@msk.com
KARIN G. PAGNANELLI (SBN 174763)
    kgp@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA  90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

MARISSA B. LEWIS (*pro hac vice*)
    mbl@msk.com
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Ave., 25th Floor
New York, NY 10022
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

Attorneys for Plaintiffs and Counterclaim-Defendants Mar Vista Entertainment, LLC, The Ninth House, LLC, and Ninth Dark LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAR VISTA ENTERTAINMENT, LLC, THE NINTH HOUSE, LLC, and NINTH DARK LLC,<br><br>      Plaintiffs,<br><br>    v.<br><br>THQ NORDIC AB,<br><br>      Defendant. | CASE NO. 2:23-cv-06924-MEMF-SSC<br><br>Judge Maame Ewusi-Mensah Frimpong<br><br>**REPLY IN FURTHER SUPPORT OF MOTION OF PLAINTIFFS AND COUNTERCLAIM-DEFENDANTS FOR 28 U.S.C. § 1292(B) CERTIFICATION AND STAY PENDING APPEAL**<br><br>Date:     September 12, 2024<br>Time:    10:00 a.m.<br>Location: Courtroom 8B |
| THQ NORDIC AB,<br><br>      Counterclaim-Plaintiff,<br><br>    v.<br><br>MAR VISTA ENTERTAINMENT, LLC, THE NINTH HOUSE, LLC, and NINTH DARK LLC,<br><br>      Counterclaim-Defendants. | |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................................... 1

II.  THE COURT SHOULD CERTIFY THE ORDER UNDER 28 U.S.C. § 1292(b) ............ 2

    A.   THQ's Assertion That This Case Is Not "Exceptional" Misses The Point. ............. 2

    B.   All Of The Requirements Set Forth In 28 U.S.C. § 1292(b) Are Easily Met. ........ 4

        1.   The Court's Order Implicates A "Controlling Question of Law." .............. 4

        2.   There Is A "Substantial Ground For Difference of Opinion" Here. ........... 6

        3.   An Immediate Appeal May "Materially Advance" The Litigation ............. 7

III. THQ'S OTHER ARGUMENTS ARE IRRELEVANT, MISLEADING, AND INCORRECT ............................................................................................................. 8

    A.   THQ's Mischaracterization of the Court's Order ........................................................ 8

    B.   THQ's Incorrect Argument That A Single Title Merely Cannot Be Registered. .................................................................................................................. 8

    C.   THQ's Incorrect Arguments As To The "Explicitly Misleading" Prong ................ 9

IV. IF THIS COURT GRANTS CERTIFICATION, IT SHOULD IMMEDIATELY STAY THE CASE PENDING INTERLOCUTORY APPEAL ....................................... 10

V.  CONCLUSION ........................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Assoc. of Irritated Residents v. Fred Schakel Dairy*,
  634 F. Supp. 2d 1081 (E.D. Cal. 2008) ................................................................... 7

*Coopers & Lybrand v. Livesay*,
  437 U.S. 463 (1978) ................................................................................................ 3

*Couch v. Telescope Inc.*,
  611 F.3d 629 (9th Cir. 2010) .................................................................................. 6

*Dahlstrom v. Sun-Times Media, LLC*,
  39 F. Supp. 3d 998 (N.D. Ill. 2014) .................................................................... 3, 4

*Dr. Seuss Enters. L.P. v. ComicMix LLC*,
  983 F.3d 443 (9th Cir. 2020) ............................................................................ 9, 10

*Gillespie v. Centerra Servs. Int'l, Inc.*,
  2022 WL 18584762 (C.D. Cal. Oct. 26, 2022) ...................................................... 2

*Gordon v. Drape Creative, Inc.*,
  909 F.3d 257 (9th Cir. 2018) ..................................................................... 3, 4, 9, 10

*Herbko Int'l, Inc. v. Kappa Books, Inc.*,
  308 F.3d 1156 (Fed. Cir. 2002) ........................................................................... 8, 9

*In re Cement Antitrust Litig.*,
  673 F.2d 1020 (9th Cir. 1981) ......................................................................... 2, 5, 7

*Jack Daniel's Props., Inc. v. VIP Prod. LLC*,
  599 U.S. 140 (2023) ......................................................................................*passim*

*Lear Siegler, Inc. v. Adkins*,
  330 F.2d 595 (9th Cir. 1964) .................................................................................. 3

*Mattel, Inc. v. MCA Records, Inc.*,
  296 F.3d 894 (9th Cir. 2002) ........................................................................ 5, 9, 10

*McFarlin v. Conseco Servs., LLC*,
  381 F.3d 1251 (11th Cir. 2004) .............................................................................. 3

*Mershon Co. v. Pachmayr*,
  220 F.2d 879 (9th Cir. 1955) .................................................................................. 7

*MGFB Props., Inc. v. Viacom Inc.*,
  54 F.4th 670 (11th Cir. 2022) ................................................................................ 4

*Nat'l Ass'n of Afr.-Am. Owned Media v. Charter Commc'ns, Inc.*,
  2016 WL 10647193 (C.D. Cal. Dec. 12, 2016) ..................................................... 5

ii

**REPLY ISO MOTION FOR 28 U.S.C. § 1292(B) CERTIFICATION AND STAY PENDING APPEAL**

Mitchell Silberberg & Knupp LLP

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*New W. Corp. v. NYM Co. of Cal.*,
 595 F.2d 1194 (9th Cir. 1979) ................................................................................ 7

*Reese v. BP Expl. (Ala.) Inc.*,
 643 F.3d 681 (9th Cir. 2011) .................................................................................. 6

*Reflex Media, Inc. v. Pilgrim Studios, Inc.*,
 2018 WL 6566561 (C.D. Cal. Aug. 27, 2018) ..................................................... 10

*Rogers v. Grimaldi*,
 875 F.2d 994 (2d Cir. 1989) ........................................................................ *passim*

*Rollins v. Dignity Health*,
 2014 WL 6693891 (N.D. Cal. Nov. 26, 2014) ...................................................... 5

*Sunbeam Lighting Co. v. Sunbeam Corp.*,
 183 F.2d 969 (9th Cir. 1950) .................................................................................. 7

*Twentieth Century Fox Television v. Empire Distrib., Inc.*,
 875 F.3d 1192 (9th Cir. 2017) ................................................................................ 3

*U.S. v. Woodbury*,
 263 F.2d 784 (9th Cir. 1959) ............................................................................. 3, 5

### STATUTES

28 U.S.C. § 1292(b) ............................................................................................ *passim*

### OTHER AUTHORITIES

U.S. Patent and Trademark Office, Annual Performance Report, Fiscal Year 2023,
 Workload Table 15, https://www.uspto.gov/about-us/performance-and-
 planning/uspto-annual-reports ............................................................................... 1

I.     **INTRODUCTION**[1]

There are more than three million trademarks actively registered with the U.S. Patent and Trademark Office,[2] and countless more that are unregistered. Creators should not face the substantial costs of litigation whenever they choose a title that contains the same words as one of those marks. Fortunately, it has long been held that First Amendment "interests in artistic expression" protect a creator's selection of a title against a claim "that some members of the public would draw the incorrect inference [from the title] that [the trademark holder] had some involvement with the film." *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). The Supreme Court's explicitly "narrow" opinion in *Jack Daniel's Props., Inc. v. VIP Prod. LLC*, 599 U.S. 140 (2023), expressly did not eliminate the *Rogers* test's basic protection for the selection of the title of a creative work. But this Court's Order calls that basic protection into question at the pleading stage, upending the careful First Amendment balance struck by *Rogers* and reflected in industry practice, which generally tolerates the use of the same title for unrelated expressive works. This holds true even when two (or more) works with the same title are in same genre, and especially when the title is fairly common or descriptive.[3] The uncertainty now percolating in the wake of the Order has unfortunately disturbed the longstanding precedent and practice regarding similarly titled expressive works, and presents an issue worthy of interlocutory review.

THQ's Opposition largely ignores the legal standards that warrant certifying the Court's Order under 28 U.S.C. § 1292(b). Contrary to THQ's bluster, all three statutory requirements are satisfied, and allowing an immediate appeal would advance the primary purpose of § 1292(b), namely, to avoid wasting judicial and party resources on litigating issues that may be mooted or

---

[1] All capitalized defined terms used herein shall have the same meaning as given in Mar Vista's Motion for Certification and Stay Pending Appeal (Dkt. No. 60) ("Motion" or "Mot."). THQ's memorandum in opposition thereto (Dkt. No. 62) is cited herein as "Opposition" or "Opp."

[2] *See* U.S. Patent and Trademark Office, Annual Performance Report, Fiscal Year 2023, Workload Table 15, https://www.uspto.gov/about-us/performance-and-planning/uspto-annual-reports.

[3] It is not uncommon for unrelated expressive works to have the same or similar titles. *See, e.g.*, https://www.imdb.com/list/ls000397020/ (listing "[m]ovies that aren't remakes, sequels, or related to the other work in any way, but share the same or similar titles," such as "Man of the House," "The Brave One," and "The Girl Next Door"). In fact, there is a horror film titled "Alone in the Dark" that pre-dates THQ's original video game. *See* https://www.imdb.com/title/tt0083542/ (unrelated "Alone in the Dark" film released in 1982); Am. Countercl. ¶ 11 (Dkt. No.25) (game first released in 1992).

narrowed by a subsequent appeal.  THQ does not dispute that early guidance from the Ninth Circuit on the question Mar Vista seeks to certify—*i.e.*, which party's use is relevant in determining whether the mark was used "as a source identifier" under *Jack Daniel's*—may obviate the need for time-consuming and expensive litigation on the application of the *Rogers* test, and on the notoriously fact-intensive likelihood-of-confusion inquiry.

Indeed, such an appeal is critical to provide certainty not only for this case, but also to an entire industry that has long relied on *Rogers* to prevent trademark owners from inappropriately weaponizing the Lanham Act to chill creators' artistic expression.  The First Amendment interests at stake for Mar Vista in this case are significant, and the impact of the Court's Order on the entertainment industry is enormous, and not what the Supreme Court contemplated in its "narrow" decision involving a dog toy brand in *Jack Daniel's*.  For these reasons, and as discussed further herein, an immediate interlocutory appeal of the Court's Order is warranted and appropriate.

## II.   THE COURT SHOULD CERTIFY THE ORDER UNDER 28 U.S.C. § 1292(b)

### A.   THQ's Assertion That This Case Is Not "Exceptional" Misses The Point.

All three statutory requirements set forth in § 1292(b) are met in this case, thereby establishing that the Court's Order should be certified for interlocutory appeal.  Unable to argue to the contrary, THQ confusingly seeks to impose its own "fourth" requirement:  a requirement that Mar Vista additionally show "exceptional circumstances" to warrant an interlocutory appeal.  Opp. at 2-3, 12.  The law imposes no such requirement.  While § 1292(b) may be applied only in "exceptional cases," a case is considered "exceptional"—and thus eligible for interlocutory appeal—where, as here, "allowing an interlocutory appeal would avoid protracted and expensive litigation."  *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981) (citations omitted); *accord Gillespie v. Centerra Servs. Int'l, Inc.*, 2022 WL 18584762, at *2 (C.D. Cal. Oct. 26, 2022) ("A district court should grant an interlocutory appeal 'only in exceptional situations in which allowing [such an appeal] would avoid protracted and expensive litigation.'").

As explained (Mot. at 17-19), an interlocutory appeal would obviate the need for time-consuming and expensive discovery on both the application of the *Rogers* test and the likelihood

of confusion factors. THQ tellingly does not refute this.[4] Instead, THQ maintains "this case is not exceptional" because Mar Vista purportedly has only a "slight" First Amendment interest in its film title. Opp. at 3. THQ fails to cite any decision in which a court deemed a case ***not*** "exceptional" for purposes of § 1292(b) based on the ***absence*** of First Amendment interests. That is because the presence of First Amendment interests is not a requirement, but rather a plus factor that "weigh[s] in favor of allowing an immediate appeal[,]" "[b]ecause First Amendment litigation chills speech." *Dahlstrom v. Sun-Times Media, LLC*, 39 F. Supp. 3d 998, 1001 (N.D. Ill. 2014).

Here, the First Amendment interests are significant. THQ's argument that Mar Vista's film title receives "lesser First Amendment protection" seems to be premised on a fundamental misunderstanding of a footnote in *Rogers*, 875 F.2d at 999 n.5 (referred to herein as the "*Rogers* footnote"), which discusses the second prong of the *Rogers* test in the context of a "title-versus-title" dispute. Opp. at 4. That footnote has nothing to do with certification under § 1292(b).[5] Further, the Ninth Circuit has explicitly rejected the application of the *Rogers* footnote in cases involving expressive works. *See Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192, 1199 (9th Cir. 2017).[6] And regardless, "[t]he First Amendment calculus doesn't change

---

[4] Even the out-of-circuit case that THQ misleadingly cites for its notion that interlocutory appeals are "bad policy" support granting § 1292(b) certification here. *See* Opp. at 2 (quoting *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1257, 1259 (11th Cir. 2004) ("Congress intended § 1292(b) to address" the "type of situation" where, "[h]ad the court of appeals entertained [interlocutory review] and [reversed the denial of the motion to dismiss], it would have resulted in a saving of the time of the district court and considerable expense on the part of the litigants")). The other cases THQ cites (Opp. at 2) either "allow[ed] the [interlocutory] appeal," *Lear Siegler, Inc. v. Adkins*, 330 F.2d 595, 598 (9th Cir. 1964), or are highly distinguishable from the facts of this case because, for example, unlike here, the interlocutory order "turn[ed] on the facts of [the] particular case," *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 476 (1978) (refusing interlocutory appeal of order denying class certification), or was "collateral to the basic issue[s] of the case," *U.S. v. Woodbury*, 263 F.2d 784, 786 (9th Cir. 1959) (refusing interlocutory appeal of order on "whether the government is entitled to withhold [certain] documents under a claim of privilege").

[5] THQ is correct that "[t]here is no threshold test working to kick out ***all*** cases involving 'expressive works.'" Opp. at 3 (quoting *Jack Daniel's*, 599 U.S. at 161) (emphasis added). But THQ's reliance on this language is misplaced. *Jack Daniel's* does not involve any expressive work, let alone a "title-versus-title" dispute, and the quoted language has no connection to the *Rogers* footnote.

[6] Contrary to THQ's misleading assertion, Mar Vista has not overstated the import of *Empire*. *Empire*, 875 F.3d at 1197 ("title-versus-title" footnote "may be ill-advised or unnecessary" and "conflicts with [Ninth Circuit] precedents, which 'dictate that we apply the *Rogers* test in [trademark] cases involving expressive works'") (citation omitted). THQ simply is wrong in asserting that the Ninth Circuit "approvingly cited [the *Rogers*] footnote" in *Gordon v. Drape*

just because …. both parties are using a trademark in the title of an artistic work." *MGFB Props., Inc. v. Viacom Inc.*, 54 F.4th 670, 685-86 (11th Cir. 2022) (Brasher, J., concurring) ("titles … [are] an area where First Amendment protection should arguably be higher, not lower").

Mar Vista, along with all other filmmakers and creators in the entertainment and artistic industries, have strong First Amendment interests in selecting artistically relevant titles for their expressive works, without being blocked by the millions of registered (and still more unregistered) trademarks. All creators heeding this Court's Order must uncloak themselves from the relative immunity they previously had to select artistically relevant titles for their works, and check their desired titles against millions of marks or risk facing costly and protracted trademark litigation. An immediate appeal is warranted to avoid chilling speech and to guide creators as to how they can title their works. *See Dahlstrom*, 39 F. Supp. 3d at 1001.

### B. All Of The Requirements Set Forth In 28 U.S.C. § 1292(b) Are Easily Met.

#### 1. The Court's Order Implicates A "Controlling Question of Law."

THQ does not dispute, and thus concedes, that the question Mar Vista seeks to certify—*i.e.*, "whether, under *Jack Daniel's*, the court should analyze the accused infringer's use or the trademark owner's use in determining if the trademark was used as a source-identifier" (Mot. at 13)—is a "controlling question of law." This is a purely legal question, whose resolution materially affects the outcome of this case (and impacts the entertainment industry as a whole) because it bears on the threshold question whether the *Rogers* test (and thus the First Amendment) applies.

THQ's Opposition attacks the ***wrong question***—*i.e.*, "whether a mark is being used as a source identifier" (Opp. at 6)—and thus has no bearing on whether the question actually raised in Mar Vista's Motion (at 1, 13) constitutes a "controlling question of law." *See* Opp. at 5 ("Whether a trademark functions as a source identifier under *Jack Daniel's* [ ] is not a pure question of law."); *id.* at 6 ("[T]he *Jack Daniel's* analysis, i.e., whether a mark is being used as a source identifier, is a question of 'fact' …. [o]r, at the very least, … has underlying questions of fact."). While THQ's question may be relevant to the *Jack Daniel's* analysis generally, it is not the question Mar Vista

---

*Creative, Inc.*, 909 F.3d 257 (9th Cir. 2018), "for the principle that confusingly similar titles receives lesser First Amendment protection." Opp. at 4. Regardless, any suggestion in *Gordon* that the Ninth Circuit approves of the *Rogers* footnote is not good law. *See* Dkt. No. 43 at 8, n.11.

4

**REPLY ISO MOTION FOR 28 U.S.C. § 1292(B) CERTIFICATION AND STAY PENDING APPEAL**

seeks to certify. *See Nat'l Ass'n of Afr.-Am. Owned Media v. Charter Commc'ns, Inc.*, 2016 WL 10647193, at *4 (C.D. Cal. Dec. 12, 2016) ("if there is one question supporting certification, then the entire order is certified for appeal"). In any event, like the question raised by Mar Vista, THQ's question also is a purely legal one in this case because the use at issue is the title of a single film.[7]

THQ also contends that the question raised by Mar Vista is not "controlling" because, according to THQ, the Court "likely would not have dismissed THQ's counterclaims had it applied *Rogers*." Opp. at 7. As an initial matter, this contention contradicts the Court's own statement at the hearing on Mar Vista's Motion to Dismiss. *See* Dkt. No. 60-1 at 14:2-5 (stating it "would tend to agree with counsel for Mar Vista that if we apply *Rogers* … Mar Vista might prevail"). It also is immaterial, because it is well-established by the Ninth Circuit that a question need not be "dispositive of the lawsuit in order to be regarded as controlling" for purposes of § 1292(b). *Woodbury*, 263 F.2d at 787. "[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." *In re Cement*, 673 F.2d at 1026. This standard is readily met here. Indeed, even if, hypothetically, the Ninth Circuit narrowly reversed the Order and remanded with instructions to focus exclusively on Mar Vista's use for purposes of the *Jack Daniel's* threshold inquiry, this litigation would take a decidedly different path—one that would require considerably less discovery and would be more likely to end quickly and without a trial. *See* Mot. at 14 (collecting cases); *Rollins v. Dignity Health*, 2014 WL 6693891, at *2 (N.D. Cal. Nov. 26, 2014) ("controlling question of law" requirement met where reversal would cause "the litigation [to] take a decidedly different path" and "significantly" impact "costs of discovery"). THQ does not argue differently.

THQ's remaining arguments in this section of THQ's Opposition are so far afield from the "controlling question of law" requirement that they should warrant no discussion. But since THQ

---

[7] There is no question of fact as to whether the use at issue in this case—*i.e.*, the title of a single film—constitutes "use as a source identifier." As a matter of law, it does not. *See* Dkt. No. 30 at 14-15. The fact that the use at issue in *Jack Daniel's*—*i.e.*, the brand name of a consumer product—may have presented a question of fact (Opp. at 6) is inapposite to the issue here. Likewise, THQ's assertion that a jury must decide "how an ordinary person [ ] would" perceive the title of a single expressive work (*id.* (citation omitted)), is refuted by direct, controlling law. *See Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900, 902 (9th Cir. 2002) ("[c]onsumers … do not expect [a title of a single expressive work] to identify the publisher or producer").

mischaracterizes the Order (Opp. at 6-7) and makes incorrect statements of law (*id.* at 7-9), Mar Vista will address them. To avoid distracting from the pertinent analysis for § 1292(b) certification, Mar Vista separately addresses THQ's irrelevant arguments in Section III below.

### 2. There Is A "Substantial Ground For Difference of Opinion" Here.

As for the second statutory requirement, there is a "substantial ground for difference of opinion" as to which party's use is the proper focus of the *Jack Daniel's* source-identification inquiry. *See* Mot. at 14-17. THQ again misstates the standard in its Opposition. According to THQ, the "substantial ground for difference of opinion" requirement is met only where there is a circuit split on the question posed, a complicated question of foreign law, or a novel or difficult question of first impression. *See* Opp. at 9. While these are instances in which "[c]ourts traditionally will find that a substantial ground for difference of opinion exists," *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010), the Ninth Circuit never has held that this list is exhaustive. To the contrary, the Ninth Circuit has rejected "formalistic requirement[s]" and embraced a "flexible approach . . . towards interlocutory appeals." *Reese v. BP Expl. (Ala.) Inc.*, 643 F.3d 681, 688 n.5 (9th Cir. 2011). As long as there is some "uncertainty" in the law that "provides a credible basis for a difference of opinion on the issue," such that "reasonable judges might differ," the "substantial ground for difference of opinion" requirement is met. *Id.* at 688.

Given that the Supreme Court did not specifically articulate any operative test, the *Jack Daniel's* source-identification inquiry has injected at least some "uncertainty" into the decades-old *Rogers* jurisprudence such that "reasonable judges might differ" on the proper analysis. *See* Mot. at 14-17. None of the arguments in THQ's Opposition (at 9-11) detracts from this conclusion. The Ninth Circuit has made clear that "interlocutory appellate jurisdiction does not turn on a prior court's having reached conclusion adverse to that from which appellants seek relief." *Reese*, 643 F.3d at 688.[8] Further, THQ's argument that the question is "not novel" not only addresses the wrong question, but is premised entirely on pre-*Jack Daniel's* (and even pre-*Rogers*) cases. Opp.

---

[8] Ironically, in arguing that Mar Vista has not cited any cases reaching a "contradictory conclusion," THQ effectively concedes that this Court's consideration of THQ's use (*i.e.*, the trademark owner's use) conflicts with the great weight of authority. *See* Opp. at 10 ("Each case cited in the [M]otion has, according to Mar Vista, focused on the accused infringer's use.").

at 11. Such cases cannot possibly "grapple[] with," let alone "decide[]" (*id.*), which party's use is the proper focus of the *Jack Daniel's* inquiry.[9] Simply put, no matter how many pre-*Jack Daniel's* cases THQ cites, it is impossible to avoid the conclusion that the proper focus of the *Jack Daniel's* threshold inquiry is a "novel" question about which "reasonable judges might differ." Accordingly, even under THQ's erroneously narrow statement of the standard, the "substantial ground for difference of opinion" requirement is met.

### 3. An Immediate Appeal May "Materially Advance" The Litigation.

The final requirement—*i.e.*, "that an immediate appeal from the order may materially advance the ultimate termination of the litigation"—is easily met because allowing an appeal of the Order may, and likely would, "avoid protracted and expensive (but ultimately unnecessary) litigation." Mot. at 18-19 (citation omitted). THQ's arguments in its Opposition (at 11-12) mirror those asserted as to the other statutory requirements (*id.* at 4-9) and are unavailing for the reasons already discussed.

For example, THQ argues that the "material advancement" requirement is not met because a reversal of the Court's Order "likely would not [result in] dismiss[al]" of the case. *Id.* at 11. But, again, THQ ignores Ninth Circuit law; "the Ninth Circuit has not limited [§] 1292(b) [certification] to actions where the question is dispositive of the entire action." *Assoc. of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1093 (E.D. Cal. 2008) (citation omitted). As long as an immediate appeal "may" "appreciably shorten the time, effort, or expense, of conducting" the district court case, this requirement is met. *In re Cement*, 673 F.2d at 1027. That is precisely the case here. THQ does not and cannot dispute that, absent an interlocutory appeal, this case is expected to include extensive discovery, experts, and motion practice on otherwise irrelevant issues such as the likelihood of confusion. *See* Mot. at 17-19. Likewise, THQ's assertion that the Ninth Circuit's early instruction would not "materially advance" the litigation because "courts for

---

[9] These cases are not even relevant to the question raised in THQ's Opposition, *i.e.*, whether the accused infringer used the trademark at issue as a source-identifier. In *Sunbeam Lighting Co. v. Sunbeam Corp.*, 183 F.2d 969 (9th Cir. 1950), the court considered the strength and scope of the claimant's trademark rights. *Id.* at 971-72. Similarly, the court in *Mershon Co. v. Pachmayr*, 220 F.2d 879 (9th Cir. 1955), considered the validity of the claimant's trademark rights. *Id.* at 883. In *New W. Corp. v. NYM Co. of Cal.*, 595 F.2d 1194 (9th Cir. 1979), the issue was which party had prior rights in the trademark by virtue of their earlier use in commerce. *Id.* at 1199-1200.

decades have grappled with and decided whether a mark is being used to indicate a source" is entirely immaterial, as are the pre-*Jack Daniel's* cases that it cites. Opp. at 12.

### III. THQ'S OTHER ARGUMENTS ARE IRRELEVANT, MISLEADING, AND INCORRECT

As noted *supra*, THQ spends a substantial portion of its Opposition (at 6-9) on arguments that have nothing to do with § 1292(b) and instead go to the merits of the Court's Order. To be clear, this is not a motion for reconsideration. In addition to being irrelevant, THQ's arguments are misleading and incorrect for the reasons briefly discussed below.

#### A. THQ's Mischaracterization of the Court's Order.

THQ misleadingly declares that the Court "considered how **Mar Vista used** [the] mark." Opp. at 6. But THQ fails to cite a single allegation that says Mar Vista used *Alone in the Dark* to identify itself as the source or producer of the film. The allegations referenced in THQ's Opposition (at 6) (and recited in the Court's Order (at 5)) are boilerplate likelihood of confusion allegations. *See* Am. Countercl. ¶¶ 43-47. In any event, the Court's conclusion that *Alone in the Dark* "can function as a trademark" was explicitly based on **THQ's use** of the mark for its video game series (Order at 6)—which, according to the weight of authority (Mot. at 7-8, 14-17), is not the proper inquiry. Had the Court focused exclusively on Mar Vista's use as the title of a single film, the law would have dictated that the *Rogers* test applies.

#### B. THQ's Incorrect Argument That A Single Title Merely Cannot Be Registered.

THQ incorrectly asserts in its Opposition (at 6) that the Court's well-supported conclusion that "the title of a single creative work cannot serve as a source identifier as a matter of law" (Order at 6-7) applies only in the context of trademark registration. But the case law on this point is not so limited. For instance, in *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156 (Fed. Cir. 2002), the Federal Circuit stated—without restriction—that "the publication of a single [work] cannot create, as a matter of law, an association between the [work]'s title (the alleged mark) and the source of [work] (the publisher)." *Id.* at 1163.

This decades-long understanding has not produced—and would not produce—the absurdities suggested by THQ's hypothetical fake sequels. *See* Opp. at 7. When the accused

infringer presents its work as a *sequel* in a well-known franchise—as may be the case for THQ's fake titles "The Godfather 4," "The Fast and the Furious 12," and "Harry Potter and the Illusory Trademark"—that use may be found "explicitly misleading," depending on the context and content of the accused infringer's work. *Cf. Mattel*, 296 F.3d at 902; *Dr. Seuss Enters. L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020). But the use of the ominous, commonplace phrase "Alone in the Dark" as the title of a single and otherwise original, feature-length horror film is not comparable. THQ's fake sequels are addressed by properly applying the *Rogers* test's second prong, not by circumventing the *Rogers* test for all film titles, as THQ urges this Court to do here.

### C. THQ's Incorrect Arguments As To The "Explicitly Misleading" Prong.

There is no dispute that the Court did not reach the *Rogers* test in its Order. Thus, THQ's arguments pertaining to the test's second prong—*i.e.*, whether the use is "explicitly misleading"—have no bearing on whether the Order should be certified under § 1292(b). Additionally, each of THQ's arguments is wrong. **First**, THQ argues the "explicitly misleading" prong is "ordinarily a question for a 'jury.'" Opp. at 8 (quoting *Gordon*, 909 F.3d at 261). Not so. The Ninth Circuit in *Gordon* was clear that both prongs of the *Rogers* test almost always are decided **as a matter of law**. *See Gordon*, 909 F.3d at 261 ("Although on every prior occasion in which we have applied the [*Rogers*] test, we have found that it barred an infringement claim as a matter of law, this case presents a triable issue of fact."); *id.* at 268 ("In each of the cases coming before our court, the evidence was such that no reasonable jury could have found for the plaintiff on either prong of the *Rogers* test, and we therefore concluded that the plaintiff's Lanham Act claim failed as a matter of law. This case, however, demonstrates *Rogers*'s outer limits."). This is consistent with the legions of cases resolving the *Rogers* test on motions to dismiss. *See* Dkt. No. 30 at 2-3 (collecting cases).

**Second**, THQ argues that the "explicitly misleading" prong cannot be resolved on a motion to dismiss in this case because THQ's allegations create a "reasonable inference … that consumers would ordinarily identify the source of a movie by the title alone." Opp. at 8 (citation omitted). THQ's argument contradicts the Ninth Circuit's holding that "[c]onsumers … do not expect [a title] to identify the publisher or producer," *Mattel*, 296 F.3d at 900, 902, and would eliminate for films the "high bar" set by the "explicitly misleading" prong, *Dr. Seuss*, 983 F.3d at 462. *See also*,

*e.g.*, *Reflex Media, Inc. v. Pilgrim Studios, Inc.*, 2018 WL 6566561, at *6 (C.D. Cal. Aug. 27, 2018) (granting motion to dismiss trademark claims on *Rogers* grounds for failure to adequately allege "an explicit indication, overt claim, or explicit misstatement" as to the content or source of the work at issue). Simply put, precedent forecloses THQ's contention.

*Finally*, THQ argues that Mar Vista "uses the mark in the same way" as THQ. Opp. at 8. But this is true in virtually every "title-versus-title" case. As the Ninth Circuit has explained, the accused infringer's use of a similar title in a similar way as the trademark owner is not "explicitly misleading" where, as here, the accused infringer has added expressive content beyond the mark. *See Gordon*, 909 F.3d at 270-71 (the concern that consumers will "be 'misled as to the source of [a] product' is generally allayed when the mark is used as only one component of a junior user's larger expressive creation"); *Dr. Seuss*, 983 F.3d at 463 (finding use was not "explicitly misleading," and affirming dismissal on *Rogers* grounds, where "[defendant] used the marks in an illustrated book just as Seuss did, but unlike with the greeting cards in *Gordon*, [defendant] added expressive content to the work beyond the mark itself") (cleaned up). THQ does not and cannot dispute that Mar Vista's film contains substantial expressive content beyond the title.

## IV. IF THIS COURT GRANTS CERTIFICATION, IT SHOULD IMMEDIATELY STAY THE CASE PENDING INTERLOCUTORY APPEAL

There is no dispute that if this Court certifies the Order for interlocutory appeal, this case should be stayed during the pendency of the appeal. *See* Mot. at 19-20 (requirements for a stay are met); *see also* Opp. at 12-13 ("if this Court certifies its Order for interlocutory appeal and the Ninth Circuit accepts jurisdiction[,] … THQ will not oppose Mar Vista's request for a stay").

## V. CONCLUSION

For the foregoing reasons and those set forth in Mar Vista's Motion, Mar Vista respectfully requests that the Court certify the Order under 28 U.S.C. § 1292(b) and issue a stay pending appeal.

| | | |
|---|---|---|
| 1 | DATED: AUGUST 23, 2024 | LUCIA E. COYOCA |
| 2 | | KARIN G. PAGNANELLI |
| | | MARISSA B. LEWIS |
| 3 | | MITCHELL SILBERBERG & KNUPP LLP |

By: */s/ Karin G. Pagnanelli*
    Lucia E. Coyoca (SBN 128314)
    Karin G. Pagnanelli (SBN 174763)
    Marissa B. Lewis (*pro hac vice*)
    Attorneys for Plaintiffs and Counterclaim-Defendants Mar Vista Entertainment, LLC, The Ninth House LLC, and Ninth Dark LLC

Mitchell Silberberg & Knupp LLP

11

**REPLY ISO MOTION FOR 28 U.S.C. § 1292(B) CERTIFICATION AND STAY PENDING APPEAL**

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs and Counterclaim-Defendants Mar Vista Entertainment, LLC, The Ninth House, LLC, and Ninth Dark LLC certifies that this brief is 10 words and 4,431 pages, which complies with the word limit set forth in Local Rule 11-6.1 and the page limit set forth in Rule VIII.C of the Honorable Judge Maame Ewusi-Mensah Frimpong's Civil Standing Order.

DATED: August 23, 2024                    */s/ Karin G. Pagnanelli*
                                                     Karin G. Pagnanelli