JOHN K. LY (SBN 247477)
Email: jly@lianglyllp.com
JENNIFER CHOR (SBN 352577)
Email: jchor@lianglyllp.com
LIANG LY LLP
601 South Figueroa Street
Suite 1950
Los Angeles, California 90017
Telephone: (213) 262-8000
Facsimile: (213) 335-7776

BEN NATTER (Admitted pro hac vice)
Email: bnatter@haugpartners.com
MICHAEL BARER (Admitted pro hac vice)
Email: mbarer@haugpartners.com
HAUG PARTNERS LLP
745 Fifth Avenue, 10th Floor
New York, NY 10151
Telephone: (212) 588-0800
Facsimile: (212) 588-0801
*Attorneys for Defendant THQ Nordic AB*

*[Additional counsel on signature page]*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Mar Vista Entertainment, LLC, The Ninth House LLC, and Ninth Dark LLC,

    Plaintiffs/Counter-Defendants,

vs.

THQ NORDIC AB,

    Defendant/Counter-Plaintiff.

CASE NO. 2:23-cv-06924-MEMF-SSC

Discovery Document: Referred to Magistrate Judge Steve Kim

**JOINT STIPULATION PURSUANT TO L.R. 37-2 RE DEFENDANT THQ NORDIC AB'S MOTION TO COMPEL**

Filed concurrently with Declaration of Michael Barer

**Hearing Information**
Date:      April 9, 2025
Time:      10:00 a.m.
Crtrm:    540

Discovery Cutoff:    May 16, 2025
Pretrial Conference:  January 7, 2026
Trial Date:        January 26, 2026

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. i

I.   INTRODUCTORY STATEMENTS .................................................... 1

     A.   Defendant THQ Nordic AB.'s Introductory Statement ......................... 1

     B.   Plaintiffs' Introductory Statement ........................................................ 4

II.  SUMMARY OF DISPUTED ISSUES ................................................ 8

     A.   THQ's Position ...................................................................................... 8

     B.   Plaintiffs' Position ................................................................................ 9

III. STATEMENT OF FACTS ................................................................... 9

     A.   THQ's Position ...................................................................................... 9

          1)   Plaintiffs Must Timely Complete Document Production ........... 9

          2)   Plaintiffs Must Appropriately Supplement Their
               Interrogatory Responses And Serve Verifications .................... 13

     B.   Plaintiffs' Position .............................................................................. 14

IV.  ARGUMENT ....................................................................................... 14

     THQ's Position ............................................................................................ 14

     Plaintiffs' Position ...................................................................................... 18

     THQ's Position ............................................................................................ 19

     Plaintiffs' Position ...................................................................................... 20

     Plaintiffs' Position ...................................................................................... 21

     THQ's Position ............................................................................................ 22

     Plaintiffs' Position ...................................................................................... 23

     THQ's Position ............................................................................................ 23

     Plaintiffs' Position ...................................................................................... 24

     THQ's Position ............................................................................................ 25

     Plaintiffs' Position ...................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*AMF Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979) ....................................................................21, 25

*Bonner v. Cnty. of Los Angeles*,
    No. CV 15-8885 GW (SSX), 2017 WL 10509044
    (C.D. Cal. May 19, 2017).............................................................................8

*Hawkins v. Kroger*,
    2019 WL 4416132 (S.D. Cal. Sept. 16, 2019) ...........................................24

*Reinsdorf v. Skechers U.S.A., Inc.*,
    No. CV1007181DDPSSX, 2012 WL 12878325
    (C.D. Cal. Jan. 30, 2012).............................................................................8

**Rules**

8B Fed. Prac. & Proc. Civ. § 2172 ...........................................................24

Fed. R. Civ. P. 34(b)(2)(B)...........................................................14, 19, 20

The parties respectfully submit the within joint stipulation pursuant to Local Rule 37 and Your Honor's individual practices. The current discovery cutoff date is May 16, 2025.

The Court has not entered a Scheduling Order in this case, though the parties filed a Joint Scheduling Worksheet with a proposed schedule on July 16, 2024 (Dkt. No. 58). On February 28, 2025, the parties filed a Proposed Order and Stipulation (Dkt. No. 79) requesting, among other things, that the fact discovery cut-off be set for September 16, 2025; that the final pretrial conference be set for May 5, 2026; and that the trial date be set for May 26, 2026. The Court has not yet granted this request.

## I.    INTRODUCTORY STATEMENTS

### A.    Defendant THQ Nordic AB.'s Introductory Statement

As outlined below, plaintiffs and counter-defendants Mar Vista Entertainment, LLC, The Ninth House LLC, and Ninth Dark LLC ("Plaintiffs") have decided, apparently, that discovery deadlines should not apply to them, and they should be permitted to delay any production of discovery for however long they please. Indeed, as of the drafting of this stipulation, March 6, 2025, Plaintiffs only *just* made their first production of documents on March 4, 2025, totaling only 241 pages. This must stop. A court order is necessary to set a firm deadline by which all of Plaintiffs' documentary discovery must be complete.[1]

By way of background, defendant and counter-claimant THQ Nordic AB ("THQ") owns the rights to a number of storied video game franchises, including

---

[1] While Plaintiffs may assert that they had filed a Motion for Certification and Stay Pending Appeal, discovery was never actually stayed, and THQ never consented to stay discovery while the motion was pending. THQ further never agreed (and the parties never seriously considered) any proposal to bifurcate or limit discovery. To the contrary, THQ repeatedly told Plaintiffs that it would *not* agree to a stay. (Declaration of Michael Barer ("Barer Decl."), ¶¶ 3, 15, Ex. C.)

ALONE IN THE DARK®. First released in 1992, ALONE IN THE DARK® was the first 3D survival horror game ever created. Since its release, ALONE IN THE DARK® has been known as the "father of the survival horror" genre, winning numerous gaming and industry awards. Indeed, ALONE IN THE DARK® has strongly influenced the creation of other games, such as Resident Evil and Silent Hill. Millions of copies of the ALONE IN THE DARK® video games have been sold since its release.

Due to the popularity and fame of the ALONE IN THE DARK® franchise, THQ Nordic and its predecessors licensed the rights for two ALONE IN THE DARK® films, released in 2005 and 2008.

It is common practice, and consumers expect, that movies will be released based on popular video games, this is especially prevalent in the mystery/horror genre, of which ALONE IN THE DARK® series is a part.

In or around October 2022, plaintiffs Mar Vista Entertainment, LLC, The Ninth House LLC, and Ninth Dark LLC ("Plaintiffs") released a film with the identical title, "Alone in the Dark" (the "Infringing Alone in the Dark Film"). Like THQ Nordic's ALONE IN THE DARK® franchise and film adaptations, the Infringing Alone in the Dark Film is a horror film with a mystery element. Additionally, Plaintiffs market the Infringing Alone in the Dark Film through the same channels as THQ's ALONE IN THE DARK® video games, including internet, print ads, social media, and YouTube. Moreover, the Infringing Alone in the Dark Film, like the ALONE IN THE DARK® video games, are available through an online digital distribution service.

Unsurprisingly, Plaintiffs' use of "Alone in the Dark" for the Infringing Alone in the Dark Film has caused and will continue to cause confusion in the minds of the purchasing public, as they mistakenly assume that Plaintiffs' film was produced,

sanctioned, authorized and/or associated with THQ Nordic and/or the ALONE IN THE DARK® Mark.

For example, in the below screenshot, a consumer assumes that the Infringing Alone in the Dark Film is based on THQ Nordic's ALONE IN THE DARK® video games and/or the ALONE IN THE DARK® films.



Indeed, even when corrected that the works are not related, the consumer is still confused, and remarks that it is "odd" and "it can't be" that "Alone in the Dark" is such a popular phrase that it would appear on two completely unrelated works.

THQ believes that such confusion is no mistake, and Plaintiffs chose "Alone in the Dark" for use in connection with the Infringing Alone in the Dark Film, knowing that consumers are used to coming across video games that are turned into movies. Accordingly, THQ is seeking discovery relating to Plaintiffs' knowledge of THQ and the ALONE IN THE DARK® franchise (in addition to other relevant discovery).

In response, Plaintiffs have largely committed to producing documents (with a few exceptions discussed below). However, discovery was first served in September 2024, the parties have met and conferred many times since then, including in person in New York, via video conference call, and via email. THQ has followed up many times, all to no avail – as of the drafting of this stipulation, March 6, 2025,

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL

only a handful of documents have been produced, totaling only 241 pages.[2]

Accordingly, an order setting a deadline for Plaintiffs' document production is necessary, so that the parties can obtain the necessary documents and complete depositions before the fast approaching discovery cut-off on May 16, 2025.

### B.    Plaintiffs' Introductory Statement

THQ's Motion is unnecessary. After the parties met-and-conferred in person in accordance with the Local Rules for the first time on March 4, 2025, the parties were able to resolve all (or nearly all) of their disputes, and THQ has begun producing key documents and has agreed to continue to produce relevant documents. THQ has not produced a single document as of March 10, 2025.

This case involves THQ's claims for alleged trademark infringement against Mar Vista, and Mar Vista is seeking a declaration that there is no such infringement. THQ released a video game titled "Alone in the Dark" and registered the name as a trademark. The video game is no longer published, and the THQ studio that developed the game has been shuttered by THQ. Apparently trying to gain a monopoly over the common phrase while phasing out its use, THQ imminently threatened to sue Mar Vista and two small production companies, Ninth House and Ninth Dark (collectively, "Mar Vista" or "Plaintiffs"), because Mar Vista titled a small, direct-to-Tubi film about a single woman alone in her lake house, *Alone in the Dark*.

On August 22, 2023, Mar Vista filed a declaratory relief action, seeking a declaration that Mar Vista did not infringe THQ's trademark because, *inter alia*, the title of an expressive work is protected by *Rogers*. THQ counterclaimed. Mar Vista filed a Motion to Dismiss. While Judge Frimpong denied Mar Vista's Motion to Dismiss

---

[2] Plaintiffs represented to THQ that its recent limited production of documents is comprised of several agreements, but given that the documents were *just* produced, THQ has not yet had a chance to confirm.

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL

on the *Rogers* issue, Judge Frimpong stated that the application of *Rogers* is better left for a motion for summary judgment.

As is clear from THQ's portion of this Motion, the Court has not set a schedule in this case.  THQ agreed to forgo discovery while preliminary motions were dealt with and has only now claimed that it believes discovery is being delayed.[3]  Thus, there is currently no formal discovery cut-off.[4]  Likely because of the lack of a schedule, THQ did not even file the Stipulated Protective Order on January 24, 2025, and only filed the Stipulated Electronic Discovery Protocol ("ESI Protocol") order on February 14, 2025.  While THQ wants to blame Mar Vista for the purported delay in producing documents, the delay lies squarely at the feet of THQ.  Mar Vista has been requesting both a protective order and an ESI Protocol for months.

Additionally, while THQ gives the impression that Mar Vista has been refusing to produce documents since September 2024; that impression is false.  Mar Vista has agreed to produce most of the documents requested and already has begun producing documents.  In fact, during the December 27, 2024 meet and confer, Mar Vista explained exactly how it would collect the documents, by searching electronically for the terms "alone in the dark" and "THQ," and by manually searching for other specific documents.  Mar Vista understood this was acceptable to THQ and started working with its vender to collect the documents.

Just recently, while negotiating the ESI Protocol, THQ raised, for the first time, its own additional search terms.  Although Mar Vista believed the parties had already

---

[3] Mar Vista filed a Motion for Certification and Stay Pending Appeal, which was pending much of the time THQ complains a lack of discovery.  In addition, until recently, the parties had been discussing the scope of discovery—*i.e.*, whether they should focus discovery on the *Rogers* issue, before engaging in likelihood of confusion discovery.

[4] On February 28, 2025, the parties jointly requested that the Court enter a scheduling order pursuant to the dates set forth in their concurrently-filed Amended Joint Scheduling Worksheet.  *See* Dkt. No. 79.

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL

agreed to search terms during their meet and confer, in a good faith effort to move this issues along, Mar Vista has agreed to additionally search for "Ninth Dark," per THQ's request.  THQ's other proposed search terms, however, were not tethered to the *Alone in the Dark* film and include, for example, terms as broad as "trademark," "brand," "social media," "press release," "license," "advertisement," "survey," "release," and "name."  These terms would yield results that include hundreds, if not thousands, of unrelated films and hundreds of thousands of unrelated documents. During the parties' in-person meet-and-confer, THQ relented on all of these additional search terms, except for the term "video game" (and variations thereof).  Mar Vista agreed to electronically search for the term "video game" (and variations thereof), and stated that it would consider collecting and reviewing such documents if it returned a reasonable number of results.  It did not.  The search for the term "video game" (and variations thereof) against Mar Vista's seven proposed custodians returned approximately *4,587* items (or 9.52 GB).  (This number nearly doubles—to *9,344* items—when the term is run against all potential custodians.)  Mar Vista expects that most of these items are wholly irrelevant—indeed, any relevant items that contain the term "video game" (and variations thereof) already would be picked up by Mar Vista's broad electronic search for "Alone in the Dark" and "THQ."  Requiring Mar Vista to collect and review these additional documents would cost thousands of dollars.  Such a search would not be proportional to this case, which involves a small film that did not even make a profit.

The parties also have not yet reached an agreement as to the number of custodians.  Mar Vista has identified seven custodians who are most likely to have documents relevant to THQ's requests, including individuals in various roles and departments (*e.g.*, creative affairs, development and production, physical production, post production, and business and legal affairs).  On March 10, 2025, counsel for Mar

Vista provided THQ with the names and titles of the seven proposed custodians. To date, THQ has refused to agree on a number of custodians or the specific custodians.

Regardless, Mar Vista is willing and intends to produce the vast majority of the documents requested by THQ (as limited by Mar Vista's objections and the meet and confer). Mar Vista already has started producing such documents and intends to continue producing on a rolling basis. Mar Vista is only asking for THQ to agree to reasonable search terms and custodians. Notwithstanding the parties' apparent lack of agreement on the search terms and custodians, Mar Vista's collection and review of documents already is underway. Mar Vista has collected documents electronically from the proposed seven custodians using the search terms most likely to result in documents related to this case—*i.e.*, "alone in the dark," "THQ," and "Ninth Dark"—and has started manually searching for other specific documents. The search resulted in over 6,000 documents. Mar Vista is in the process of reviewing the documents and intends to make productions on a rolling basis.

Finally, THQ's initial Joint Stipulation did not comply with Local Rule 37-1. Mar Vista did not insist on an in-person meeting as a delay tactic, but merely sought to comply with the straightforward requirements of the Local Rules. Local Rule 37-1 provides that "[i]f both counsel are located in the same county, the conference must take place in person at the office of the moving party's counsel unless the parties agree to meet someplace else." Mar Vista and THQ both have counsel in two of the same counties—*i.e.*, Los Angeles County and New York County. Contrary to THQ's suggestion, the fact that its "lead counsel … is located in New York" does not some-how excuse the in-person conference requirement, particularly given that Mar Vista also has counsel located in New York.[5] As counsel for the moving party, it is THQ's

---

[5] Notably, Local Rule 37-1 was amended in December 2019 to remove the require-ment that "both counsel [be] located within the same county of the **Central District**

counsel's "responsibility to arrange for this conference" under Local Rule 37-1. THQ's counsel has never even attempted to arrange for an in-person conference, which warranted the denial of THQ's motion. *See, e.g., Bonner v. Cnty. of Los Angeles*, No. CV 15-8885 GW (SSX), 2017 WL 10509044, at *3 (C.D. Cal. May 19, 2017) ("Rule 37-1 explicitly requires counsel to meet in person when they reside in the same county.  It is undisputed that counsel for all parties [are located in Los Angeles County and] did not appear in person for the meet and confer, but relied on a telephone call instead. This was improper."); *Reinsdorf v. Skechers U.S.A., Inc.*, No. CV1007181DDPSSX, 2012 WL 12878325, at *3 (C.D. Cal. Jan. 30, 2012) (denying motion for failure to "strictly comply with Local Rule 37;" "Defendants did not 'meet and confer' as required by Local Rule 37-1 because it appears to the Court that the parties never met 'in-person' and only spoke on the telephone or via email and letters. The 'in-person' aspect of the Local Rule cannot be waived by the parties.").  In any event, the parties now have had an in-person meet-and-confer in accordance with the Local Rules.  The parties have since resolved all (or nearly all) of the issues raised in THQ's initial Joint Stipulation, underscoring the importance of the in-person requirement.

## II.    SUMMARY OF DISPUTED ISSUES

### A.    THQ's Position

By this Motion and Joint Stipulation, the Court must determine the following the issues:

_____

*of California*."  Under the current Local Rule 37-1, the "in-person" conference requirement is triggered whenever "both counsel are located in the same county," regardless of what county.  *See* Amended Local Rules Effective December 1, 2019 (Redline of Changes), https://www.cacd.uscourts.gov/sites/default/files/documents/Notice%20-%20Amended%20Rules%20Dec%202019%20%28Redline%20LRs%29_0.pdf.

1.   THQ's discovery requests were served in September 2024. Since then, Plaintiffs have continually delayed production of documents or supplementary interrogatory responses. A date certain is necessary to ensure that discovery can be completed in an orderly manner.

2.   Whether certain of Plaintiffs' discovery responses are insufficient, and if Plaintiffs may withhold verification of its interrogatory responses.

### B.   Plaintiffs' Position

1.   Mar Vista has begun producing documents and served supplemental Interrogatory responses.  Specifically, on March 3, 2025, Mar Vista made an initial production of documents, which contained certain specific documents requested by THQ, including, for example, confidential agreements with third parties related to the "Alone in the Dark" film.  On March 10, 2025, Mar Vista produced additional documents requested by THQ and also served supplemental responses to THQ's Interrogatories.  Mar Vista is in the process of reviewing the thousands of emails and other documents collected electronically using the search terms "alone in the dark," "THQ," and "Ninth Dark."  Mar Vista intends to make a production of such documents within the next week and will produce on a rolling basis thereafter.

2.   Mar Vista has provided sufficient written discovery responses.  It also has provided verifications to its Interrogatory responses.  It will provide verifications to its recent supplemental responses to the Interrogatories by March 24, 2025.

### III.   STATEMENT OF FACTS

### A.   THQ's Position

### 1)   Plaintiffs Must Timely Complete Document Production

THQ initially served interrogatories and requests for production of documents (the "Discovery Requests") on Plaintiffs approximately six months ago, in September 2024. (Declaration of Michael Barer ("Barer Decl."), ¶ 2, Ex. A.) Since then, Plaintiffs have continuously delayed producing documents and failed to provide

genuine interrogatory responses in an apparent strategy to waste time until the discovery period has run.

First, upon receiving the Discovery Requests, Plaintiffs immediately asserted that THQ had not opposed a stay of this case pending the outcome of Plaintiffs' then pending motion for certification of an interlocutory appeal (which was later denied). (*Id*. at ¶ 3, Ex. C.) Plaintiffs later backtracked from this incorrect assertion, and instead requested an extension of time to respond to the Discovery Requests. (*Id*.) THQ consented to an extension, in good faith, until October 25, 2024. (*Id*. at ¶ 4, Ex. C.) Despite the additional time provided to Plaintiffs, the responses to THQ's Discovery Requests were facially deficient, consisting primarily of boilerplate and unsworn objections. (*Id*. at ¶ 5, Ex. B.)

On November 19, 2024, THQ followed up with Plaintiffs requesting a time table for when document production would begin. (*Id*. at ¶ 6, Ex. C.) In response, notwithstanding the fact that trademark cases typically involve the production of publicly available information showing how a trademark is presented to the public (such as advertisements, packaging, and other marketing), Plaintiffs refused to produce *any* documents until the entry of a protective order. THQ provided a draft protective order on December 4, 2024. (*Id*.)

Despite THQ following up on the status of the protective order, Plaintiffs neither provided any comments nor approved the draft for filing. (*Id*. at ¶ 7.) Accordingly, on December 12, 2024, THQ served a formal request to meet and confer on Plaintiffs, along with a letter detailing additional deficiencies in Plaintiffs' discovery responses. (*Id*. at ¶ 7, Ex. D.) THQ received no response to the letter, prompting an additional follow up from THQ on December 17, 2025. (*Id*. at ¶ 8.) Plaintiffs finally responded to the letter the next day, stating that they could not meet and confer prior to December 27, 2024. (*Id*. at ¶ 8, Ex. C.)

The parties met and conferred on December 27, 2024, a summary of which was provided to Plaintiffs on January 8, 2025. (*Id*. at ¶ 9.) For the most part, Plaintiffs

did not contest the legitimacy of the Discovery Requests, and Plaintiffs likewise did not dispute the accuracy of THQ's subsequent summary of the meet and confer. (*Id*.) To wit, Plaintiffs confirmed that they would be producing documents, and were not withholding any documents pursuant to an objection, at least with respect to **RFP Nos. 1-11, 13-16, 18, 20, 22, 24-30, 32-36, and 38-49**. (*Id*.) Accordingly, much of the meet and confer revolved around the timing of Plaintiffs' production of documents, as Plaintiffs had *still not produced a single document*. (*Id*.)

Since the parties were in the process of discussing a protective order, which appeared would be filed soon, Plaintiffs turned to a different tactic to delay document discovery. Instead, Plaintiffs asserted that they could not produce documents until the entry of an ESI order.[6] (*Id*. at ¶ 10.) Again, Plaintiffs asserted that it could not produce *any* documents until the entry of an ESI order. (*Id*.)

In good faith, THQ again provided a proposed ESI agreement on January 13, 2025. (*Id*. at ¶ 11.) Plaintiffs failed to substantively respond to the draft until February 3, 2025 – nearly a month later. (*Id*.) Critically, Plaintiffs did not provide their comments until THQ threatened to unilaterally file the ESI order, and inform the Court of Plaintiffs' failure to cooperate in discovery. (*Id*.) Despite the lengthy delay, Plaintiffs had only one substantive comment on the draft ESI Agreement, suggesting that Plaintiffs delayed their response for tactical reasons (as appears to be Plaintiffs' general strategy). (*Id*.)

On February 7, 2025, after some back and forth on the ESI agreement, the parties again met and conferred, and discussed both the status of Plaintiffs' document production, and ESI search terms. (*Id*. at ¶ 12.) Following the meet and confer, on February 10, 2025, Plaintiffs informed THQ that it would only produce "primarily (if not exclusively) [] publicly available documents." (*Id*.)

---

[6] The protective order was duly entered on January 27, 2025.

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL

On February 11 and 12, 2025, THQ requested a third follow up meet and confer to confirm the status of Plaintiffs' document production. (*Id*. at ¶ 13.) Plaintiffs initially refused to continue to meet and confer, and instead stated that they already "made their position clear." (*Id*.)

Left with no other option, THQ prepared its portion of a Rule 37 joint stipulation, which it sent to Defendants on February 14, 2025. (*Id*. at ¶ 14.) Defendants failed to respond to the joint stipulation within seven days, as required by Local Rule 37-2.2. (*Id*.) On February 22, 2025, THQ informed Defendants that unless Defendants participated in the joint stipulation, as required by the local rules, THQ would file a unilateral motion.[7] (*Id*.)

In response, Plaintiffs asserted, for the first time, after the deadline to respond to the joint stipulation had already passed, that the parties should meet and confer in person in New York, even though the parties had already extensively met and conferred via videoconference. (*Id*. at ¶ 16.) Plaintiffs' objection further had no merit because lead counsel for THQ is located in New York, whereas lead counsel for Plaintiffs is located California. (*Id*.) Moreover, Plaintiffs' lead counsel in California had primarily handled the earlier video conference in December 2024.[8] (*Id*.)

Nonetheless, while THQ believes this was simply another ploy to delay the filing of this stipulation, THQ agreed in good faith to meet and confer (yet again) in person in New York. (*Id*. at ¶ 17.) That additional in-person meet and confer took place on March 4, 2025. (*Id*.) At the conclusion of the meet and confer, the parties

---

[7] Plaintiffs may claim that the parties were discussing settlement, and therefore no response was required. This is false. THQ was very clear that it expected a response to the joint stipulation, and it never consented not to move forward with discovery. There are no emails or communications which support this position. (Barer Decl. ¶ 15.) THQ did later state that it *may* withdraw the stipulation if serious settlement discussions were advancing.

[8] Plaintiffs' lead counsel in California did nearly all the talking on the video conference.

agreed that to the best of their knowledge and review of the local rules, they had met in good faith and complied with all pre-motion requirements with respect to Rule 37. (*Id*. at ¶ 24.)

While the parties have been able to resolve certain disputes, Plaintiffs have *still* not provided a firm date by which their document production will be complete.[9] (*Id*. at ¶ 18.)

Indeed, to date, as of the drafting of this motion, only 241 pages of documents have been produced and *Plaintiffs have still not provided a time frame in which they believe document can be complete*. (*Id*. at ¶ 19.) Plaintiffs strategy of delay cannot be allowed to continue. (*Id*.) Thus, an order requiring Plaintiffs to produce documents and information by a date certain is required.

Moreover, at the March 4, 2025 meet and confer, THQ compromised on Plaintiffs' search terms, while asking that certain other search terms be included as well, such as "video game" (and variations thereof). (*Id*. at ¶ 20.) However, even if the parties had not agreed, search terms are merely a tool to help facilitate production of documents. Not agreeing to each and every search term is no excuse to delay the production of documents located through a manual search or search terms agreed upon thus far.

### 2)    Plaintiffs Must Appropriately Supplement Their Interrogatory Responses And Serve Verifications

Plaintiffs must also appropriately supplement their deficient interrogatory responses, and serve verifications for each Plaintiff. (*Id*. at ¶¶ 21-22.) For example, THQ served an interrogatory requesting that Plaintiffs describe the facts surrounding

---

[9] At the meet and confer on March 4, 2025, Plaintiffs requested yet more time to determine a date by which document production will be complete. But Plaintiffs have had six months to collect documents, and a date by which document production will be complete should have been provided long ago.

their first awareness of the ALONE IN THE DARK® Marks (Rogg. No. 10). (*Id.*) Plaintiffs flatly refused to answer this interrogatory (or provide supplemental responses to other discovery requests), as explained further below.

Further, Plaintiffs initially represented that they would respond to an interrogatory identifying their sales, revenue, profit, and expenses once a protective order was entered by the Court (Rogg. No. 12). (*Id.*) Plaintiffs now claim that they will supplement their responses within 14 days. Given the extraordinary delay in providing the information, a Court order is necessary to ensure that Plaintiffs comply. (*Id.*)

By this motion, THQ seeks an order to hold Plaintiffs to their obligations to participate earnestly in discovery, and to respond substantively to THQ's discovery Requests.

### B.    Plaintiffs' Position

While Mar Vista does not agree with the majority of "THQ's Position," Mar Vista does not believe a line-by-line correction of the "facts" is necessary or helpful at this time.  At base, Mar Vista has agreed to produce the majority of the requested documents, and already has begun to do so.

## IV.    ARGUMENT

**DISPUTED ISSUE 1: By When Must Plaintiffs Produce Documents and Supplementary Discovery Responses?**

**THQ's Position**

Responding parties must include deadlines for productions in their discovery responses. *See* 2015 Adv. Comm. Note to Fed. R. Civ. P. 34(b)(2)(B) ("The production must be completed either by the time for inspection specified in the request or by another reasonable time specifically identified in the response. When it is necessary to make the production in stages the response should specify the beginning and end dates of the production.").

Here, not a single one of Plaintiffs' responses to THQ's requests for production of documents contains a deadline by which Plaintiffs will produce documents. This failure has completely stalled discovery, as Plaintiffs have continuously delayed production of documents for nearly six months. Indeed, despite meeting and conferring with THQ several times, and promising that documents would be produced, Plaintiffs have failed to live up to their discovery obligations, producing a total of only 241 pages of documents, to date.

Indeed, during the parties' many meet and confer conferences, including on December 27, 2024 and March 4, 2025, Plaintiffs confirmed that they were not withholding any documents pursuant to an objection, and would produce documents in response to THQ **RFP Nos. 1-11, 13-18, 20-23, 24-30, 32-36, and 38-49**. These requests relate to:[10]

- Documents and communications concerning THQ or the ALONE IN THE DARK® Marks. (RFP Nos. 1 and 2).

- Documents and Communications exchanged between Plaintiffs and THQ. (RFP No. 3).

- Documents and Communications exchanged between Plaintiffs and any third parties regarding this action or the ALONE IN THE DARK® Marks. (RFP Nos. 4 and 5).

- Documents and Communications relating to Plaintiffs' first awareness of THQ and the ALONE IN THE DARK® Marks. (RFP Nos. 6, 7 and 10).

---

[10] For the sake of brevity, THQ provides a summary of the requests (and not each request and response individually), as Plaintiffs have already agreed to produce documents responsive to these requests, and no documents are currently being withheld on the basis of an objection.

- Documents and Communications sufficient to show Plaintiffs' past, current, and future intended use of the phrase Alone in the Dark. (RFP Nos. 8 and 9).

- Documents and Communications sufficient to show Plaintiffs' first use of Alone in the Dark. (RFP No. 13).

- Documents and Communications relating to complaints regarding the quality of Plaintiffs' Alone in the Dark goods and services. (RFP No. 14).

- Documents and Communications sufficient to show the geographical reach of goods and services offered in connection with the phrase Alone in the Dark. (RFP No. 15).

- Documents and Communications sufficient to show Plaintiffs' channels of trade. (RFP Nos. 16-17).

- Documents sufficient to identify Plaintiffs' website domains through which they offer their Alone in the Dark film or other goods and services. (RFP No. 18-19).

- Documents showing Plaintiffs' advertising and promotions in connection with the phrase Alone in the Dark. (RFP Nos. 11, 20-21).

- Documents sufficient to show the price point at which Plaintiffs offered their Alone in the Dark film or other goods and services. (RFP No. 22-23).

- Documents sufficient to show Plaintiffs' revenue, profits, costs and expenses. (RFP Nos. 24 and 25).

- Documents and Communications relating to market or consumer research concerning Alone in the Dark. (RFP No. 26).

- Documents and Communications relating to Plaintiffs' target consumers. (RFP No. 27).

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL

- Documents sufficient to show the number of viewers of the Alone in the Dark film. (RFP No. 28).
- Documents and Communications relating to Plaintiffs' creation and selection of the phrase Alone in the Dark, including any alternate names. (RFP Nos. 29 and 30).
- Documents and Communications relating to any permission to use the phrase Alone in the Dark. (RFP Nos. 32, 38 and 39).
- Documents and Communications relating to any consumer confusion or likelihood of confusion. (RFP Nos. 33, 34, 35, 42).
- Documents and Communications relating to any expert opinions in connection with this matter. (RFP No. 36).
- Documents and Communications relating to Plaintiffs' assertion that the first amendment bars any trademark claims. (RFP Nos. 40 and 44).
- Documents and Communications relating to Plaintiffs' assertion that target audience of the Alone in the Dark film and the Alone in the Dark video game are different. (RFP No. 41).
- Documents and Communications relating to Plaintiffs' assertion that the ALONE IN THE DARK mark is not inherently distinctive. (RFP No. 45).
- Documents and Communications relating to Plaintiffs' assertion that their use of Alone in the Dark was noncommercial. (RFP No. 46).
- Documents and Communications relating to Plaintiffs' assertion that they have not committed any infringement. (RFP No. 43).
- Documents and Communications on which Plaintiffs will rely to support their claims or defenses, or documents supporting interrogatory responses or their initial disclosures. (RFP Nos. 47, 48 and 49).

1    Despite agreeing to produce documents in response to all of the above requests,

2    as of the drafting of this stipulation, on March 6, 2025, Plaintiffs have produced only

3    241 pages of documents, and that only on March 4, 2025.

4    Further, the parties agreed to narrow the scope of production as to RFP Nos.

5    31 and 37. (Barer Decl., ¶ 9, Ex. C.) Despite the parties agreement, no documents

6    have been produced.

7    Plaintiffs' excuses for not producing documents have been that no protective

8    order or ESI agreement had been entered by the Court. However, despite Plaintiffs'

9    delays, a protective order was entered on January 27, 2025, and an ESI order was

10    entered on February 19, 2025.

11    Moreover, protective orders and ESI orders are merely tools to help facilitate

12    production of documents. The non-entry of either order is no excuse to delay the

13    production of non-confidential documents, or documents located through a manual

14    search (both of which is typically a very large percentage of documents in trademark

15    cases. For example, responsive documents may include public advertisements,

16    packaging, and other marketing. Further, documents like financials are typically

17    found through manual searches – not using search terms. The complete lack of

18    production is glaring.

19    Plaintiffs also agreed to supplement their responses to THQ's interrogatories,

20    and provide verifications (as discussed in more detail below).

21    Accordingly, THQ respectfully asks the Court to order that all documents be

22    produced, and supplementary interrogatory responses provided, by a date certain.

23    **Plaintiffs' Position**

24    Mar Vista has agreed to produce the majority of the requested documents, and

25    already has begun to do so.  As discussed above, Mar Vista has collected thousands

26    of emails and other documents electronically from seven custodians, using the broad

27    search terms "alone in the dark," "THQ," and "Ninth Dark."  The search resulted in

28

over 6,000 documents. Mar Vista has begun reviewing the documents; it intends to make additional productions in March and will produce the remainder on a rolling basis thereafter. Mar Vista also has manually searched for specific documents requested. Mar Vista already has produced certain of these documents, including certain highly confidential agreements with third-parties (which required Mar Vista to provide notice to the other party before producing), the "Production Services Agreement" between MVE Productions, LLC and Ninth Dark LLC, and certain financial information related to the "Alone in the Dark" film. Mar Vista is continuing to manually search for other specific documents requested. Once reviewed (and, where applicable, proper notice is given), the documents will be produced. Mar Vista expects to be able to substantially complete its production of documents by April 11, 2025[11]—which is more than five months before the parties' recently proposed fact discovery cut-off.

**DISPUTED ISSUE 2: Whether certain of Plaintiffs' discovery responses are insufficient, and if Plaintiffs may withhold verification of its interrogatory responses.**

**THQ's Position**

A responding party must attest under oath to the truth and accuracy of its answers to interrogatories (FRCP 33(b)(3)). Here, Plaintiffs have served a verification only for Mar Vista Entertainment LLC. Accordingly, an order is necessary to compel the same from The Ninth House LLC, and Ninth Dark LLC.

Also, objections to discovery requests may no longer be boilerplate and general. *See* Fed. R. Civ. P. 34(b)(2)(B) & 2015 Adv. Comm. Note ("Rule

---

[11] This estimated completion date assumes that Mar Vista's collection of over 6,000 custodial documents is sufficient. If the Court requires Mar Vista to search additional custodians and/or terms, Mar Vista expects that it will need more time (beyond April 11, 2025) to collect, review, and produce such documents.

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL

34(b)(2)(B) is amended to require that objections to Rule 34 requests be stated with specificity.")

Notwithstanding this requirement, Plaintiffs' discovery responses are replete with boiler plate objections that lack any specificity. Plaintiffs further refused to respond to certain interrogatories or produce documents in response to certain requests, as follows:[12]

**Plaintiffs' Position**

This issue has been resolved.  As THQ notes, Mar Vista Entertainment LLC already provided its verification to its Interrogatory responses.  On March 7, 2025, the other two Plaintiffs, The Ninth House LLC and Ninth Dark LLC, provided their verifications.  In addition, as set forth below, Plaintiffs have resolved the issues with respect to Interrogatory No. 10, Interrogatory No. 12, Interrogatory No. 16, and Request for Production No. 12.

> **INTERROGATORY NO. 10:** Describe in detail the facts and circumstances surrounding Your first awareness of each of the ALONE IN THE DARK Marks including and without limitation, how each such mark came to Your attention and the date You first learned of Defendant's use, intended use, and/or application to register such marks.
>
> **RESPONSE TO INTERROGATORY NO. 10:** In addition to its General Objections, which are incorporated herein by reference, Plaintiff objects to this Interrogatory on the ground that it is compound and vague and ambiguous,  including  with  respect  to  the  word

---

[12] Each plaintiff submitted the same response, unless otherwise stated.

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL

"awareness." Plaintiff also objects to this Interrogatory on the ground that it seeks information that is protected by the attorney-client privilege and/or work product doctrine.

In light of its objections, Plaintiff will not respond to this Interrogatory.

Plaintiffs Ninth Dark, LLC and The Ninth House, LLC also added the following addition objection: "Plaintiff further objects to this Interrogatory to the extent that it seeks information that is not within Plaintiff's possession, custody, or control."

**THQ's Position**

Plaintiffs' refusal to respond to this interrogatory is baffling. At the parties' many meet and confer conferences, Plaintiffs asserted that this interrogatory requests attorney/client privileged information. However, that cannot possibly be true. The interrogatory merely asks for the facts surrounding Plaintiffs' first awareness of THQ's ALONE IN THE DARK® marks. This is highly relevant, as Plaintiffs' awareness of THQ's marks prior to releasing their Alone in the Dark film is highly probative of Plaintiffs' intent and whether they knowingly copied THQ's ALONE IN THE DARK® marks. This is often a central question in infringement disputes. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) (including a party's intent in selecting a mark as an element of likelihood of confusion).

To alleviate Plaintiffs' concerns, THQ specifically stated that it is not seeking privileged information, and is not seeking the contents of attorney/client discussions. Nonetheless, Plaintiffs have refused to respond to this interrogatory.

**Plaintiffs' Position**

This issue has been resolved.  On March 10, 2025, each of the Plaintiffs served a supplemental Response to Interrogatory No. 10.

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL

**INTERROGATORY NO. 12:** Identify Your quarterly and annual sales, revenue, profit and expenses in connection with the Mar Vista Alone In The Dark Film, and/or any other goods and/or services offered in connection with the phrase "Alone in the Dark".

**RESPONSE TO INTERROGATORY NO. 12:** In addition to its General Objections, which are incorporated herein by reference, Plaintiff objects to this Interrogatory on the ground that it is compound and vague and ambiguous, including with respect to the words "offered" and "phrase." Plaintiff also objects to this Interrogatory to the extent it seeks the disclosure of confidential and/or proprietary information. Plaintiff further objects to this Interrogatory to the extent that it seeks information that is neither relevant to the claims or defenses of any party nor proportional to the needs of the case. In light of its objections, Plaintiff will not respond to this Interrogatory absent entry of an acceptable protective order in this action.

**THQ's Position**

At the parties' meet and confer on December 27, 2024, Plaintiffs refused to respond to Interrogatory No. 12 solely on the basis that a protective order had not yet been entered. However, a protective order is now in place, but no supplementary responses have been forthcoming. Plaintiffs now claim that they will provide a response within 14 days. However, given the extraordinary delay in providing the information, a Court order is necessary to ensure that Plaintiffs comply.

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL

This interrogatory is directly relevant to the claims in this case, as the information is necessary to determine damages and the scope of Plaintiffs' infringing actions and sales.

Accordingly, an order directing Plaintiffs to provide full responses is necessary.

**Plaintiffs' Position**

This issue has been resolved.  On March 10, 2025, each of the Plaintiffs served a supplemental Response to Interrogatory No. 12.

> **INTERROGATORY NO. 16:** Identify each Person who supplied information included in any of the answers to this set of Interrogatories, stating specifically the interrogatory or interrogatories for which each such Person has supplied information.
>
> **RESPONSE TO INTERROGATORY NO. 16:** Plaintiff hereby incorporates its General Objections. Plaintiff also objects to this Interrogatory on the ground that it seeks information that is protected by the attorney-client privilege and/or work product doctrine.
>
> In light of its objections, Plaintiff will not respond to this Interrogatory.

**THQ's Position**

At the parties' meet and confer on March 4, 2025, Plaintiffs asserted that they will supplement their response to this interrogatory, to include (at least) the names of the witnesses signing the verifications for each Plaintiff.

Given the extraordinary delay in providing the information, a Court order is necessary to ensure that Plaintiffs comply.

1

**Plaintiffs' Position**

2        This issue has been resolved.  On March 10, 2025, each of the Plaintiffs served

3   a supplemental Response to Interrogatory No. 16, identifying an individual who

4   supplied information included in their respective Interrogatory responses.  Notably,

5   however, Mar Vista had no obligation to do so.  *See* 8B Fed. Prac. & Proc. Civ. §

6   2172 (3d ed.) ("It has been held that a corporate party need not identify the persons

7   who have assisted in the preparation of the answers to interrogatories.") (collecting

8   cases); *see also, e.g.*, *Hawkins v. Kroger* 2019 WL 4416132, at *10 (S.D. Cal. Sept.

9   16, 2019) (disclosing the names of individuals who helped prepare responses to

10  interrogatories "is overbroad and not proportional to the needs of the case").

11

12                **REQUEST FOR PRODUCTION NO. 12:** All

13        Documents and Communications concerning business

14        plans and/or contracts relating to the Mar Vista Alone In

15        The Dark Film, and/or any other goods and/or services in

16        connection with which You have used, currently use or

17        intend to use the phrase "Alone in the Dark"

18        **RESPONSE TO REQUEST FOR PRODUCTION NO.**

19        **12:** In addition to its General Objections, which are

20        incorporated herein by reference, Plaintiff objects to this

21        Request on the ground that it is overly broad and unduly

22        burdensome insofar as it seeks "[a]ll Documents and

23        Communications." Plaintiff further objects to this Request

24        on the grounds that it seeks the production of documents

25        that are neither relevant to the claims or defenses of any

26        party nor proportional to the needs of this case. Finally,

27        Plaintiff objects to this Request on the ground that it seeks

28

1          the production of confidential and/or proprietary business

2          information

3  **THQ's Position**

4        Plaintiffs initially represented that they will only search for agreements

5  relating to the Alone In The Dark Film. However, business plans showing an intent

6  to market and promote the Alone In The Dark Film are certainly relevant as well.

7  Such plans will show whom Plaintiffs considered to be their target audience, the

8  channels through which Plaintiffs intended to advertise and offer the film, when

9  Plaintiffs came up with the idea for the Alone in the Dark Film, and a host of other

10 information relevant to the likelihood of confusion analysis. *See AMF Inc. v.*

11 *Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) (including channels of trade, proximity

12 of the goods, and types of consumers in the likelihood of confusion analysis). Given

13 the importance of these documents, THQ cannot agree to limit Plaintiffs' response to

14 only agreements.

15       In addition, Plaintiffs' objections are merely boiler plate, and lack any

16 specificity as to how each asserted objection applies.

17       At the parties' March 4, 2025 meet and confer, THQ reiterated that it was

18 seeking any communications showing plans to market or offer the Mar Vista Alone

19 In The Dark Film (and not just formal business plans). Plaintiffs responded that that

20 would search for and produce such documents to the extent they were found.

21 Nonetheless, a date certain is required to ensure that production is completed in a

22 timely manner.

23 **Plaintiffs' Position**

24       This issue has been resolved.

25       **First**, Mar Vista already has produced various contracts related to the *Alone in*

26 *the Dark* film. These are confidential agreements with third parties, many of which

27 required Mar Vista to provide notice and/or obtain consent from the other party prior

28

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL

to production.  Mar Vista is working to provide the proper notice and/or obtain the necessary consent to produce two remaining confidential agreements.

**Second**, Mar Vista has advised THQ that it has no formal "business plans" for the *Alone in the Dark* film.  However, to the extent such business plans exist, Mar Vista expects that they would be picked up by its broad electronic search for the term "alone in the dark."  Accordingly, Mar Vista has agreed to search for and produce any business plans, whether formal or informal, related to the *Alone in the Dark* film.

**Third and finally**, Mar Vista has no "business plans and/or contracts" relating to "any other goods and/or services in connection with which [they] have used, currently use or intend to use the phrase 'Alone in the Dark.'"  As Mar Vista repeatedly has advised THQ, Mar Vista has used *Alone in the Dark* solely as the title of a single, direct-to-Tubi film.  Mar Vista never has "used," does not "currently use," and does not "intend to use" *Alone in the Dark* in connection with "any other goods and/or services."  Mar Vista cannot produce documents that do not exist.  And while it does not believe any such responsive documents exist, to the extent there is anything responsive to this request, Mar Vista expects that any such documents would be picked up by its broad electronic search for the term "alone in the dark." Accordingly, Mar Vista has agreed to search for and produce any such documents.

At the parties' March 4, 2025 meet and confer, THQ reiterated that it was seeking any communications showing plans to market or offer the Mar Vista Alone In The Dark Film (and not just formal business plans). Plaintiffs responded that that would search for and produce such documents to the extent they were found.

Certification of Compliance With Local Rule 37-1

1.    Counsel of record for the parties held their pre-filing conference of counsel as required by Local Rule 37-1 by videoconference on December 27, 2024 for approximately 2-3 hours since lead counsel for

THQ is located in New York. Counsel of record held a follow up conference on February 7, 2025 for approximately 30 minutes by teleconference. Counsel of record further held an additional in-person conference at counsel for THQ's office in New York for approximately an hour on March 4, 2025. Counsel of record have also extensively discussed the disputed issues via email, written letter, and other telephone calls since November 2024.

2.  To eliminate or narrow the disputed discovery issues, counsel of record for the parties discussed not only the merits of their dispute(s) but also addressed compliance with the discovery procedures explained in Judge Kim's Modified and Supplemental Local Rule 37-1 Requirements.

3.  Counsel of record for the parties agree that the remaining disputed discovery issues cannot be eliminated or narrowed either by further discussion of their merits or by ensuring compliance with the discovery procedures explained in Judge Kim's Modified and Supplemental Local Rule 37-1 Requirements.

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL

1    IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

2    DATED: March _13__, 2025

3                                          /s/ Marissa B. Lewis

4                                          Marissa B. Lewis
                                           MITCHELL SILBERBERG & KNUPP LLP
5                                          *Attorneys for Plaintiffs and Counter-*
                                           *Defendants Mar Vista Entertainment,*
6                                          *LLC, The Ninth House, LLC and Ninth*
                                           *Dark, LLC*
7

8    DATED: March _13__, 2025

9                                          /s/ Michael Barer

10                                         Michael Barer
                                           HAUG PARTNERS LLP
11                                         *Attorneys for Defendant and Counter-*
                                           *Complainant THQ Nordic AB*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL