REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1

BEN NATTER (admitted *pro hac vice*)
bnatter@haugpartners.com
MICHAEL BARER (admitted *pro hac vice*)
mbarer@haugpartners.com
CHRISTOPHER GOSSELIN (admitted *pro hac vice*)
cgosselin@haugpartners.com
HAUG PARTNERS LLP
745 Fifth Avenue, 10th Floor
New York, NY 10151
Tel: (212) 588-0800

JOHN K. LY (SBN 247477)
jly@lianglyllp.com
JENNIFER CHOR (SBN 352577)
jchor@lianglyllp.com
LIANG LY LLP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
Telephone:  (213) 262-8000
Facsimile:   (213) 335-7776

*Attorneys for Defendant THQ Nordic AB*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Mar Vista Entertainment, LLC, The Ninth House, LLC and Ninth Dark, LLC,<br><br>                    Plaintiffs,<br><br>vs.<br><br>THQ Nordic AB,<br><br>                    Defendant.<br>_____<br>THQ Nordic AB,<br><br>                    Counter-Complainant,<br>vs.<br><br>Mar Vista Entertainment, LLC, The Ninth House, LLC and Ninth Dark, LLC,<br><br>                    Counter-Defendants.<br>_____ | CASE NO. 2:23-cv-6924-MEMF-SKx<br><br>[Hon. Maame Ewusi-Mensah Frimpong]<br><br>**THQ NORDIC AB'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: March 26, 2026<br><br>Time: 10:00 am<br><br>Courtroom: Courtroom 8B |

21328484.1

## <u>NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT</u>

PLEASE TAKE NOTICE that on March 26, 2026, at 10:00 am, in the Courtroom of the Honorable Judge Maame Ewusi-Mensah Frimpong, U.S. District Court, Central District of California, First Street Courthouse, 350 W. 1st Street, Los Angeles, California 90012 – Courtroom 8B 8th Floor, Defendant and Counter-Complainant THQ Nordic AB will and hereby does move pursuant to Fed. R. Civ. P. 56 for partial summary judgment in its favor on the issues of trademark infringement and unfair competition by Plaintiffs and Counter-Defendants Mar Vista Entertainment, LLC, The Ninth House, LLC and Ninth Dark, LLC.

The Motion is based on this Notice of Motion and Motion for Summary Judgment, the Memorandum of Points and Authorities, the accompanying Statement of Uncontroverted Facts and Conclusions of Law, the declarations and exhibits, the papers on file in this action, and any other submissions or arguments as may be presented to the Court.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on Tuesday, December 2, 2025.

DATED:  February 6, 2026

Respectfully Submitted,
HAUG PARTNERS LLP AND LIANG LY LLP

By:   */s/ John K. Ly*
John K. Ly
Ben Natter (*pro hac vice*)
Michael Barer (*pro hac vice*)
Christopher Gosselin (*pro hac vice*)

*Attorneys for Defendant and Counter-Claimant THQ Nordic AB*

21328484.1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iv

I.    THQ'S INTRODUCTION ........................................................................................ 1

II.   MAR VISTA'S INTRODUCTION .......................................................................... 3

III.  THQ'S STATEMENT OF FACTS .......................................................................... 4

      A.   The Parties ................................................................................................. 4

      B.   The ALONE IN THE DARK Franchise ..................................................... 5

      C.   THQ's ALONE IN THE DARK Mark ........................................................ 5

      D.   Mar Vista's Unauthorized Use of the Mark .............................................. 7

      E.   Consumers Have Been Actually Confused ................................................. 9

IV.   MAR VISTA'S STATEMENT OF FACTS ............................................................ 10

V.    LEGAL STANDARD ............................................................................................ 12

      A.   THQ's Legal Standard at Summary Judgment ......................................... 12

           1.   Trademark Infringement .................................................................. 12

           2.   Unfair Competition ......................................................................... 13

      B.   MarVista's Legal Standard on Summary Judgment ................................... 13

VI.   ARGUMENT ........................................................................................................ 14

      A.   THQ Has Valid Trademark Rights ........................................................... 14

           1.   THQ's Position ................................................................................ 14

           2.   MarVista's Position ......................................................................... 14

           3.   THQ's Reply Position ...................................................................... 15

      B.   Mar Vista's Film is Likely to be Confused with THQ's Registered Marks ........ 16

           1.   THQ's Position ................................................................................ 16

                a)   Similarity of the Marks .......................................................... 17

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

21328484.1

|   |   | b) | The Strength of the Mark .................................................. 18 |
|   |   | c) | Proximity or Relatedness of the Goods and Marketing Channels ............................................................................ 20 |
|   |   | d) | Evidence of Actual Confusion .......................................... 22 |
|   |   | e) | Type of Goods and Likely Degree of Care ...................... 23 |
|   |   | f) | Mar Vista's Intent in Selecting the Mark ....................... 24 |
|   |   | g) | Likelihood of Expansion of the Product Lines ............... 25 |
|   | 2. | | MarVista's Position – Response to *Sleekcraft* Factors ............ 26 |
|   |   | a) | Strength of the Mark ........................................................ 27 |
|   |   | b) | Proximity or Relatedness of the Goods ........................... 30 |
|   |   | c) | Similarity of the Marks .................................................... 33 |
|   |   | d) | Evidence of Actual Confusion .......................................... 33 |
|   |   | e) | Marketing Channels .......................................................... 35 |
|   |   | f) | Types of Goods and Likely Degree of Care ..................... 36 |
|   |   | g) | Intent in Selecting the Title ............................................ 37 |
|   |   | h) | Likelihood of Expansion .................................................. 38 |
|   | 3. | | THQ's Reply Position ....................................................... 39 |
|   |   | a) | Strength of the Mark ........................................................ 39 |
|   |   | b) | Proximity or Relatedness of the Goods ........................... 41 |
|   |   | c) | Evidence of Confusion ...................................................... 41 |
|   |   | d) | Marketing Channels .......................................................... 42 |
|   |   | e) | Types of Goods and Likely Degree of Care ..................... 43 |
|   |   | f) | Intent in Selecting the Title ............................................ 43 |
|   |   | g) | Likelihood of Expansion .................................................. 43 |

VII.    THQ'S CONCLUSION ......................................................................... 44

VIII.    MAR VISTA'S CONCLUSION ............................................................. 44

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*555-1212.com, Inc. v. Commun. House Int'l, Inc.*,
    157 F. Supp. 2d 1084 (N.D. Cal. 2001) ........................................................ 19

4

*Abercrombie & Fitch Co. v. Moose Creek, Inc.*,
    486 F.3d 629 (9th Cir. 2007) ...................................................................... 37

5

*Align Activation Wear, LLC v. Lululemon Athletica Canada, Inc.*,
    2022 WL 3210698 (9th Cir. Aug. 9, 2022)................................................. 36

6

7

*Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*,
    616 F.2d 440 (9th Cir. 1980) ...................................................................... 29

8

9

*Am. Home Prods. Corp. v. Johnson Chem. Co.*,
    589 F.2d 103 (2d Cir. 1978)....................................................................... 39

10

*AMF Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979) ................................................................passim

11

12

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................... 12

13

*Au Sable River Trading Post v. Dovetail Sols.*,
    No. 16-cv-11207, 2018 U.S. Dist. LEXIS 237589
    (E.D. Mich. Mar. 13, 2018) ....................................................................... 40

14

15

16

*Ben. Cosmetics LLC v. e.l.f. Cosmetics, Inc.*,
    No. 23-cv-00861-RS, 2024 U.S. Dist. LEXIS 228112
    (N.D. Cal. Dec. 17, 2024)................................................................. 39, 40, 42

17

18

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
    174 F.3d 1036 (9th Cir. 1999) .............................................................passim

19

20

*Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*,
    88 F. Supp. 2d 914 (C.D. Ill. 2000) ........................................................... 16

21

*Cairns v. Franklin Mint Co.*,
    24 F. Supp. 2d 1013 (C.D. Cal. 1998) ....................................................... 35

22

23

*Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*,
    269 F.3d 270 (3d Cir. 2001)................................................................... 32, 37

24

25

*CI Games S.A. v. Destination Films*,
    No. 2:16-cv-05719-SVW-JC, 2016 U.S. Dist. LEXIS 189118
    (C.D. Cal. Oct. 25, 2016) ........................................................................... 16

26

27

*Cohn v. Petsmart, Inc.*,
    281 F.3d 837 (9th Cir. 2002) ...................................................................... 34

28

-iv-

21328484.1

*Curity AB v. Chenmed, LLC*,
   2022 WL 18956198 (S.D. Fla. Dec. 7, 2022) ................................................. 30

*Doctor's Best, Inc. v. Nature's Way Prods., LLC*,
   143 F.1101 (9th Cir. 2025) .......................................................................... 34

*Dreamwerks Prod. Group v. SKG Studio*,
   142 F.3d 1127 (9th Cir. 1998) ...................................................... 12, 17, 21, 41

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
   967 F.2d 1280 (9th Cir. 1992) ..................................................................... 31

*E. Remy Martin & Co. v. Shaw-Ross Int'l Imports, Inc.*,
   756 F.2d 1525 (11th Cir. 1985) ..................................................................... 41

*Echo Drain v. Newsted*,
   307 F. Supp. 2d 1116 (C.D. Cal. 2003) .......................................... 26, 27, 28, 32

*Eclipse Assocs. Ltd. v. Data Gen. Corp.*,
   894 F.2d 1114 (9th Cir.1990) ....................................................................... 29

*Edge Games, Inc. v. Elec. Arts, Inc.*,
   745 F. Supp. 2d 1101 (N.D. Cal. 2010) .......................................................... 37

*Elizabeth Taylor Cosmetics Co. v. Annick Goutal, S.A.R.L.*,
   673 F. Supp. 1238 (S.D.N.Y. 1987)............................................................... 39

*Entrepreneur Media, Inc. v. Smith*,
   279 F.3d 1135 (9th Cir. 2002) ...................................................... 24, 29, 31, 41

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc.*,
   618 F.3d 1025 (9th Cir. 2010) ................................................................. 13, 19

*Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*,
   2011 WL 3348056 (E.D. Cal. Aug. 2, 2011)..................................................... 28

*GoTo.com, Inc. v. Walt Disney Co.*,
   202 F.3d 1199 (9th Cir. 2000) ................................................................. 22, 24

*Harlem Wizards Ent. Basketball, Inc. v. NBA Props., Inc.*,
   952 F. Supp. 1084 (D.N.J. 1997)................................................................... 32

*Hasbro, Inc. v. Sweetpea Entm't Inc.*,
   No. CV 13-03406 DMG (JCGx), 2013 U.S. Dist. LEXIS 198645
   (C.D. Cal. Aug. 16, 2013).......................................................................... 16

*Helix Env't Plan., Inc. v. Helix Env't & Strategic Sols.*,
   2020 WL 2556341 (S.D. Cal. May 20, 2020).............................................. 35, 36

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
   599 U.S. 140 (2023)..................................................................................... 3

-v-

21328484.1

*Kibler v. Hall*,
    843 F.3d 1068 (6th Cir. 2016) ................................................................. 29, 33

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
    408 F.3d 596 (9th Cir. 2005) ................................................................. 13, 14

*Kroeger v. Vertext Aerospace LLC*,
    2020 WL 3546086 (C.D. Cal. June 30, 2020) ................................................ 35

*Lahoti v. Vericheck, Inc.*,
    2007 WL 2570247 (W.D. Wash. Aug. 30, 2007) ......................................... 27, 39

*Lahoti v. Vericheck, Inc.*,
    586 F.3d 1190 (9th Cir. 2009) .................................................................... 27

*Lang v. Ret. Living Publ'g Co.*,
    949 F.2d 576 (2d Cir. 1991)....................................................................... 33

*Lerner & Rowe PC v. Brown Engstrand & Shely LLC*,
    119 F.4th 711 (9th Cir. 2024) ................................................................ 37, 43

*M2 Software, Inc. v. Madacy Ent't*,
    421 F.3d 1073 (9th Cir. 2005) ........................................................ 13, 26, 44

*Mach. Head v. Dewey Global Holdings Inc.*,
    2001 WL 1747180 (N.D. Cal. Dec. 13, 2001)................................................ 32

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
    290 F. Supp. 2d 1083 (C.D. Cal. 2003) ...................................................... 32

*Mattel, Inc. v. MCA Recs., Inc.*,
    296 F.3d 894 (9th Cir. 2002) ..................................................................... 15

*Mattel, Inc. v. Walking Mountain Prods.*,
    353 F.3d 792 (9th Cir. 2003) ................................................................ 16, 17

*Media, Inc. v. Smith*,
    279 F.3d 1135 (9th Cir. 2002) ................................................................... 29

*Midwestern Pet Foods, Inc. v. Societe des Produits Nestle S.A.*,
    685 F.3d 1046 (Fed. Cir. 2012)................................................................... 40

*Miss World (UK) Ltd. V. Mrs. Am. Pageants, Inc.*,
    856 F.2d 1445 (9th Cir. 1988) ................................................................... 29

*Murray v. CNBC*,
    86 F.3d 858 (9th Cir. 1996) ...................................................................... 26

*Network Automation, Inc. v. Advanced Sys. Concepts*,
    638 F.3d 1137 (9th Cir. 2011) ............................................................. 23, 36

-vi-

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

*New Kids on the Block v. News Am. Pub., Inc.*,
    971 F.2d 302 (9th Cir. 1992) ...................................................................... 15

*New West Corp. v. NYM Co. of California, Inc.*,
    595 F.2d 1194 (9th Cir. 1979) ........................................................... 13, 22

*Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*,
    210 F.3d 1099 (9th Cir. 2000) ................................................................. 26

*Noasha LLC v. Nordic Group of Companies, Ltd.*,
    630 F. Supp. 2d 544 (E.D. Pa. 2009) ....................................................... 31

*Ocean Bio-Chem, Inc. v. Turner Network Tele., Inc.*,
    741 F.Supp.1546 (S.D. Fla. 1990) ........................................................... 31

*Official Airline Guides, Inc. v. Goss*,
    6 F.3d 1385 (9th Cir. 1993) ..................................................................... 17

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
    469 U.S. 189 (1985)................................................................................. 19

*Partners for Health & Home, L.P. v. Seung Wee Yang*,
    No. CV 09-07849 CBM (RZx), 2010 U.S. Dist. LEXIS 143476
    (C.D. Cal. Sep. 13, 2010) ........................................................................ 42

*Playboy Enterprises, Inc. v. Netscape Comm.*,
    354 F.3d 1020 (9th Cir. 2004) ................................................... 23, 35, 42

*Playnation Play Sys. v. Velex Corp.*,
    924 F.3d 1159 (11th Cir. 2019) ............................................................... 40

*Pom Wonderful Ltd. Liab. Co. v. Hubbard*,
    775 F.3d 1118 (9th Cir. 2014) ................................................................. 17

*Punchbowl, Inc. v. AJ Press, LLC*,
    2024 WL 4005220 (C.D. Cal. Aug. 22, 2024)...............................passim

*Rearden LLC v. Rearden Com, Inc.*,
    683 F3d 1190 (9th Cir 2012) ................................................................... 13

*RiseandShine Corp. v. PepsiCo, Inc.*,
    41 F.4th 112 (2d Cir. 2022) ........................................... 27, 28, 29, 39

*Rodeo Collection, Ltd. v. W. Seventh*,
    812 F.2d 1215 (9th Cir. 1987) ................................................................. 13

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989).........................................................passim

*Sigler v. Gonzalez*,
    2025 WL 833443 (C.D. Cal. Mar. 17, 2025).................................. 13, 36

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

*Soremekun v. Thrifty Payless, Inc.*,
    509 F.3d 978 (9th Cir. 2007) ........................................................................... 13

*Surfvivor Media, Inc. v. Survivor Prods.*,
    406 F.3d 625 (9th Cir. 2005) ........................................................................... 39

*Talent Mobile Dev., Inc. v. Headios Grp.*,
    No. SA CV 16-0464-DOC (DFMx), 2017 U.S. Dist. LEXIS 216273
    (C.D. Cal. Oct. 3, 2017) ........................................................................... 25, 44

*Taylor v. List*,
    880 F.2d 1040 (9th Cir. 1989) ........................................................................ 12

*Tri-Star Pictures, Inc. v. Unger*,
    14 F. Supp. 2d 339 (S.D.N.Y. 1998) ............................................................... 43

*Valador, Inc. v. HTC Corp.*,
    241 F. Supp. 3d 650 (E.D. Va.) ...................................................................... 30

*W.W.W. Pharm. Co. v. Gillette Co.*,
    984 F.2d 567 (2d Cir. 1993) ........................................................................... 32

*World Champ Tech. LLC v. Peloton Interactive, Inc.*,
    2024 U.S. Dist. LEXIS 27975 (N.D. Cal. Feb. 16, 2024) ............................... 39

*Yagoubzadeh Law Firm LLP v. Pizano-Diaz*,
    No. CV 23-8299-GW-MARx, 2024 U.S. Dist. LEXIS 237100
    (C.D. Cal. Dec. 11, 2024) .............................................................................. 42

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*,
    419 F.3d 925 (9th Cir. 2005) ................................................................. 27, 28, 39

*Zobmondo Entm't, Ltd. Liab. Co. v. Falls Media, Ltd. Liab. Co.*,
    602 F.3d 1108 (9th Cir. 2010) ........................................................................ 19

**Statutes**

15 U.S.C. § 1057(b) ........................................................................................... 14

15 U.S.C. § 1114 ............................................................................................... 12

15 U.S.C. § 1115(a) ........................................................................................... 14

15 U.S.C. § 1125(a) ........................................................................................... 12

**Rules**

Fed. R. Civ. P. 56 ............................................................................................... 1

Fed. R. Civ. P. 56(c) .......................................................................................... 12

-viii-

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Fed. R. Civ. P. 56(e)(2) ........................................................................................ 12

**Other Authorities**

2 McCarthy on Trademarks and Unfair Competition § 11:91 ..................................... 30

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

21328484.1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    THQ'S INTRODUCTION

THQ owns the ALONE IN THE DARK franchise, comprised of seven video games and two feature films spanning more than thirty years. THQ also owns two federally registered trademarks asserted in this litigation: i) U.S. Registration No. 4,803,628 for ALONE IN THE DARK®, issued on September 1, 2015, and ii) U.S. Registration No. 4,860,846 for ALONE IN THE DARK: ILLUMINATION®, issued on November 24, 2015 (collectively, "ALONE IN THE DARK Mark" or "Mark"). THQ acquired the ALONE IN THE DARK Mark from Atari in 2018.

The original ALONE IN THE DARK video game, developed by Atari and released in 1992, has been heralded as creating and defining an entirely new genre of horror survival video games. The original ALONE IN THE DARK video game, and its sequels, have enjoyed enduring success and popularity for decades. Since its acquisition of the Mark, THQ continued to sell ██████████████████████ of the original ALONE IN THE DARK video games: ALONE IN THE DARK (released in 1992), ALONE IN THE DARK 2 (released in 1993) and ALONE IN THE DARK 3 (released in 1995) separately, and as part of a classic anthology.

In August 2022, THQ published an "Official Reveal Trailer" on YouTube for a long-anticipated seventh installment of the video game franchise, also titled ALONE IN THE DARK. The video has subsequently garnered more than 1.1 million views.  THQ's video game reboot featured voice acting by Hollywood actors David Harbour (from Stranger Things) and Emmy-award winner Jodie Comer. THQ spent ████████ developing the game, and another ███ on marketing, including hosting a live event at a haunted house, attended by some of the most influential names in video games. Released to the public in 2024, the newest ALONE IN THE DARK video game already sold more than ██████████ (not including additional downloadable content, and other ancillary products), including more than ████████ to consumers in the United States, in just the first year and a half on the market.

The ALONE IN THE DARK franchise also includes two authorized films produced by Dr. Uwe Boll.  In 2005, "ALONE IN THE DARK," featuring Christian Slater, Tara Reid, and

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

21328484.1

Stephen Dorff, released in theaters nationwide. A second authorized film, ALONE IN THE DARK 2, released in 2008.

In October 2022, Plaintiffs released an infringing direct-to-streaming horror film titled "Alone in the Dark." This movie has been watched millions of times on https://tubitv.com/, an online streaming platform operated by Tubi Inc. ("Tubi"), and is also available to purchase or rent through other popular channels including Apple, Amazon, and Google. The title of the movie—which is identical to THQ's registered trademark—has caused, and will continue to cause actual confusion in the minds of the purchasing public, as they are likely to mistakenly assume that Plaintiffs' film was produced, sanctioned, authorized and/or associated with THQ and/or its ALONE IN THE DARK trademarks and franchise.

Continued consumer confusion is particularly likely since it is common in the film industry for video games to be adapted into movies, and *two* movies have already been released based on THQ's ALONE IN THE DARK video game series.  Indeed, some of the most successful Hollywood movies in recent years were adapted from popular video games, such as Minecraft and Super Mario Bros.

Further, not only is Plaintiffs' film title—"Alone in the Dark"—identical to THQ's registered trademark, that title is formatted in the same fashion as the logo for some of THQ's ALONE IN THE DARK video games. Thus, consumers looking at advertising for Plaintiffs' film are likely to associate that art with THQ's video game franchise.

THQ asks the Court to find that Plaintiffs Mar Vista Entertainment, LLC, The Ninth House, LLC and Ninth Dark, LLC (simplified to "Mar Vista" for the purposes of this Motion) infringe THQ's Trademarks as a matter of law (THQ's First and Second Counterclaims), and constituted unfair competition (THQ's Third and Fourth Counterclaims), and THQ moves for partial summary judgment on the elements of priority and likelihood of confusion (the elements of both trademark infringement and THQ's unfair competition claims).

## II.   MAR VISTA'S INTRODUCTION

As a threshold matter, the Court need not decide THQ's Motion for Partial Summary Judgment, nor reach the issue of likelihood of confusion, because THQ's trademark infringement and unfair competition claims are precluded by *Rogers v. Grimaldi*, which "offers an escape from the likelihood-of-confusion inquiry and a shortcut to dismissal" in cases involving expressive works like MarVista's film *Alone in the Dark*. *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 157 (2023); *see* MarVista's concurrently filed MSJ.[1]

However, should the Court consider THQ's Motion for Partial Summary Judgment, it fails on its own merits, as there are genuine disputes of material fact that are not appropriate to resolve on summary judgment.  THQ attempts to exercise a monopoly over the common descriptive phrase "alone in the dark."  But THQ's rights in the trademark ALONE IN THE DARK are limited as a matter of law and fact, and THQ has failed to establish likelihood of confusion.

While THQ acquired the rights to the trademark ALONE IN THE DARK for video games in 2018, THQ has only released one video game titled ALONE IN THE DARK, in 2024. Before that time, THQ's predecessors in interest had sporadically released six ALONE IN THE DARK video games (collectively, with 2024 release, the "Game"), over the span of three decades, beginning in 1992.  All the while, "alone in the dark" has been a ubiquitous phrase that has been used for countless unrelated expressive works, with nary a word from THQ or its predecessors.

In 2002, long before THQ's acquisition of the trademark, THQ's predecessor ███████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████.

---

[1] "MarVista" refers to Plaintiffs Mar Vista Entertainment, LLC, The Ninth House, LLC and Ninth Dark LLC.

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

21328484.1

Two decades later, in 2022, MarVista released its film on Tubi, which was coincidentally titled *Alone in the Dark* (the "Film"). MarVista chose the title of the Film to describe its content: the story of a woman, alone in her house (with much of the Film taking place at night), who is trying to determine the identity of a mysterious stalker. The evidence is undisputed that MarVista had no intention of referring to THQ or the Game. That the Film and the Game share the same title is merely a coincidence—and a function of "alone in the dark" being a descriptive, commonplace expression. Indeed, MarVista did not use "Alone in the Dark" as a ***trademark*** at all—but rather as the title of its Film—and thus its non-trademark use cannot give rise to an infringement claim. Nonetheless, THQ has accused MarVista of trademark infringement and unfair competition and now seeks summary judgment on the grounds that consumers purportedly are likely to be confused. THQ bears the burden of establishing likelihood of confusion, which is a multi-factor, fact-intensive inquiry that typically is a matter to be determined by the trier of fact. Summary judgment is disfavored.

Here, THQ has failed to carry its burden. Aside from THQ's Game and MarVista's Film coincidentally sharing the same descriptive title, all of the factors in the likelihood of confusion analysis favor MarVista—or at the very least raise factual questions that are not appropriate for the Court to decide as a matter of law. THQ's ALONE IN THE DARK is a weak mark in a crowded field; THQ is not in the movie business; there is no evidence of actual confusion; the works are promoted on different platforms; video game and film consumers exercise care in their decisions; it is undisputed that MarVista selected the Film's title in good faith; and THQ is contractually barred from expanding into film. The Court should deny THQ's Motion for Partial Summary Judgment.

## III.  THQ'S STATEMENT OF FACTS

### A.  The Parties

THQ Nordic is a video game publisher and developer based in Vienna Austria, with more than a dozen subsidiaries around the globe. (Joint Statement of Uncontroverted Facts ("JSUF") No. 1.) THQ Nordic owns the ALONE IN THE DARK franchise, including the two registered Trademarks asserted in this litigation. (JSUF Nos. 11-14.)

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1    MarVista Entertainment, LLC is a media and film production company that makes and
2    distributes direct-to-consumer films. (JSUF No. 3). In October 2022, Mar Vista released a film
3    titled "Alone in the Dark," ████████████████, an online streaming platform. (JSUF Nos. 6-7).
4    Plaintiff the "The Ninth House, LLC" is a production company, ████████████████
5    ████████████████████████████████████████████████████████
6    ████████████████████████. (JSUF Nos. 4-5).
7        On May 11, 2023, counsel for THQ sent cease-and-desist letters explaining that use of
8    "Alone in the Dark" as a film title is likely to confuse consumers, and the film should be removed
9    from circulation and renamed. (JSUF No. 8). Plaintiffs (referred to collectively as "Mar Vista"
10   for the purposes of this motion) filed a declaratory judgment action against THQ on August 22,
11   2023.  Dkt. 1. On February 22, 2024, THQ filed amended counterclaims alleging Trademark
12   Infringement and Unfair Competition. Dkt. 25.
13   **B.  The ALONE IN THE DARK Franchise**
14       THQ acquired the rights to the ALONE IN THE DARK franchise from Atari in 2018.
15   (JSUF No. 11).  First released in 1992, the original ALONE IN THE DARK video game "gave
16   birth to the survival horror genre," and has been called "one of the seminal survival horror games
17   that helped create and define the genre." (JSUF Nos. 32-35). Subsequent installments of the
18   franchise released as Alone in the Dark 2 (1993), Alone in the Dark 3 (1995), Alone in the Dark:
19   The New Nightmare (2001), Alone in the Dark (2008), Alone in the Dark: Illumination (2015),
20   and Alone in the Dark (2024). (JSUF No. 31). THQ has continuously sold and supported these
21   seven ALONE IN THE DARK video games through the online Steam platform (owned by Valve
22   Corporation) since it purchased the ALONE IN THE DARK franchise. (JSUF No. 31).
23       The franchise has two authorized film adaptations. (JSUF Nos. 48-50). The 2005 film,
24   ALONE IN THE DARK, starred Christian Slater, Tara Reid, and Stephen Dorff, and had a wide
25   theatrical release in the United States. (JSUF No. 49). A second authorized film, Alone in the
26   Dark 2, was released in 2008. (JSUF No. 50).
27   **C.  THQ's ALONE IN THE DARK Mark**
28

21328484.1

1
2
3
4

On January 22, 2015, Atari filed a Trademark Application for ALONE IN THE DARK. (JSUF No. 19). The application included a specimen (example of use), from a webpage where consumers could buy the 2008 Alone in the Dark game. (JSUF No. 20). The specimen contained the following key and cover art for the PC version of the 2008 video game. (JSUF No. 21).

 

5
6
7
8
9
10
11
12
13
14
15

In August, 2025, THQ submitted examples of the Mark being used in connection with the latest release of the video game franchise, enlarged and reproduced below.  (JSUF Nos. 27-28). The image at below left is from the cover art for the PlayStation 5 version of the 2024 video game, while the image at below right is the key art for the PC (personal computer) version of the game sold on the popular Steam platform. (JSUF Nos. 25-28).

16
17
18
19
20
21
22

 

23
24
25
26
27
28

THQ has sold other branded merchandise associated with the ALONE IN THE DARK Mark, such as soundtracks, digital costume packs, hats, and mugs.  (JSUF No. 47). THQ also continues to sell the older ALONE IN THE DARK video games separately, in a bundle (see image at below left) and as an anthology collection (key art shown at below right).  (JSUF Nos. 31, 36-41). The ALONE IN THE DARK Anthology consists of Alone in the Dark 1, 2, and 3, plus the 2008 ALONE IN THE DARK. (JSUF Nos. 38-39).

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

21328484.1



**D. Mar Vista's Unauthorized Use of the Mark**

In October 2022, Mar Vista released an unlicensed and unauthorized film titled "Alone in the Dark" on the streaming platform Tubi. (JSUF No. 6). Tubi categorizes the film with the labels "Thriller · Drama  · Horror." (JSUF No. 74). ▉▉▉▉▉▉▉▉ have seen Mar Vista's film on Tubi. (JSUF No. 70). The film has ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉, and is available to purchase or rent on popular streaming platforms such as Apple, Amazon, and Google.  (JSUF No. 75).

Mar Vista primarily uses two pieces of key art in connection with its film. The first, associated with the Tubi website, features the lead actress (Novi Brown) in the foreground, and a menacing unknown figure in the background, as shown below.  (JSUF Nos. 71-73).




The key art used by Amazon features Novi Brown in the foreground, and an unknown figure at the top of the stairs in the background.  The logo on Amazon features stylized lettering over a black background, as shown below. (JSUF No. 77). On Amazon, the film is available for purchase or rent, and is categorized as "Suspense · Horror." (JSUF Nos. 76-78).

21328484.1



The Official Trailer for Mar Vista's "Alone in the Dark film" uses a logo with stylized white lettering over a dark sky background, as shown below left. (JSUF Nos. 86, 91-92). Writer and director Brant Daugherty posted a similar image on Instagram to promote the film, as shown at below right. (JSUF Nos. 83-84).



The Tubi platform and other digital platforms such as Apple, Amazon, and Google also offer consumers the option to watch both of the older authorized ALONE IN THE DARK films (JSUF Nos. 96-97, 101-102). The images below show the three films as they appear after a search for the phrase "alone in the dark" on Tubi (top image) and Amazon (bottom image). *Id.*

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

21328484.1

### E. Consumers Have Been Actually Confused

Due to Plaintiffs' actions, there are numerous examples of consumer confusion in the marketplace, as shown, for example, by a variety comments posted on YouTube in connection with the Official Trailer for Mar Vista's unauthorized film. (JSUF Nos. 86, 88, 112-116). These comments include:

- "Where's Edward Carnby?  What isn't it based in the Derceto?"[2]
- "I thought it was a game movie, apparently they stole the title from the horror games."
- "More importantly where's David Harbour?"[3]
- "Damn I was hoping this would be a lovecraftian movie from the title."[4]
- "So this isn't base on the video game or the Uwe Boll movie?"[5]
- "This game is so buggy."
- "Soo this takes place on modern times?? And where are all the Lovecraft refferences and ancient creatures?? This really stinks like worst than the Street Fighter movies."[6]
- "Yeah, this has nothing to do with Alone in the Dark as far as I can tell lol.  I was wondering if it's just a naming coincidence and an unrelated movie"

---

[2] Edward Carnby and Derceto are a character and location in the ALONE IN THE DARK video games. (JSUF Nos. 113-114).
[3] David Harbour is an actor, recently known for his part in the TV series Stranger Things, hired by THQ to voice Edward Carnby for the 2024 ALONE IN THE DARK video game.  (JSUF No. 52).
[4] "Lovecraftian" refers to the writing (generally centered on horror, fantasy, and science fiction) of Howard Phillips Lovecraft, best known for his creation of the fictional "Cthulhu" universe.
[5] Dr. Uwe Boll produced both of the authorized ALONE IN THE DARK films. (JSUF Nos. 49-50).
[6] Street Fighter is a video game franchise, later adapted into a movie franchise.

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

21328484.1

- "it's odd considering there is already another movie with this same title soo i it
  cant be they use the same name this much"

(JSUF Nos. 86, 88, 112-116).

Other actual evidence of confusion can be found on the "News" page for Mar Vista's "Alone in the Dark" film at IMDB, which contains seven news articles, with none relating to Mar Vista's film. (JSUF No. 120). Instead, four of the articles relate directly to THQ's 2024 video game, one of the articles relates to Uwe Boll (the producer of the authorized ALONE IN THE DARK films), and one of the articles relates to the original ALONE IN THE DARK video game. (JSUF No. 121). Another example includes a movie review for Mar Vista's "Alone in the Dark" film on the website "Bloody Disgusting," where three of the four user comments relate to the authorized 2005 ALONE IN THE DARK film produced by Uwe Boll, rather than to Mar Vista's film, which is the subject of the article. (JSUF Nos. 117-118).

## IV.    MAR VISTA'S STATEMENT OF FACTS

While THQ is the current rights holder of the ALONE IN THE DARK Mark, the rights in that Mark did not originate with THQ. JSUF Nos. 11-12, 14. Rather, Infogrames, Inc. originally held the rights to the ALONE IN THE DARK video game and intellectual property. JSUF No. 130.

[7] Infogrames retained those rights in the Game that were not explicitly granted to Boll, including television episodics, television motion picture, television movies-of-the-week, and mini-series rights. JSUF No. 134.

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

21328484.1

1  ███████████████████████████████████████████████

2  ███████████████████████████████████████████████

3  ███████████████████████████████████████████████

4  ███████████████████.  JSUF Nos. 136-137.

5      ██████████████████████████████████████████

6  ███████████████████████████████████████████████

7  ██████████████████████████████████████.  JSUF No. 138.

8      Regardless, in 2018, THQ acquired all of Atari's rights in the ALONE IN THE DARK

9  video game catalogue and accompanying trademarks.  JSUF No. 11.  █████████████████

10  █████████████████████████████████████████████

11  ████████████████████████████████████████████

12  █████████████████████████.  JSUF No. 139.

13      At the time of THQ's purchase from Atari, there had been six previous ALONE IN THE

14  DARK video games released between 1992 and 2015, all of which followed the same basic

15  characters, plot, and setting—with the original game released 30 years before MarVista's 2022

16  Film, and the most recent released seven years before MarVista's Film.  JSUF Nos. 31, 141.

17      ██████████████████████████████████████████

18  ████████████████████████████████████.  JSUF Nos. 142-143.  The Pieces

19  Interactive version of the ALONE IN THE DARK Game was released in March 2024.  JSUF

20  No. 45.  █████████████████████████████████████.  JSUF Nos. 147-148.  ██████████

21  ████████████████████████████████████████████

22  ████████████████████████████████████████████

23  ████████████████████████████████████████████

24  █████████████████████.  JSUF Nos. 131-132, 139.

25      By contrast, MarVista, Ninth House and Ninth Dark (collectively "MarVista") are

26  production companies that focus on direct-to-stream movies.  JSUF Nos. 3-5.  Their competitors

27  are other film production companies.  MarVista does not develop video games.  *Id.*

28

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

21328484.1

Finally, THQ and its predecessors were neither the first, nor the only ones, to use "Alone in the Dark" as the title of an expressive work: there are numerous other, unrelated works with that title. JSUF Nos. 150-153. Indeed, in 1982—a decade before the release of the first ALONE IN THE DARK video game—an unrelated film titled "Alone in the Dark" was released. JSUF No. 150. Since then, at least three more unrelated films were released in 1993, 2014, and 2019, and many more were registered with the U.S. Copyright Office. JSUF No. 151, 180. There are also more than one hundred songs, over a dozen books, and handful of videos, podcasts, screenplays, and television programs that include "alone in the dark" in their title. JSUF Nos. 151-153, 180. But THQ and its predecessors have not enforced their rights in the ALONE IN THE DARK Mark with regard to any of these works. JSUF Nos. 154-157.

## V. **LEGAL STANDARD**

### A. THQ's Legal Standard at Summary Judgment

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. See Fed. R. Civ. P. 56(e)(2). A genuine issue of fact is one that could reasonably be resolved in either party's favor. The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

### 1. Trademark Infringement

A trademark infringer is liable under the Lanham Act, 15 U.S.C. § 1114, if it uses in commerce a mark in connection with goods or services which is likely to cause confusion, mistake, or to deceive, without the consent of the registrant. The general determination of liability under trademark law, under both common law and the Lanham Act, is the likelihood of confusion. 15 U.S.C. § 1125(a); *see Dreamwerks Prod. Group v. SKG Studio*, 142 F.3d 1127, 1129 n.2 (9th Cir. 1998) (treating common law and Lanham Act claims as coextensive). The elements of infringement are (1) ownership of a valid mark (i.e., a protectable interest), and (2) that the alleged

-12-

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1    infringer's use of the mark "'is likely to cause confusion, or to cause mistake, or to deceive'"

2    consumers. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th

3    Cir. 2005).

4                      **2.  Unfair Competition**

5        Courts have uniformly held that common law and statutory trademark infringement are

6    merely specific aspects of unfair competition. *New West Corp. v. NYM Co. of California, Inc.,*

7    595 F.2d 1194, 1201 (9th Cir. 1979).  Thus, the unfair competition analysis is coextensive with

8    the trademark analysis, as presented below.

9           **B.  MarVista's Legal Standard on Summary Judgment**

10       As this Court has recognized, on summary judgment, "[a] court must view the facts and

11    draw inferences in the manner most favorable to the non-moving party."  *Sigler v. Gonzalez*,

12    2025 WL 833443, at *2 (C.D. Cal. Mar. 17, 2025) (Frimpong, J.).  "In judging evidence at the

13    summary judgment stage, the court does not make credibility determinations or weigh

14    conflicting evidence." *Id.* (quoting *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

15    Cir. 2007)).  "Where a moving party fails to carry its initial burden of production, the nonmoving

16    party has no obligation to produce anything, even if the nonmoving party would have the

17    ultimate burden of persuasion at trial. … In such cases, the nonmoving party may defeat the

18    motion for summary judgment without producing anything."  *Id.*

19       For claims of trademark infringement (and related claims of unfair competition), the

20    party asserting infringement bears the ultimate burden of demonstrating likelihood of confusion

21    at trial.  *M2 Software, Inc. v. Madacy Ent't*, 421 F.3d 1073, 1081, n.6 (9th Cir. 2005).

22    "Likelihood of confusion requires that confusion be ***probable***, not simply a possibility."  *Rodeo*

23    *Collection, Ltd. v. W. Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987) (emphasis added).  In

24    general, whether there is likelihood of confusion "should be answered as a matter of fact by a

25    jury, not as a matter of law by a court." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand*

26    *Management, Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010); *Rearden LLC v. Rearden Com, Inc.*, 683

27    F3d 1190, 1210 (9th Cir 2012) ("Given the open-ended nature of this multi-prong inquiry, …

28    summary judgment on 'likelihood of confusion' grounds is generally disfavored.").

-13-

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1    **VI.    ARGUMENT**

2         **A. THQ Has Valid Trademark Rights**

3              **1.    THQ's Position**

4         THQ's Trademark Registrations Nos. 4,803,628 for ALONE IN THE DARK® and

5    4,860,846 for ALONE IN THE DARK: ILLUMINATION® are "incontestable" and presumed

6    valid and protectable. 15 U.S.C. § 1057(b), 1115(a); *see KP Permanent*, 408 F.3d at 602-603.

7    (JSUF Nos. 13, 17). Further, a federal registration is *prima facie* evidence of the registrant's

8    ownership of the mark, and the registrant's exclusive right to the use of the registered mark in

9    commerce. 15 U.S.C. § 1057(b).

10        Mar Vista does not contest THQ's ownership of the Mark, or THQ's use of the Mark in

11   commerce. "Alone in the Dark" has been used in connection with horror video games since the

12   early 1990s, and has been used continuously for more than thirty years in connection with related

13   video games and features films. The "Alone in the Dark" Mark was first registered by Atari in

14   2015. (JSUF Nos. 12, 14, 19). Thereafter, Atari sold the Alone in the Dark franchise, including

15   the registered trademarks, to THQ in 2018. (JSUF Nos. 11, 12, 14).

16        It is black letter law that, "[t]he first to use a mark is deemed the 'senior' user." *Brookfield*

17   *Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999). Mar Vista—the

18   junior user—began using "Alone in the Dark" in connection with its horror film in late 2022.

19   Although Mar Vista contends that it does not use "Alone in the Dark" as a trademark, Mar Vista

20   does not dispute that THQ's use of the Mark predates the release of Mar Vista's film.

21        For these reasons, which are largely uncontested, the Court should grant judgment that

22   THQ has valid ownership of trademark rights and priority with respect to its registered Mark.

23              **2.    MarVista's Position**

24        While THQ has trademark registrations in Classes 021, 023, 026, 036, 038 for electronic

25   games and Classes 100, 101, and 107 for on-line computer games, THQ's trademark rights do

26   not extend to films.  JSUF Nos. 131-132, 139.  To the contrary, ███████████████

27   ████████████████████████████████████████████

28   ████████████████████████████████████████████

-14-

1 ███████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 ████████████████████████████████████████.

6      Regardless, MarVista did not use "Alone in the Dark" as a ***trademark***, but rather as the

7 title of its Film.  The Ninth Circuit long ago recognized that a "non-trademark use of a mark [is]

8 a use to which the infringement laws simply do not apply[.]"  *New Kids on the Block v. News*

9 *Am. Pub., Inc.*, 971 F.2d 302, 307 (9th Cir. 1992).  Non-trademark uses are those "where the use

10 of the trademark does not attempt to capitalize on consumer confusion or to appropriate the

11 cachet of one product for a different one" and such uses "lie[] outside the strictures of trademark

12 law: [b]ecause [they do] not implicate the source-identification function that is the purpose of

13 trademark."[8]  The title of MarVista's Film is not a source identifier; it simply describes what the

14 Film is about.  "Though consumers frequently look to the title of a work to determine what it is

15 about, they do not regard titles of artistic works in the same way as the names of ordinary

16 commercial products."  *Rogers v. Grimaldi*, 875 F.2d 994, 1000 (2d Cir. 1989) (internal citation

17 omitted).  "A title is designed to catch the eye and to promote the value of the underlying work.

18 Consumers expect a title to communicate a message about the book or movie, but they do not

19 expect it to identify the publisher or producer."  *Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894,

20 902 (9th Cir. 2002) (internal citation omitted).

21      **3.  THQ's Reply Position**

22      Neither of Mar Vista's arguments address THQ's trademark rights. However, because Mar

23 Vista's above arguments are repeated throughout this brief, THQ addresses them once here.

24      First, Mar Vista argues that "██████████████████████████" and that THQ

25 "████████████████████████████████████."  But  TV  movies  are

26

27 _____

28 [8] While New Kids on the Block discussed the "nominative use of a mark," the Ninth Circuit was clear that it was "generaliz[ing] a class of cases" of non-trademark use. *Id.* at 307-08. The Ninth Circuit did not suggest that nominative fair use was the only class of non-trademark use.

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

21328484.1

precisely the type of "good" at issue here. Mar Vista's Film never released in theaters, and is definitionally a "TV movie." *See* JSUF No. 3; *see also Hasbro, Inc. v. Sweetpea Entm't Inc.*, No. CV 13-03406 DMG (JCGx), 2013 U.S. Dist. LEXIS 198645, at *4-5 (C.D. Cal. Aug. 16, 2013) (distinguishing between theatrical motion pictures and television motion pictures). In fact, Mar Vista ████████████████████████████████████████████████████████. Lyn Tr. 37:10-39:4; Miller 94:5-95:4. Thus, Mar Vista concedes that, at the least, THQ may release "TV movies" like Mar Vista's Film.

Second, regardless of whether THQ could release a theatrical film, consumers will still associate Mar Vista's Film with THQ and ALONE IN THE DARK. Indeed, "[t]he title of a movie, if confusingly similar to the title of a video game series, absolutely would suggest to consumers that the producer of the video game is also the producer of the movie." *CI Games S.A. v. Destination Films*, No. 2:16-cv-05719-SVW-JC, 2016 U.S. Dist. LEXIS 189118, at *26 (C.D. Cal. Oct. 25, 2016).

Third, the Boll Agreement ████████████████████████████████████████ ████████████████████████████████████████████████████████████████ █████████████████████████████. *Id.* These terms constitute the essential terms of a license. *See Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*, 88 F. Supp. 2d 914, 921 (C.D. Ill. 2000) (citing 2 McCarthy § 18:43).

Finally, Mar Vista argues that the title of MarVista's Film is not a source identifier under *Rogers*. 875 F.2d 994. But *Rogers* is irrelevant since it presents a threshold issue and is separately briefed in Mar Vista's motion for summary judgment.

## B. Mar Vista's Film is Likely to be Confused with THQ's Registered Marks

### 1. THQ's Position

The Ninth Circuit considers eight factors, often referred to as the *Sleekcraft* factors, to determine the likelihood of confusion. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 (9th Cir. 2003). The eight factors are: (1) strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5)

marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Id*. at 348-349.  Although some factors—such as the similarity of the marks, and whether the parties compete—will  always be important, the factors should not be rigidly weighed, as the court does not "count beans." *See Dreamwerks*, 142 F.3d at 1130-32.  As such, "it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of factors." *Brookfield,* 174 F.3d at 1054. Because each of the factors supports confusion, the Court should grant summary judgment on the issue of likelihood of confusion, in THQ's favor.

### a)  Similarity of the Marks

The similarity of the marks is always important in determining whether a likelihood of confusion exists. *Pom Wonderful Ltd. Liab. Co. v. Hubbard*, 775 F.3d 1118, 1127 (9th Cir. 2014). "[T]he more similar the marks in terms of appearance, sound, and meaning, the greater the likelihood of confusion." *Brookfield*, 174 F.3d at 1054.  The marks "must be considered in their entirety and as they appear in the marketplace," and "similarities are weighed more heavily than differences."  *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993).

Here, THQ's registered mark for  "ALONE IN THE DARK" is *underline identical* to the name of the infringing film, also entitled "Alone in the Dark." (JSUF No. 16). Thus, the marks unquestionably look and are pronounced identically. Further, there are authorized films with the name ALONE IN THE DARK in the marketplace, even on the same streaming platforms as Mar Vista's infringing film. (JSUF Nos. 96-97, 101-102).

The marks are also visually arranged in a strikingly similar manner.  Mar Vista's key art (below, left) closely resembles the art for the 2008 Alone in the Dark video game (which was the specimen submitted to the USPTO) (below, right). (JSUF Nos. 20-22, 71-72). This game is still sold by THQ today. (JSUF Nos. 38, 42). Both images position the word ALONE in capital letters in the top row, with the words "IN THE" in a smaller font, above one another, and next to the word "DARK" in capital letters. Both marks use similar looking fonts that utilize a suspenseful fading effect. Both images also superimpose the Mark in front of the main character. The

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

differences between the Marks, if any, are so slight, the court can easily reach a conclusion as to similarity, as a matter of law, without expert testimony or survey evidence. *See Sleekcraft*, 599 F.2d at 352.

 

**Mar Vista's Unauthorized Use**          **THQ's Official Mark**

Other instances of Mar Vista's use of "Alone in the Dark," are also strikingly similar to THQ's ALONE IN THE DARK Mark. For example, the key art from the official trailer for Mar Vista's film, shown below left, and the key art displayed on the Amazon website, shown below center, are virtually indistinguishable from THQ's use of the Mark, for example as shown at below right.

  

**Mar Vista on YouTube**          **Mar Vista on Amazon**          **THQ's use of the Mark**
(JSUF Nos. 86, 90-92)          (JSUF Nos. 77-79)          (JSUF Nos. 39-40)

Because the title of Mar Vista's unauthorized film is the same as THQ's mark, and because at least some of Mar Vista's advertising is indistinguishable from THQ's advertising for its ALONE IN THE DARK video games, this factor weighs heavily in THQ's favor.

### b)  The Strength of the Mark

"The stronger a mark — meaning the more likely it is to be remembered and associated in the public mind with the mark's owner — the greater the protection it is accorded by the trademark laws." *Brookfield*, 174 F.3d at 1058. Two relevant considerations are conceptual strength and commercial strength. Conceptual strength involves classification of a mark "along a

spectrum of generally increasing inherent distinctiveness as generic, descriptive, suggestive, arbitrary, or fanciful." *Id*. Commercial strength is based on "actual marketplace recognition," and thus "advertising expenditures can transform a suggestive mark into a strong mark." *Id*.

"A mark's conceptual strength depends largely on the obviousness of its connection to the good or service to which it refers." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1032-33 (9th Cir. 2010). At one end of the spectrum, generic marks that refer "to the genus of which the particular product is a species," are not registerable as trademarks. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc*., 469 U.S. 189, 194 (1985). At the other end of the spectrum are arbitrary marks, having no connection to the product—such as Apple computers, and fanciful marks—made-up words with no discernable meaning—such as Pepsi soda and Kodak cameras. A suggestive mark is one for which a consumer must use imagination or multistage reasoning to understand the mark's significance; the mark does not describe the product's features, but suggests them. *Zobmondo Entm't, Ltd. Liab. Co. v. Falls Media, Ltd. Liab. Co.*, 602 F.3d 1108, 1114 (9th Cir. 2010).  In contrast, a merely descriptive mark describes the qualities or characteristics of a good or service in a straightforward way that requires no exercise of the imagination.  *Id*.

ALONE IN THE DARK is a suggestive mark, because while it conjures thoughts of mystery, suspense, and isolation, the words in the mark do not describe any particular product in a straightforward way. One can imagine how it might feel to be 'Alone in the Dark,' and thereby understand the relationship between the Mark and the story that unfolds in an ALONE IN THE DARK game. But nothing in the Mark is descriptive of a video game or a film. And there is no evidence in the record that other video game companies use the phrase "Alone in the Dark" to describe their games. *See 555-1212.com, Inc. v. Commun. House Int'l, Inc.*, 157 F. Supp. 2d 1084, 1089 (N.D. Cal. 2001) ("it is proper to take notice of the extent to which others in a similar commercial context use the word.").

ALONE IN THE DARK also has a strong commercial presence in the gaming community. The original ALONE IN THE DARK game has been called "one of the seminal survival horror games that helped create and define the genre," (JSUF No. 32) and one that "revolutionized an

entire genre 30 years ago." (JSUF No. 33). The ALONE IN THE DARK franchise has generated seven game titles, spanning more than thirty years. (JSUF No. 31). In 2024, THQ launched a reboot of the franchise, spending more than ███████ developing the game, and another █ ███ for marketing. (JSUF No. 54). The game's initial "Reveal Trailer," posted to YouTube in 2022, attracted more than 1.1 million views on YouTube. (JSUF No. 53). As part of its marketing campaign, THQ invited some of the most influential names in video gaming to a real-life haunted house to explore, solve puzzles, and film their experiences. (JSUF No. 57). One of these videos alone, by content creator PewDiePie, has more than 2.2 million views on YouTube. (JSUF No. 58). In its first year and a half on the market (less than halfway through its life cycle) the 2024 ALONE IN THE DARK video game has sold more than ███████ to consumers in the United States (not including additional downloadable content, and other ancillary products). (JSUF Nos. 61-62).

Because ALONE IN THE DARK is a well-known franchise with a long history, and because THQ recently released a new entry in the franchise with significant commercial success, this factor weighs heavily in THQ's favor.

### c)  Proximity or Relatedness of the Goods and Marketing Channels

"Convergent marketing channels increase the likelihood of confusion," especially when the "general class of [] purchasers exposed to the products overlap." *Sleekcraft*, 599 F.2d at 353. There is close proximity in this case between Mar Vista's infringing film, and THQ's Mark, for at least two reasons. First, both video games (THQ's core business) and film (Mar Vista's core business) are closely related within the entertainment industry. And second, both of the authorized ALONE IN THE DARK films are available on the same platforms as Mar Vista's infringing film, as shown for example, by the three films appears side-by-side when a consumer searches for "Alone in the Dark" on the Amazon Prime Video website. (JSUF Nos. 101-102).



THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

21328484.1

In today's connected media environment, where both video games and movies are widely available and enjoyed by a large percentage of the population, on both TV screens, computers, and portable devices, video games and movies are closely related and interconnected. *See Dreamwerks*, 142 F.3d 1131 ("movies and sci-fi merchandise are now as complementary as baseball and hot dogs. . . Entertainment studios control all sorts of related industries: publishing, clothing, amusement parks, computer games and an endless list of toys and kids' products."). Today, video gaming is a larger industry, both globally and in the U.S., than the movie industry, and many video game franchises are more valuable than film franchises. (JSUF Nos. 122-15). Thus, it is no surprise that "video games are the new IP treasure trove for a movie business desperate to find the next generation of franchises." (JSUF No. 127). The highest grossing movie thus far of 2025 was "A Minecraft Movie" based on the Minecraft video game franchise. (JSUF No. 128). The second highest grossing movie of 2023 was "The Super Mario Bros. Movie" based on the Super Mario Brothers franchise. (JSUF No. 129). Both of these successful movies took advantage of their association with a popular video game franchise as part of their marketing.

Here, consumers are even more likely to assume that Mar Vista's "Alone in the Dark" film is authorized by or connected to THQ's ALONE IN THE DARK video game series, because the market already contains two authorized ALONE IN THE DARK films – ALONE IN THE DARK and ALONE IN THE DARK 2. These authorized films are unquestionably in close proximity to Mar Vista's film, because they are available on the *same* streaming platforms as Mar Vista's film, including Tubi, Amazon, Apple, and Google. (JSUF Nos. 76, 97, 102). For example, as shown in the image below, when a consumer searches for "Alone in the Dark" on the Tubi



THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1  platform, they are shown all three "Alone in the Dark" films.  It is only natural for a consumer to
2  be confused as to whether Mar Vista's film is a related reboot, prequal, or remake.
3          Moreover, Mar Vista's film, and THQ's ALONE IN THE DARK games, are all available
4  online, and the majority of the marketing by both THQ and Mar Vista is done online. As the Ninth
5  Circuit has remarked, "the Web, as a marketing channel, is particularly susceptible to a likelihood
6  of confusion since . .  it allows for competing marks to be encountered at the same time, on the
7  same screen." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000).
8  Consumers searching for either the game or the movie are likely to see a mix of results in many
9  channels, including popular search engines like Google. In fact, █████████████████
10 ████████████████████████████████████████████████████████
11 ████████████████████████████████████████████████████████
12 ████████████████████████████████████████████████████████
13 ███████████████████████████. (JSUF Nos. 104, 111).
14         Mar Vista cannot dispute that the authorized films are available on the same channels as
15 its own unlicensed film, and that Mar Vista and THQ use similar channels (the internet) for
16 marketing and distribution. Mar Vista's film is primarily available online through Tubi's
17 streaming service, ████████████████████████████████████████
18 ██. (JSUF Nos. 61, 70). For at least this reason, Mar Vista's film is in close proximity to THQ's
19 Mark. As such, these two factors also heavily support THQ.
20                    **d)  Evidence of Actual Confusion**
21         While actual confusion is not necessary to find a likelihood of confusion, here, there is
22 evidence of actual confusion as to the source of Mar Vista's film. *See New West Corp. v. NYM*
23 *Co. of California*, 595 F.2d 1194, 1201 (9th Cir. 1979). As explained in Section III.E above,
24 consumers posted comments on the YouTube page for the Official Trailer of Mar Vista's film
25 showing confusion about the connection between that film and THQ's franchise. Comments such
26 as "Where's Edward Carnby?" "where's David Harbour," and "So this isn't based on the video
27 game or the Uwe Boll movie?" relate to THQ's franchise and Mark. (JSUF Nos. 112-116).
28

-22-
THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

21328484.1

1    Similar confusion is evidenced by comments to a critic review for Mar Vista's film (JSUF

2    Nos. 117-118), as well as by the content of the IMDB "News" page, which features articles about

3    THQ's video games, and the authorized films. (JSUF Nos. 120-121). The record also contains

4    evidence of websites generating advertisements related to THQ's video games for content about

5    Mar Vista's film. (JSUF No. 119). Even Tubi's corporate designee testified that these comments

6    demonstrated confusion. (JSUF No. 115).

7        Tubi's platform, ███████████████████████████████, does not

8    allow users to leave comments or messages. Thus, Tubi's official YouTube page is the best source

9    of consumer feedback about Mar Vista's movie. Here, there is evidence of confusion in the places

10    one would expect a consumer to visit to learn about Mar Vista's film. Accordingly, the Court

11    need not wonder whether consumers are likely to be confused – it is plain that consumers have

12    *actually* been confused. *Sleekcraft*, 599 F.2d at 352 ("evidence that the use of the two marks has

13    already led to confusion is persuasive proof that future confusion is likely"). This factor also

14    weighs heavily in THQ's favor.

15        **e) Type of Goods and Likely Degree of Care**

16        The nature of the goods and the type of consumer is relevant to determining the likelihood

17    of confusion. For example, a sophisticated consumer of business software exercising a high

18    degree of care is more likely to understand the mechanics of Internet search engines and the nature

19    of sponsored links, whereas an un-savvy consumer exercising less care is more likely to be

20    confused. *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1152 (9th Cir.

21    2011).

22        "In assessing the likelihood of confusion to the public, the standard used by the courts is

23    the typical buyer exercising ordinary caution." *Sleekcraft*, 599 F.2d at 353. Low consumer care .

24    . . increases the likelihood of confusion." *Playboy Enterprises, Inc. v. Netscape Comm.*, 354 F.3d

25    1020, 1028 (9th Cir. 2004). In *Playboy*, the relevant consumer was looking for cheap,

26    interchangeable adult-oriented material, which led the Ninth Circuit to conclude that

27    the consumers would exercise a low degree of care. *Id.* at 1029. In *Brookfield*, the Ninth Circuit

28

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

21328484.1

1   noted that "West Coast's site is likely to be visited by many casual movie watchers" who would

2   exercise "very little care."  174 F.3d at 1060.

3         In this case, Mar Vista's film is viewed ███████████████████████████████

4   ████████████████████████████████████████████████████████████████.

5   (JSUF Nos. 94-95). Tubi's viewers are thus the most casual of movie watchers, having no

6   financial investment in the platform, and thus no expectation of getting what they paid for. This

7   is exactly the type of consumer that the Ninth Circuit has described as having "very little care."

8   *Brookfield*, 174 F.3d at 1060. Viewers on Tubi are not likely to be sophisticated purchasers, but

9   rather un-savvy consumers exercising the bare minimum of care. Similarly, consumers who

10  learned about Mar Vista's film on YouTube are likely to have been unsophisticated, as shown by

11  a general disregard for spelling, grammar, and punctuation throughout the comments.  As a result,

12  this factor weighs in THQ's favor.

13                **f)  Mar Vista's Intent in Selecting the Mark**

14        Although intent it not necessary to demonstrate a likelihood of confusion, intent to deceive

15  is strong evidence of a likelihood of confusion. *GoTo.com*, 202 F.3d at 1208. "When the alleged

16  infringer knowingly adopts a mark similar to another's, reviewing courts presume that the

17  defendant can accomplish his purpose; that is, that the public will be deceived." *Sleekcraft*, 599

18  F.2d at 354 (citations omitted). "The point is not that an intent to confuse is relevant as some

19  measure of culpability. Rather, the alleged infringer's judgment as to what is likely to be

20  confusing is relevant because it may well be accurate." *Entrepreneur Media, Inc. v. Smith*, 279

21  F.3d 1135, 1148 (9th Cir. 2002).

22        The undisputed evidence shows that Mar Vista knew about THQ's trademarks, video

23  games, and authorized movies, but decided to move forward with the title of their film, rather

24  than choosing a non-infringing title. ████████████████████████████████

25  ████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████████

-24-

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT



9                                                    , Mar Vista and

10 Tubi decided to market their film using virtually the same logo as the 2008 ALONE IN THE

11 DARK video game. (Compare JSUF No. 22 with No. 72). As described above in Section III.C,

12 the "Official Trailer" for Mar Vista's film on YouTube contains a logo that is virtually identical

13 to the logo for the 2008 Alone in the Dark Game (the second-most recent ALONE IN THE DARK

14 video game available at that time). (*See* JSUF No. 31 for the release dates).

15         Because Mar Vista knowingly released its film

16                           , this factor also favors finding a likelihood of confusion.

17                 **g)  Likelihood of Expansion of the Product Lines**

18         "The likelihood of expansion in product lines factor is relatively unimportant where two

19 companies already compete to a significant extent." *See Brookfield*, 174 F.3d at 1060; *Talent*

20 *Mobile Dev., Inc. v. Headios Grp.*, No. SA CV 16-0464-DOC (DFMx), 2017 U.S. Dist. LEXIS

21 216273, at *19 (C.D. Cal. Oct. 3, 2017) (finding this factor "largely moot" where the parties

22 already exist in the same markets). However, even when services are already closely related, any

23 further expansion is likely to result in direct competition. *Sleekcraft*, 599 F.2d at 354.

24         As noted above, THQ's ALONE IN THE DARK franchise already includes two feature

25 films of the same name. Moreover, THQ's core business is the production and sale of video

26 games, which is in the entertainment industry, directly adjacent to film. (*See* JSUF No. 122). THQ

27 has licensed content for film in the past, and has negotiated deals with respect to the "Alone in

28 the Dark" franchise. Thus, there is a real possibility of THQ once again expanding the Mark into

21328484.1

1    film or television. In fact, 

5    . (JSUF Nos. 63-66).

6       Because THQ's Mark is already used in the entertainment industry, including for feature

7    films, and because THQ is open to the possibility of licensing the ALONE IN THE DARK

8    franchise to the right suitor for future film and TV projects (JSUF No. 63), this factor also favors

9    a finding of likelihood of confusion.

10        **2. MarVista's Position – Response to *Sleekcraft* Factors**

11       To the extent the Court reaches the issue of likelihood of confusion—which it need not if

12    it grants MarVista's concurrent motion for summary judgment on *Rogers*—THQ has failed to

13    establish likelihood of confusion, and there are genuine disputes of material fact that preclude

14    summary judgment in THQ's favor.

15       THQ has failed to carry its burden on its trademark and unfair competition claims.

16    *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-03 (9th Cir.

17    2000); *see, e.g., Punchbowl, Inc. v. AJ Press, LLC*, 2024 WL 4005220 (C.D. Cal. Aug. 22, 2024)

18    (granting summary judgment for junior user where senior user could not prove likelihood of

19    confusion). "To maintain an action for trademark infringement . . . a plaintiff must prove the

20    defendant's use of the same or similar mark would create a likelihood of consumer confusion."

21    *Murray v. CNBC*, 86 F.3d 858, 860 (9th Cir. 1996). "The test for likelihood of confusion is

22    whether a reasonably prudent consumer in the market place is likely to be confused as to the

23    origin of the good or service bearing one of the marks." *Echo Drain v. Newsted*, 307 F. Supp. 2d

24    1116, 1123 (C.D. Cal. 2003). To prevail on its claims, THQ must "show sufficient evidence to

25    permit a rational trier of fact to find that confusion is 'probable,' not merely 'possible'" among

26    "*an appreciable number of people.*" *M2 Software*, 421 F.3d at 1085.

27       As set forth above, the Ninth Circuit analyzes eight *Sleekcraft* factors to determine

28    likelihood of confusion: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

21328484.1

1  marks; (4) actual confusion; (5) marketing channels; (6) type of goods and degree of care by the

2  purchaser; (7) intent in selecting the mark; and (8) likelihood of expansion.  *AMF Inc. v.*

3  *Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

4        Because THQ's trademark rights are limited to video games, the relevant comparison

5  here is between THQ's Game and MarVista's Film.  The majority of the *Sleekcraft* factors weigh

6  in favor of MarVista, and there are genuine disputes of material fact that are not appropriate to

7  resolve on summary judgment.

8                              **a)  Strength of the Mark**

9        As THQ recognizes, the strength of a trademark is evaluated along two dimensions: (1)

10  conceptual strength (inherent distinctiveness), and (2) commercial strength (marketplace

11  recognition).  *See* Section VI.B.1.b., *supra* (citing *Brookfield Commc'ns, Inc. v. W. Coast Ent.*

12  *Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999)).  The "question of distinctiveness" is "ordinarily for

13  the trier-of-fact," particularly where, as here, the parties dispute conceptual strength of the mark.

14  *Lahoti v. Vericheck, Inc.*, 2007 WL 2570247, at *5 (W.D. Wash. Aug. 30, 2007), *aff'd*, 586 F.3d

15  1190 (9th Cir. 2009) (denying summary judgment).  Here, THQ has failed to carry its burden of

16  proving its ALONE IN THE DARK Mark is conceptually and commercially strong, and thus this

17  factor favors MarVista.

18        **1. THQ has not Demonstrated Conceptual Strength.**  Where the senior user's mark

19  lacks distinctiveness, the mark is entitled only to "an extremely narrow scope of protection[.]"

20  *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 124 (2d Cir. 2022) (Leval, J.).  "Trademark

21  law does not offer robust protection to those who demand the exclusive right to use words that

22  describe or suggest a product or its virtues."  *Id.* at 123; *see also Echo Drain*, 307 F. Supp. 2d at

23  1124 (explaining a suggestive mark is "presumptively weak and [user] should have anticipated

24  some confusion with legitimate competitors").  THQ'S ALONE IN THE DARK Mark is a

25  textbook example of a descriptive mark—it immediately conveys the nature and subject matter

26  of THQ's Game.  *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925,

27  927 (9th Cir. 2005) ("Descriptive marks 'define a particular characteristic of the product in a way

28  that does not require any exercise of the imagination.'") (citation omitted).

21328484.1

THQ argues that the mark is "suggestive" "because while it conjures thoughts of mystery, suspense, and isolation, the words in the mark do not describe any particular product in a straightforward way."  *See* Section VI.B.1.b., *supra*.  Not so.  Here, players of THQ's Game must investigate and solve mysteries while fighting ghosts and monsters in the "darkness and shadows" with much of the Game set at night and literally in the dark, thus "alone in the dark" describes multiple characteristics of THQ's Game.  JSUF No. 160, 162.  No "exercise of imagination" is required to connect ALONE IN THE DARK to THQ's Game.  *Yellow Cab Co.*, 419 F.3d at 927.  Furthermore, even if the Court were to find that ALONE IN THE DARK is a suggestive mark, "it does not necessarily follow that every suggestive mark is stronger than every descriptive mark."  *RiseandShine*, 41 F.4th at 122 (suggestive mark was "decidedly weak" where it was based on "RISE" to refer to coffee being a pick-me-up).  Here, the connection between ALONE AND THE DARK and the Game is patently obvious, so the Mark is weak regardless of whether it is characterized as descriptive or suggestive.  *See* Section VI.B.1.b., *supra* (admitting that "[o]ne can imagine how it might feel to be 'Alone in the Dark,' and thereby understand the relationship between the Mark and the story that unfolds in an ALONE IN THE DARK game.").

Nor is there any evidence, such as a survey or consumer testimony, demonstrating that consumers in fact associate the ALONE IN THE DARK Mark with THQ.  *Echo Drain*, 307 F. Supp. 2d at 1122 (mark not protectable where plaintiff offered "no expert reports or surveys" or "consumer testimony" to prove that "a significant portion of the consuming public" associates its mark with plaintiff).  And the purported incontestability of THQ's Mark is likewise not determinative here: "an incontestable mark may … still be relatively weak for likelihood of confusion purposes."  *Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*, 2011 WL 3348056, at *17 (E.D. Cal. Aug. 2, 2011).

**2. THQ has not Demonstrated Commercial Strength.**  Nor is there any evidence that THQ's ALONE IN THE DARK Mark ever acquired any distinctiveness, either through THQ's actions or otherwise.  JSUF No. 144, 161.  *See Punchbowl*, 2024 WL 4005220, at *7 (finding

1    that because plaintiff failed to raise profile of inherently weak mark, "there is no evidence … that

2    consumers consider Plaintiff's PUNCHBOWL mark to be particularly strong").

3         THQ contends that its ALONE IN THE DARK Mark has "a strong commercial presence

4    in the gaming community." But the "evidence" THQ relies on for this point is inadmissible

5    hearsay. *See* Evidentiary Objections. And whatever strength the Mark may have garnered over

6    the years since the Game's original release has been significantly diminished by the more than

7    one hundred other works that also used "alone in the dark" in their title. JSUF No. 151-153, 180;

8    *see Miss World (UK) Ltd. V. Mrs. Am. Pageants, Inc*., 856 F.2d 1445, 1449 (9th Cir. 1988) ("In

9    such a crowd, customers will not likely be confused between any two of the crowd and may have

10   learned to carefully pick out one from the other."), *abrogated in part on other grounds by*

11   *Eclipse Assocs. Ltd. v. Data Gen. Corp*., 894 F.2d 1114, 1116 n. 1 (9th Cir.1990). Put another

12   way, "that the marketplace is replete with products using a particular trademarked word indicates

13   . . . that consumers will ***not*** be confused by its use." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d

14   1135, 1143-44 (9th Cir. 2002); *see also Kibler v. Hall*, 843 F.3d 1068, 1074 (6th Cir. 2016)

15   ("[P]roof that third parties have extensively used a trademark . . . indicates the trademark is

16   commercially weak…. [and] that the third parties have muddled [its] source.").

17        Indeed, there is no evidence that THQ has worked to distinguish itself among the myriad

18   works using "Alone in the Dark" in their titles or names. JSUF No. 144, 149-157. In other

19   words, when THQ's predecessor in interest knowingly selected a "weak mark in a crowded

20   field[,]" and then THQ and its predecessors failed to develop, strengthen, or protect that

21   purported mark (JSUF No. 149-157), THQ and its predecessors assumed the risk that any rights

22   they conceivably had in the ALONE IN THE DARK Mark might be overtaken by other entrants.

23   *RiseandShine*, 41 F.4th at 125 ("To the extent that [junior user's] use of its marks caused any

24   likelihood of confusion, this was because [senior user] chose a weak mark in a crowded field.");

25   *see also Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.,* 616 F.2d 440, 445 (9th Cir. 1980)

26   (use of common word "naturally entails" risk of limited protection).

27        Furthermore, THQ and its predecessors failed to enforce their rights in the ALONE IN

28   THE DARK Mark (JSUF Nos. 154-157), which has caused THQ's purported brand to be

-29-

21328484.1

1  continually weakened by new entrants.  For example, there have been *at least* three other

2  unrelated films titled "Alone in the Dark"—released in 1993, 2013, and 2019—as well as more

3  than one hundred songs, dozens of books, and an array of videos, podcasts, screenplays, and

4  television programs that include "alone in the dark" in their title.  JSUF Nos. 151-153, 180; *see* 2

5  McCarthy on Trademarks and Unfair Competition § 11:91 (5th ed.) ("[T]he law imposes . . . the

6  duty to be pro-active and to police the relevant market for infringers. If the trademark owner is

7  quiescent and tolerates the encroachment of infringers, it will find that its trademark asset has

8  'eroded' and 'shrunken' … by the presence of similar marks."); *Curity AB v. Chenmed, LLC*,

9  2022 WL 18956198, *10 (S.D. Fla. Dec. 7, 2022) (same).

10  Moreover, there is no evidence that THQ's Game was even popular before MarVista's

11  2022 Film was released.  The only evidence of the Game's supposed popularity is THQ's claim

12  that its 2024 video game sold more than ████████████, and that—*after* the release of

13  MarVista's Film—THQ spent ███████████████ (though the evidence actually shows a

14  significantly *lower* marketing spend).  JSUF No. 54.  But before that, ████████████████

15  ████████████.  JSUF No. 161.  And regardless, a marketing spend alone does not make a mark

16  strong without evidence of consumer recognition.  *See Valador, Inc. v. HTC Corp.*, 241 F. Supp.

17  3d 650, 663 (E.D. Va.), *aff'd*, 707 F. App'x 138 (4th Cir. 2017) (because there were "no

18  consumer studies in this record linking defendants' mark to a source," the mark could not be

19  labeled commercially "strong" for purposes of reverse confusion).  THQ has submitted no

20  evidence of consumer recognition here.

21  This factor strongly weighs in favor of MarVista, and cannot be decided in THQ's favor

22  as a matter of law.

### b)  Proximity or Relatedness of the Goods

24  Whether by contract or trademark law, THQ's Game and MarVista's Film are in distinct

25  markets, and therefore the proximity of goods factor favors MarVista.

26  As an initial matter, THQ's attempt to make arguments based on the alleged proximity of

27  MarVista's Film and Boll's 2005 and 2008 films is inapt.  ████████████████████████████

28  ████████████████████████████.  JSUF No. 131-133, 139.  Thus, THQ's attempt

-30-
THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

to include **Boll's** films in the relatedness of goods analysis is specious.  *See Punchbowl*, 2024
WL 4005220, at *8 ("As of 2019, Plaintiff claimed to have sent out over 150 million digital
invitations and greeting cards, so it is immaterial as a matter of law that 43 of Plaintiff's
customers from 2019-2024 organized their own politically themed events."); *Ocean Bio-Chem,
Inc. v. Turner Network Tele., Inc.*, 741 F.Supp.1546, 1557 (S.D. Fla. 1990) ("The court
concludes that it must compare the parties' ultimate products: those that Ocean markets under the
Star Brite name and [defendant's] movie itself.").

Concentrating instead on THQ's Game—the proper inquiry—it is not related to
MarVista's Film.  Goods and services are considered related when they are complementary, sold
to the same class of purchasers, or similar in use and function.  *Sleekcraft*, 599 F.2d at 350.
Importantly, in considering proximity of goods, courts in this Circuit "apply a sliding scale
approach as to the weight that relatedness will carry dependent upon the strength of the
trademark holder's mark."  *Entrepreneur Media, Inc.*, 279 F.3d at 1148.  "While the public and
the trademark owner have an interest in preventing consumer confusion, there is also a broad
societal interest in preserving common, useful words for the public domain."  *Id*.  This principle
is particularly critical here since "alone in the dark" has a well-understood meaning: the phrase
suggests isolation, or being without guidance in unclear situations.  JSUF No. 162.  *See Noasha
LLC v. Nordic Group of Companies, Ltd*., 630 F. Supp. 2d 544, 556 (E.D. Pa. 2009) ("multiple
uses of 'War' for toys or games in this market lessens the likelihood that a consumer would
associate such a toy with a particular source").

Turning to the first proximity of goods consideration, whether the goods are
complementary, THQ has offered no evidence that its Game and MarVista's Film are
complementary—*e.g.*, like wine and cheese.  *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d
1280, 1291 (9th Cir. 1992).

Nor has THQ offered any evidence that its Game and the Film are sold to the same class
of purchasers.  To the contrary, the ALONE IN THE DARK Game never appeared on the Tubi
or Amazon platforms.  JSUF No. 45.  Nor has THQ offered any evidence that the Game and the
Film appeared in proximity on any other channels.  *See* Section VI.B.1.c, *supra*.

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Finally, THQ has offered no evidence that the Game and the Film are similar in use and

2    in function.  While there have been some high-profile video game-to-film adaptations (just as

3    there have been book-to-film adaptations), THQ has not proven that consumers expect video

4    games to be made into films such that the games and films are proximate goods.  Nor has THQ

5    adduced any evidence that films and video games serve a similar function.

6    What is more, "the mere fact that 'two products or services fall within the same general

7    field . . . does not mean that the two products or services are sufficiently similar to create a

8    likelihood of confusion.'"  *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp.

9    2d 1083, 1092 (C.D. Cal. 2003); *Mach. Head v. Dewey Global Holdings Inc.*, 2001 WL 1747180

10   at *6 (N.D. Cal. Dec. 13, 2001) ("The fact that both products could broadly be described as

11   relating to music is not sufficient to find that the products have a similar use or function.").  Even

12   if both the Game and the Film were broadly categorized as entertainment products, "[w]hen two

13   products are part of *distinct sectors of a broad product category*, they can be sufficiently

14   unrelated [such that] consumers are not likely to assume the products originate from the same

15   mark."  *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 288 (3d Cir.

16   2001).  Thus, for example, in *Harlem Wizards Ent. Basketball, Inc. v. NBA Props., Inc*., 952 F.

17   Supp. 1084, 1095 (D.N.J. 1997), the court found there was no likelihood of confusion between

18   the *show basketball team* using the marks "WIZARDS" and "HARLEM WIZARDS" and the

19   *professional basketball team* that planned to change its name to the "Washington Wizards,"

20   reasoning:

> Plaintiff would have this Court simply lump the services of plaintiff and
> defendants under the heading of basketball or entertainment and, on that basis
> alone, find that the parties engage in confusingly similar services. Numerous
> cases, however, illustrate that even when two products or services fall within
> the same general field, it does not mean that the two products or services are
> sufficiently similar to create a likelihood of confusion.

25   *Id.* at 1095; *see also Echo Drain*, 307 F. Supp. 2d at 1125 ("pop" rock band and "progressive

26   funk and groove with elements of heavy metal" band were not "related"); *W.W.W. Pharm. Co. v.

27   *Gillette Co.*, 984 F.2d 567, 573-74 (2d Cir. 1993) ("Sportstick" for lip balm versus "Right Guard

28   Sport Stick" for deodorant: "These products do not compete nor serve the same purpose,

-32-

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

although they may both be generally defined as personal care products."); *Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 582 (2d Cir. 1991) ("New Choices Press" publisher of book and tapes on charisma versus "New Choices for the Best Years" magazine on retirement: "Although both [plaintiff's] publishing house and [defendant's] magazine are in the field of publishing, this does not render them proximate.").  Just as show basketball is not professional basketball, pop rock is not progressive funk, lip balm is not deodorant, and books and tapes are not magazines, so too video games are not films.

The proximity of goods factor weighs in favor of MarVista, or at the very least presents genuine disputes of material fact that cannot be resolved on summary judgment.

### c)  Similarity of the Marks

Both THQ's Game and MarVista's Film are titled ALONE IN THE DARK.  Thus, for purposes of summary judgment only, MarVista does not contest this *Sleekcraft* factor.

### d)  Evidence of Actual Confusion

Contrary to THQ's claim, there is no admissible evidence of actual consumer confusion. Here, the only "evidence" THQ submits are: (1) comments on the Tubi YouTube account, which shows the trailer for the Film; (2) the "News" page for the Film on the IMDb website, which purportedly contains news articles relating to THQ's 2024 Game and Uwe Boll (creator of the 2005 and 2008 films); and (3) user comments on a movie review for the Film, which relate to the 2005 Boll film, rather than MarVista's Film.  These are not evidence of actual confusion—either legally or factually.  *See Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir. 1991) (actual confusion is confusion that "could inflict commercial injury in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation.").

*First,* there is no evidence that the commenters on Tubi's YouTube page and the Film's movie review were actually confused.  JSUF No. 164-165, 169-170; *Punchbowl*, 2024 WL 4005220, at *10.  An anonymous comment on the internet is not evidence of actual confusion. *Id.* ("A misaddressed email, Facebook comment, or X post is a negligible friction that stems from the fact that both parties have named their services after a common word."); *Kibler v. Hall*, 843 F.3d 1068, 1078 (6th Cir. 2016) (ten instances of misdirected tweets, email correspondence,

1   and inquiries was not sufficient evidence of appreciable consumer confusion).  Without

2   admissible evidence from the commenters themselves, it is impossible to determine if any of

3   them were confused.  And to the extent THQ attempts to rely on the "News" section of IMDb,

4   THQ has adduced no evidence demonstrating how or why any article is linked to any specific

5   webpage on IMDb—though common sense would dictate it was an algorithmic error on the

6   website, as opposed to actual confusion by a human potential customer.  In any event, "not all

7   confusion offends trademark law."  *Punchbowl*, 2024 WL 4005220, at *10.

8        ***Second,*** to the extent the commenters on Tubi's YouTube channel mentioned THQ's

9   Game in their comments, the mentions appear to be inquiries, not evidence of confusion.  Indeed,

10  one commenter correctly "wonder[ed] if it's just a naming coincidence and an unrelated movie".

11  JSUF No. 116.  Critically, inquiries about whether the junior and senior trademark users are

12  related do not demonstrate actual confusion.  *Cohn v. Petsmart, Inc*., 281 F.3d 837, 843 n.7 (9th

13  Cir. 2002) (receipt of "several dozen inquir[i]es [] about whether the parties were related"

14  insufficient to reflect consumer confusion because "these inquiries are too ambiguous to

15  demonstrate actual confusion").  Furthermore, even if the YouTube comments, movie review

16  comments, or the IMDb articles "point to some evidence of confusion in the abstract[, it] does

17  not automatically mean that such confusion ***affects actual purchasing decisions***."  *Punchbowl*,

18  2024 WL 4005220, at *10 (emphasis added).  "[B]efuddlement is part of the human condition. . .

19  . no matter how different the names . . . some confusion is inevitable."  *Id.*

20       ***Third,*** trademark infringement is territorial, meaning that the consumers allegedly

21  confused must be located in the United States.  *Doctor's Best, Inc. v. Nature's Way Prods., LLC*,

22  143 F.1101, 1109 (9th Cir. 2025) ("focus on confusion among U.S. consumers" is proper).  Here,

23  to the extent that it is possible to determine the country of origin of any of the YouTube

24  commenters, they are primarily located outside the U.S.  JSUF Nos. 166-168, 181-183.

25       ***Fourth,*** finally, and fatally, THQ failed to introduce a survey—instead relying on

26  anecdotal, anonymous internet comments.  "Survey evidence is not required to establish

27  likelihood of confusion, but it is often the most persuasive evidence. … Consequently, a

28  plaintiff's failure to conduct a consumer survey, assuming it has the financial resources to do so,

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

21328484.1

1   may lead to an inference that the results of such a survey would be unfavorable.  *Cairns v.*

2   *Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1041 (C.D. Cal. 1998); *Playboy Enterprises, Inc. v.*

3   *Netscape Communications Corp.*, 55 F.Supp.2d 1070, 1084 (C.D.Cal.1999), *aff'd*, 202 F.3d 278

4   (9th Cir.1999) (failure to provide a survey "warrants a presumption that the results would have

5   been unfavorable.").  THQ's failure to introduce a survey in this case, despite having allegedly

6   spent millions of Euros to develop and promote its Game (JSUF No. 54), is telling, and weighs in

7   MarVista's favor.

8          The lack of evidence of actual confusion strongly weighs in MarVista's favor, and

9   certainly cannot be decided as a matter of law in THQ's favor.

10                            **e)  Marketing Channels**

11         THQ failed substantively to analyze the fifth *Sleekcraft* factor, marketing channels

12  (instead lumping it in with proximity of goods), and thereby conceded this factor.  *See Kroeger*

13  *v. Vertext Aerospace LLC*, 2020 WL 3546086, at *8 (C.D. Cal. June 30, 2020).  In any event, the

14  distinctive marketing channels for the Game and the Film weigh in favor of MarVista.

15         As a preliminary matter, again the proper focus is where THQ's Game was marketed and

16  distributed.  Boll's 2005 and 2008 films are irrelevant to the inquiry.

17         MarVista's Film and THQ's Game have never been distributed through the same

18  channels and would never be encountered together.  The Game is available for purchase via the

19  Xbox and PlayStation stores and on the Steam gaming platform.  JSUF No. 45.  The Film has

20  never been available from those sources, and is only available on streaming platforms—

21  including Tubi, Apple TV+, A&E Networks, VUDU, Inc., Vubiquity, Google, Inc., Amazon, In

22  Demand, and Hoopla.  JSUF No. 75-76.  Furthermore, THQ has failed to adduce any evidence

23  that THQ and MarVista market their products and services through the same channels of trade or

24  media.  JSUF No. 55, 57, 175.  In fact, other than the trailer on Tubi's YouTube channel (JSUF

25  No. 86), marketing for the Film ███████████████████.  JSUF No. 174; *Helix*

26  *Env't Plan., Inc. v. Helix Env't & Strategic Sols.*, 2020 WL 2556341, at *6 (S.D. Cal. May 20,

27  2020) (factor favored defendants where one party did "very little marketing," instead

28  "advertising primarily through word-of-mouth"); *Align Activation Wear, LLC v. Lululemon*

21328484.1

*Athletica Canada, Inc.*, 2022 WL 3210698, at *1 (9th Cir. Aug. 9, 2022) ("The near absence of any overlap in marketing or distribution channels weighs heavily" against a reverse confusion finding). And while both the Game and the Film were promoted on YouTube, the use of a "ubiquitous marketing channel" like YouTube is insufficient as a matter of law to establish overlapping marketing channels. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011) ("Today, it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion."); *Helix Env't Plan., Inc.*, 2020 WL 2556341, at *6 ("using the Internet as a way to advertise is not enough to establish similarity in marketing channels.").

This factor also favors MarVista, and at the very least raises a genuine dispute of material fact.

### f)   Types of Goods and Likely Degree of Care

Instead of proffering any evidence regarding the degree of care exercised here, THQ simply assumes—without any support—that, because Tubi is free to access and does not require an account, "Tubi's viewers are thus the most casual of movie watchers, having no financial investment in the platform, and thus no expectation of getting what they paid for." Section VI.B.1.e., *supra*. Attorney argument is not evidence. *Sigler*, 2025 WL 833443, at *3 ("A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. Rather, there must be specific, admissible evidence identifying the basis for the dispute.") (internal citation omitted).

THQ likewise declares—without evidence—that "consumers who learned about Mar Vista's film on YouTube are likely to have been unsophisticated, as shown by a general disregard for spelling, grammar, and punctuation throughout the comments." Section VI.B.1.e, *supra*. Speculation is not evidence.[9] *Sigler*, 2025 WL 833443, at *3. In any event, courts have found that even internet users casually browsing websites exercise sufficient discretion to

---

[9] In actuality, the spelling, grammar, and punctuation errors in the YouTube comments may have been because the majority of the commenters were not located in the United States. JSUF Nos. 166-168, 181-183.

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

21328484.1

1  distinguish between sources.  *See, e.g., Lerner & Rowe PC v. Brown Engstrand & Shely LLC*,

2  119 F.4th 711, 722 (9th Cir. 2024).

3       At base, the degree of care inquiry considers "the typical buyer exercising ordinary

4  caution." *Sleekcraft*, 599 F.2d at 353.  THQ has offered no evidence that a "typical" Tubi

5  consumer would have any awareness of the Game at all.  Logically, if the typical consumer who

6  watches Tubi is not aware of the Game, it would be impossible for that consumer to be confused.

7       Actual and potential consumers of the Game, on the other hand, are likely to exercise a

8  high degree of care because the Game cost $59.99 when it launched,

9                          JSUF Nos. 145-146; *see Abercrombie & Fitch Co. v. Moose Creek,*

10  *Inc.*, 486 F.3d 629, 634, n.2 (9th Cir. 2007) (analyzing senior user's consumers); *Aliign*

11  *Activation Wear, LLC*, 2022 Wl 3210698, at *1 (factor weighs against confusion where

12  "companies' yoga products are far more expensive than other yoga products").  "Where the

13  relevant products are expensive, or the buyer class consists of sophisticated or professional

14  purchasers, courts have generally not found Lanham Act violations." *Checkpoint*, 269 F.3d at

15  284.  This is because a higher "level of care reduces any likelihood of confusion". *Aliign*

16  *Activation Wear, LLC*, 2022 WL 3210698, at *1. The Game's customers are likely to exercise a

17  high degree of care, and not be confused, both when purchasing the Game and if they encounter

18  the Film on Tubi or another online platform.

19       Type of goods and consumer care favor MarVista, and cannot be resolved in THQ's

20  favor on summary judgment.

21            **g)  Intent in Selecting the Title**

22       "The Ninth Circuit has characterized a defendant's intent as being of only minimal

23  importance to the likelihood of confusion analysis." *Punchbowl*, 2024 WL 4005220, at *13.

24  Nonetheless, here, the record is unequivocal: MarVista's title was conceived of independently

25  and without reference to THQ's Game.  *See Edge Games, Inc. v. Elec. Arts, Inc.*, 745 F. Supp. 2d

26  1101, 1116 (N.D. Cal. 2010) ("[T]here [was] no evidence in the record that EA chose [the title]

27  for any reason but to describe the visual and thematic aspects of the video game.").  MarVista

28  selected and adopted the title *Alone in the Dark* for the Film because it described the content of

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

21328484.1

1    the Film—the story of a recent divorcee under house arrest who fears that she is being watched

2    and that her house is being tampered with.  JSUF Nos. 171-173.  Lawrence Grimaldi, an

3    executive producer of the Film, chose the title because it described the Film's content through a

4    powerful metaphor: the protagonist is literally alone in the dark in her house (with much of the

5    Film set at night), and she is also figuratively alone and in the dark as to the identity of the

6    person stalking her and the extent of control her ex-husband might be exercising over her home.

7    JSUF No. 173.

8         THQ argues that because THQ's Game █████████████████████████████████████

9    ████████, MarVista intended to confuse consumers.  *See* Section VI.B.1.f., *supra.*  ████████

10   ████████████████████████████████████████████████████████████████████████████

11   ████████████████████  does not mean that the creators of the Film were aware of THQ's

12   ALONE IN THE DARK Mark.  The evidence is to the contrary.  Indeed, there is no evidence

13   that anyone at MarVista ███████████████, and multiple key witnesses testified that they did

14   not.  JSUF Nos. 105, 176-177.  Nor is there any evidence that anyone at MarVista intended to

15   deceive consumers as to an affiliation between the Game and Film.  JSUF No. 178.

16        Because MarVista selected the title of its Film to describe its content, without any

17   reference to THQ's Game, this factor favors also MarVista, and cannot be decided in THQ's

18   favor on summary judgment.

19                    **h)  Likelihood of Expansion**

20        THQ claims that it is likely to expand into film and television, and points to Boll's 2005

21   and 2008 films as evidence of this intent.  *See* Section VI.B.1.g., *supra.*  But, as discussed above,

22   THQ's predecessor in interest ████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████

26   ████████████████████████  JSUF Nos. 131-134, 139.  Thus, THQ has no legitimate

27   likelihood of expansion into film, and this factor favors MarVista.  *Surfvivor Media, Inc. v.*

28

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

21328484.1

1    *Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005) (despite party's "expressed interest in

2    expanding [their] product line, mere speculation is not evidence.").

3        Furthermore, to the extent that THQ seeks to create the impression that video games and

4    films are closely related because both are "in the entertainment industry," that argument fails for

5    the reasons discussed in Section VI.B.2.b, *supra*.

6                    **3. THQ's Reply Position**

7                    **a) Strength of the Mark**

8        Where, as here, a mark is permitted to be registered without proof of secondary meaning,

9    there is a presumption that the mark is inherently distinctive (at least suggestive) and the burden

10    shifts to the defendant to show otherwise. *World Champ Tech. LLC v. Peloton Interactive, Inc.*,

11    2024 U.S. Dist. LEXIS 27975, at *26 (N.D. Cal. Feb. 16, 2024) (internal citations omitted); *Lahoti*

12    *v. VeriCheck, Inc.*, 586 F.3d 1190, 1199 (9th Cir. 2009). The same is true where a registration is

13    incontestable. *Ben. Cosmetics LLC v. e.l.f. Cosmetics, Inc.*, No. 23-cv-00861-RS, 2024 U.S. Dist.

14    LEXIS 228112, at *20 (N.D. Cal. Dec. 17, 2024). Mar Vista fails to overcome this presumption.

15        Mar Vista argues, without evidence, that THQ's Mark "immediately conveys the nature

16    and the subject matter of THQ's game." This is false. If a woman remarked: "I want alone in the

17    dark for Christmas," her partner would not associate that phrase with a video game without prior

18    knowledge. *See Elizabeth Taylor Cosmetics Co. v. Annick Goutal, S.A.R.L.*, 673 F. Supp. 1238,

19    1243-44 (S.D.N.Y. 1987) (finding the word "passion" is not a descriptive term in reference to

20    fragrance advertising); *see also Am. Home Prods. Corp. v. Johnson Chem. Co.*, 589 F.2d 103, 106

21    (2d Cir. 1978) (ROACH MOTEL in connection with inspect traps is suggestive, if not arbitrary).

22    In contrast, the trademarks in cases cited by Mar Vista clearly describe the goods. *See Yellow Cab*

23    *Co.*, 419 F.3d at 929 (concerning the phrase "yellow cab" for a taxi company using yellow taxis);

24    *RiseandShine*, 41 F.4th at 122 (concerning the word "rise" to describe a brand of coffee).

25        Despite its own burden of rebuttal, Mar Vista cites an alleged lack of evidence on the part

26    of THQ, such as consumer surveys. But THQ was not required to shoulder the expense of a survey.

27    *See Midwestern Pet Foods, Inc. v. Societe des Produits Nestle S.A.*, 685 F.3d 1046, 1054 (Fed. Cir.

28

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1  2012) (collecting cases); *Playnation Play Sys. v. Velex Corp.*, 924 F.3d 1159, 1169 (11th Cir.
2  2019) ("lack of survey evidence does not weigh against the plaintiff").
3          With respect to commercial strength, THQ has ample admissible evidence, including
4  evidence showing millions of views associated with YouTube videos promoting its 2024 game,
5  ████████████ spent on sales and marketing, and ████████████ of sales in the United
6  States since 2018. JSUF Nos. 53-62. Mar Vista contends this evidence is irrelevant, because
7  THQ's 2024 game released after Mar Vista's 2022 Film. But Mar Vista ignores the sales of the
8  prior games stretching back to 2018 when THQ purchased ALONE IN THE DARK, and THQ's
9  predecessor's sales and recognition dating back to 1992. JSUF Nos. 31-36; *Ben. Cosmetics,* 2024
10 U.S. Dist. LEXIS 228112, at *22 ("The length of time [plaintiff] has exclusively used its asserted
11 trademarks further demonstrates their commercial strength."). Further, Mar Vista cites no cases
12 holding that commercial strength must be established before the junior user enters the market. Mar
13 Vista's Film continues to infringe since it remains available to consumers.
14          Finally, despite arguing elsewhere that the Court should focus only on THQ's video game
15 franchise, Mar Vista argues that THQ failed to enforce its mark with respect to non-video game
16 works, including films released in 1993, 2013, and 2019. However, a trademark owner
17 is not required to act against every infringing use no matter how inconsequential. Instead, it is
18 "reasonable for the trademark owner to object only to those third-party uses which it believes
19 would conflict with its mark." *Au Sable River Trading Post v. Dovetail Sols.*, No. 16-cv-11207,
20 2018 U.S. Dist. LEXIS 237589, at *28 (E.D. Mich. Mar. 13, 2018). None of these other works
21 were likely to create confusion in the marketplace. For example, according to IMDB, the 1993
22 "film" is a 26 minute long teaching tool produced by the "Preferred Risk Insurance Group" that
23 "introduces the danger of alcohol to youth in a suspenseful and meaningful way." (THQ's Reply
24 to JSUF No. 151). The 2013 "film" (a 12 minute short about a psychologist called to the home of
25 a young girl) and the 2019 "film" (in Swedish) are also not likely to be confusing. *Id.* This is not
26 a crowded field; Mar Vista has not identified a single non-franchised game with the name ALONE
27 IN THE DARK, and the other examples it gives are obscure.
28

-40-
THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### b) Proximity or Relatedness of the Goods

Mar Vista has no rebuttal to the fact that its Film, and THQ's authorized films are available on the same platforms. Instead, Mar Vista assumes that if THQ has no rights to the ALONE IN THE DARK Films, those films do not exist for purposes of a *Sleekcraft* analysis. This fails, both factually and legally. "The rights of the owner of a registered trademark are not limited to protection with respect to the specific goods stated on the certificate . . . but extend to any goods related in the minds of consumers." *E. Remy Martin & Co. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985). The Boll films are based on THQ's video game franchise, and the following attribution even appears on screen: "Based on the Atari Video Game entitled ALONE IN THE DARK." (THQ's Reply to JSUF No. 50). Therefore, consumers—who are unaware of the Boll agreement—associate these films with THQ's Franchise.

Even putting aside the Boll films, THQ's survival-horror video games are closely related to horror films. Mar Vista "overemphasizes differences in principal lines of business," which the Ninth Circuit has repeatedly cautioned against. *Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999); *see also Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1131 (9th Cir. 1998) ("the relatedness of each company's prime directive isn't relevant."). Instead the focus is on whether the consuming public is likely to associate Mar Vista's film with THQ's Franchise. *Brookfield*, 174 F.3d at 1056. "In practice, this definition does not necessarily require a close proximity before goods will be found related. For instance, we recently stated that where 'both companies offer products and services relating to the entertainment industry generally … [the companies] are not properly characterized as noncompetitors.'" *Entrepreneur Media v. Smith*, 279 F.3d 1135, 1147 (9th Cir. 2002) (citing *Brookfield*, 174 F.3d at 1056). THQ provided ample evidence showing that video games and movies are closely related and interconnected. *See* Section VI.B.1.c above. Accordingly, this factor weighs in THQ's favor.

### c) Evidence of Confusion

Mar Vista relies on *Punchbowl* to assert that comments on the internet are not evidence of actual confusion. 2024 U.S. Dist. LEXIS 157422, at *40. However, the question in *Punchbowl* was whether consumers would subscribe to party planning software when they intended to

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

subscribe to a news website. *Id*. That is entirely different from here, where consumers *would* watch a free movie online because they believed the source was THQ's Franchise.[10]

Finally, "failure to prove instances of actual confusion is not dispositive against a trademark plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy." *Yagoubzadeh Law Firm LLP v. Pizano-Diaz*, No. CV 23-8299-GW-MARx, 2024 U.S. Dist. LEXIS 237100, at \*16 (C.D. Cal. Dec. 11, 2024). Mar Vista cites *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 55 F.Supp.2d 1070, 1084 (C.D.Cal.1999), asserting that a failure to introduce a survey warrants an adverse inference. However, that is only where it is clear that the party had resources for a survey, and even then the inference is discretionary. *Id*.  In *Playboy*, the plaintiff had "approximately \$300 million" in sales and "almost \$50 million in advertising," far more than the sums here.

### d)  Marketing Channels

THQ discussed marketing together with the proximity factor because the evidence and arguments are largely the same. To wit: Mar Vista's opposition based on the relevance of Dr. Boll's Films—more fully briefed in the proximity factor—should be rejected for the same reasons.

Mar Vista also argues that, "other than the trailer on Tubi's YouTube channel," its own marketing was *de minimis*.  (JSUF Nos. 86, 174). However, THQ *also* advertises its ALONE IN THE DARK video games on YouTube, including an extensive marketing campaign targeting YouTube influencers. (JSUF Nos. 53-58). Mar Vista admits that "both the Game and the Film were promoted on YouTube," but argues that a "ubiquitous marketing channel" like YouTube is insufficient. But neither decision cited by Mar Vista involve facts where both parties market on the same website (here, YouTube). In such cases, this factor falls in favor confusion.  *See Partners for Health & Home, L.P. v. Seung Wee Yang,* No. CV 09-07849 CBM (RZx), 2010 U.S. Dist. LEXIS 143476, at \*12-13 (C.D. Cal. Sep. 13, 2010); *see also Ben. Cosmetics*, 2024 U.S. Dist. LEXIS 228112, at \*24.

---

[10] Further, Mar Vista attaches pages of substantive argument about the identity and location of various YouTube commenters through a declaration. This is improper, and even if considered, Mar Vista's attempts to show that the commenters are outside the United States are inconclusive. See THQ's evidentiary objections at ¶¶ 1-7.

-42-

21328484.1

### e) Types of Goods and Likely Degree of Care

Contrary to Mar Vista's assertions otherwise, the relevant facts are not in dispute. Tubi's corporate designee agreed that █████████████████████████████████████. (JSUF No. 94). ████████████████████████████████ ████. *Id.* Consumers in this case are not shopping for "high-value product" as in *Lerner*. 119 F.4th at 722. A Tubi user expects to watch free movies. *See Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 358 (S.D.N.Y. 1998) (finding that motion picture tickets, video rentals and television viewing are inexpensive and consumers are likely to be less sophisticated).

Mar Vista also argues that consumers "are likely to exercise a high degree of care because the Game cost $59.99 when it launched." This is wrong. The relevant consumer is one viewing the infringing product, who will wrongly believe there is a connection between the infringer and the trademark holder—not a consumer viewing the trademark holder's own goods. If that were true, consumers would never be confused. Accordingly, this factor favors THQ.

### f) Intent in Selecting the Title

Incredibly, Mar Vista trumpets the fact that ███████████████████████████████ as evidence in its favor.[11] This admission of negligence does not support Mar Vista's innocence. Mar Vista further has no explanation for why its logo so closely resembles the logo for the 2008 video game. The logical inference is that Mar Vista copied THQ's logo. As explained above in Section Section VI.B.1.f, ████████████████████████████████████████████ ███████████████████████████████████████████." Mar Vista thus explicitly knew of THQ's video games, but proceeded anyway. Accordingly, this factor favors THQ.

### g) Likelihood of Expansion

Mar Vista argues that THQ has "no legitimate likelihood of expansion into film," despite admitting that THQ's predecessor retained the rights to create TV shows and TV movies. Thus, even according to Mar Vista, THQ could license a TV movie, just like Mar Vista's Film.

---

[11] Ms. Miller read only the first page and the legal opinion. (JSUF No. 105).

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1   Additionally, THQ could license the right to make a TV show, █████████████████

2   ████████████████████████████. Mar Vista has no substantive response.

3   **VII.    THQ'S CONCLUSION**

4           Because the *Sleekcraft* factors weigh heavily in THQ's favor, the Court should grant

5   THQ's Motion for Partial Summary Judgment of Trademark Infringement and Unfair

6   Competition, based on THQ's ownership of a valid and protectable Mark, and the likelihood of

7   confusion between THQ's Mark and the title of Plaintiffs' infringing film. *See Talent Mobile*,

8   2017 U.S. Dist. LEXIS 216273, at *19 (granting partial summary judgment on the issue of

9   likelihood of confusion based on five of the eight *Sleekcraft* factors).

10  **VIII.   MAR VISTA'S CONCLUSION**

11          For the foregoing reasons, if the Court reaches THQ's Motion for Partial Summary

12  Judgment—which it need not do if it grants MarVista's Motion for Summary Judgment on

13  *Rogers*—THQ's Motion should be denied.  Genuine disputes of material fact exist regarding the

14  scope of THQ's trademark rights, precluding summary judgment as to priority.  THQ bears the

15  burden of establishing likelihood of confusion by adducing evidence that confusion is ***probable***,

16  not merely ***possible***, among "***an appreciable number of people***."  *M2 Software*, 421 F.3d at

17  1085.  It has failed to carry that burden here because seven of the eight *Sleekcraft* factors weigh

18  in MarVista's favor or raise genuine disputes of material fact that preclude summary judgment:

19          **(1) strength of the mark**—THQ's Mark is conceptually weak (descriptive) and

20  commercially weak (failed to distinguish itself in a crowded field); **(2) proximity or**

21  **relatedness of the goods**—the relevant comparison is video games versus films, which

22  cannot be lumped together as "entertainment products" and are not the same; **(3)**

23  **similarity of the marks**—not contested for purposes of summary judgment only; **(4)**

24  **evidence of actual confusion**—THQ relied on a handful of inadmissible cherry-picked

25  comments, but offered no legitimate evidence of consumer confusion and no survey; **(5)**

26  **marketing channels used**—the Game and the Film are distributed on different

27

28

-44-

platforms; **(6) type of goods and the degree of care likely to be exercised by the purchaser**—the typical consumer is discerning; **(7) defendant's intent in selecting the mark**—MarVista chose the Film's title to describe its content (the story of a woman who is literally and figuratively alone in the dark), without reference to THQ's Game; and **(8) likelihood of expansion of the product lines**—THQ does not even have the right to expand into filmmaking.

Furthermore, likelihood of confusion is a fact-intensive inquiry that is more properly determined by the jury than by the Court.  MarVista respectfully requests that the Court deny THQ's Motion for Partial Summary Judgment.

DATED:  February 6, 2026          Respectfully Submitted,
                                   HAUG PARTNERS LLP AND LIANG LY LLP


                                   By:   */s/ John Ly*
                                         John K. Ly
                                         Jennifer Chor
                                         Ben Natter (*pro hac vice*)
                                         Michael Barer (*pro hac vice*)
                                         Christopher Gosselin (*pro hac vice*)

                                         *Attorneys for Defendant and Counter-Claimant*
                                         *THQ Nordic AB*

-45-

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1

## <u>CERTIFICATION OF SERVICE</u>

2      I hereby certify that on the date set forth below, I caused a true and correct copy of

3   the annexed document to be served via e-mail upon counsel of record.

4
                                  By:   */s/ Christopher Gosselin*
5                                      John K. Ly
                                      Ben Natter (*pro hac vice*)
6                                      Michael Barer (*pro hac vice*)
                                      Christopher Gosselin (*pro hac vice*)
7
8                                      *Attorneys for Defendant and Counter-Claimant*
                                      *THQ Nordic AB*
9
10   Dated: February 6, 2026

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THQ'S MOTION FOR PARTIAL SUMMARY JUDGMENT

21328484.1