PHILLIP R. MALONE (SBN 163969)
pmalone@law.stanford.edu
JUELSGAARD INTELLECTUAL PROPERTY
AND INNOVATION CLINIC
Mills Legal Clinic at Stanford Law School
559 Nathan Abbott Way
Stanford, California 94305
Telephone: (650) 724-1900

MARK A. LEMLEY (SBN 155830)
mlemley@law.stanford.edu
STANFORD LAW SCHOOL
559 Nathan Abbott Way
Stanford, California 94305
Telephone: (650) 723-4605

*Attorneys for Amici Curiae Intellectual Property Law Professors*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAR VISTA ENTERTAINMENT, LLC, THE NINTH HOUSE, LLC, and NINTH DARK LLC,<br><br>Plaintiffs,<br><br>v.<br><br>THQ NORDIQ AB,<br><br>Defendant.<br><br>THQ NORDIC AB,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>MAR VISTA ENTERTAINMENT, LLC, THE NINTH HOUSE, LLC, and NINTH DARK LLC,<br><br>Counterclaim-Defendants. | Case No. 2:23-cv-06924-MEMF-SK<br><br>**[PROPOSED] BRIEF AMICI CURIAE OF INTELLECTUAL PROPERTY LAW PROFESSORS**<br><br>Date: March 26, 2026<br>Time: 10:00 a.m.<br>Courtroom: 8B<br>Judge: Hon. Maame Ewusi-Mensah Frimpong |

## INTEREST OF *AMICI CURIAE*

Amici are professors of intellectual property law at schools throughout the United States. Amici have no personal interest in the outcome of this case. They share a professional interest in seeing trademark law develop in a way that satisfies the constitutional purpose of copyright to promote the progress of science and serves the broader public interest. No one other than the undersigned has written or made any financial contribution to the drafting of this brief. Plaintiffs have consented to the filing of this brief. Defendants declined to consent (See Declaration of Mark A. Lemley filed with the Motion for Leave to File this proposed brief). A full list of amici is attached as Appendix A.

## SUMMARY OF ARGUMENT

This brief addresses a single question: whether the *Rogers v. Grimaldi* test applies to trademark claims that allege infringement based on the title of an expressive work. 875 F.2d 994 (2d Cir. 1989). The answer should be clear. *Rogers* itself involved a title; the Second Circuit developed its test specifically for that context. The Supreme Court's recent decision in *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140 (2023), did not change the uniform rule in the lower courts that *Rogers* applies to titles and other uses of trademarks in and on expressive works. Despite that unequivocal precedent, this Court previously allowed worries about confusion to infect the threshold question about the applicability of *Rogers*. In doing so, it conflated questions of confusion and trademark use and contravened both Ninth Circuit and Supreme Court case law. This Court should recognize that under Ninth Circuit precedent, the title of an expressive work is not a trademark use and is subject to *Rogers*.

## ARGUMENT

### I. Use in the Title of an Expressive Work is Not Trademark Use

The Supreme Court's recent decision in *Jack Daniel's Properties, Inc. v. VIP*

*Products LLC*, 599 U.S. 140 (2023), makes clear that the *Rogers* test governs this case. The question in *Jack Daniel's* was whether *Rogers* or the ordinary likelihood-of-confusion standard applied to Jack Daniel's infringement claims against VIP's "Bad Spaniel's" dog toy. *Jack Daniel's*, 599 U.S. at 152–53. The Supreme Court found *Rogers* inapplicable. *Rogers* does not apply, the Supreme Court held, when the defendant uses a mark "in the way the Lanham Act most cares about: as a designation of source of the infringer's own goods." *Jack Daniel's*, 599 U.S. at 153.

A trademark "identifies a product's source (this is a Nike) and distinguishes that source from others (not any other sneaker brand)." Id. at 146. Indeed, "[w]hatever else it may do, a trademark is not a trademark unless it" performs a source-identifying function, "tell[ing] the public who is responsible for a product." *Jack Daniel's*, 599 U.S. at 146 (emphasis added). When a defendant uses a mark in this source-identifying way, the infringement claim "rises or falls on likelihood of confusion." Id. According to the Supreme Court, VIP used "its Bad Spaniel's trademark and trade dress as source identifiers of its dog toy." *Jack Daniel's*, 599 U.S. at 159–60. It did so by highlighting the name and logo on the product's packaging, and by explicitly claiming that "Bad Spaniel's" was its trademark. *Id*.

In describing the scope of *Rogers*, the Court in *Jack Daniel's* distinguished two sets of cases: those in which *Rogers* had properly been applied because the defendants had made non-trademark uses (uses that did not identify the source of the defendant's products), and those in which *Rogers* had not been applied because the defendants had made that kind of source-identifying use. In all the cases the Court cited as examples of non-trademark use, the defendant used the claimed mark in the title or content of a creative work. That is, the defendant was exclusively selling speech. By contrast, all the cases the Court said should not get *Rogers* treatment involved uses of a mark to sell other products or services.

In *Rogers* itself, filmmaker Federico Fellini used Ginger Rogers' name in the title and content of the movie Ginger & Fred. *Jack Daniel's*, 599 U.S. at 153-54, citing

*Rogers*, 875 F.2d at 998-1000. According to the Supreme Court, other "lower courts adopting *Rogers* have confined it to similar cases," specifically those "in which a trademark is used not to designate a work's source, but solely to perform some other expressive function." Id. at 154. The first example for the Court was *Mattel v. MCA Records, Inc.*, in which the Danish pop band Aqua used the Barbie name in the title and lyrics of the "Barbie Girl" song. 296 F.3d 894, 902 (9th Cir. 2002). Aqua's use of the Barbie name was "not [as] a source identifier: the use did not "speak to the song's origin." *Jack Daniel's*, 599 U.S. at 154, *quoting Mattel*, 296 F.3d at 900, 902 (cleaned up).

Barbie Girl was released in several iterations—there was a Barbie Girl single, a Barbie Girl music video, and an album, Aquarium, on which Barbie Girl appeared.[1] MCA even released multiple remixes of the song, including a radio edit, an extended version, "Barbie Girl (Spike's Plastic mix)" and "Barbie Girl (Spike's Anatomically Correct dub)."[2] The Court's characterization of that use did not depend on how many versions of the song Aqua made; it was the fact that the use was in the title and content of the song that mattered. Titles are widely understood not primarily as indications of source (in the absence of a possessive attributor such as Stephen King's It) but to express something meaningful about the work. See *Mattel*, 296 F.3d at 902 ("A title is designed to catch the eye and to promote the value of the underlying work. Consumers expect a title to communicate a message about the book or movie, but they do not expect it to identify the publisher or producer."). That's why the *Rogers* framework treats explicitly false claims such as "official" or "authorized" differently—in those cases a title would, unusually, be saying something about source. *Rogers*, 875 F.2d at 999 (explaining that "Jane Fonda's Workout Book," "Nimmer on Copyright," and a book labeled an "authorized biography" explicitly indicate authorization by the named party).

---

[1] *See* Barbie Girl, Wikipedia, https://en.wikipedia.org/wiki/Barbie_Girl.

[2] *Id.*

The Supreme Court noted that the Eleventh Circuit also applied *Rogers* in *University of Alabama Board of Trustees v. New Life Art, Inc.*, in which artist Daniel Moore used the uniforms of the University of Alabama football team in artwork depicting Alabama football games. 683 F.3d 1266, 1279 (11th Cir. 2012). As in *Rogers* and *Mattel*, the defendant in New Life Art did not use the Alabama uniforms or marks as source indicators, but in the content of the work, "solely to 'memorialize' a notable event in 'football history.'" *Jack Daniel's*, 599 U.S. at 154, *quoting New Life Art*, 683 F.3d at 1279.

And finally, the Supreme Court noted that the court in *Louis Vuitton Malletier S.A. v. Warner Bros. Entertainment Inc.*, 868 F.Supp.2d 172 (S.D.N.Y. 2012), applied *Rogers* and dismissed Louis Vuitton's claim against the producers of the movie The Hangover: Part II based on a character in the movie's display of a fake Louis Vuitton bag and description of the bag as a "Lewis Vuitton." *Jack Daniel's*, 599 U.S. at 154. According to the Supreme Court, all parties in that case "agreed that the film was not using the Louis Vuitton mark as its 'own identifying trademark.'" Id., *quoting Louis Vuitton*, 868 F. Supp. 2d at 180. The Supreme Court expressly distinguished a case in which a hypothetical "luggage manufacturer uses an ever-so-slightly modified LV logo to make inroads in the suitcase market." *Jack Daniel's*, 599 U.S. at 157. That would be a trademark use, subject to the ordinary likelihood of confusion test. Id.

Courts properly applied *Rogers* in all of the cases the Supreme Court discussed because those cases involved "non-trademark uses"—they were cases in which "the defendant has used the mark" at issue in a "non-source-identifying way." *Id.* at 155-56, *quoting* Stacey L. Dogan & Mark A. Lemley, Grounding Trademark Law Through Trademark Use, 92 Iowa L. Rev. 1669, 1684 (2007); *see id.* at 1683–1684, and n. 58.

In contrast, all the cases the Court said should not get *Rogers* treatment involved uses of a mark not in the title or content of an expressive work, but to identify the source of products or services. In *United We Stand Am., Inc. v. United We Stand, Am. New York,*

*Inc.*, 128 F.3d 86 (2d Cir. 1997), a political group used "United We Stand America" as the name of its organization, and to solicit funds from people who wanted to donate to the group identified by that name. *Jack Daniel's*, 599 U.S. at 155, *quoting* 128 F.3d at 93. The defendant used "United We Stand America" to identify who was speaking (source), not what they were talking about, which is why the decision doesn't pose any risk to politicians who email their constituents with "United We Stand" in the subject line or use the phrase as the title of a speech or a memoir. Title use—in the absence of a possessive or other feature that expressly makes claims about source—is not source-identifying, it is content-identifying.

In *Harley-Davidson, Inc. v. Grottanelli*, the defendant used a "modified version of Harley Davidson's bar-and-shield logo" to brand his repair parts business—a use the Supreme Court called "a quintessential trademark use." Jack Daniel's, 599 U.S. at 155, *quoting Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 812-13 (2d Cir. 1999). And in the Tommy Hilfiger case, the defendant sold "a line of pet perfumes whose names parody elegant brands sold for human consumption," including one product sold under the name "Timmy Holedigger." *Jack Daniel's*, 599 U.S. at 156, *quoting Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F.Supp.2d 410, 412 (S.D.N.Y. 2002). According to the Supreme Court, the district court property treated that use as trademark use. *Jack Daniel's*, 599 U.S. at 156.

The uses in those cases qualified as trademark uses because the defendants were using the marks specifically to identify the source of their products (pet perfumes) or services (political representation and motorcycle repair), rather than as part of speech that they were trying to sell for profit. That distinction also makes sense of the Ninth Circuit's decision in *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022 (9th Cir. 2024). There, the defendant was not just using the Punchbowl name as the title of an article or other work; it was using Punchbowl as the name of the company that was the source of the services it was selling. Like VIP Products, the defendant in that case had also applied to register "Punchbowl News" and "Punchbowl Press" with the Patent and Trademark

Office, making it hard to deny that it was using those names as trademarks. Id. at 1026.

Notably, the Supreme Court's ability to distinguish trademark uses (to which *Rogers* does not apply) from non-trademark uses (to which *Rogers* does apply) did not depend on consideration of whether those uses might cause confusion—indeed, in all of the cases the Court identified as involving non-source-identifying uses, the lower courts applied *Rogers* to insulate the uses from ordinary likelihood of confusion analysis. They did so even though the plaintiffs in every one of those cases alleged that the defendants' uses would confuse consumers about some affiliation with the plaintiff; indeed, most submitted evidence of actual confusion.[3]

In its ruling on defendant's motion to dismiss, this Court treated likelihood of confusion as the dispositive question regardless of whether the defendant was using the mark to identify source. That is inconsistent with *Rogers* and the Ninth Circuit's *Rogers* cases, which call for a different legal standard if the use is part of an expressive work, even if it is in a title. The *Rogers* framework as applied in the Ninth Circuit recognizes that "the expressive element of titles requires more protection than the labeling of ordinary commercial products." 875 F.2d at 998. The Ninth Circuit protects titles that are artistically relevant and do not explicitly mislead even if they may cause some confusion because of consumers' inferences. *Twentieth Century Fox v. Empire Ent.*, 875 F.3d 1192, 1198-99 (9th Cir. 2017); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900 (9th Cir. 2002).[4]

---

[3] For example, Ginger Rogers submitted survey evidence purporting to show that 38 percent of respondents believed that she had something to do with the film, and that about 14 percent of respondents believed that she was involved in some way with the making of the film. *Rogers*, 875 F.2d at 1001 n. 8. The University of Alabama also offered a survey; the Court of Appeals noted that it didn't need to evaluate the survey because it was applying *Rogers*. *New Life*, 683 F.3d at 1276. The Ninth Circuit didn't mention Mattel's survey in *MCA* even though the District Court had admitted it. *Mattel, Inc. v. MCA Recs., Inc.*, 28 F. Supp. 2d 1120, 1135-36 (C.D. Cal. 1998), *aff'd*, 296 F.3d 894 (9th Cir. 2002). And the court in *Louis Vuitton* ruled that, even if there was evidence of actual confusion, it was outweighed by the moviemaker's First Amendment interests. *Louis Vuitton*, 868 F.Supp.2d at 184 n.19.

[4] The Ninth Circuit has also made clear that *Rogers* applies to claims like this one involving alleged

Jack Daniel's calls for a threshold inquiry into whether a defendant is engaged in source-identifying use to determine whether *Rogers* applies. This threshold inquiry examines the nature and quality of the defendant's use in relationship to its work or product. It is an objective inquiry that has nothing to do with any risk of confusion.[5] If the defendant is using the mark as a source identifier, then and only then the court can inquire whether the use would likely cause consumers to think that the goods or services came from the plaintiff (in which case the use can be infringing) or not (in which case there would be no infringement, despite the defendant's source-identifying use). But whether use in the title or content of a work amounts to use as a source identifier for *Rogers* purposes should be assessed by evaluating the work on its face, without reference to evidence of consumer reaction. This is especially true given that consumer reaction evidence in expressive use cases may itself be unreliable. *See Jack Daniel's*, 599 U.S. at 163-65 (Sotomayor, J., concurring) (explaining serious concerns with surveys in expressive use cases, including their artificiality and distance from actual consumer experience).

If the (alleged) existence of confusion made the *Rogers* test inapplicable, then it would always be inapplicable in an infringement case—whose gravamen is confusion—by definition. In *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, the Supreme Court rejected a similar argument:

title-versus-title infringement. *See Twentieth Century Fox v. Empire*, 875 F.3d at 1197 (noting that a contrary rule would "conflict[] with our precedents, which 'dictate that we apply the *Rogers* test in [Lanham Act] § 43(a) cases involving expressive works'"), *quoting* Brown v. Elec. Arts, Inc., 724 F.3d 1235, 1241-42 (9th Cir. 2013).

[5] Nor is the applicability of *Rogers* determined by consideration of whether the defendant's title has or could possibly develop secondary meaning. Titles are presumptively non-source-indicating. The expressive function of titles not only justifies the application of *Rogers*, but explains why the PTO refuses registration of titles for single works. Trademark Manual of Examining Procedure § 1202.08. Concerns about whether a defendant might someday use its title as a trademark – by, for example, using it as the name of a franchise series or seeking to register the title as a mark for related goods – are better addressed if and when those efforts occur. To allow those concerns to drive the threshold question of whether to apply *Rogers* would effectively eviscerate *Rogers* as a vehicle for protecting artistic speech.

> [I]t would make no sense to give the defendant a defense of showing affirmatively that the plaintiff cannot succeed in proving some element (like confusion); all the defendant needs to do is to leave the factfinder unpersuaded that the plaintiff has carried its own burden on that point. … Put another way, it is only when a plaintiff has shown likely confusion by a preponderance of the evidence that a defendant could have any need of an affirmative defense …. "[I]t defies logic to argue that a defense may not be asserted in the only situation where it even becomes relevant."

543 U.S. 111, 120 (2004) (cleaned up).

Another way to frame the issue is this: *Rogers* recognizes the centrality of source confusion to the Lanham Act, something the Court reemphasized in several recent cases. *See Abitron Austria Gmbh v. Hetronic Int'l, Inc*., 600 U.S. 412 (2023) (holding that the Lanham Act requires infringing use in commerce, *id*. at 423, and "use in commerce" means "the bona fide use of a mark in the ordinary course of trade," where the mark serves to … "indicate the source of the goods"), *id*. at 429 (Jackson, J. concurring); *Vidal v. Elster*, 602 U.S. 286, 305 (2024). The modern Lanham Act does recognize other kinds of confusion—primarily confusion about sponsorship or affiliation—but the potential for that kind of confusion doesn't outweigh the First Amendment interests of novelists, musicians, and filmmakers in expressing what they choose to express. That is why every circuit to consider the issue permits the use of trademarks as titles where they are artistically relevant to the defendant's work unless the defendant does something beyond the use of the mark to "explicitly mislead as to the source or the content of the work." *Rogers*, 875 F.2d at 999.

Like the defendants in *Rogers*, *Mattel*, *Univ. of Alabama*, and *Louis Vuitton*, here, Mar Vista Films used Alone in the Dark as the title of an expressive work, not to sell something other than speech. And unlike the defendants in Jack Daniel's and Punchbowl, Mar Vista never claimed, explicitly or otherwise, that Alone in the Dark was a trademark. This kind of use should categorically qualify as a non-trademark use, without need for further analysis. Mar Vista is selling speech, and only speech. As a

consequence, *Rogers* applies and precludes any liability under the Lanham Act.

**CONCLUSION**

This Court should hold that *Rogers* applies to this case.

DATED: FEBRUARY 6, 2026

PHILLIP R. MALONE
JUELSGAARD INTELLECTUAL PROPERTY & INNOVATION CLINIC

MARK A. LEMLEY
STANFORD LAW SCHOOL

By: */s/ Phillip R. Malone*

Phillip R. Malone (SBN 163969)
Mark A. Lemley (SBN 155830)
Attorneys for Amici Curiae Intellectual Property Professors

**APPENDIX A**

Institutional affiliations are provided solely for purposes of identification.

Professor Barton Beebe
NYU School of Law

Professor Lea Bishop
Indiana University School of Law

Professor James Boyle
Duke Law School

Professor Zachary L. Catanzaro
Widener University Delaware School of Law

Professor Stacey Dogan
Boston University School of Law

Professor Dave Fagundes
Emory Law School

Professor Christine Haight Farley
Washington College of Law
American University

Deborah R. Gerhardt
UNC School of Law

Professor Michael Grynberg
DePaul University College of Law

Hugh Hansen
Fordham Law School

Professor Timothy T. Hsieh
Oklahoma City University School of Law

Professor Stacey Lantagne
Suffolk University Law School

Professor Mark A. Lemley
Stanford Law School

Professor Jack Lerner
UC Irvine School of Law

Professor Yvette Joy Liebesman
St. Louis University School of Law

Professor Sari Mazzurco
SMU Dedman School of Law

Professor Mark P. McKenna
UCLA School of Law

Professor Tyler T. Ochoa
Santa Clara University School of Law

Professor Lisa Ramsey
University of San Diego School of Law

Professor Betsy Rosenblatt
Case Western Reserve University Law School

Professor Victoria Schwartz
Pepperdine Law School

Professor Jessica Silbey
Boston University School of Law

Professor Christopher Sprigman
NYU School of Law

Professor Paul J. Szynol
University of Michigan School of Law

Professor Rebecca Tushnet
Harvard Law School

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1

Pursuant to L.R. 11-6.2, the undersigned, counsel of record for amici curiae Intellectual Property Law Professors, certifies that this Proposed Amicus Brief contains 3051 words, which complies with the word limit of L.R. 11-6.1.

DATED: FEBRUARY 6, 2026

*/s/ Phillip R. Malone*
Phillip R. Malone (SBN 163969)

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2026, I caused the foregoing **PROPOSED BRIEF AMICI CURIAE OF INTELLECTUAL PROPERTY LAW PROFESSORS** to be served by electronic means via the Court's CM/ECF system on all counsel registered to receive electronic notices.

DATE: February 6, 2026

JUELSGAARD INTELLECTUAL PROPERTY AND INNOVATION CLINIC

*/s/ Phillip R. Malone*
Phillip R. Malone

Mark A. Lemley

*Attorneys for Amici Curiae IP Professors*