1   LUCIA E. COYOCA (SBN 128314)
       lec@msk.com
2   KARIN G. PAGNANELLI (SBN 174763)
       kgp@msk.com
3   ROBERT H. ROTSTEIN (SBN 72452)
       rxr@msk.com
4   EMILY F. EVITT (SBN 261491)
       efe@msk.com
5   MITCHELL SILBERBERG & KNUPP LLP
    2049 Century Park East, 18th Floor
6   Los Angeles, CA 90067-3120
    Telephone: (310) 312-2000
7   Facsimile: (310) 312-3100

8   MARISSA B. LEWIS (*pro hac vice*)
       mbl@msk.com
9   MITCHELL SILBERBERG & KNUPP LLP
    437 Madison Ave., 25th Floor
10  New York, NY 10022
    Telephone: (212) 509-3900
11  Facsimile: (212) 509-7239

12  Attorneys for Plaintiffs and Counterclaim-
    Defendants

13                UNITED STATES DISTRICT COURT

14                CENTRAL DISTRICT OF CALIFORNIA

15

16  MAR VISTA ENTERTAINMENT, LLC,        CASE NO. 2:23-cv-06924-MEMF-SKx
    THE NINTH HOUSE, LLC, and NINTH
    DARK LLC,                            Judge Maame Ewusi-Mensah Frimpong
17
              Plaintiffs,                **NOTICE OF MOTION AND MOTION OF
18                                       PLAINTIFFS AND COUNTERCLAIM-
                                         DEFENDANTS FOR SUMMARY
         v.                              JUDGMENT**
19
    THQ NORDIC AB,
20                                       **UNREDACTED VERSION OF DOCUMENT
              Defendant.                 PROPOSED TO BE FILED UNDER SEAL**
21
                                         Time:      10:00 a.m.
22  THQ NORDIC AB,                       Date:      March 26, 2026
                                         Location:  Courtroom 8B
23            Counterclaim-Plaintiff,

24       vs.

25  MAR VISTA ENTERTAINMENT, LLC,
    THE NINTH HOUSE, LLC, and NINTH
26  DARK LLC,

27            Counterclaim-Defendants.

28

Mitchell
Silberberg &
Knupp LLP

21384026.2          PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

   **PLEASE TAKE NOTICE THAT** on March 26, 2026, in the courtroom of the Honorable Maame Ewusi-Mensah Frimpong of the United States District Court for the Central District of California, 350 West First Street, Courtroom 8B, Los Angeles, California 90012, at 10:00 am, or as soon thereafter as the matter may be heard, Plaintiffs and Counterclaim-Defendants Mar Vista Entertainment, LLC, The Ninth House, LLC, and Ninth Dark LLC (collectively, "Plaintiffs") shall and hereby do move this Court for an order, pursuant to Fed. R. Civ. P. 56, granting judgment in favor of Plaintiffs on all of their claims for declaratory relief (ECF 1) and all of the Defendant and Counterclaim-Plaintiff THQ Nordic AB's ("THQ") Amended Counterclaims (ECF 25).

   This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Statement of Undisputed Facts and Conclusions of Law, the accompanying Declarations of Karin Pagnanelli, Lawrence Grimaldi, and Autumn Federici, the pleadings and orders in the Court's files for this case, any matters on which the Court may or must take judicial notice and/or that are incorporated by reference via the pleadings, any reply in support of this Motion, any argument presented at the hearing on this Motion, and any other matters the Court deems proper.

   This Motion is made following the conference of counsel, held pursuant to Local Rule 7-3, which took place on December 2, 2025.

DATED: FEBRUARY 6, 2026                LUCIA E. COYOCA
                                       KARIN G. PAGNANELLI
                                       ROBERT H. ROTSTEIN
                                       EMILY F. EVITT
                                       MARISSA B. LEWIS
                                       MITCHELL SILBERBERG & KNUPP LLP


                                       By: */s/ Karin G. Pagnanelli*
                                           Karin G. Pagnanelli
                                           Attorneys for Plaintiffs and Counterclaim-
                                           Defendants

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      PLAINTIFFS' INTRODUCTION ................................................................9

II.     THQ'S INTRODUCTION ........................................................................9

III.    PLAINTIFFS' REPLY INTRODUCTION ................................................11

IV.     PLAINTIFFS' FACTUAL BACKGROUND............................................12

      A.      Plaintiffs and Their Film. ..........................................................12

      B.      THQ and its Game........................................................................13

V.      THQ'S FACTUAL BACKGROUND .......................................................13

      A.      THQ and its ALONE IN THE DARK Franchise............................13

      B.      Plaintiffs' Film ...........................................................................15

      C.      The Connection Between Film Titles and Video Games.....................16

VI.     PLAINTIFFS' PROCEDURAL HISTORY ..............................................17

VII.    THQ'S PROCEDURAL HISTORY .........................................................18

VIII.   PLAINTIFFS' LEGAL BACKGROUND: *ROGERS, JACK DANIEL'S,* AND THE
      INTERSECTION OF TRADEMARK LAW AND THE FIRST AMENDMENT ..........20

      A.      The Traditional Likelihood-of-Confusion Test..................................20

      B.      The *Rogers* Test. ......................................................................20

      C.      The *Jack Daniel's* Threshold Question for Determining Whether the *Rogers*
      Test Applies..............................................................................22

IX.     THQ'S LEGAL BACKGROUND.............................................................23

      A.      The *Rogers* Test Should Be Approached With Caution .....................23

X.      PLAINTIFFS' REPLY RE LEGAL BACKGROUND ...............................25

XI.     PLAINTIFFS' LEGAL STANDARD ON SUMMARY JUDGMENT ..........26

XII.    ARGUMENT ........................................................................................27

      A.      Introduction ..............................................................................27

          1.      PLAINTIFFS: The First Amendment Bars Trademark Infringement ......27

Mitchell
Silberberg &
Knupp LLP

21384026.2

3

**TABLE OF CONTENTS**
(continued)

**Page**

2.    THQ'S Response: The *Rogers* Test Does Not Apply ...............................28

B.    Source Identification .........................................................................28

1.    PLAINTIFFS: Plaintiffs' Use of the Title *Alone in the Dark* Is Not
Source-Identifying and Thus *Rogers* Applies. ...........................................28

2.    THQ's Response: The Film Title "Alone in the Dark" refers to THQ's
ALONE IN THE DARK Franchise ..........................................................31

3.    PLAINTIFFS' Reply .........................................................................42

C.    Artistic Relevance ............................................................................46

1.    PLAINTIFFS: Plaintiffs' Use of the Title *Alone in the Dark* Is
Artistically Relevant to Plaintiffs' Film. .................................................46

2.    THQ's Response: Plaintiffs' Title May Have Minimal Literal
Relevance, But Has No Artistic Relevance ..............................................47

3.    PLAINTIFFS' Reply .........................................................................48

D.    Explicitly Misleading .........................................................................49

1.    PLAINTIFFS: Plaintiffs' Use of the Title *Alone in the Dark* Does Not
Explicitly Mislead Consumers as to the Source of Plaintiffs' Film. ..........49

2.    THQ's Response: Plaintiffs Use Their Title in the Same Way, on
Similar Products, and Consumers Have Actually Been Confused...........51

3.    PLAINTIFFS' Reply .........................................................................55

XIII.    PLAINTIFFS' CONCLUSION.........................................................................58

XIV.    THQ'S CONCLUSION ....................................................................................58

XV.    PLAINTIFFS' REPLY CONCLUSION ...........................................................58

Mitchell
Silberberg &
Knupp LLP

21384026.2

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

### CASES

4

*A.J. Canfield Co. v. Honickman,*
   808 F.2d 291 (3d Cir. 1986) ............................................................................... 53

5

*AMF Inc. v. Sleekcraft Boats,*
   599 F.2d 341 (9th Cir. 1979) .............................................................................. 20

6

7

*Brown v. Elec. Arts, Inc.,*
   724 F.3d 1235 (9th Cir. 2013) ........................................ 21, 46, 48, 49, 50, 51, 58

8

9

*Caiz v. Roberts,*
   382 F. Supp. 3d 942 (C.D. Cal. 2019) ................................................................. 21

10

*Capcom Co. v. MKR Grp., Inc.,*
   2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) ................................................ 21, 47

11

12

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ...................................................................................... 26, 30

13

14

*Coach, Inc. v. Citi Trends, Inc.,*
   No. CV 17-4775-DMG, 2019 U.S. Dist. LEXIS 242458 (C.D. Cal. Dec. 23, 2019) ............ 32

15

*Crow Tribe of Indians v. Racicot,*
   87 F.3d 1039 (9th Cir. 1996) .............................................................................. 10

16

17

*Davis v. Blue Tongue Films,*
   2024 U.S. App. LEXIS 32318 (9th Cir. Dec. 20, 2024) ........................................ 24

18

19

*Dillinger, LLC v. Electronic Arts Inc.,*
   2011 WL 2457678 (S.D. Ind. June 16, 2011) ..................................................... 49

20

*Down to Earth Organics, LLC v. Efron,*
   2024 WL 1376532 (S.D.N.Y. Mar. 31, 2024) ....................................... 23, 25, 29, 31, 52

21

22

*Dr. Seuss Enters. L.P. v. ComicMix LLC,*
   983 F.3d 443 (9th Cir. 2020) .................................................. 21, 27, 45, 50, 55, 56, 57

23

24

*Dreamwerks Prod. Group v. SKG Studio,*
   142 F.3d 1127 (9th Cir. 1998) ............................................................................ 41

25

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.,*
   444 F. Supp. 2d 1012 (C.D. Cal. 2006) ................................................... 20, 48, 57

26

27

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.,*
   444 F. Supp. 2d 1012 (C.D. Cal. 2006), *aff'd* 547 F.3d 1095 (9th Cir. 2008) ........................ 46

28

Mitchell
Silberberg &
Knupp LLP

21384026.2

5

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Gordon v. Drape Creative, Inc.*,
909 F.3d 257 (9th Cir. 2018).................................................. 23, 27, 49, 51, 52, 54, 55, 56, 57

*Hara v. Netflix, Inc.*,
146 F.4th 872 (9th Cir. 2025)................................................. 22, 23, 24, 25, 26, 43

*Harold Lloyd Entm't, Inc. v. Moment Factory One, Inc.*,
2015 WL 12765142 (C.D. Cal. Oct. 29, 2015) ......................................... 49

*Herbko Int'l, Inc. v. Kappa Books, Inc.*,
308 F.3d 1156 (Fed. Cir. 2002) ........................................................ 29, 32

*Hermes Int'l v. Rothschild*,
678 F.Supp.3d 475 (S.D.N.Y. 2023) ...................................................... 26

*Hidden City Philadelphia v. ABC, Inc.*,
2019 WL 1003637 (E.D. Pa. Mar. 1, 2019) ............................................ 51

*HomeVestors of Am., Inc. v. Warner Bros. Discovery, Inc.*,
No. 22-1583-RGA, 2025 U.S. Dist. LEXIS 153761 (D. Del. Aug. 8, 2025)............... 24, 33

*In re Arnold*,
105 U.S.P.Q.2d 1953 (T.T.A.B. 2013) .................................................... 29, 32

*In re Cooper*,
254 F.2d 611 (C.C.P.A. 1958)............................................................ 29, 32

*Jack Daniel's Properties, Inc. v. VIP Prods. LLC*,
599 U.S. 140 (2023) ................................................................ passim

*Jackson v. Netflix, Inc.*,
506 F. Supp. 3d 1007 (C.D. Cal. 2020)............................................... 21, 47

*JTH Tax LLC v. AMC Networks Inc.*,
694 F.Supp.3d 315 (S.D.N.Y. 2023)...................................................... 26, 45

*K & K Promotions, Inc. v. Walt Disney Studios Motion Pictures*,
2022 WL 3585589 (9th Cir. Aug. 22, 2022)................................................ 56

*Lost International, LLC v. Stefani Joanne Germanotta, et al.*,
No. SA CV 25-0592 FMO (KESx) (C.D. Cal. Dec. 15, 2025).............................. 25

*Louis Vuitton Malletier S.A. v. Warner Bros. Ent't Inc.*,
868 F.Supp.2d 172 (S.D.N.Y. 2012) ..................................................... 49

Mitchell
Silberberg &
Knupp LLP

21384026.2

6

1

**TABLE OF AUTHORITIES**
<u>(continued)</u>

2

3
<span style="float:right;"><u>**Page(s)**</u></span>

4
*Mattel, Inc. v. the Brainy Baby Co., LLC,*
    101 U.S.P.Q.2d 1140 (T.T.A.B. 2011) ............................................................... 29, 46

5
*Mattel, Inc. v. MCA Recs., Inc.,*
6
    296 F.3d 894 (9th Cir. 2002) ............................................................................... passim

7
*Mattel, Inc. v. Walking Mountain Prods.,*
    353 F.3d 792 (9th Cir. 2003) ............................................................................... 21
8

9
*McGillvary v. Netflix, Inc.,*
    2024 WL 3588043 (C.D. Cal. July 30, 2024) ................................. 23, 24, 25, 29, 31

10
*MGFB Props., Inc. v. Viacom Inc.,*
11
    54 F.4th 670 (11th Cir. 2022) .............................................................................. 49

12
*Monbo v. Nathan,*
    623 F. Supp. 3d 56 (E.D.N.Y. 2022) ................................................................. 51
13

14
*Nelson v. Pima Community College,*
    83 F.3d 1075 (9th Cir. 1996) ............................................................................... 26, 30

15
*Orion Pictures Co. v. Dell Publ'g Co.,*
16
    471 F.Supp.392, 396 (S.D.N.Y. 1979) ................................................................ 33, 44

17
*Pub. Watchdogs v. S. Cal. Edison Co.,*
    984 F.3d 744 (9th Cir. 2020) ............................................................................... 25
18

19
*Punchbowl, Inc. v. AJ Press, LLC,*
    90 F.4th 1022 (9th Cir. 2024) .......................................... 20, 22, 25, 26, 27, 30, 43

20

21
*Rearden LLC v. Rearden Com., Inc.,*
    683 F.3d 1190 (9th Cir. 2012) ............................................................................. 27

22
*Reflex Media, Inc. v. Pilgrim Studios, Inc.,*
    2018 WL 6566561 (C.D. Cal. Aug. 27, 2018) .................................................... 47
23

24
*Rin Tin Tin, Inc. v. First Look Studios, Inc.,*
    671 F. Supp. 2d 893 (S.D. Tex. 2009) ................................................................ 51

25
*Rogers v. Grimaldi,*
    875 F.2d 994 (2d Cir. 1989) ............................................................................... passim
26

27
*Roxbury Entm't v. Penthouse Media Grp., Inc.,*
    669 F. Supp. 2d 1170 (C.D. Cal. 2009) ............................................................. 21

28

Mitchell
Silberberg &
Knupp LLP

21384026.2

7

1

**TABLE OF AUTHORITIES**
(continued)

2

3

**Page(s)**

*Soremekun v. Thrifty Payless, Inc.*,
    509 F.3d 978 (9th Cir. 2007) ................................................................... 26

*Stewart Surfboards, Inc. v. Disney Book Grp., LLC*,
    2011 WL 12877019 (C.D. Cal. May 11, 2011) ....................................... 51

*Twentieth Century Fox Television v. Empire Distrib., Inc.*,
    875 F.3d 1192 (9th Cir. 2017) ..................................... 21, 44, 47, 51, 55

*UFO Mag., Inc. v. Showtime Network, Inc.*,
    2022 WL 16645041 (D. Wyo. July 21, 2022) ......................................... 51

*Vans, Inc. v. MSCHF Prod. Studio, Inc.*,
    88 F.4th 125, 135-137 (2d Cir. 2023) ..................................................... 24

*Warner Bros. Pictures, Inc. v. Majestic Pictures Corp.*,
    70 F.2d 310 (2d Cir. 1934) ............................................................ 33, 44

*Zo Skin Health, Inc. v. ForeverYoung Laser Ctr., Weight Mgmt. & Med. Spa, LLC*,
    2022 WL 18397631 (C.D. Cal. Dec. 7, 2022) ......................................... 27

*Zobmondo Entm't, Ltd. Liab. Co. v. Falls Media, Ltd. Liab. Co.*,
    602 F.3d 1108 (9th Cir. 2010) ................................................................ 42

**STATUTES**

15 U.S.C.
    § 1051 *et seq.* ................................................................................. 17, 20
    § 1114(1) .................................................................................. 17, 27, 32
    § 1114(1)(a) ........................................................................................ 32
    § 1125(a) ...................................................................................... 17, 27
    § 1127 ................................................................................................. 32

28 U.S.C.
    § 1292(b) ...................................................................................... 18, 46

**OTHER AUTHORITIES**

Fed. R. Civ. P.
    56(a) ................................................................................................... 26

17

18

19

20

21

22

23

24

25

26

27

Mitchell
Silberberg &
Knupp LLP

21384026.2

28

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## I.    PLAINTIFFS' INTRODUCTION

Plaintiffs and Counterclaim-Defendants Mar Vista Entertainment, LLC, The Ninth House, LLC, and Ninth Dark LLC (collectively, "Plaintiffs") produced a thriller film about a woman who is both literally and figuratively alone in the dark as she is pursued by a mysterious stalker (the "Film"). Plaintiffs aptly titled their Film *Alone in the Dark*. Defendant and Counterclaim-Plaintiff THQ Nordic AB ("THQ") publishes and holds trademark rights in a survival horror video game franchise that is coincidentally titled "Alone in the Dark" (the "Game"). Plaintiffs' Film makes no mention of THQ or the Game. And it is undisputed that Plaintiffs chose the title of the Film to describe its ***content***, not its ***source***. Consequently, this is the quintessential case where Plaintiffs' First Amendment rights outweigh THQ's trademark rights, and Plaintiffs are entitled to summary judgment.

## II.    THQ'S INTRODUCTION

This Motion for Summary Judgment presents the same arguments the Court previously and correctly rejected in connection with Plaintiffs' Motion to Dismiss.  ECF No. 55.  Plaintiffs believe that they are free to choose <u>any</u> name for the title of their films, including names that are registered trademarks, currently in use in the marketplace, and that consumers currently identify with a video game and movie franchise in the same genre as Plaintiffs film.  The *Rogers* test does not protect such a brazen violation of THQ's intellectual property rights.

Imagine that an independent movie studio decided to make a movie about a boy who finds a stone that gives him magical powers.  The boy's name, coincidentally, happens to be 'Harry Potter' (no relation to the famous Harry Potter brought to life by J.K. Rowling).  The movie studio, fully aware of the Harry Potter franchise, decides to name their movie "Harry Potter and the Sorcerer's Stone" – also coincidentally, a title identical to a trademark owned by Warner Bros. Entertainment Inc.  Under Plaintiffs' view of the governing law, this film title is perfectly legal; there is artistic relevance because the title has some relationship to the characters and plot, and the title is not explicitly misleading, because Plaintiffs believe that the title of a single creative work can *never* serve as a source identifier, no matter how the public may perceive that title.

Mitchell
Silberberg &
Knupp LLP

21384026.2

9

1    This outcome feels wrong, because it is. Even Plaintiffs' own witness[1] agreed that

2    ██████████████████████████████████████████████████████████████████

3    ████████████████████████████. SUF158. THQ's ALONE IN THE DARK Franchise

4    ("THQ's Franchise") may not be as famous as the Harry Potter franchise, but this does not mean

5    it should not enjoy the same legal protections. ALONE IN THE DARK has a large and diverse

6    fan base, but is particularly well-known among horror fans, the same genre associated with

7    Plaintiffs' Film. For these and other subsets of consumers, the title of Plaintiffs' Film acts as a

8    trademark referring to THQ's Franchise, including the associated video games and films.

9    Plaintiffs film was not always called "Alone in the Dark." The original title, "Stalker on

10   the Lake," aptly describes Plaintiffs' Film, and would have been a unique title not associated

11   with any existing feature films known to THQ. There is no evidence that Plaintiffs chose a

12   different, less descriptive title, to describe the Film's *content*. The characters in the film are

13   rarely alone, and even when they are, it is almost never dark. Although Plaintiffs claim

14   retrospectively to have found a great deal of artistic relevance in the title, they deliberately chose,

15   from among endless non-infringing options, the same name as other feature films on the same

16   streaming platforms where Plaintiffs' Film would be (and still is) available.

17   ████████████████████████████████████████████████████████████████

18   ██████████████████████████████████████████████████████████████████████

19   ██████████████████████████████████████████████████████████████████████

20   Plaintiffs undoubtedly knew about THQ's Franchise (of the same name) before releasing their

21   Film.[2] Plaintiffs have not provided any compelling explanation for their decision to adopt a

22   nearly identical logo to the 2008 video game of the same name. Plaintiffs had the freedom to

23   choose virtually any title for their Film, but instead chose to use THQ's trademark (adopting both

24   

25   [1] Plaintiffs submitted an expert report from Dale Nelson, who is an attorney, in which Ms. Nelson renders
     inappropriate "opinions" about disputed legal issues. *See Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th

26   Cir. 1996) (stating that expert testimony is not proper for issues of law because the role of experts is to interpret and
     analyze factual evidence and not to testify about the law). Nevertheless, because Ms. Nelson worked as intellectual

27   property counsel at Warner Brothers for many years, her opinion on the inappropriateness of a third-party making a
     ███████████████████████████████████████████████████████████.

28   [2] ████████████████████████████████████████████████████████████.

Mitchell
Silberberg &
Knupp LLP

21384026.2

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

1   the arrangement of words, and the appearance of the Mark).  Plaintiffs' First Amendment rights

2   do not extend this far.

3   **III.    PLAINTIFFS' REPLY INTRODUCTION**

4          By mischaracterizing the title of Plaintiffs' Film as a source-identifier, THQ seeks to

5   monopolize the use of an expressive title in a way that ignores the First Amendment and flouts

6   the fundamental principle underlying *Rogers v. Grimaldi*—namely, that a plaintiff may not use

7   the Lanham Act to impinge upon free expression. Taken to its logical extreme, THQ could, in

8   perpetuity, prevent authors, artists, filmmakers, and other creators from titling their works

9   "Alone in the Dark" no matter how expressive the use. Nothing in *Jack Daniel's* sanctions such a

10  result. Rather, *Jack Daniel's*—which addressed **tangible consumer products**—explicitly

11  reaffirmed the *Rogers* test's vitality for intangible, expressive works like those at issue here.

12         Faced with established law against it, THQ attempts to distract the Court with discussion

13  of the *Super Mario Bros.* movie and *Harry Potter*. But these hypotheticals are neither admissible

14  evidence, binding legal precedent, nor even persuasive authority. And THQ is improperly trying

15  to turn the source-identification analysis on its head by focusing not on whether Plaintiffs' Film

16  title is a source identifier (it is not), but on whether THQ—the **senior user**—is using the title as a

17  source identifier.

18         THQ likewise ignores clear Ninth Circuit precedent on the application of *Rogers*, under

19  which Plaintiffs' Film (1) easily meets the merely "above zero" standard for artistic relevance;

20  and (2) is not explicitly misleading because it contains no explicit misstatement or overt claim

21  relating to the work's source.

22         Finally, THQ attempts to complicate and confuse the issues by conflating the *Rogers* test

23  with the likelihood of confusion analysis, and adding over 100 new **immaterial** facts that have no

24  bearing whatsoever on the instant motion. THQ's attempt to create the appearance of a dispute

25  by presenting the Court with pages and pages of irrelevant volume should not be countenanced.

26         Ultimately, THQ cannot meet its burden on source identification or either prong of the

27  *Rogers* test. THQ has failed to raise a genuine issue of material fact, and Plaintiffs are entitled to

28  judgment as a matter of law.

Mitchell
Silberberg &
Knupp LLP

21384026.2

11

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

IV.    **PLAINTIFFS' FACTUAL BACKGROUND**

A.    <u>**Plaintiffs and Their Film.**</u>

**Plaintiff Mar Vista Entertainment, LLC** ("MarVista") is a media and entertainment company, founded in 2003, that produces and distributes films and other content. SUF1-3. MarVista's films prominently feature the "MarVista" name and logo to identify it as the copyright owner. SUF4. MarVista owns multiple trademark registrations for the "MarVista" name and logo; it does not have a trademark registration for the title of any of its films. SUF5-6.

**Plaintiff The Ninth House, LLC** ("Ninth House") is a production services company founded in 2017. SUF7. Ninth House's films prominently feature the "Ninth House" name and logo to identify it as the producer. SUF9. Ninth House does not own a trademark registration for the title of any of its films. SUF10.

In or around March 2022, MarVista engaged Ninth House to produce a thriller film tentatively titled *Alone in the Dark*. SUF14. Plaintiff Ninth Dark LLC ("Ninth Dark") was created solely for the production of the Film. SUF15. Plaintiffs produced the Film, which was released in October 2022, initially exclusively on the online streaming platform tubi, and subsequently via other channels. SUF16, 25-27.

The Film is a feature-length thriller with an original plot, setting, and characters. SUF17. It tells the story of a recent divorcée under house arrest who must deal with a mysterious stalker who appears to have control over her surroundings. SUF19. The key art for the Film fittingly features the protagonist alone in a dark room, including as shown below:



| | tubi key art | | Apple TV+ key art |
| | | | |
| | SUF29. | | SUF31. |

The title *Alone in the Dark* is connected to the content of the Film: the phrase "alone in the dark" suggests isolation, being without guidance in unclear situations, or an emotional state. SUF21. There is no evidence that the Film's title *Alone in the Dark* was adopted for the purpose

1  of misleading consumers into believing that the Film was somehow affiliated or associated with

2  THQ or THQ's Game, which is coincidentally titled *Alone in the Dark.* To the contrary, the

3  evidence is undisputed that Plaintiffs selected and adopted the title *Alone in the Dark* for the

4  Film because it described the content of the Film. SUF22. The title *Alone in the Dark* is one

5  piece of the Film's expressive content. SUF19-24.

6      Plaintiffs have used *Alone in the Dark* solely as the title of the Film—a single work, and

7  not in connection with any franchise, series, merchandise, or other goods or services. SUF36-37.

8  Plaintiffs have never applied for, and do not own, a trademark registration for *Alone in the Dark*

9  in any jurisdiction. SUF38-39.

10     The Film prominently and repeatedly refers to "MarVista Entertainment," "The Ninth

11  House," and their logos in the opening titles and closing credits. SUF40. The closing credits of

12  the Film display the following copyright notice:  ©2022 MarVista Entertainment, LLC. SUF41.

13     Neither the Film nor its key art refers to THQ or its Game, or any of the Game's

14  characters. SUF33-35, 51-53. Rather, the key art states "tubi ORIGINAL" or "Apple TV+" as

15  applicable. SUF29-32.

16     **B.    THQ and its Game.**

17     THQ owns the rights to the Game, a version of which was first released by a predecessor

18  to THQ in 1992. SUF42-44. The Game is in the survival horror genre; the player must solve

19  puzzles while fighting various ghost and monsters. SUF45-46. The Game has a different setting,

20  characters, and plot than the Film. SUF48-50.

21     THQ owns a trademark registration for ALONE IN THE DARK in Classes 9 and 41 for

22  goods and services related to computer games. SUF47.

23  **V.    THQ'S FACTUAL BACKGROUND**

24     **A.    THQ and its ALONE IN THE DARK Franchise**

25     THQ Nordic AB ("THQ") is a video game publisher and the owner of the ALONE IN

26  THE DARK Franchise.  SUF57-60.  THQ owns U.S. Registration Nos. 4,803,628 for ALONE

27  IN THE DARK and 4,860,846 for ALONE IN THE DARK: ILLUMINATION.  SUF47, 57-58.

28

Mitchell
Silberberg &
Knupp LLP

21384026.2

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

ALONE IN THE DARK, first released in 1992, has been called one of the seminal survival horror games that helped create and define the survival horror genre more than 30 years ago. SUF63-66. The original ALONE IN THE DARK video game, and its many sequels, have enjoyed enduring success and popularity for decades, leading to the creation of a large and diverse fan base.  SUF68.  "Alone in the Dark" is a famous, widely recognized cult classic, and even has its own Wikipedia page.  SUF62-68.

THQ's ALONE IN THE DARK Franchise includes seven video games ALONE IN THE DARK (1992), ALONE IN THE DARK 2 (1993), ALONE IN THE DARK 3 (1994), ALONE IN THE DARK: THE NEW NIGHTMARE (2001), ALONE IN THE DARK (2008), ALONE IN THE DARK: ILLUMINATION (2015), ALONE IN THE DARK (2024), two feature films ALONE IN THE DARK (2005) and ALONE IN THE DARK 2 (2008) and other branded merchandise. SUF59-61, 69-71, 82. The 2005 ALONE IN THE DARK film was a horror film, produced by Dr. Uwe Boll, featuring Christian Slater, Tara Reid, and Stephen Dorff.  SUF70.

ALONE IN THE DARK is a well-known franchise, with significant exposure and investment in the United States.  The 2005 ALONE IN THE DARK Film has been viewed on the Tubi platform by more than ▮▮▮▮ unique devices since 2018, and the 2008 ALONE IN THE DARK 2 film has been viewed on the Tubi platform by more than ▮▮▮ unique devices since 2019. SUF111-112. Released to the public in 2024, the newest ALONE IN THE DARK video game, which features voice acting by Hollywood actors David Harbour and Jodie Comer, has already sold ▮▮▮▮▮▮▮ (not including additional downloadable content, and other ancillary products), including ▮▮▮▮▮▮▮ to consumers in the U.S., in just the first year and a half on the market (▮▮▮▮▮▮▮▮▮▮).  SUF83-87.  More than a million people watched THQ's Official Reveal Trailer for the 2024 ALONE IN THE DARK game on YouTube. SUF73.  THQ spent approximately ▮▮▮▮▮ developing the 2024 ALONE IN THE DARK video game, and another approximately ▮▮▮▮ on marketing. SUF75. As of September 14, 2025, THQ had sold a total of ▮▮▮▮ of Alone in the Dark video games (and related downloadable content) worldwide, across all Alone in the Dark video game releases. SUF84. Of those sales, ▮▮▮▮ were sold in the United States. SUF84.

1   THQ's 2024 ALONE IN THE DARK video game is available for purchase at major retailers

2   including Amazon and GameStop, among others. SUF72.  THQ's ALONE IN THE DARK

3   video games are also available digitally through online digital distribution services, for example

4   the online platform called Steam.  SUF60, 78-80.

5       **B.**    **Plaintiffs' Film**

6       In October 2022, Plaintiffs released an infringing direct-to-streaming horror film titled

7   "Alone in the Dark." SUF25, 96, 100. This movie has been watched ████████████ on

8   https://tubitv.com/, an online streaming platform operated by Tubi Inc. ("Tubi"), and is also

9   available to purchase or rent through other popular channels including Apple, Amazon, and

10  Google.  SUF90-91. The vast majority of consumers will encounter Plaintiffs' Film on Tubi's

11  online streaming platform, which categorizes the film as "Thriller · Drama  · Horror."

12  Plaintiffs' Film is categorized on Amazon as "Suspense · Horror."  SUF96, 100.

13      The primary art, or "key art" associated with Plaintiffs' Film on Tubi, shown below left,

14  features the lead actress (Novi Brown) in the foreground, and a menacing unknown figure in the

15  background.  SUF92-93. Novi Brown's face is well lit, and she is not alone.  *Id*. Notably, the

16  image in this key art is <u>not</u> taken from a scene in Plaintiffs' Film. SUF94.

    

| Key Art for Alone in the Dark on Tubi | Key Art for Alone in the Dark on Amazon |
| --- | --- |

27      The primary art associated with Plaintiffs' Film on Amazon, reproduced above right,

28  shows Novi Brown in the foreground at the bottom of a staircase, and a menacing unknown

Mitchell
Silberberg &
Knupp LLP

21384026.2

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

1  figure holding a knife at the top of the stairs.  SUF97-98.  Novi Brown is once again well lit, and

2  she is not alone.  Once again, the image in this art does not appear in Plaintiffs' film.  SUF99.

3        Not only is Plaintiffs' film title—"Alone in the Dark"—identical to THQ's registered

4  trademark, that title is formatted in the same fashion as the logo for some of THQ's ALONE IN

5  THE DARK video games.  SUF58, 106.  For example, the key art from the official trailer for the

6  Film, shown below left, and the key art from the Amazon website, shown below center, are

7  virtually indistinguishable from THQ's use of the Mark, for example as shown at below right.





**Mar Vista on YouTube**
(SUF102-105)

**Mar Vista on Amazon**
(SUF97-101)

**THQ's use of the Mark**
(SUF78-81)

14        **C.    The Connection Between Film Titles and Video Games**

15        Because today's entertainment landscape has become dominated by video games, today's

16  consumers expect video games to be adapted into movies. SUF123-135.  According to one

17  source published in 2024, 85% of people in the United States play video games. SUF125. It has

18  been reported by sources such as *Forbes* and *The Economist*, that gaming is the largest sector of

19  entertainment, surpassing the sales of film and recorded music combined.  SUF128-133.

20        Not surprisingly, in today's entertainment landscape that is all about IP infusion, video

21  game franchises are one of the most lucrative sources of new IP for Hollywood. SUF123-124,

22  124-135. The highest-grossing film of 2025 in the United States was "A Minecraft Movie,"

23  based on the popular Minecraft video game franchise. SUF148. Video-game properties have a

24  built-in fan base, as demonstrated, for example, by the fact that in 2023, the annual Game

25  Awards, the video game industry's annual show, attracted six times the number of viewers as the

26  Academy Awards. SUF133.

27        Recent and popular horror shows such as HBO's *The Last of Us* and Netflix's

28  *Castlevania*, horror films such as *Until Dawn*, and established film franchises like *Resident Evil*

Mitchell
Silberberg &
Knupp LLP

21384026.2

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

are all based on video game IP. SUF126-127. All of these films/TV shows have the same title as the video game source material, so that the consumer will connect the source of the material to the video game. SUF138.

## VI.    PLAINTIFFS' PROCEDURAL HISTORY

On August 22, 2023, Plaintiffs initiated this lawsuit against THQ seeking declaratory relief that their use of *Alone in the Dark* as the title of the Film is protected by the First Amendment under *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). ECF 1. Specifically, Plaintiffs are seeking a judicial declaration that their use of *Alone in the Dark* does not constitute trademark infringement, false designation of origin, or unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, or any other applicable law. *Id.* ¶¶ 26-33.

In response, THQ filed an Answer and Counterclaims for, as amended: (1) infringement of registered trademarks under 15 U.S.C. § 1114(1); (2) trademark infringement under common law; (3) unfair competition under 15 U.S.C. § 1125(a); and (4) unfair competition under common law. ECF 25. All of THQ's Amended Counterclaims arise from Plaintiffs' use of *Alone in the Dark* as the title of their single Film. *Id.* ¶ 26.

On March 7, 2024, Plaintiffs filed a Motion to Dismiss and for Judgment on the Pleadings, seeking dismissal of all of THQ's Counterclaims and judgment in their favor primarily on *Rogers* grounds. *See* ECF 30 ("Motion to Dismiss"). The Court denied Plaintiffs' Motion to Dismiss in substantial part.[3]  *See* ECF 55. Most pertinent here, the Court found that THQ "sufficiently alleged that [Plaintiffs'] use of 'Alone in the Dark' is as a trademark," and thus "the *Rogers* test is inapplicable at this stage." *Id.* at 4-5. The Court stated as follows:

> While the Court must take THQ's allegations as true at [the motion to dismiss] stage, it need not do so at the summary judgment stage, and at that stage, the parties can submit evidence that rebuts THQ's factual allegations that [Plaintiffs are] using 'Alone in the Dark' as a source identifier. At that time, the Court may find that this case does not fall within the ambit of *Jack Daniel's*.

Mitchell Silberberg & Knupp LLP

21384026.2

---

[3] The Court granted Plaintiff's Motion to Dismiss with respect to THQ's trademark dilution claim. *See* ECF 55 at 8.

*Id.* at 5-6, n.2. Further, while the Court "didn't reach" the *Rogers* test on Plaintiffs' Motion to Dismiss, it stated at the hearing that it "would tend to agree with counsel for [Plaintiffs] that if we apply *Rogers* … [Plaintiffs] might prevail." SUF56.

On August 5, 2024, Plaintiffs filed a Motion for 28 U.S.C. § 1292(b) Certification and Stay Pending Appeal. ECF 60. On December 24, 2024, the Court denied Plaintiffs' motion. ECF 72. In its Order, the Court again emphasized that "at the summary judgment stage, … the parties can submit evidence that rebuts THQ's factual allegations that [Plaintiffs are] using 'Alone in the Dark' as a source identifier." *Id.* at 7 (quoting ECF 55 at 5, n.2).

Plaintiffs now move for summary judgment under the *Rogers* test. It is clear as a matter of undisputed fact and law that Plaintiffs are not using *Alone in the Dark* to identify the source of the Film, and THQ cannot carry its burden of demonstrating that Plaintiffs' use either (1) lacks artistic relevance, or (2) is explicitly misleading under *Rogers*.

## VII.    THQ'S PROCEDURAL HISTORY

Plaintiffs' Motion for Summary Judgment presents the same issues, and the same unresolved questions of fact, as Plaintiffs' earlier unsuccessful Motion to Dismiss.

Plaintiffs' Motion to Dismiss asked the Court to find that THQ's counterclaims for trademark infringement fail under the *Rogers* test, because the title Alone in the Dark is artistically relevant to Plaintiffs' film, and because Plaintiffs have not explicitly mislead consumers.  ECF No. 30.

THQ raised two arguments in its Opposition to the Motion to Dismiss.  First, that the Rogers test does not give a junior user of a mark *carte blanche* to use any trademark as the title of a film, simply because there is some minimal artistic relevance to the underlying work.  THQ quoted (ECF No. 37 at 6-7) a nearly identical hypothetical fact pattern to the facts here from *McCarthy on Trademarks & Unfair Competition § 10:17:10* (5th ed.), reproduced again below:[4]

> For three years, the SHIP DESTROYER video game has been very popular with pre-teens and teens. It has gone through several

---

[4] Plaintiffs agree that "*McCarthy* is a leading and oft-cited trademark treatise." ECF No. 43 at 12. While the treatise appears to have been updated since the filing of the motion to dismiss and this particular fact pattern does not appear in the current version of *McCarthy*, the same principle still applies.

versions and has spawned fan sites on the Internet. The video game concerns battles between space ships in outer space. Megaton Studios is planning to produce a feature length motion picture with a story line concerning a cat and mouse contest between a rogue Captain of a Chinese submarine and an American Navy surface ship in the Pacific ocean not far from the entrance to San Francisco Bay. The title selected is SHIP DESTROYER and it will be an action movie with a target audience of teenage boys. Megaton Studios argues that it cannot be an infringer of the video game mark because under the Rogers test, the title has some artistic relevance to the story (the submarine Captain is determined to be a "ship destroyer") and there will be nothing in the movie or its promotion which will falsely claim that the movie has any connection with the video game of the same name. The owner of the SHIP DESTROYER video game mark argues that it is predictable that a substantial number of teen-age boys will assume, falsely, that an action movie of the same name as the video game they are familiar with will, like a number of such cross-over media productions, be based on that video game. **In the author's opinion, confusion would be likely (and perhaps inevitable) in this hypothetical and the Rogers balancing test should favor the senior user**.

This Court agreed that *Rogers* does not apply under the facts as pled, because "THQ alleges that consumers expect well-known video games to be made into movies, a practice that is particularly prevalent in the mystery/horror genre in which both parties operate." ECF No. 55 at 7. Accompanying THQ's opposition to this Motion is a declaration attaching the expert report of Kathryn Arnold, an expert in the entertainment industry, explaining that "consumers typically identify the underlying source of a movie by its title alone, when that title is associated with an IP such as a book, play, or video game that the consumer recognizes." SUF138.

Second, THQ argued that the *Rogers* test does not apply where Plaintiffs use the mark "as a designation of source for the infringer's own goods." ECF No. 37 at 13 (citing *Jack Daniel's Properties, Inc. v. VIP Prods. LLC*, 599 U.S. 140, 153 (2023)). The Court agreed, finding that "THQ has sufficiently alleged that Mar Vista's use of 'Alone in the Dark' is as a trademark, and as such, *Jack Daniel's* would preclude the application of *Rogers*." ECF No. 55 at 5.

Because the record, including testimony from a qualified expert, supports the allegations pled in THQ's Amended Counterclaims, Plaintiffs' Motion for Summary Judgment under the *Rogers* test fails for the reasons already articulated in the Court's previous Order.

VIII.  **PLAINTIFFS' LEGAL BACKGROUND:** *ROGERS, JACK DANIEL'S,* **AND THE INTERSECTION OF TRADEMARK LAW AND THE FIRST AMENDMENT**

A.    **The Traditional Likelihood-of-Confusion Test.**

A "trademark" is a word, phrase, or symbol that "identifies a product's source" and "distinguishes that source from others." *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 145-46 (2023). The Lanham Act, 15 U.S.C. § 1051 *et seq.*, is primarily concerned with preventing consumer confusion about a product's source—*i.e.*, who made the product. *Id.* at 147. Typically, courts apply a fact-intensive "likelihood-of-confusion" test to Lanham Act claims. *Id.* at 155; *see also AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).[5]

B.    **The *Rogers* Test.**

The Ninth Circuit has long recognized that the "traditional likelihood-of-confusion test 'fails to account for the full weight of the public's interest in free expression.'" *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1027-28 (9th Cir. 2024) (quoting *Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894, 900 (9th Cir. 2002)). To better protect First Amendment interests—and avoid chilling speech—the Ninth Circuit adopted and, for more than two decades, has applied the test articulated in *Rogers* to Lanham Act and related claims arising from the use of a trademark in an expressive work. *See Mattel*, 296 F.3d at 900.

*Rogers* is designed to "offer[] an escape from the likelihood-of-confusion inquiry and a shortcut to dismissal" in cases involving expressive works. *Jack Daniel's*, 599 U.S. at 157. As long as the allegedly infringing use has some "artistic relevance to the underlying work" and does not "explicitly mislead[] [consumers] as to the source or the content of the work," *Rogers* is a complete defense to Lanham Act and related claims—irrespective of whether confusion is likely. *See E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 444 F. Supp. 2d 1012, 1047 (C.D. Cal. 2006) ("In *Rogers* … the movie title 'Ginger and Fred' was highly susceptible to consumer

---

[5] The Ninth Circuit applies the following eight factors in determining whether a likelihood of confusion exists: (1) the strength of the plaintiff's mark; (2) the relatedness or proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the degree to which the parties' marketing channels converge; (6) the type of goods and degree of care purchasers are likely to exercise in selecting the goods; (7) evidence of the defendant's intent; and (8) the likelihood that the parties will expand their product lines. *Sleekcraft*, 599 F.2d at 348-49.

confusion…. Nonetheless the court found that the … First Amendment interests prevailed."),

*aff'd* 547 F.3d 1095 (9th Cir. 2008); *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1245 (9th Cir. 2013) (permitting evidence of confusion to defeat *Rogers* "would render *Rogers* a nullity").

Titles of expressive works are in the heartland of *Rogers*, which itself addressed and dismissed trademark claims arising from the title of a film. In holding the First Amendment barred such claims, the *Rogers* court explained:

> Though consumers frequently look to the title of a work to determine what it is about, they do not regard titles of artistic works in the same way as the names of ordinary commercial products. Since consumers expect an ordinary product to be what the name says it is, we apply the Lanham Act with some rigor to prohibit names that misdescribe such goods. But most consumers are well aware that they cannot judge a book solely by its title any more than by its cover.

*Rogers*, 875 F.2d at 1000 (internal citation omitted).

Adopting and applying *Rogers*, the Ninth Circuit consistently has dismissed trademark claims arising from titles of expressive works. Most notably, in *Mattel*, the Ninth Circuit dismissed claims that a song titled *Barbie Girl* infringed Mattel's "Barbie" trademark on *Rogers* grounds. The Ninth Circuit explained:

> A title is designed to catch the eye and to promote the value of the underlying work. Consumers expect a title to communicate a message about the book or movie, but they do not expect it to identify the publisher or producer…. A title tells us something about the underlying work but seldom speaks to its origin[.]

*Mattel*, 296 F.3d at 902 (internal citation omitted).[6]  Similarly, in *Dr. Seuss Enters. L.P. v. ComicMix LLC,* 983 F.3d 443 (9th Cir. 2020), the Ninth Circuit affirmed the dismissal of trademark claims arising from a book title on *Rogers* grounds. As discussed *infra*, the Supreme

---

[6] Following *Mattel*, over the past two decades, courts in the Ninth Circuit have routinely applied *Rogers* in dismissing trademark claims arising from the alleged use of a mark in the title of an expressive work—without considering evidence of consumers' perceptions of the titles at issue. *See, e.g.*, *Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192 (9th Cir. 2017) (television show title); *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 807 (9th Cir. 2003) (titles of photographs); *Jackson v. Netflix, Inc.*, 506 F. Supp. 3d 1007 (C.D. Cal. 2020) (television show title); *Caiz v. Roberts*, 382 F. Supp. 3d 942 (C.D. Cal. 2019) (record album title); *Capcom Co. v. MKR Grp., Inc.*, 2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) (video game title); *Roxbury Entm't v. Penthouse Media Grp., Inc.*, 669 F. Supp. 2d 1170 (C.D. Cal. 2009) (film title). The Supreme Court in *Jack Daniel's* did not mention, far less purport to overrule, these decisions.

1   Court's admittedly narrow decision in *Jack Daniel's* did not change—and, in fact, reaffirmed—

2   this well-established law.

3       C.   **The *Jack Daniel's* Threshold Question for Determining Whether the *Rogers***

4            **Test Applies.**

5           In *Jack Daniel's*, the Supreme Court added a threshold question to the *Rogers* legal

6   framework. In particular, before applying the *Rogers* test, courts first must ask whether "the

7   accused infringer has used a trademark to designate the source of its own goods—in other words,

8   has used a trademark as a trademark" or "as a source identifier." *Jack Daniel's*, 599 U.S. at 145,

9   157. If the accused infringer used the trademark not as a source identifier, but solely to perform

10  some other expressive function, then the court must continue to apply the *Rogers* test in the same

11  way as it would have before *Jack Daniel's*. *Id.* at 163; *accord Punchbowl*, 90 F.4th at 1031

12  ("[B]ecause the Supreme Court's decision in *Jack Daniel's* was confined to a 'narrow' point of

13  law, [] that *Rogers* does not apply when a mark is used as a mark, preexisting Ninth Circuit

14  precedent adopting and applying *Rogers* otherwise remains intact and binding…"). *Jack Daniel's*

15  instructs the Court to bypass the *Rogers* test and apply the traditional likelihood-of-confusion test

16  ***only if*** the accused infringer used the trademark to designate the source of its product.

17          The Supreme Court's decision in *Jack Daniel's* affirmed that *Rogers* applied and

18  warranted dismissal of the claims asserted in *Rogers* and *Mattel* because the accused infringers in

19  those cases used the trademarks in titles of expressive works—that is, "not to designate [the]

20  work's source, but solely to perform some other expressive function." *Jack Daniel's*, 599 U.S. at

21  153-54; *see also Punchbowl*, 90 F.4th at 1030 (noting that, in *Jack Daniel's*, the Supreme Court

22  cited *Mattel* as properly applying *Rogers* because "the band's use of the Barbie name [in the

23  song title] … did not 'speak to the song's origin'") (citations omitted); *see Hara v. Netflix, Inc.*,

24  146 F.4th 872, 874 (9th Cir. 2025) (same). In doing so, the Supreme Court implicitly reaffirmed

25  that consumers "do not regard titles of artistic works in the same way as the names of ordinary

26  commercial products." *Rogers*, 875 F.2d at 1000; *Mattel*, 296 F.3d at 902.

27          Since *Jack Daniel's*, courts in the Ninth Circuit have continued to apply *Rogers* and

28  dismiss claims arising from the use of trademarks in connection with expressive works. *See, e.g.*,

Mitchell
Silberberg &
Knupp LLP
21384026.2

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

*Hara*, 146 F.4th at 880 (affirming application of *Rogers* and dismissal of claims arising from use of mark in animated television series because, "[l]ike *Mattel*, [the accused infringers'] alleged use of [plaintiff's mark] 'does not speak to the series' origin'") (cleaned up and citations omitted); *McGillvary v. Netflix, Inc.*, 2024 WL 3588043, at *13 (C.D. Cal. July 30, 2024) (Staton, J.) (applying *Rogers* and dismissing claims arising from title of documentary film, because "Netflix used the mark … not to identify [the documentary's] source but to identify its subject-matter"); *Down to Earth Organics, LLC v. Efron*, 2024 WL 1376532, at *4-5 (S.D.N.Y. Mar. 31, 2024) (applying *Rogers* and dismissing claims arising from title of documentary series, because the accused infringers "are undoubtedly using [the mark] simply to identify the subject matter and tone of the [s]eries") (citations omitted).

## IX.    THQ'S LEGAL BACKGROUND

### A.    The *Rogers* Test Should Be Approached With Caution

The *Rogers* test was created to address the tension between the Lanham Act and the First Amendment, finding that the Lanham Act should apply "only where the public interest in avoiding consumer confusion outweighs the public interest in free expression." *Rogers v. Grimaldi* 875 F.2d 994, 999 (2d Cir. 1989). "The *Rogers* Test is not an automatic safe harbor for any minimally expressive work that copies someone else's mark." *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 261 (9th Cir. 2018).

The Supreme Court's *Jack Daniel's* decision marked a significant blow to the long-term viability of the *Rogers* test.  Although the goal of the *Rogers* test–protecting freedom of expression for artistic works–is admirable, the two-part test articulated by the Second Circuit lacks the nuance necessary to properly balance the competing interests of artists and intellectual property owners.  *See Rogers*, 875 F.2d at 1006-1007 (Greisa, J., dissenting) ("the cure offered by the majority is far worse than the ailment" and "the hypotheticals in the majority opinion are a poor basis for arriving at serious legal propositions.").

In *Jack Daniel*'s the Supreme Court curtailed the scope of the *Rogers* test, holding that *Rogers* does not apply when the alleged infringer uses a trademark as a trademark.  *Jack Daniel's Properties, Inc. v. VIP Prods. LLC*, 599 U.S. 140, 153 (2023).  Notably, although the

Mitchell
Silberberg &
Knupp LLP

21384026.2

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Court did not overrule *Rogers*, the opinion shows discomfort with the test as a whole, and the Court expressly declined to take a position on "whether *Rogers* has merit in other contexts." *Id.* Moreover, a concurring opinion from Justices Gorsuch, Thomas, and Barrett express skepticism about *Rogers*, commenting that "it is not entirely clear where the *Rogers* test comes from," and "it is not obvious that *Rogers* is correct in all its particulars." *Id.* at 165 (noting that lower courts "should be attuned" to the fact that the Court necessarily left much about the *Rogers* test unaddressed). Indeed, *McCarthy's* treatise contains an author's note warning that the concurrence in *Jack Daniel's* "should be interpreted by the lower courts as a clear caveat to apply the *Rogers* test with caution and to carefully interpret the line drawn by the decision of the unanimous Court." *McCarthy on Trademarks and Unfair Competition*, § 31:144.20 (5th ed.).

In line with these cautionary guidelines, and the cases cited by Plaintiffs notwithstanding, courts have approached the *Rogers* test with wariness since the *Jack Daniel's* decision. *See, e.g.*, *Davis v. Blue Tongue Films,* 2024 U.S. App. LEXIS 32318, at *2 (9th Cir. Dec. 20, 2024) (reversing dismissal of a trademark infringement action brought by the authors of the book "Gringo" against makers of a film with the same name); *see also HomeVestors of Am., Inc. v. Warner Bros. Discovery, Inc.*, No. 22-1583-RGA, 2025 U.S. Dist. LEXIS 153761, at *8 (D. Del. Aug. 8, 2025) (denying summary judgment under *Rogers* because of genuine factual disputes about whether the public associated the name of the show "Ugliest House in America" with HGTV or Warner Brothers). In *Vans, Inc. v. MSCHF Prod. Studio, Inc.*, the Second Circuit applied the "lessons" of *Jack Daniel's* to affirm a preliminary injunction based on trademark infringement. 88 F.4th 125, 135-137 (2d Cir. 2023) (noting that in *Jack Daniel's*, the Court "declined to adopt the Ninth Circuit's holding that *Rogers* applied to all 'expressive works.'").

The post-*Jack Daniel's* cases cited by Plaintiffs above present radically different fact patterns than the facts here. In *Hara*, the claims against Netflix concerned the use of the Plaintiff Hara's likeness during a ten-second scene in one episode of the TV series *Q-Force*. *Hara v. Netflix, Inc.*, 146 F.4th 872, 879 (9th Cir. 2024). The *Hara* case did not concern whether the title *Q-Force* infringed Hara's trademark, or whether the TV show title identified the source or origin of the show. In *McGillvary v. Netflix, Inc.*, 2024 WL 3588043, at *1 (C.D. Cal. July 30, 2024)

(Staton, J.), the court dismissed a case filed *in forma pauperis,* by a man serving a fifty-seven year murder sentence, against defendants such as Netflix, Sinclair Media, and Jimmy Kimmel Live!.  With respect to trademark infringement,[7] the court found that Netflix's use of phrases such as "The Hatchet Wielding Hitchhiker" and its adoption of Mr. McGillvary's "hairstyle, garb, performance, and body appearance" in a documentary about his life, did not improperly use these 'marks' as a source identifier. *Id.* at *13.  Finally, *Down to Earth Organics, LLC v. Efron,* concerned a Netflix series titled "Down to Earth with Zac Efron." 2024 WL 1376532 (S.D.N.Y. Mar. 31, 2024).  Unsurprisingly, this show did not infringe the Plaintiff's "Down to Earth" trademark, because consumers would naturally attribute the source of the show to the celebrity producer and star, Zac Efron, whose name appeared in the title of the show.  *Id.* at *6.  These cases are not at all similar to here, where Plaintiffs use THQ's exact Mark, with no indication from the title that the source is not THQ's Franchise.

## X.    PLAINTIFFS' REPLY RE LEGAL BACKGROUND

Faced with the inescapable truth that *Rogers* is binding Ninth Circuit precedent, THQ relies on the concurrence in *Jack Daniel's* (which of course is not the law),[8] and an outdated edition of the McCarthy treatise. Not only is a treatise non-precedential, but THQ also cites language that does not even appear in the current version of the McCarthy treatise. *See* Sections VII, IX, *supra*; *compare* 1 McCarthy on Trademarks, Chapter 10 (5th ed.).

The controlling majority opinion in *Jack Daniel's* reaffirmed *Rogers* and *Mattel*. 599 U.S. at 153-54. And in *Punchbowl* and *Hara*, the Ninth Circuit affirmed the continued post-*Jack Daniel's* applicability of *Rogers* and *Mattel* in this Circuit. *Punchbowl*, 90 F.4th at 1030; *Hara*, 146 F.4th at 874.[9] Courts in the Ninth Circuit, and in this District, continue to apply *Rogers* in cases involving expressive works. *See, e.g., Lost International, LLC v. Stefani Joanne Germanotta, et al.*, No. SA CV 25-0592 FMO (KESx) (C.D. Cal. Dec. 15, 2025) (finding use of "Mayhem" for the title of a music album, as well as merchandise for the promotion of that

---

[7] There is nothing in the decision suggesting that Mr. McGillvary even owned any registered trademarks.

[8] *Pub. Watchdogs v. S. Cal. Edison Co.*, 984 F.3d 744, 757 n.7 (9th Cir. 2020) (citing *Maryland v. Wilson*, 519 U.S. 408, 412-13 (1997) ("concurring opinions have no binding precedential value")).

[9] That *Hara's* fact pattern differed from this case is irrelevant; the Ninth Circuit reaffirmed the *Rogers* test's vitality.

Mitchell
Silberberg &
Knupp LLP

21384026.2

25

1  album, was not a source identifier). This Court is bound by Ninth Circuit law, not what THQ

2  would like that law to be.

3  **XI.    PLAINTIFFS' LEGAL STANDARD ON SUMMARY JUDGMENT**

4       Summary judgment should be granted if "the movant shows that there is no genuine

5  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

6  Civ. P. 56(a). When "the nonmoving party [] fail[s] to make a sufficient showing on an essential

7  element" as "to which [it] has the burden of proof" at trial, summary judgment must be granted

8  in favor of the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The

9  nonmoving party must present more than just bare assertions, conclusory allegations, or

10 suspicions to avoid summary judgment. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978,

11 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is

12 insufficient to raise genuine issues of fact and defeat summary judgment."); *Nelson v. Pima

13 Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation

14 do not create a factual dispute for purposes of summary judgment").

15      Following *Jack Daniel's*, the party claiming trademark infringement bears the burden of

16 establishing that the accused infringer used the mark as a source identifier. *See Hermes Int'l v.

17 Rothschild*, 678 F.Supp.3d 475, 483 (S.D.N.Y. 2023) (after *Jack Daniel's* recognizing that

18 "'burden remain[s] with [trademark holder] at all times' to prove that [alleged infringer's use of

19 the mark] did not fall within the [First] Amendment's scope"); *Hara*, 146 F.4th at 880 (placing

20 burden on trademark holder to sufficiently allege source identification in support of infringement

21 claim); *JTH Tax LLC v. AMC Networks Inc.*, 694 F.Supp.3d 315, 332-33 (S.D.N.Y. 2023)

22 (applying *Rogers* where trademark holder failed to show that alleged infringers used its marks to

23 identify the source of their products, or for any product they sell). If the trademark owner cannot

24 meet its initial burden of showing source identification, then the *Rogers* test applies.

25      Under *Rogers*, the accused infringer "must first 'make a threshold legal showing that its

26 allegedly infringing use is part of an expressive work[.]'" *Punchbowl*, 90 F.4th at 1028 (citation

27 omitted). If that threshold showing is met, the burden shifts to the party claiming trademark

28 infringement to establish at least one of *Rogers'* two prongs—*i.e.*, that the use at issue either (1)

Mitchell
Silberberg &
Knupp LLP
21384026.2

is not artistically relevant to the work or (2) explicitly misleads consumers as to the source or the content of the work." *Id.*; *accord Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264-65 (9th Cir. 2018) (discussing "the burden of proof under the *Rogers* test"). "Neither of these prongs is easy to meet." *Dr. Seuss*, 983 F.3d at 462.

## XII.   ARGUMENT

### A.   <u>Introduction</u>

#### 1.   PLAINTIFFS: The First Amendment Bars Trademark Infringement

THQ alleges Counterclaims for (1) infringement of registered trademarks under the Lanham Act, 15 U.S.C. § 1114(1); (2) common law trademark infringement; (3) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); and (4) common law unfair competition. ECF 25. Plaintiffs seek a declaration of non-infringement on the same claims. ECF 1. The Ninth Circuit has made clear that all of these claims are "subject to the same legal standards" and thus are analyzed together for purposes of this Motion. *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1221 (9th Cir. 2012); *see also Zo Skin Health, Inc. v. ForeverYoung Laser Ctr., Weight Mgmt. & Med. Spa, LLC*, 2022 WL 18397631, at *3 (C.D. Cal. Dec. 7, 2022) ("Claims for common law trademark infringement are subject to the same standard as claims for federal trademark infringement…. Additionally, Plaintiff's claims for unfair competition under federal and California state law are analyzed under the same legal standards.") (collecting cases).

Plaintiffs are entitled to summary judgment in their favor on all of their claims for declaratory relief and all of THQ's Counterclaims because there is no genuine dispute that their use of *Alone in the Dark* as the title of their Film is protected by the First Amendment under *Rogers*. As a matter of law and of fact, "[Plaintiffs] are not using 'Alone in the Dark' as a source identifier," ECF 55 at 5, n.2. Plaintiffs' Film unquestionably is an "expressive work" entitled to full First Amendment protection. *See Rogers*, 875 F.2d at 997 ("Movies, plays, books, and songs are all indisputably works of artistic expression and deserve protection."). And THQ cannot sustain its burden to satisfy at least one of *Rogers's* two prongs.

2.    **THQ'S Response: The *Rogers* Test Does Not Apply**

THQ disagrees that Plaintiffs are entitled to summary judgment, and disagrees that the title of Plaintiffs' Film is protected by the First Amendment.  Moreover, many of the material facts surrounding consumer perception of THQ's ALONE IN THE DARK Franchise and the title of Plaintiffs' film remain in dispute.  The Court should deny summary judgment, because the evidence overwhelmingly shows that consumers are accustomed to associating the titles of movies with the source of their underlying IP.  Thus, regardless of whether Plaintiffs intended the title of their Film to refer to THQ's Franchise, consumers are predisposed to identify the source of Plaintiffs' Film based on its title.  As such, the *Rogers* test does not apply.  *Jack Daniel's*, 599 U.S. at 156 (when "the use is 'at least in part' for 'source identification' . . . *Rogers* has no proper role.").

Finally, even if the *Rogers* test does apply, the title "Alone in the Dark" is not *artistically* relevant to the film, and is explicitly misleading as to source.  In addition to the fact that the ALONE IN THE DARK Franchise is a decades old and well-known video game series, and consumers readily associated titles of films with identical video game titles, Plaintiffs essentially copied THQ's trademark and logo for their Film.  Additionally, the streaming platforms that carry Plaintiffs' film already offered two authorized ALONE IN THE DARK films with the same name. Thus, THQ has satisfied both prongs of the *Rogers* test.

B.    **Source Identification**

1.    **PLAINTIFFS: Plaintiffs' Use of the Title *Alone in the Dark* Is Not Source-Identifying and Thus *Rogers* Applies.**

As a threshold matter, *Jack Daniel's* has no impact on the application of the *Rogers* test here because Plaintiffs are not using *Alone in the Dark* to identify the source of the Film.

a.    **As a matter of law, *Alone in the Dark* is not a source identifier.**

*Jack Daniel's* made clear that *Rogers* continues to apply, and warrants dismissal of claims like those asserted in *Rogers* and *Mattel*, because the accused infringers in those bedrock cases used trademarks in titles of expressive works—that is, "not to designate a work's source, but solely to perform some other expressive function." *Jack Daniel's*, 599 U.S. at 153-54.

Mitchell Silberberg & Knupp LLP

21384026.2

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

1    Here, *Rogers* and *Mattel* are controlling. As in *Mattel*, it is undisputed that Plaintiffs used

2    the title *Alone in the Dark* "to communicate a message about the … movie, [not] to identify the

3    publisher or producer." *Mattel*, 296 F.3d at 902; SUF22. Like the film title in *Rogers* (*Ginger*

4    *and Fred*), the song title in *Mattel* (*Barbie Girl*), and the documentary titles in *Down to Earth*

5    *Organics* and *McGillvary*, it is undisputed that Plaintiffs' title *Alone in the Dark* does not speak

6    to the Film's origin, but rather describes its content. As one of the executive producers of the

7    Film explained, the title was chosen because "it describes the content of the film through a

8    powerful metaphor: the woman is literally alone in the dark in her house, and she is also

9    figuratively alone and in the dark as to the identity of the person stalking her and the extent of

10    control her ex-husband might exercise over her." SUF22. In contrast to the trademark in *Jack*

11    *Daniel's*, which was used on an ordinary consumer product—a dog toy—*Alone in the Dark* is

12    indisputably the title of an expressive work. SUF17. Under *Rogers* and *Mattel*, as affirmed by

13    *Jack Daniel's*, Plaintiffs' use of *Alone in the Dark* is not source-identifying. Just as in *Rogers*, it

14    is uncontested that Plaintiffs are using the mark at issue here as the title of a film. SUF17, 36-37.

15    As the Ninth Circuit made clear in *Mattel*, "[c]onsumers expect a title to communicate a message

16    about the book or movie, but they do not expect it to identify the publisher or producer…. A title

17    tells us something about the underlying work but seldom speaks to its origin[.]" 296 F.3d at 902.

18    Consistent with this conclusion, the USPTO's Trademark Trial and Appeal Board and the

19    Federal Circuit, its primary reviewing court, have long recognized that the title of a single

20    creative work, such as Plaintiffs' Film, "cannot serve as a source identifier" as a matter of law.

21    *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1162-63 (Fed. Cir. 2002) ("the title of a

22    single book [or other creative work] cannot serve as a source identifier") (citations omitted); *In*

23    *re Cooper*, 254 F.2d 611, 615-16 (C.C.P.A. 1958) ("A book title … is not associated in the

24    public mind with the publisher, printer[,] or bookseller"); *In re Arnold*, 105 U.S.P.Q.2d 1953

25    (T.T.A.B. 2013) (precedential) ("the title of a single creative work … in no way indicates the

26    source of the work"); *Mattel, Inc. v. the Brainy Baby Co., LLC*, 101 U.S.P.Q.2d 1140 (T.T.A.B.

27    2011) ("The title of a single creative work is, of necessity, descriptive of the work and does not

28    function as a trademark.").

**b.** **Additionally, THQ has failed to establish that Plaintiffs used *Alone in the Dark* as a source identifier.**

Even assuming that—contrary to *Rogers* and *Mattel* as affirmed by *Jack Daniel's*—consumers **could** expect a title "to identify the publisher or producer" of a work (*compare Mattel*, 296 F.3d at 902),[10] THQ cannot carry its burden of proving Plaintiffs used the title of the Film as a source identifier. *See Celotex*, 477 U.S. at 322-23. "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson*, 83 F.3d at 1081-82.

Here, the undisputed evidence demonstrates that Plaintiffs did not use the title *Alone in the Dark* as a source identifier:

- Plaintiffs have never sought to register a trademark in *Alone in the Dark*, and they do not hold trademarks in the titles of their other films.

- The Film prominently and repeatedly refers to Plaintiffs—including "MarVista," "The Ninth House," and their logos—in the credits.

- The closing credits of the Film displays the following copyright notice: © 2022 MarVista Entertainment, LLC.

- The key art for the Film does not refer to the Game; rather, at the bottom it states "tubi ORIGINAL" or "Apple TV+" (as applicable).

SUF6, 10, 28-35, 38-41.

This case is thus nothing like *Jack Daniel's*, where VIP Products **conceded** that it had used "Bad Spaniels" as a trademark for its dog toys, and had registered other similar dog toy titles as trademarks. 599 U.S. at 159-60; *see also Punchbowl*, 90 F.4th at 1031 (after *Jack Daniel's*, finding that *Rogers* did not apply to the "Punchbowl" news service: "The Mark is used to 'identify and distinguish' AJ Press's news products.... Indeed, AJ Press has filed trademark applications to register the marks 'Punchbowl News' and 'Punchbowl Press.'"). Furthermore, VIP Products featured "Bad Spaniels" on the hangtag of the dog toy in a manner that "appear[ed] to serve … [a] source-identifying function[.]" *Jack Daniel's,* 599 U.S. at 160. While the Film

---

[10] Plaintiffs' counsel could not find any Ninth Circuit case—whether before or after *Jack Daniel's*—in which a court considered evidence of consumers' perceptions of the title of a film to prove source.

does not have a physical hangtag, the analogs to a hangtag—*i.e.*, the Film's credits and key art—prominently refer to ***Plaintiffs*** and the platforms on which the Film appears. Put differently, *Alone in the Dark* was displayed and promoted as the ***title*** of the Film, whereas "MarVista," "The Ninth House," "tubi," and "Apple TV+" were used in a ***source-identifying*** fashion.

   *Down to Earth Organics v. Efron* is instructive. In that case, Down to Earth Organics alleged that a documentary series titled "Down to Earth with Zac Efron" infringed its "Down to Earth" trademark. 2024 WL 1376532 at *2. Applying *Jack Daniel's*, the Court found that the documentary series was "undoubtedly using 'Down to Earth' simply to identify the subject matter and tone of the Series," not as a source-identifier of its producer or distributor. *Id.* at *4. In so finding, the court noted that "when a viewer begins to watch the Series, the first title card indicates the Series as 'A Netflix Original Series' and the credits at the end of each episode clearly identifies the producers of the Series." *Id.* at *6. Accordingly, the court reasoned, "it is highly unlikely that the public would interpret the title 'Down to Earth with Zac Efron' as denoting the source, publisher, or producer of the product as [Down to Earth Organics]." *Id.* The same logic applies here. *See also, e.g.*, *McGillvary*, 2024 WL 3588043, at *13 (dismissing claims arising from title of documentary under *Rogers* because "Netflix used the mark … not to identify [documentary's] source but to identify its subject-matter").

   Consequently—even assuming *arguendo* that, despite *Mattel*, analyzing extrinsic evidence were necessary to determine whether a film title is a source identifier—the undisputed evidence "rebuts THQ's factual allegations that MarVista is using 'Alone in the Dark' as a source identifier … [and] this case does not fall within the ambit of *Jack Daniel's*." ECF 55 at 5-6, n.2. Under Supreme Court precedent and Ninth Circuit law, the Court must apply *Rogers*.

    **2. THQ's Response: The Film Title "Alone in the Dark" refers to THQ's ALONE IN THE DARK Franchise**

     **a. A Film Title Can Serve as a Source Identifier**

   Plaintiffs argue that "the title of a single creative work, such as Plaintiffs' Film, 'cannot serve as a source identifier' as a matter of law." Plaintiffs misstate the law in the context of an infringement claim. Plaintiffs cases merely stand for the proposition that the title of a single

1   work cannot be *registered* as a trademark.  For example, *In re Cooper* explains that while a

2   series of books can be trademarked, because it indicates that each book in the series comes from

3   the same source, the title of a single book cannot be registered as a trademark.  *In re Cooper*, 254

4   F.2d 611, 615-16 (C.C.P.A. 1958) (noting that a book title cannot be registered as a trademark,

5   because trademarks, unlike copyrights, last forever). Several of Plaintiffs other cases, which also

6   concern registrability of single works, also cite to *Cooper. See Herbko Int'l, Inc. v. Kappa Books,*

7   *Inc.*, 308 F.3d 1156, 1162-63 (Fed. Cir. 2002) (cancellation proceeding); *In re Arnold*, 105

8   U.S.P.Q.2d 1953, *7 (T.T.A.B. 2013) (precedential appeal from registration proceeding under 15

9   U.S.C. § 1127) ("the applicant's use of BLATANCY on more than one audio recording

10  effectively demonstrates that the designation is not merely the title of a single work, and that it

11  can function as a trademark.").  These cases bear on the legitimacy of registering a trademark on

12  the title of a single film, but do not apply here, where Plaintiffs must only fit within the

13  framework of the Lanham Act. *See* 15 U.S.C. § 1114(1).

14          Plaintiffs appear not to appreciate the difference between the standards for obtaining a

15  trademark, and the lesser requirements for establishing the use of an existing mark in a manner

16  likely to cause confusion for purposes of infringement. THQ does not dispute that Plaintiffs have

17  never sought to register a trademark for *Alone in the Dark* – nor could they have, under the

18  precedent cited above. But THQ has a valid trademark for ALONE IN THE DARK, and proof of

19  infringement merely requires establishing a use in commerce "of a registered mark in connection

20  with the sale . . . or advertising of any goods." 15 U.S.C. § 1114(1)(a); *see also Coach, Inc. v.*

21  *Citi Trends, Inc.*, No. CV 17-4775-DMG (KSx), 2019 U.S. Dist. LEXIS 242458, at *9 (C.D. Cal.

22  Dec. 23, 2019)(citing *Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 140 (2d Cir. 2009))

23  (distinguishing between the requirements for trademark registration and infringement). THQ

24  does not need to demonstrate that Plaintiffs' title would or could have been registered as an

25  independent mark to prove consumers are misled as to source.

26          The *Rogers* decision itself acknowledges that the title of a single work can infringe valid

27  trademark rights. 875 F.2d at 998 ("it would be ironic if, in the name of the First Amendment,

28  courts did not recognize the right of authors to protect titles of their creative work against

Mitchell Silberberg & Knupp LLP

21384026.2

32

infringement by other authors"). *Rogers* explains "it is well established that where the title of a movie or a book has acquired secondary meaning—that is, where the title is sufficiently well known that consumers associate it with a particular author's work—the holder of the rights to that title may prevent the use of the same or confusingly similar titles by other authors." *Id.* (citing *Warner Bros. Pictures, Inc. v. Majestic Pictures Corp.*, 70 F.2d 310 (2d Cir. 1934)). *Warner Bros.* concerned a complaint against a film titled "Gold Diggers of Paris," which capitalized on the good will and reputation of a popular play, called "Gold Diggers," and two licensed films produced by Warner Brothers, called "Gold Diggers of Broadway" and "Gold Diggers of 1933." 70 F.2d at 311. The Second Circuit found that the title of the single infringing film "Gold Diggers of Paris," signified origin, writing:

> The title "Gold Diggers" through wide publicity and long use has come to mean a moving picture of the general type we have described produced by Warner Bros. Pictures, Inc., and that it is unfair for the defendants to use these words in connection with another motion picture play of the same general type. Irrespective of whether there is continuity of plot or composition in complainant's moving pictures and Hopwood's play, we think the defendants are precluded from using the title "Gold Diggers" for any motion picture play likely to compete with complainant's productions. The words signify origin and a certain standard of competence and achievement.

*Id.* at 312. Similarly, in *Orion Pictures Co. v. Dell Publ'g Co.*, the court found infringement by the title of a single book, where the title of the motion picture and the infringing book were identical. 471 F.Supp.392, 396 (S.D.N.Y. 1979) (concerning the title "A Little Romance").

Plaintiffs are incorrect about whether the title of a single work can serve as a source identifier. Because the parties dispute—at a factual level—whether consumers identify the source of Plaintiffs' Film by its title, as described below, the Court should deny this Motion.

### b.    Consumers Identify the Source of Films from their Titles

"Video game intellectual property (IP) has emerged as the next battleground for Hollywood." According to a 2023 article by Deloitte, although adapting games to films is not new, the quality and quantity of such adaptations has been growing in recent years, following the massive popularity of video games. SUF130. "The lines between gameworlds and cinematic

Mitchell
Silberberg &
Knupp LLP

21384026.2

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

1  universes are blurring, with more actors, storylines, and promotions moving between them."

2  SUF131. Case in point: THQ hired Hollywood actors Jodie Comer and David Harbour to voice

3  act the main characters in the 2024 ALONE IN THE DARK video game. SUF83.

4        The title of Plaintiffs' Film is a source identifier, because in the entertainment industry,

5  movie studios use titles and key art aligned with underlying IP, such as a video game, to alert

6  consumers that a film comes from a popular source. SUF137. Movie studios typically select the

7  formatting and style of their titles carefully to highlight a movie's association with an underlying

8  video game. *Id.* As such, consumers have become accustomed to associating film titles to

9  underlying works, such as video games.

10        The highest grossing video game movie of all time is "The Super Mario Bros. Movie"

11  released in 2023. SUF143. THQ's expert, Ms. Arnold, provided the following opinion about the

12  relationship between the Super Mario Brothers movie and the Super Mario Brothers games:

13          "a consumer hearing about 'The Super Mario Bros. Movie' would
        associate that movie with the video game franchise 'Super Mario
14          Bros' owned by Nintendo. The association would become even
        more clear from viewing the associated game and movie art,
15          reproduced below. 'The Super Mario Bros. Movie' would not have
        been as popular as it was, if not for its association with the video
16          game franchise. Said a different way, the association between the
        title of the film and the video game franchise was a factor in the
17          movie's popularity. I believe that the movie studio (Universal
        Pictures) expressly made this movie based on consumer interest in
18          the underlying video games, and therefore expected consumers to
        associate the film with the video game franchise owned by
19          Nintendo."  SUF144-146.

20

21

22

23

24

25

26

27

28



| Super Mario Bros. Movie (2023) | Super Mario Bros. Video Game Art |
| --- | --- |

Notably, Plaintiffs' entertainment expert, Mr. Todd Levitt, did not disagree with anything in this portion of Ms. Arnold's opinion.  SUF147.

The highest grossing domestic movie of 2025 was "a Minecraft Movie" based on the video game franchise "Minecraft." SUF148. According to Ms. Arnold, a consumer hearing about "A Minecraft Movie" would associate that film with the video game franchise, and much of the success of the movie was due to name recognition due to its association with the video game franchise "Minecraft." SUF150-151. Ms. Arnold explains that Warner Bros. Pictures carefully selected the title and key art to take advantage of consumer association between the film and the video game.  SUF149-151.




| "A Minecraft Movie" (2025) | Minecraft Video Game Art |
| --- | --- |

Many successful films and tv shows, particularly in recent years, are based on previously known IP, such as books and video games. SUF138-141. It is commonplace—if not expected—for new films to be based on existing intellectual property, including video games.  As of the

1   date of Ms. Arnold's report, nine of the top ten grossing films of 2025 were based on existing

2   franchises. SUF140-141. Ms. Arnold believes, based on her years of industry experience, that

3   name recognition, and the association of these titles with their original IP, is likely the primary

4   driver of interest for many of these films. SUF142. Consumers have become more and more

5   accustomed over the years to the expectation that books and video games are the source of new

6   content for film and television. SUF138. Because new films based on existing IP have become so

7   commonplace, consumers typically identify the underlying source of a movie by its title, if that

8   title is associated with an IP such as a book, play, or video game that the consumer recognizes.

9   SUF138-142.

10         Plaintiffs will undoubtedly argue that the films and games in THQ's ALONE IN THE

11  DARK Franchise are not as famous as Minecraft or Super Mario Brothers. But a film need not be

12  a top-10 hit, and a video game need not be an all-time best-seller, to create the same association

13  in the mind of a consumer. SUF139. The same associations can and do apply to lesser known

14  films adapted from video games.  For example, according to Ms. Arnold, Paramount Pictures

15  understood that associating the film "Tomb Raider" with the video game franchise of the same

16  name would benefit ticket sales, and thus Paramount carefully selected the title graphics and key

17  art for the film to resemble the video game, as shown below. SUF152-154. Plaintiffs' expert Mr.

18  Leavitt agrees. SUF147.

 

| "Lara Croft Tomb Raider" (2021) | Tomb Raider Video Game Art |

27         The same association is true for horror films, including lesser known films.  A consumer

28  familiar with the "Resident Evil" horror video game franchise owned by Capcom would

associate that IP with the release of a "Resident Evil" movie. SUF155. And a consumer familiar with the "Silent Hill" horror video game franchise owned by Konami, would associate that IP with the release of a film called "Silent Hill." SUF156-157.

|  |  |
|---|---|
| **Key Art for "Silent Hill" (2006)** | **Silent Hill Video Game Art** |

The examples above demonstrate a clear connection between video games and associated films premised on that IP, which use the title from the underling franchise as a source identified.

Significantly, none of Plaintiffs' witnesses disagree with the general premise that the title of a film or television series *can* sometimes act as a trademark, particularly when the mark at issue has some level of fame. For example, when Plaintiffs' entertainment expert Mr. Leavitt was asked during his deposition, whether he agreed "with the general premise that consumers who hear about a title for a film based on an underlying IP, if they are aware of that IP, would associate the title of the film with the IP," he responded "sometimes yes, sometimes no." SUF159. Mr. Leavitt was also asked directly at his deposition, to "think of a title for the film that you think would not have been appropriate," a title that Plaintiffs could not have used for a film. SUF160. His answer: "they couldn't call it Resident Evil, I tell you that.  They couldn't call it Superman.  They couldn't call it Monopoly." SUF160. But Plaintiffs have not explained why their Film could not be called "Resident Evil," but can be called "ALONE IN THE DARK."

Plaintiffs witnesses also readily admitted to other examples connecting films and their source material, in similar fact patterns not involving the ALONE IN THE DARK Franchise. These admissions alone, warrant denial of summary judgment.  For example:

1    • Plaintiffs' witness Dale Nelson, formerly intellectual property counsel at Warner

2       Brothers, testified that ███████████████████████████████████

3       ████████████████████████████████████████████████████

4       ████████████████████████████████████████████████

5       ████████████████████████████████████████████

6       ████████████████████████████████ SUF158.

7    • Mr. Leavitt, who co-created the TV series ██████████████████████

8       ████████████████████████████████████████████

9       ████████████████████████████████████████████████

10      ██████████████████. SUF161.

11   • Mr. Leavitt was also a senior executive at NBC studios in the early 1990s, when the

12      ████████████████████████████████████████████████

13      ████████████████████████████████████████████████

14      ████████████████████████████████████████████

15      ████████████████████████████████████████████

16      ████████████████████████████████████████████████

17      ██████████████████. SUF164.

18   • The producer of Plaintiffs' Film agreed that when she sees an advertisement for a Harry

19      Potter movie, she connects it back to the Harry Potter books. SUF171.

20      Plaintiffs will likely argue that the marks described above (Harry Potter, ████████,

21   Super Mario Bros., etc.) are famous, and that ALONE IN THE DARK is different, because it is

22   not sufficiently famous.  But Mr. Leavitt's opinion on what constitutes a famous mark depends

23   entirely on whether he has personal knowledge of the mark in question. SUF165-166. For

24   example, Mr. Leavitt testified that "Resident Evil" was a famous mark, because he had heard of

25   it, but "Alone in the Dark" was not famous, because he had not previously heard of it. *Id*. While

26   Mr. Leavitt's credentials are lengthy, whether he has personally heard of a series is not a

27   cognizable standard for determining fame.

28

Further, none of Plaintiffs' experts are qualified to offer an opinion rebutting THQ's contention that its ALONE IN THE DARK Mark is widely recognized, because none of them have experience with video games, or the horror industry. SUF170. For example, although Mr. Leavitt criticized THQ's ALONE IN THE DARK Mark, and Franchise, as lacking distinctiveness, name recognition, and fame, he readily admitted that he had no experience with video games or the video game marketplace.[11] SUF167, 170. In fact, Mr. Leavitt could not name a single famous video game for popular platforms like PlayStation, Xbox, and Steam, and admitted that he is not a horror aficionado. SUF168-169.

In summary, today's consumers are predisposed to viewing film titles and associated key art as a proxy for the source of that film. The same association applies to the title of Plaintiffs' Film, which is identical to THQ's Mark.

### c. At a Minimum, There is a Genuine Factual Dispute About Whether Consumers view ALONE IN THE DARK as a Source-Identifying Trademark

Plaintiffs cannot dispute that THQ's games, and the authorized films, have been played and seen by ███████ of people.[12] These ███████ of people—who are accustomed to associating the name of a movie with the underlying video game source—plainly associate the source of Plaintiffs' Film with THQ and the ALONE IN THE DARK Franchise.

Not only is the title of Plaintiffs' film identical to THQ's trademark and many of THQ's own game titles, but the logo for Plaintiff's Film was formatted in exactly the same way as an existing game from the ALONE IN THE DARK Franchise. For example, as shown below, the arrangement of the logo from the official trailer for Plaintiffs' Film, published on YouTube, is the same as the logo for the 2008 ALONE IN THE DARK video game. SUF77, 105-106.

---

[11] In particular, Mr. Leavitt agreed that he did not know "whether the Alone in the Dark Mark is famous among video gamers." SUF167.

[12] The authorized 2005 ALONE IN THE DARK film has been viewed more than ███████ since 2018 on the Tubi platform alone. SUF111. The authorized 2008 ALONE IN THE DARK film has been viewed more than ███████ since 2019, on the Tubi platform alone. SUF112. THQ has sold more than ███████ of the ALONE IN THE DARK video games (across all releases) in the United States since 2018. SUF84.

Mitchell Silberberg & Knupp LLP

21384026.2

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

 

| Plaintiff's "Alone in the Dark" Logo (2022) | THQ's ALONE IN THE DARK Logo (2008) |

In Ms. Arnold's expert opinion, a "consumer familiar with the Alone in the Dark games, viewing promotional material with this logo, would also associate Plaintiffs' Film with the video game series." SUF107.

Plaintiffs' key art also resembles the key art for the 2008 ALONE IN THE DARK video game.[13]  Both images feature a headshot of the protagonist, in a dynamic pose, behind a stylized logo.  In Ms. Arnold's opinion, consumers would likely associate Plaintiffs' key art with the Alone in the Dark Franchise, because of similarities with THQ's own key art, or because the presentation of Plaintiffs' Film next to the authorized films is consistent with consumer expectations of an original film, a sequel, and a newer franchise reboot.  SUF95, 108-110.

 

| Plaintiff's "Alone in the Dark" (2022) | THQ's ALONE IN THE DARK (2008) |

---

[13] Trademark Application Serial No. 86/511,596 was accompanied by a specimen (an example of use) from Atari's website, that included this key art. SUF76-77.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Mitchell Silberberg & Knupp LLP

21384026.2

1

2

3

4

5

6

7

8



9  Plaintiffs' Film title is not an innocuous name as they would suggest. Instead, Plaintiffs

10 use the title of their film as an indicator of source, just like THQ does for its own video games.

11 In today's connected media environment, where both video games and movies are widely

12 available and enjoyed by a large percentage of the population, on both TV screens, computers,

13 and portable devices, video games and movies are closely related and interconnected. *See*

14 *Dreamwerks Prod. Group v. SKG Studio*, 142 F.3d 1127, 1131 (9th Cir. 1998) ("movies and sci-

15 fi merchandise are now as complementary as baseball and hot dogs. . . Entertainment studios

16 control all sorts of related industries: publishing, clothing, amusement parks, computer games

17 and an endless list of toys and kids' products."). On popular websites such as Amazon and Apple

18 TV, the name of Plaintiffs' Film appears not just as biographical information, but as a stylized

19 logo, nearly identical to THQ's own stylization, that a consumer would naturally view as an

20 indication of source (a relationship with the ALONE IN THE DARK Franchise).

21

22

23  

24

25

26

27 **From Apple TV + (SUF31)**          **From Amazon (SUF97-101)**

28

Mitchell
Silberberg &
Knupp LLP

21384026.2

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Although proof of secondary meaning is not a requirement for proving trademark infringement of an inherently distinctive mark like THQ's ALONE IN THE DARK Mark,[14] THQ contends, and its witnesses have and will testify, that ALONE IN THE DARK is a famous and well-known mark, a cult classic, and well-known in the gaming community. SUF62. THQ recently spent ███████ on marketing the 2024 ALONE IN THE DARK video game, and YouTube videos about the Franchise have been seen millions of times. SUF73-75. The results from Google searches for the phrase "ALONE IN THE DARK" captured around the time Plaintiffs released their Film, show that nearly every result relates to THQ's Franchise.[15] SUF119-133. THQ's Mark is also associated with two authorized feature films, and has ███████████████████████████████████████████████████. SUF69. THQ rejects any notion that ALONE IN THE DARK is not sufficiently famous to be recognized as a famous horror and video game franchise by consumers interested in those genres.

In summary, there is a genuine dispute about whether the title of Plaintiffs' Film will be perceived as a source identifier by consumers who are aware of the ALONE IN THE DARK Franchise.

### 3.    PLAINTIFFS' Reply

THQ argues that "[t]he title of Plaintiffs' Film is a source identifier, because in the entertainment industry, movie studios use titles and key art aligned with ***underlying IP***, such as a video game, to alert consumers that a film comes from a popular source." Section XII.B.2.b., *supra* (emphasis added). THQ claims that "consumers typically identify the underlying source of a movie by its title, ***if that title is associated with an IP*** such as a book, play, or video game that the consumer recognizes. Section XII.B.2, *supra*. (THQ has presented no admissible evidence to support this. *See* Plaintiffs' Motion to Exclude Expert Report and Testimony of Kathryn Arnold ("Arnold Daubert").)

---

[14] *See Zobmondo Entm't, Ltd. Liab. Co. v. Falls Media, Ltd. Liab. Co.*, 602 F.3d 1108, 1113-14 (9th Cir. 2010) ("Where the PTO issues a registration without requiring proof of secondary meaning, the presumption is that the mark is inherently distinctive."). THQ's Motion for Partial Summary Judgment contains a more fulsome explanation of why its mark is suggestive.

[15] One exception: The first Google "News" result from the search performed on August 24, 2022 is a news article about Plaintiffs' "Horror Thriller" Alone in the Dark releasing on Tubi.

Mitchell Silberberg & Knupp LLP

21384026.2

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

1    In so arguing, THQ proffers no evidence demonstrating that viewers of Plaintiffs' Film

2 would consider the Film's title a source identifier. Rather, the *Rogers* test exists precisely to

3 protect expressive works that use another's trademark—*i.e.*, **another's IP**—even where a

4 likelihood of confusion could conceivably exist. The Supreme Court in *Jack Daniel's* declined to

5 do to *Rogers* that which THQ is asking this Court to do here. Instead, *Jack Daniel's* reaffirmed

6 the test set forth in both *Rogers*—a case involving a film title and a famous celebrity; and

7 *Mattel*—a case involving a song titled after famous IP. *Jack Daniel's*, 599 U.S. at 153-54; *see*

8 *also Punchbowl*, 90 F.4th at 1030 (Ninth Circuit affirming continued validity of *Rogers* and

9 *Mattel* post-*Jack Daniel's*); *Hara*, 146 F.4th at 874 (same).

10    *Jack Daniel's*—which involved tangible consumer products—carved out a narrow

11 exception for "[w]hen a mark is used as a mark[.]" 599 U.S. at 159. Indeed, the defendant in that

12 case, VIP Products, **conceded** that it had used the words at issue—"Bad Spaniels"—as a

13 trademark for its dog toys, and had even registered other similar dog toy titles as trademarks. 599

14 U.S. at 159-60. Similarly, in *Punchbowl*, AJ Press used "Punchbowl" as the brand of its news

15 service—not as the title of an expressive news article—and had filed trademark applications for

16 "Punchbowl News" and "Punchbowl Press." 90 F.4th at 1030. The Supreme Court and the Ninth

17 Circuit found in both cases that the defendant used the marks as trademarks. *Id.*; *Jack Daniel's*,

18 599 U.S. at 159. By contrast, it is undisputed that here Plaintiffs only used *Alone in the Dark* as

19 the title of a single expressive work (the Film), have never sought to register a trademark in

20 *Alone in the Dark*, and have included references to Plaintiffs in the credits of the Film.[16] SUF36-

21 41. The stark differences between the facts of *Jack Daniel's* and *Punchbowl* and those here

22 underscore why the *Rogers* test applies in this case.

23    THQ cites *Rogers'* language that "where the title is sufficiently well known that

24 consumers associate it with a particular author's work—the holder of the rights to that title may

25 prevent the use of the same or confusingly similar titles by other authors." Section XII.B.2.a,

---

[16] THQ makes much hay of the font that Plaintiffs used for the title of their Film. *See* Section XII.B.2.c., *supra*. But THQ presents what it claims to be the purported "logo" of Plaintiffs' Film out of context, and cites no authority that font is relevant to the source-identifier analysis. And as discussed in Section XII.D.3, *infra*, the Ninth Circuit has found that a junior user's use of a similar font as the senior user was not explicitly misleading.

Mitchell
Silberberg &
Knupp LLP

21384026.2

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

1  *quoting* 875 F.2d at 998. In support of this argument, THQ relies on *Warner Bros. Pictures, Inc.*

2  *v. Majestic Pictures Corp.*, 70 F.2d 310 (2d Cir. 1934) and *Orion Pictures Co. v. Dell Publishing*

3  *Co.*, 471 F. Supp. 392 (S.D.N.Y. 1979)—decades' old cases cited by the *Rogers* decision. *See*

4  Section XII.B.2.a, *supra*. These cases, of course, reflect the state of the law **pre-*Rogers***. And to

5  the extent that THQ is attempting to rely on *Rogers'* dicta that its test might not extend to

6  "misleading titles that are confusingly similar to other titles" of artistic works (875 F.2d at 999,

7  n.5), the Ninth Circuit has expressly rejected this purported "title-versus-title" exception. *See*

8  *Empire*, 875 F.3d at 1197 (explaining that the purported exception suggested in the *Rogers*

9  footnote is "ill-advised or unnecessary"). Indeed, shortly after *Rogers* was decided, "the Second

10  Circuit itself rejected [the footnote's] applicability and applied the *Rogers* test." *Empire*, 875

11  F.3d at 1197 (citing *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp., Inc.*, 886 F.2d 490,

12  494-95 (2d Cir. 1989)).

13      THQ also argues that the title of Plaintiffs' Film is a source identifier because **other**

14  unrelated, high-profile video games have been turned into films—namely *Super Mario Bros.* and

15  *Minecraft*. Section XII.B.2.b., *supra*. THQ insists that, like those video games, "ALONE IN

16  THE DARK is a famous and well-known mark, a cult classic, and well-known in the gaming

17  community." Section XII.B.2.c., *supra*. THQ supports its claim with purported "expert"

18  testimony from Kathryn Arnold (who admittedly knows nothing about video games), as well as

19  some *ad hoc* statements that Plaintiffs' experts made while trying to answer THQ's counsel's

20  irrelevant hypotheticals. *Id*. THQ's argument fails for three reasons:

21      ***First***, as an initial matter, Ms. Arnold's "expert" testimony should be excluded for the

22  reasons set forth in Plaintiffs' concurrently filed *Daubert* Motion and Evidentiary Objections.[17]

23  Likewise, THQ improperly attempts to rely on Plaintiffs' expert testimony for subjects on which

---

[17] Even if the Court were to consider the Arnold report (and it should not), her testimony actually supports Plaintiffs' position that a title for a single film is not a source identifier. When confronted with examples of films that she, herself, had produced and that had used the title of earlier motions pictures, she justified her own conduct on the ground that the previous movies with the same title were only single uses of a title. *See* Arnold *Daubert*. So, in fact, Ms. Arnold necessarily agrees that use of a title on a single motion picture does not constitute a source identifier. Otherwise, her own use of pre-existing film titles on her own films would have no justification.

Mitchell Silberberg & Knupp LLP
21384026.2

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

1    they were not designated as expert witnesses. *See* Plaintiffs' Objections to THQ Nordic AB's

2    Evidence, filed concurrently herewith ("Evid. Objs.").

3        **Second**, Arnold's and THQ's examples of other video games that were adapted into films

4    and other hypotheticals prove nothing about this case. Even assuming *arguendo* they were

5    relevant, they provide neither factual nor legal authority as to how consumers determined the

6    source of any of those films (or imagined films). Hypotheticals are simply not law. And

7    hypotheticals about other video games adapted into films say nothing about how **Plaintiffs** used

8    their **own Film title**, which is the relevant inquiry here. THQ attempts to use the hypotheticals to

9    conflate source identification—how Plaintiffs refer to themselves—and explicitly misleading—

10   how Plaintiffs allegedly refer to THQ—but the tests are not the same. *Compare JTH Tax LLC v.*

11   *AMC Networks Inc*., 694 F. Supp. 3d 315, 333 (S.D.N.Y. 2023) (analyzing whether the purported

12   mark was "used … as [the accused infringers'] own identifying trademark" in source

13   identification analysis) (cleaned up) *with Dr. Seuss Enters.*, 983 F.3d at 462-63 (comparing

14   covers, art, and manner of use by junior and senior users on explicitly misleading prong). And

15   regardless, it is easy to imagine a film coincidentally titled "Silent Hill" having nothing to do

16   with the video game, and entitled to protection under *Rogers*.

17       **Third**, and most importantly, THQ's source identification arguments wrongly focus on

18   whether the **senior user** (*i.e.,* THQ) is using the mark as a source identifier. THQ again attempts

19   to improperly draw the Court's attention to its own Game, claiming, "THQ contends, and its

20   witnesses have and will testify, that ALONE IN THE DARK is a famous and well-known mark,

21   a cult classic, and well-known in the gaming community." *See* Section XII.B.2.c., *supra*. THQ

22   also claims that, "In Ms. Arnold's opinion, consumers would likely associate Plaintiffs' key art

23   with the Alone in the Dark Franchise, because of similarities with THQ's own key art, or

24   because the presentation of Plaintiffs' Film next to the authorized films is consistent with

25   consumer expectations of an original film, a sequel, and a newer franchise reboot." *See* Section

26   XII.B.2.c., *supra*. However, as noted above, the relevant consideration for source identification is

27   not whether consumers associate Plaintiffs' title with **THQ's IP**, but rather whether Plaintiffs are

28   using the title as a source identifier for **their own IP**, *i.e.*, the Film.

This Court has already properly rejected that very framework. In its Order denying Motion for 28 U.S.C. § 1292(b) Certification and Stay Pending Appeal, the Court made clear it was not considering whether *THQ's* mark is a source identifier: "At no point did the Court assert that the Court should 'analyze' *THQ's use* in determining if the trademark at issue was used as a source-identifier by *Mar Vista*. … According to *Jack Daniel's*, where it appears that the junior user—despite the limits of trademark law—is attempting to use a title as a source identifier, that can constitute trademark infringement." ECF 72 at 6. Thus, THQ is not only asking this Court to disregard Supreme Court and Ninth Circuit precedent, but also appears to be seeking reconsideration of this Court's prior Order. Were the Court to overrule its prior Order, adopt THQ's reading of *Jack Daniel's*, and focus on the senior user's use of the trademark, the result would be disastrous: Every senior user seeking to enforce its trademark is using its trademark as a mark, and thus the source identification exception would swallow the *Rogers* test.

THQ has failed to meet its burden on summary judgment and has not offered any admissible evidence that Plaintiffs used *Alone in the Dark* as a "mark." *Super Mario Bros.* and *Harry Potter* hypotheticals are neither evidence, precedent, nor persuasive authority, and should not distract from the key fact that Plaintiffs did not use their Film title as a source identifier. Nor do any of THQ's arguments change that titles of single works cannot be registered as trademarks because they do not function as source identifiers. *Brainy Baby Co.*, 101 U.S.P.Q.2d 1140.

**C.    Artistic Relevance**

**1.    PLAINTIFFS: Plaintiffs' Use of the Title *Alone in the Dark* Is Artistically Relevant to Plaintiffs' Film.**

Under the first prong of the *Rogers* test, "the level of [artistic] relevance … merely must be above zero" for the use to be deemed artistically relevant. *E.S.S.*, 547 F.3d 1095, 1100 (9th Cir. 2008). "[E]ven the slightest artistic relevance" is enough. *Brown*, 724 F.3d at 1245. There is sound basis for this "appropriately low" threshold: it is not within the province of the Court to second-guess creators' artistic decisions. *Rogers*, 875 F.2d at 999; *see also Brown*, 724 F.3d at 1243 (noting the low threshold for artistic relevance under the *Rogers* test "has the benefit of limiting [the court's] need to engage in artistic analysis in this context").

Mitchell
Silberberg &
Knupp LLP

21384026.2

46

There is no genuine dispute that the title *Alone in the Dark* has "above zero" artistic relevance to Plaintiffs' Film. THQ has conceded as much. SUF22 (Paeck Depo. Tr. at 152:6-15 (Q: "[I]s it THQ's position that the title Alone in the Dark has absolutely nothing to do with the content of Plaintiffs' film?" A:"I wouldn't say absolutely nothing, but, also, not a lot.")). The title *Alone in the Dark* describes the content of the Film, which is about a single woman living under house arrest who is being stalked by an unknown assailant. SUF19-22. The Film's key art depicts a woman who is "alone" and "in the dark" (both literally and figuratively), as she is in a dark room by herself and unaware of the stalker's identity. SUF28-31. This easily surpasses the low threshold for artistic relevance. *See Empire Distrib.*, 875 F.3d at 1199 ("A title … may have artistic relevance by supporting the themes and geographic setting of the work"); *see also, e.g.*, *Mattel*, 296 F.3d at 902 (the title "Barbie Girl" "clearly is [artistically] relevant" to a song about the materialism identified with Barbie dolls); *Jackson*, 506 F. Supp. 3d at 1015 (it is "beyond question" that the title "Tiger King" is artistically relevant to a documentary about a tiger keeper); *Reflex Media, Inc. v. Pilgrim Studios, Inc.*, 2018 WL 6566561, at *6 (C.D. Cal. Aug. 27, 2018) (the title "Love at First Flight" "certainly [has] above zero" artistic relevance to a television series involving "multiple-day dates in exotic locations"); *Capcom Co.*, 2008 WL 4661479, at *13 (title "Dead Rising" is artistically relevant to video game involving zombies).

## 2. THQ's Response: Plaintiffs' Title May Have Minimal Literal Relevance, But Has No Artistic Relevance

Plaintiffs attempts to connect the title of their Film to its content push the already forgiving threshold of the 'artistic relevance' test to new lows. Plaintiffs' Film is not *about* a woman who is alone in the dark. Rather, THQ agrees with Plaintiffs, that their Film is about a recent divorcee living under house arrest who is being stalked by an unknown assailant. This description perfectly fits the original working title of the film "Stalker on the Lake," but shares no artistic relevance to the final title "Alone in the Dark." Plaintiffs' Film synopsis (SUF88) presents a tangled web of interpersonal relationships—quite the opposite from the themes of "isolation" that Plaintiffs attribute to their title. *See* SUF21. Plaintiffs' could have selected any number of alternative titles (for example "Alone in Her House" or "Stalker in the Dark") without negatively impacting consumer perception of the Film.

1    Nothing about the film, or its plot, depend upon the characters being alone in the dark.

2    Indeed, the characters are alone, and in the dark, only for fleeting moments in the film.[18]

3    However, the same could be said of countless films, both in and out of the horror genre.  Dark

4    scenes are ubiquitous in film – for example, virtually the entirety of the film "Light" streaming

5    on the Tubi platform takes place in the dark.[19]  If the test for artistic relevance were this shallow,

6    and simply asked whether an element of the title appeared in the film, every movie with an evil

7    character could be called "Wicked," every movie with kids toys could be called "Toy Story" and

8    every movie with an arguably wonderful female lead could be called "Wonder Woman."  If the

9    test for artistic relevance were simply a question of literal applicability, ALONE IN THE DARK

10   would be artistically relevant to films such as James Cameron's "Titanic" (Rose, floating in the

11   icy water of the North Atlantic at night) and "Harry Potter and the Sorcerer's Stone" (Harry,

12   sitting by himself in a dark room, gazing into the Mirror of Erised).

13   Plaintiffs argue that the Film's key art depicts a woman who is "alone" and "in the dark"

14   (both literally and figuratively).  But, so far as THQ is aware, these images are <u>not</u> scenes from

15   the movie, but rather "approved stills" conducted specifically for marketing purposes. SUF94.

16   99. Thus, although Plaintiffs made an effort to portray the Film as a horror movie to consumers,

17   these advertisements are not necessarily reflective of the content of the Film.

18   While the standard for "artistic relevance" is admittedly low, and the title of Plaintiffs'

19   Film may have some literal relevance (the title is minimally related to scenes in the film that are

20   dark), Plaintiffs have not shown any "artistic" relevance.

21   ### 3.    PLAINTIFFS' Reply

22   *Rogers'* threshold for artistic relevance is a low bar—"merely … above zero"—so as not

23   to cast the Judge in the role of art critic. *E.S.S.*, 547 F.3d at 1100; *Brown*, 724 F.3d at 1242-43.

24   Thus, the Ninth Circuit held that the use of "Pig Pen" as a parody for the "Play Pen" strip club in

25   East Los Angeles was artistically relevant to a video game despite that "Play Pen has little

26   cultural significance" (*E.S.S.*, 547 F.3d at 1100), and that the use of "Honey Badger Don't Care"

27

---
[18] The characters are alone and in the dark for a total of about 143 seconds. SUF89.

[19] https://tubitv.com/movies/100030344/light

Mitchell
Silberberg &
Knupp LLP

21384026.2

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

1    and "Honey Badger Don't Give a Sh*t" were artistically relevant for greeting cards because "the

2    phrase is the punchline on which the cards' humor turns." *Gordon*, 909 F.3d at 269.[20] Plaintiffs'

3    use of *Alone in the Dark* certainly clears this low bar. Indeed, THQ conceded that the Film's title

4    has above-zero artistic relevance. SUF22. The analysis should end there.

5        Nevertheless, and without any authority, THQ flouts the *Rogers* test by asking the Court

6    to engage in a detailed analysis of Plaintiffs' Film—including parsing how many minutes of the

7    Film allegedly take place in the dark and considering the (clunky) alternative titles "Alone in Her

8    House" or "Stalker in the Dark"—while ignoring that "alone in the dark" is a figure of speech.

9    *See* Section XII.C.2., *supra*. The absurdity of THQ's arguments underscores why artistic

10   relevance is not an invitation for the Court to become a film critic or to engage in the very artistic

11   analysis that *Rogers* is designed to avoid.[21]

12       **D.    Explicitly Misleading**

13           **1.    PLAINTIFFS: Plaintiffs' Use of the Title *Alone in the Dark* Does Not**

14               **Explicitly Mislead Consumers as to the Source of Plaintiffs' Film.**

15       Given that Plaintiffs' title is artistically relevant, in order to evade summary judgment,

16   THQ must raise a triable issue of fact as to whether the title *Alone in the Dark **explicitly*** misleads

17   consumers as to the source or content of the Film. *See Rogers*, 875 F.2d at 999; *Brown*, 724 F.3d

18   at 1245 ("It is key here that the creator must *explicitly* mislead consumers."). THQ cannot sustain

19   that burden.

20

21

---

22   [20] *See also Dillinger, LLC v. Electronic Arts Inc.*, 2011 WL 2457678, at *5 (S.D. Ind. June 16, 2011) (finding the

23   "'superficial and attenuated' link between John Dillinger and the *Godfather* video games" had "above-zero" artistic relevance); *Harold Lloyd Entm't, Inc. v. Moment Factory One, Inc.*, 2015 WL 12765142, at *10 (C.D. Cal. Oct. 29,

24   2015) (use of Harold Lloyd's image and reference to his clock tower scene from a prior film was "artistically relevant to a tribute to silent movies"); *Louis Vuitton Malletier S.A. v. Warner Bros. Ent't Inc.*, 868 F.Supp.2d 172,

25   178-79 (S.D.N.Y. 2012) (use of Louis Vuitton name and knock-off Louis Vuitton bag in *The Hangover: Part II* "has some artistic relevance to the plot of the Film" because it conveys the "luxury and a high society lifestyle" underlying a scripted joke).

26   [21] Importantly, *Rogers* is a two-prong test. The question of whether "every movie with an evil character could be

27   called 'Wicked,' every movie with kids toys could be called 'Toy Story' and every movie with an arguably wonderful female lead could be called 'Wonder Woman'" (Section XII.C.2., *supra*), is not germane to the artistic

28   relevance prong, but to the explicitly misleading prong. *MGFB Props., Inc. v. Viacom Inc.*, 54 F.4th 670, 681 (11th Cir. 2022) ("artistic relevance does not turn on whether the work is about the trademark or its holder.").

Mitchell
Silberberg &
Knupp LLP

21384026.2

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

1    The "explicitly misleading" prong of the *Rogers* test imposes a "high bar." *Dr. Seuss*, 983

2    F.3d at 462 (internal quotation marks and citation omitted). A title is not "explicitly misleading"

3    absent an "explicit indication, overt claim, or explicit misstatement about the source of the

4    work." *Id.*; *see also Rogers*, 875 F.2d at 999, 1107 (illustrative examples of explicitly misleading

5    uses include titling a book "Jane Fonda's Workout Book" when Jane Fonda had no involvement,

6    or subtitling a book as "an authorized biography" when it is not). Notably, the "mere use of a

7    trademark alone cannot suffice to make such use explicitly misleading." *Brown*, 724 F.3d at

8    1245; *see also Mattel*, 296 F.3d at 902 (if "the use of [the] Barbie [mark] in the [song] title …

9    were enough to satisfy [the explicitly misleading] prong of the *Rogers* test, it would render

10    *Rogers* a nullity").

11    There is no evidence that ***anything*** in the Film's title or content even implicitly

12    suggests—much less "explicitly indicates," "overtly claims," or "explicitly misstates"—that the

13    Film is associated with THQ or its Game. SUF33-35, 51-53. Rather, Plaintiffs clearly indicate

14    that ***Plaintiffs*** produced the Film. For example, the Film prominently and repeatedly identifies

15    "MarVista," "The Ninth House," and their logos in the opening titles and closing credits. SUF40-

16    41. Neither the Film nor its key art makes any reference to THQ or the Game. SUF33-35, 51-53.

17    And the title *Alone in the Dark* is a minor piece of the Film's expressive content. SUF23-24.

18    THQ has also failed to demonstrate a genuine issue of material fact that Plaintiffs adopted

19    the title *Alone in the Dark* **for the purpose of misleading consumers** into believing that THQ

20    was somehow affiliated or associated with the Film. SUF22, 33-35, 51-53; *see Dr. Seuss,* 983

21    F.3d at 462 ("'explicitly misleading' … is a high bar that requires the use to be 'an "explicit

22    indication," "overt claim," or "explicit misstatement"' about the source of the work") (quoting

23    *Brown*, 724 F.3d at 1245). To the contrary, the undisputed facts show that Plaintiffs selected and

24    adopted the title *Alone in the Dark* for the Film because it described the content of the Film—*i.e.*,

25    a woman who is alone in the dark. SUF22.[22]

26

27    [22] Furthermore, while consumer perception is not relevant to the explicitly misleading analysis, THQ has failed to adduce any admissible evidence that consumers would ordinarily identify the source of a movie by the title alone. *See* Section XII.A, *supra*. Indeed, as the Ninth Circuit recognized in *Mattel*, "[c]onsumers expect a title to

28    communicate a message about the book or movie, but they do not expect it to identify the publisher or producer….

Mitchell
Silberberg &
Knupp LLP

21384026.2

Courts consistently find that use of a mark is not "explicitly misleading" in these

circumstances. *See, e.g., Empire*, 875 F.3d at 1199 (television show titled *Empire* not "explicitly

misleading" because the show "contain[ed] no overt claims or explicit references to Empire

Distribution"); *Monbo v. Nathan*, 623 F. Supp. 3d 56, 121 (E.D.N.Y. 2022) (film title not

"explicitly misleading" where "the [film's] end credits" identified the producers); *UFO Mag.,*

*Inc. v. Showtime Network, Inc.*, 2022 WL 16645041, at *5 (D. Wyo. July 21, 2022) (same, where

"first screen of the first episode of [the series] display[ed] text indicating that the series is

presented by 'Showtime Documentary Films'"); *Rin Tin Tin, Inc. v. First Look Studios, Inc.*, 671

F. Supp. 2d 893, 901 (S.D. Tex. 2009) (same, where producers were identified within the film

itself and on the DVD); *Hidden City Philadelphia v. ABC, Inc.*, 2019 WL 1003637, at *5 (E.D.

Pa. Mar. 1, 2019) (same, where videos "feature[d] the ABC logo"); *Stewart Surfboards, Inc. v.*

*Disney Book Grp., LLC*, 2011 WL 12877019, at *7 (C.D. Cal. May 11, 2011) (same, where book

displayed Disney logos). This is fatal to all of THQ's Amended Counterclaims and supports

declaratory relief on all of Plaintiffs' claims.

       **2.     THQ's Response: Plaintiffs Use Their Title in the Same Way, on**

            **Similar Products, and Consumers Have Actually Been Confused**

            **a.     A title is "explicitly misleading" if used in the same context as**

                  **the Trademark holder**

Plaintiffs use "Alone in the Dark" in the same way that THQ uses it—to identify the title,

source, and content of its media. Plaintiffs suggest, citing *Brown* and *Mattel*, that "the mere use

of a trademark alone cannot suffice to make such use explicitly misleading." But—to the extent

*Brown* and *Mattel* previously created that impression—the Ninth Circuit subsequently held

otherwise in *Gordon*, stating:

> We therefore reject the district court's rigid requirement that, to be
> explicitly misleading, the defendant must make an affirmative
> statement of the plaintiff's sponsorship or endorsement. Such a
> statement may be sufficient to show that the use of a mark is
> explicitly misleading, but it is not a prerequisite. *See* 2

---

A title tells us something about the underlying work but seldom speaks to its origin[.]" 296 F.3d at 902 (citation
omitted).

MCCARTHY §10:17.10 (noting that *Rogers*'s second prong does not hinge on the junior user "falsely assert[ing] that there is an affiliation"). *In some instances, the use of a mark alone may explicitly mislead consumers about a product's source if consumers would ordinarily identify the source by the mark itself.* If an artist pastes Disney's trademark at the bottom corner of a painting that depicts Mickey Mouse, the use of Disney's mark, while arguably relevant to the subject of the painting, could explicitly mislead consumers that Disney created or authorized the painting, even if those words do not appear alongside the mark itself.

*Gordon*, 909 F.3d at 269–70 (internal quotation marks omitted) (emphasis added).

Plaintiffs argue there is no evidence that ***anything*** in the Film's title "even implicitly suggests—much less "explicitly indicates," "overtly claims," or "explicitly misstates"—that the Film is associated with THQ or its Game." But the title itself, and Plaintiffs' use of nearly identical key art and logos is what explicitly misstates source and misleads consumers. THQ uses the trademark ALONE IN THE DARK, by itself, as a source identifier. For example, THQ's 2024 game is not called "THQ's ALONE IN THE DARK." The titles of the ALONE IN THE DARK video games and authorized films are simply ALONE IN THE DARK, with no other indication of source, and the key art for those games often omits THQ's logo.[23] Plaintiffs use THQ's *exact* Trademark, in exactly the same way, and as explained above, consumers are conditioned to expect that a film with a title identical to a well-known video game series would have the same source.

Plaintiffs also argue that the "Film prominently and repeatedly" identifies the logos of the film producers in the opening titles and closing credits. This argument fails for two reasons. First, consumers are aware that the producer of a film may not have any connection to the underlying source material on which the film is based. Many prominent movies begin with short animations from seemingly unknown production companies. For example, the 2005 authorized ALONE IN THE DARK film was produced by Uwe Boll, and his production company Dritte Boll Beteiligungs—GmbH & Co. KG. SUF61. Yet consumers would still have understood that

---

[23] Compare "Alone in the Dark" and "Down to Earth with Zac Efron." *See Down to Earth Organics, LLC v. Efron,* 2024 WL 1376532 (S.D.N.Y. Mar. 31, 2024).

the film was based on the ALONE IN THE DARK Franchise, owned at that time by Atari. Put another way, the fact that an unknown producer's name appears on a film does not mean that consumers won't also make the connection to the underlying source material. *See A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 300 (3d Cir. 1986) ("a term may function as an indicator of source and therefore as a valid trademark, even though consumers may not know the name of the manufacturer or producer of the product.").

Second, Plaintiffs argument fails because consumers associate the title of Plaintiffs' film with THQ's ALONE IN THE DARK series long before a consumer has actually seen the credits in Mar Vista's film. SUF95. 138. Confusion occurs as soon as the consumer sees or hears about the title. Moreover, the logos and key art for both Plaintiffs film and THQ's games are strikingly similar and further contribute to this association, as shown below.

  

| **Plaintiffs' Film on YouTube** (SUF102-105) | **Plaintiffs' Film on Amazon** (SUF97-101) | **THQ's use of the Mark** (SUF78-81.) |

 

| **Plaintiffs' Film on Tubi** (SUF29) | **THQ's use of the Mark on Steam (SUF77-79)** |

Mitchell Silberberg & Knupp LLP
21384026.2

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

"[T]he potential for explicitly misleading usage is especially strong when the senior user and the junior user both use the mark in similar artistic expressions." *Gordon*, 909 F.3d at 270. Here, Plaintiffs use THQ's Mark on a feature film, which is the same medium as THQ's existing franchise films, and is at least closely related to THQ's core business (video games). The only addition to THQ's Mark in Plaintiffs' version of the "key art" is the phrase "tubi original" to indicate the film is available for streaming on the online digital distribution service. But both of the authorized ALONE IN THE DARK film adaptations (released in 2005 and 2008) are also available on Tubi. Accordingly, the addition of "tubi original" does nothing to alleviate the confusion that arises (and in fact may add to it). Both of the authorized ALONE IN THE DARK films are also available together with Plaintiffs' film on other platforms, as shown for example, by the three films appearing side-by-side when a consumer searches for "Alone in the Dark" on the Amazon Prime Video website.



In *Gordon*, the Ninth Circuit emphasized that in *all* of the Ninth Circuit's prior applications of the *Rogers* test, "the junior user has employed the mark in a different context— often in an entirely different market—than the senior user." 909 F.3d at 270. For example, "Mattel's Barbie mark was used in a song and a series of photos" and "the mark of a strip club was used in a video game." *Id.* But had the context been similar, "had Twentieth Century Fox titled its new show Law & Order: Special Hip-Hop Unit – such identical usage could reflect the type of 'explicitly misleading description' of source that Rogers condemns." *Id.* (noting that allowing someone to use a trademark merely because the infringing work is "art" "would turn trademark infringement on its head."). In this case, Plaintiffs use the Mark in the same market, and even on the same platforms, as THQ. For at least this reason, there is a genuine dispute about whether Plaintiffs use of the title "ALONE IN THE DARK" is explicitly misleading.

1

### 3.    PLAINTIFFS' Reply

2      Whereas the merely above-zero threshold for artistic relevance is a low bar, the

3  "explicitly misleading" prong of *Rogers* imposes a "high bar"; it requires an "explicit indication,

4  overt claim, or explicit misstatement about the source of the work." *Dr. Seuss*, 983 F.3d at 462

5  (cleaned up). THQ cannot satisfy its burden to demonstrate that Plaintiffs' use was explicitly

6  misleading because it is undisputed that Plaintiffs did not refer to THQ's Game, let alone

7  explicitly mislead consumers into believing the Film was related to the Game. SUF48-53. Under

8  Ninth Circuit law, the explicitly misleading inquiry should end there. *See*, *e.g.*, *Empire*, 875 F.3d

9  at 1199.

10      Faced with this inconvenient reality, THQ relies on a statement in *Gordon v. Drape*

11 *Creative*, in which the Ninth Circuit stated that "use of a mark ***alone*** may explicitly mislead

12 consumers about a product's source if consumers would ordinarily identify the source by the

13 mark itself." *See* Section XII.D.2.a., *supra*, *citing Gordon*, 909 F.3d at 270 (emphasis added).

14 Relying solely on this language, THQ argues, "Plaintiffs use THQ's *exact* Trademark, in exactly

15 the same way, and as explained above, consumers are conditioned to expect that a film with a

16 title identical to a well-known video game series would have the same source." *See* Section

17 XII.D.2.a., *supra*.

18      Again, as an initial matter, THQ has not adduced any admissible evidence that consumers

19 expect video games to be made into films, identify a film's source by its title alone, or would

20 expect the Film to have the same source as the Game. *See* Section XII.B.3., *supra*; *Daubert*

21 Motion; Evid. Objs.; *compare* ECF 55, n.3 ("the Court notes that, at the summary judgment

22 stage, THQ will have to prove that consumers ordinarily identify the source of a movie by title

23 alone. At that time, the Court may find that, under *Gordon*, THQ has not met its showing as to

24 the second prong of the *Rogers* test.").

25      Even if THQ had proffered admissible evidence that consumers expect a film to have the

26 same source as a video game, such a fact would not demonstrate the title is explicitly misleading.

27 THQ's argument brazenly ignores binding Ninth Circuit law. In *Dr. Seuss*, the junior user

28 published a book titled *Oh, the Places You'll Boldly Go!*, which was nearly identical to "[Dr.

Mitchell
Silberberg &
Knupp LLP

21384026.2

55

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Seuss's] famous [book] title" *Oh, the Places You'll Go!*. Both books featured "the Seussian font in the cover" and "the Seussian style of illustrations." Despite these similar elements (which were so similar, the Court found copyright infringement), the Ninth Circuit held that the junior user's use was ***not*** explicitly misleading, and affirmed summary judgment for the junior user on the senior user's trademark claim. 983 F.3d at 461-63. The Court found it immaterial that both books used the mark in their titles or that the junior user used the same font and styling. Specifically addressing *Gordon*, the *Dr. Seuss* Court described it as an outlier and reiterated that the "explicitly misleading" prong of *Rogers* requires an "explicit misstatement" or "overt claim" not simply an expert's opinion. *Id. See* Section XII.D.1., *supra*. The Ninth Circuit's *Dr. Seuss* opinion, and its limits on *Gordon*, are dispositive and controlling.

Even if *Gordon* had not been so limited, Plaintiffs' Film title is still not explicitly misleading. In *Gordon*, the Ninth Circuit noted two relevant considerations for *Rogers'* second prong: (1) "the degree to which the junior user uses the mark in the same way as the senior user" and (2) "the extent to which the junior user has added his or her own expressive content to the work beyond the mark itself." *Gordon*, 909 F.3d at 270-71. Here, the parties' respective uses of *Alone in the Dark* are different: Plaintiffs use *Alone in the Dark* as the title of a ***film***, and THQ uses it as the title of a ***video game***. SUF36, 42. *See K & K Promotions, Inc. v. Walt Disney Studios Motion Pictures*, 2022 WL 3585589, at *1 (9th Cir. Aug. 22, 2022) (first consideration in *Gordon* was not met where the owner of IP rights for the late daredevil Evel Knievel claimed trademark infringement by a character in the movie *Toy Story 4*: "Unlike Evel Knievel, Duke Caboom is a fictional character in an animated film about toys that come to life."); *compare Gordon*, 909 F.3d at 271 (finding first consideration may be met where both uses were the same: "humorous greeting cards in which the bottom line is 'Honey Badger don't care'").

To the extent THQ claims that "Plaintiffs use THQ's Mark on a feature film, which is the same medium as THQ's existing franchise films, and is at least closely related to THQ's core business (video games)[,]" (*see* Section XII.D.2.a., *supra*), THQ's argument fails. THQ ███ ████████████████████████ "authorized ALONE IN THE DARK film adaptations (released in 2005 and 2008)." SUF61. ████████████

Mitchell
Silberberg &
Knupp LLP

21384026.2

1    ██████████████████. *Id.* THQ ████████████████████████, and
2    they are irrelevant to the analysis. ██████████████████████
3    ██, Plaintiffs' use is not explicitly misleading under *Gordon* because Plaintiffs' Film title is a
4    single component of a broader, complex expressive work. Unlike the greeting cards in *Gordon*,
5    whose expressive content was the trademark and nothing more, Plaintiffs' use of *Alone in the*
6    *Dark* is only one piece of the Film's expressive content, which militates against it being
7    explicitly misleading. *See Gordon*, 909 F.3d at 270-71 (explaining that the concern that
8    consumers will "be 'misled as to the source of [a] product' is generally allayed when the mark is
9    used as only one component of a junior user's larger expressive creation") (citation omitted).
10   Thus, even if *Alone in the Dark* were considered used in the same way on both works—as in *Dr.*
11   *Seuss* where both works were illustrated books—this Court should reach the same result as *Dr.*
12   *Seuss* because Plaintiffs "added … expressive content to the work beyond the mark itself." *See*
13   *Dr. Seuss*, 983 F.3d at 463 (finding use was not explicitly misleading and affirming summary
14   judgment for junior user on trademark claim) (citation omitted).

15          With no real response to the wealth of binding authority holding that the inclusion of the
16   producer's name in the credits of a film militates against a finding of explicitly misleading (*see*
17   Section XII.D.1., *supra*), THQ pivots to its argument that some undefined group of "consumers
18   are aware that the producer of a film may not have any connection to the underlying source
19   material on which the film is based," and that this same (or a different) undefined group of
20   "consumers associate the title of Plaintiffs' film with THQ's ALONE IN THE DARK series long
21   before a consumer has actually seen the credits in Mar Vista's film. [] Confusion occurs as soon
22   as the consumer sees or hears about the title." *See* Section XII.D.2.a., *supra*. But THQ cannot
23   defeat the *Rogers* analysis by declaring consumer confusion. As discussed in detail above,
24   *Rogers* allows for confusion. The Ninth Circuit made clear in *Dr. Seuss*, "The *Rogers* test drew a
25   balance in favor of artistic expression and tolerates 'the slight risk that [the use of the trademark]
26   might implicitly suggest endorsement or sponsorship to some people.'" 983 F.3d at 462 (quoting
27   *Rogers¸* 875 F.2d at 1000); *see also E.S.S.*, 444 F. Supp. 2d at 1047 ("In *Rogers* … the movie title
28   'Ginger and Fred' was highly susceptible to consumer confusion…. Nonetheless the court found

that the First Amendment interests prevailed."), *Brown*, 724 F.3d at 1245 (allowing evidence of confusion to defeat *Rogers* "would render *Rogers* a nullity") (citation omitted).

## XIII.    PLAINTIFFS' CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Summary Judgment in its entirety, and enter judgment in Plaintiffs' favor on all of Plaintiffs' claims and THQ's Counterclaims, on the ground that Plaintiffs' use of the title *Alone in the Dark* is protected by the First Amendment under *Rogers*.

## XIV.    THQ'S CONCLUSION

For the reasons stated above, THQ respectfully requests that the Court deny Plaintiffs' motion for summary judgment.

## XV.    PLAINTIFFS' REPLY CONCLUSION

This Court should not give credence to THQ's attempt to re-write the law, nor its effort to confuse the issues and create the appearance of a genuine dispute of material fact by adding over 100 new ***immaterial*** facts that are irrelevant to the instant motion.

DATED:  FEBRUARY 6, 2026          LUCIA E. COYOCA
                                  KARIN G. PAGNANELLI
                                  ROBERT H. ROTSTEIN
                                  EMILY F. EVITT
                                  MARISSA B. LEWIS
                                  MITCHELL SILBERBERG & KNUPP LLP


                             By: /s/ *Karin G. Pagnanelli*
                                  Karin G. Pagnanelli
                                  Attorneys for Plaintiffs and Counterclaim-
                                  Defendants Mar Vista Entertainment, LLC, The
                                  Ninth House LLC, and Ninth Dark LLC

Mitchell
Silberberg &
Knupp LLP

21384026.2

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**